**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 25-1330 _____     _____ Caption [use short title] _____

Motion for: Emergency Motion for Stay and Expedited Appeal

_____

_____

Set forth below precise, complete statement of relief sought:

Plaintiff-Appellants Superb Motors Inc., Team Auto Sales LLC,

and Robert Anthony Urrutia respectfully seeks an Order

staying the modified injunction requiring them to deliver

vehicles to Defendants and expediting his appeal of same

based on the fact that he will suffer irreparable harm in

the absence of relief.

## Superb Motors Inc., et al. v. Deo, et al.

MOVING PARTY: Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia     OPPOSING PARTY: Anthony Deo, Sara Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers N'

- [✔] Plaintiff          [ ] Defendant
- [✔] Appellant/Petitioner     [ ] Appellee/Respondent

MOVING ATTORNEY: Sage Legal LLC          OPPOSING ATTORNEY: Linden Law Group, P.C.

[name of attorney, with firm, address, phone number and e-mail]

Emanuel Kataev, Esq.                    Jeffrey Benjamin, Esq.

18211 Jamaica Avenue, Jamaica, NY 11423-2327     250 Park Avenue, 7th Floor, New York, NY 10177

(718) 412-2421 emanuel@sagelegal.nyc        (212) 655-9536 jbenjamin@nyfraudlaw.com

Court- Judge/ Agency appealed from: United States District Court for the Eastern District of New York, Hon. James M. Wicks, U.S.M.J.

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
[✔] Yes   [ ] No (explain): _____
_____

Opposing counsel's position on motion:
[ ] Unopposed  [✔] Opposed  [ ] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes  [ ] No  [✔] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?       [ ] Yes [✔] No
Has this relief been previously sought in this court?  [ ] Yes [✔] No
Requested return date and explanation of emergency:  earliest possible
Appellants seek leave to modify an injunction to permit sale of vehicles that are injuncted
(which request was previously granted for some vehicles), Court denied relief as to remaining
vehicles and ordered them returned to Defendants, which Appellants cannot afford to do
Appellants are subject to contempt sanctions absent a stay

Is oral argument on motion requested?  [✔] Yes  [ ] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  [ ] Yes [✔] No  If yes, enter date: _____

**Signature of Moving Attorney:**

/s/ Emanuel Kataev, Esq.  **Date:** _____  Service by: [✔] CM/ECF  [✔] Other [Attach proof of service]

service via email on counsel

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, *individually and derivatively as a member of* NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, *individually and derivatively as a member of* 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 25-1330**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-APPELLANTS' SUPERB MOTORS INC, TEAM AUTO SALES LLC, AND ROBERT ANTHONY URRUTIA'S <u>EMERGENCY MOTION FOR A STAY AND EXPEDITED APPEAL</u>**

## PRELIMINARY STATEMENT

This motion seeks a stay of the portion of the modified preliminary injunction ("PI") issued by the District Court, Wicks, M.J. (Case No.: 2:23-cv-6188) on May 9, 2025, May 21, 2025, May 22, 2025, and May 23, 2025 that, *inter alia*, requires Plaintiff-Appellants Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs" or "Appellants") to deliver injuncted vehicles to Defendants Anthony Deo, Sara Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp., and DLA Capital Partners Inc. (collectively hereinafter the "Deo Defendants"), pending the outcome of the Appellants' appeal, which will result in significant personal financial hardship and irreparable harm.

This case has a long and tortured history; a summary of the relevant facts is thus presented here. Urrutia owned four (4) automobile dealerships, one of which was Superb, a luxury used car dealership in Great Neck, New York. Deo fraudulently induced Urrutia to become a partner in Superb and engaged in various wide-ranging schemes[1] to defraud Urrutia and Superb,[2] resulting in the termination of Superb's floor plan lines of credit with two (2) floor plan lenders.

---

[1] The court below denied the Deo Defendants' motion to dismiss and found that the Plaintiffs' detailed complaint stated a claim for relief under the Racketeer Influenced and Corrupt Organizations ("RICO") Act as well as an amalgam of state law claims.

[2] Unbeknownst to Urrutia, he is not the only victim of the Deo Defendants. Island Auto Group later joined in the case below after discontinuing a state court action against Deo and others arising out of the same conduct perpetrated by him at that group of dealerships.

The Appellants sought a temporary restraining Order requiring the Deo Defendants to return dozens of vehicles improperly removed from Superb's lot, which rendered Superb in violation of its agreement with its floor plan lenders. The district court, Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") granted the Superb Plaintiffs' motion and injuncted thirty-six (36) vehicles from being sold, encumbered, disposed of, etc. on September 29, 2023.

Despite best efforts, the injunction – which returned thirty (30) vehicles to the Appellants and left six (6) vehicles with the Deo Defendants – did not save Superb from termination of its floor plan lines of credit. With the inability to purchase new vehicles due to the loss of the floor plan line of credit, and the impermissibility of selling the injuncted vehicles due to the PI, Superb quickly shriveled up and died. Superb and Urrutia thus suffered irreparable harm.

Circumstances have significantly changed beyond Superb's closure since the imposition of the Injunction. While Superb shut down in December 2023, Urrutia's other three (3) dealerships – non-parties to this case and appeal – remained a going concern. As a result of Superb's closure, Appellants sought leave to sell the injuncted vehicles and place the proceeds of the sale in escrow pending further Order of the Court. This request was granted by the lower court on May 8, 2024, but only as to the vehicles owned by Superb, with the remaining vehicles injuncted.

A few months later, Urrutia's remaining dealerships similarly shut down and ceased operations. The operating capital of the remaining dealerships – which were cross-collateralized with Superb – was sucked dry due to required payoffs by the floor plan lenders following Superb's terminated floor plan line of credit. Further, Superb could not recover funds taken due to the Deo Defendants' retaining possession of six (6) injuncted vehicles, valued at half a million dollars, which similarly crippled the remaining dealerships' viability as a going concern.

The remaining dealerships were later shuttered due to a mistake by Nissan Motor Acceptance Company LLC d/b/a NMAC ("NMAC"); absent the crippled state of the remaining dealerships, they would have remained a going concern notwithstanding that mistake.

Regrettably, between the substantial losses due to the Deo Defendants' fraudulent conduct and NMAC's mistake, the remaining dealerships similarly shut down. Appellants once again suffered irreparable harm.

As a result, on April 28, 2025, the Appellants sought the same relief for the remaining injuncted vehicles and for leave to have the vehicles delivered to non-party NMAC pending the motion. On May 9, 2025, the Court denied the request to sell the vehicles without prejudice because the Deo Defendants' counsel withdrew from representation, and instead issued an Order directing the Appellants to deliver the injuncted vehicles to the Deo Defendants lot in Hicksville, NY from their current location in Hartford, CT.

Appellants moved for reconsideration, which the Court denied without a hearing or opposition from the Deo Defendants. The day after the Deo Defendants secured counsel, Appellants immediately moved by Order to show cause to modify the PI to permit the sale of the remaining injuncted vehicles. Although the district court previously found that Superb's closure warranted modification of the injunction to permit the sale of its vehicles, it denied the renewed Order to show cause on the grounds that Appellants failed to establish irreparable harm. These decisions are inconsistent with each other.

Appellants thus respectfully request an emergency stay pending an expedited appeal. Absent relief, the Appellants stand to suffer being held in contempt due to their inability to pay for the delivery of the injuncted vehicles to the Deo Defendants, which will cost in excess of $12,000.00, funds that the Appellants do not have.

Further, delivery of the vehicles will prevent the Appellants from being able to sell the injuncted vehicles, some of which they are currently permitted to, and others which they respectfully seek relief from this Court to be able to sell.

As a result, a stay pending appeal is warranted.

## FACTS

For the sake of brevity and due to the emergency nature of this appeal, Appellants attach as exhibits the relevant submissions and Orders being appealed from as exhibits.

## STANDARD OF REVIEW

This Court has jurisdiction to hear the underlying appeal pursuant to 28 U.S.C. § l292(a). As such, this Court also has jurisdiction to hear the instant motion. See Romer v. Green Point Say. Bank, 27 F.3d 12, 15 (2d Cir. 1994). To determine whether to stay a preliminary injunction, the Court must consider "(l) whether the stay applicant has made a strong showing that he is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." See Nken v. Holder, 556 U.S. 418, 434, (2009). Generally, the applicant's likelihood of success on the merits and irreparable harm to the applicant absent a stay "are the most critical" factors in determining whether one is appropriate. Nken, 556 U.S. at 434. "[T]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." See Maldonado-Padilla v. Holder, 651 F.3d 325, 328 (2d Cir. 2011).

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." See Brown v. Plata, 563 U.S. 493, 542 (2011) (citation and quotation marks omitted). The district court derives this power in part from Rule 54(b) of the Federal Rules of

Civil Procedure (hereinafter referred to as "Rules" or "Rule"), which provides that injunctive orders "may be revised at any time." See Floyd v. City of New York, No. 08 CIV. 1034 (AT), 2023 WL 2663374, at *3 (S.D.N.Y. Mar. 28, 2023) (citing Fed. R. Civ. P. 54(b)).

More broadly, the district court has inherent authority to revise or modify such orders. See United States v. LoRusso, 695 F.2d 45, 53 (2d Cir. 1982). Critically, in exercising its discretion to modify an injunctive order, a court should not impose or decline to make modifications that "thwart[ ] the purpose behind the injunction." See Sierra Club v. U.S. Army Corps of Eng'rs, 732 F.2d 253, 257 (2d Cir. 1984). Indeed, "[t]he power of a district court to modify its past injunctive decrees in order to accommodate changed circumstances is well established." See Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport, 710 F.2d 69, 74 (2d Cir. 1983).

"While changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." See King-Seeley Thermos Co. v. Aladdin Indus., Inc., 418 F.2d 31, 35 (2d Cir. 1969).

Of import, a court may modify an injunction even in the absence of changed conditions. See Lego A/S v. Zuru Inc., No. 3:18-CV-2045 (AWT), 2023 WL 2727552, at *4 (D. Conn. Mar. 31, 2023). If the injunction is "preliminary," as it is here, the court would be "charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." See Greater Chautauqua Fed. Credit Union v. Quattrone, No. 1:22-CV-2753 (MKV), 2023 WL 6037949, at *3 (S.D.N.Y. Sept. 15, 2023) (citing Sierra Club v. Army Corps of Engineers, 732 F.2d 253 (2d Cir. 1984)).

5

Indeed, the heightened standard in Rule 60(b)(5) only applies to "a final judgment, order, or proceeding." See Fed. R. Civ. P. 60(b); see also Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd., 74 F.R.D. 621, 623 (S.D.N.Y. 1977) ("Rule 60(b) applies only to final orders and not to interlocutory de[c]rees" and district courts have "continuing plenary power over its interlocutory orders under which the Court is not bound by Rule 60(b)(5)'s strict standard of 'changed circumstances'" (citations omitted)).

Moreover, although changes in fact or law often "afford the clearest bases for altering an injunction," a court's equitable power "extend[s] also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." See King-Seeley Thermos Co. v. Aladdin Indus., Inc., 418 F.2d 31, 35 (2d Cir. 1969) (citations omitted). Further, a court may vacate "when a decree proves to be unworkable because of unforeseen obstacles; or when enforcement of the decree without modification would be detrimental to the public interest." See Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 383 (1992) (citations omitted); Wright & Miller § 2942 ("[B]ecause of its discretionary character, an injunction ... may be modified if circumstances change after it is issued or in the event that it fails to achieve its objectives."); Timothy Stoltzfus Jost, From Swift to Stotts and Beyond: Modification of Injunctions in the Federal Courts, 64 Tex. L. Rev. 1101, 1138 (1986) (arguing that, if an injunction becomes "a tool of oppression" or "obviously inefficient," "the court ultimately has the power to, and should, modify a decree that imposes a burden disproportionate to the benefit it assures"). Crucially, Judge Merchant recognized, in issuing the Injunction, that she continued to assess the scope and terms of such an injunction. See Injunction at *15 (citing Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 245 (2d Cir. 2006)).

## ARGUMENT

### POINT I

### APPELLANTS HAVE SUFFERED IRREPARABLE HARM
### & WILL CONTINUE TO DO SO ABSENT RELIEF

On September 29, 2023, the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") issued a preliminary injunction. See Superb Motors Inc. v. Deo, No. 2:23-CIV.-6188 (OEM) (JMW), 2023 WL 7181675 (E.D.N.Y. Sept. 29, 2023) (hereinafter the "Injunction"), ECF Docket Entry 55. Judge Merchant issued the Injunction, which provides, in relevant part, that:

> 1) The following thirty (30) vehicles (the "Injuncted Superb Vehicles") are to Remain at or otherwise be returned to a Cross-Collateralized Urrutia Dealership Lots:
>
> a. Two (2) Isuzu flatbed trucks;
>
> b. Twenty-eight (28) cars listed on the list at ECF 30-8 ("Markup List") indicated with "YES",
>
> > i. with the exception of the 2023 Chevy Suburban with a Vehicle Identification Number (VIN #) ending in "8675."
>
> …
>
> 6) No injuncted vehicle may be removed from the appointed lot absent this Court's Order.
>
> a. In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle. The same writing must be electronically served on the other party.

See Injunction at *15-*16.

In issuing the Injunction, Judge Merchant found that the Superb Plaintiffs demonstrated irreparable harm. See Superb Motors Inc. v. Deo, 2023 WL 7181675, at *9 (E.D.N.Y. Sept. 29, 2023), modified in part, 2024 WL 198398 (E.D.N.Y. Jan. 18, 2024), and modified in part, 2024 WL 2079928 (E.D.N.Y. May 8, 2024) ("the Court can readily conclude from the parties' submissions that irreparable harm will likely befall Superb Plaintiffs absent an injunction").

The district court previously modified the Injunction to permit Superb to sell the Superb Injuncted Vehicles it owned based on the fact Superb shut down and went out of business. Id., 2024 WL 2079928 (E.D.N.Y. May 8, 2024). Notably, in the lower court's decision modifying the injunction to permit the sale of Superb's vehicles, it analyzed whether there existed irreparable harm and found that there was due to Superb's closure; the court thus found that there was a change of circumstances warranting modification of the Injunction.

> Plaintiffs point to Superb's closure as a "material change" in circumstances that supports modification. Although courts have not expressly ruled on this issue, *courts have deemed closure of a business to be an irreparable harm warranting the granting of a preliminary injunction*. See Femhealth United States Inc. v. Williams, 83 F.4th 551, 557 (6th Cir. 2023) (finding that the district court failed to consider whether the clinic's closure would alter the court's finding that plaintiff would suffer irreparable harm); see also Blossom South, LLC v. Sebelius, No. 13-CV-6452L, 2013 WL 4679275, 2013 U.S. Dist. LEXIS 124687 at *3 (W.D.N.Y. Aug. 30, 2013) (noting that "total destruction of a business has been held to constitute irreparable harm"); [2023 WL 7181675, at *9] (collecting cases finding that business closures constitute an irreparable harm and Superb would experience such harm absent an injunction in their favor) … Given the change in financial circumstances that has occurred—i.e., *Superb's closure*—Plaintiffs' request to sell the Superb vehicles (with the exception of the Isuzu flatbeds and the thirteen (13) vehicles that *belong to third parties*) and hold the funds in escrow for the remainder of these proceedings is *granted*. Plaintiff shall account to the Court as to the sales when made. Plaintiffs shall further file proof of the monies in escrow immediately following the sale of each of the vehicles

See Id. at *6-*7 (emphasis added).

8

That third-party, Team-Mitsubishi Hartford, and Team, have both similarly shut down and have gone out of business. As a result, they have demonstrated the existence of irreparable harm as Superb previously did. See Femhealth United States Inc. v. Williams, 83 F.4th 551, 557 (6th Cir. 2023); see also Blossom South, LLC v. Sebelius, No. 13-CV-6452L, 2013 WL 4679275, 2013 U.S. Dist. LEXIS 124687 at *3 (W.D.N.Y. Aug. 30, 2013).

Because the Appellants previously demonstrated irreparable harm, and satisfied this element when it sought to modify the Injunction for Superb, the Appellants similarly demonstrate the existence of irreparable harm now with respect to Team's application to sell its vehicles.

## POINT II

## APPELLANTS DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS

Appellants easily demonstrate a likelihood of success on the merits because they previously succeeded on the exact same application. See 2024 WL 2079928, at *6-7 (E.D.N.Y. May 8, 2024); see also, e.g., IME Watchdog, Inc. v. Gelardi, No. 22-CIV.-1032 (PKC) (JRC), 2024 WL 866136, at *3 (E.D.N.Y. Feb. 29, 2024) ("Here, the Court has already found that Plaintiff is likely to succeed on the merits … Defendants provide no basis for reevaluating this finding, nor does the Court see any reason to do so. … The Court therefore finds that Plaintiff has demonstrated a likelihood of success on the merits of its contempt motion for the same reasons that it preliminarily found Defendants to be in civil contempt for violating both the Amended Injunction and the March 2023 TRO"); State Farm Mut. Automobile Ins. Co. v. Metro Pain Specialists P.C., No. 21-CV-5523 (MKB), 2023 WL 1801995, at *3 (E.D.N.Y. Feb. 7, 2023) (granting injunctive relief a second time based on prior finding of likelihood of success on the merits).

9

## POINT III

## BALANCE OF HARDSHIPS DECIDEDLY POINT IN APPELLANTS' FAVOR

Where a court previously finds a likelihood of success on the merits, it is unnecessary to weigh the balance of the hardships, which, in any event, would certainly tip in plaintiff's favor. See Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc., No. 22-CIV.-1375GRBLGD, 2022 WL 3045038, at *9 (E.D.N.Y. Aug. 2, 2022).

Further, the Deo Defendants are not harmed by the issuance of a stay, while the Appellants are subject to contempt sanctions if they are not granted relief. See U.S. v. Fox, No. M-18-304(ADS), 1983 WL 1586, at *1 (S.D.N.Y. Feb. 14, 1983) ("Moreover, the respondent is faced with irreparable harm in that without a stay his only means of preserving his appeal is through risk of sanctions for contempt").

## POINT IV

## TEMPORARY DECLARATORY RELIEF IS WARRANTED

Some courts have acknowledged that temporary or preliminary declaratory relief is available to litigants as a provisional remedy. See generally, Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 276 (7th Cir.1992) (Posner, J.) (citing cases in which some courts have found such relief available though others disagree and finding that preliminary declaratory relief is not appealable); Delaughter v. Borden Co., 431 F.2d 1354, 1358 (5th Cir.1970).

Whereas the standard for a temporary restraining Order is more exacting than the standard for temporary declaratory relief, and because the Appellants have demonstrated that all elements to obtain a temporary restraining Order have been met, this Court may also issue temporary declaratory relief to permit Appellants the right to review the lower court's Order.

Thus, a stay pending appeal is warranted such that the appeal does not become rendered moot due to the time-sensitive nature of the Orders appealed from, which require delivery of the injuncted vehicles by 6:00 PM on Friday, May 23, 2025.

## **CONCLUSION**

For the foregoing reasons, the Appellants' motion for a stay pending appeal and expedited briefing schedule should be granted.

Dated: Jamaica, New York
      May 23, 2025                  Respectfully submitted,

                                 **SAGE LEGAL LLC**
                                 *__/s/ Emanuel Kataev, Esq.____*
                                 Emanuel Kataev, Esq.
                                 18211 Jamaica Avenue
                                 Jamaica, NY 11423-2327
                                 (718) 412-2421 (office)
                                 (917) 807-7819 (cellular)
                                 (718) 489-4155 (facsimile)
                                 emanual@sagelegal.com

                                 *Attorneys for Plaintiffs*
                                 *Superb Motors Inc.,*
                                 *Team Auto Sales LLC, and*
                                 *Robert Anthony Urrutia*

**VIA ECF**
All counsel of record

11

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HWY AUTO LLC, NORTHSHORE MOTOR
LEASING, LLC, BRIAN CHABRIER, *individually and
derivatively as a member of* NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, *individually
and derivatively as a member of* 189 SUNRISE HWY
AUTO, LLC, JORY BARON, 1581 HYLAN BLVD
AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591
HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD
AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519
HYLAN BLVD AUTO LLC, 76 FISK STREET
REALTY LLC, 446 ROUTE 23 AUTO LLC and
ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 25-1330**

**DECLARATION IN SUPPORT**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY
THOMASSON, DWIGHT BLANKENSHIP, MARC
MERCKLING, MICHAEL LAURIE, THOMAS
JONES, CPA, CAR BUYERS NYC INC., GOLD
COAST CARS OF SYOSSET LLC, GOLD COAST
CARS OF SUNRISE LLC, GOLD COAST MOTORS
AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS
CORP., DLA CAPITAL PARTNERS INC., JONES,
LITTLE & CO., CPA'S LLP, FLUSHING BANK,
LIBERTAS FUNDING LLC, and J.P. MORGAN
CHASE BANK, N.A.,

Defendants.

----------------------------------------------------------------X

Emanuel Kataev, Esq., declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury,

that the following is true and correct:

1.      I am admitted to practice before this Court and am a member of Sage Legal LLC, who are the attorneys for the Plaintiff-Appellants Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs" or "Appellants") in this case.

2.      As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of the file maintained by this office.

3.      A true and accurate copy of the docket sheet as of 05/23/2025 16:33:59 is annexed hereto as **Exhibit "A."**

4.      A true and accurate copy of the current operative complaint, ECF Docket Entry 65, is annexed hereto as **Exhibit "B."**

5.      A true and accurate copy of the September 29, 2023 injunction, ECF Docket Entry 55, is annexed hereto as **Exhibit "C."**

6.      A true and accurate copy of the January 18, 2024 Order modifying the preliminary injunction, ECF Docket Entry 134, is annexed hereto as **Exhibit "D."**

7.      A true and accurate copy of the May 8, 2024 Order modifying the preliminary injunction, ECF Docket Entry 172, is annexed hereto as **Exhibit "E."**

8.      A true and accurate copy of Appellants' April 29, 2025 Order to show cause, ECF Docket Entries 256-258, are annexed hereto as **Exhibit "F."**

9.      A true and accurate copy of the district court's May 9, 2025 Order on that application is annexed hereto as **Exhibit "G."**

10.     A true and accurate copy of the Appellants' May 20, 2025 Order to show cause for reconsideration, ECF Docket Entries 271-273, are annexed hereto as **Exhibit "H."**

11.     A true and accurate copy of the district court's May 21, 2025 Order on that application is annexed hereto as **Exhibit "I."**

2

12.     A true and accurate copy of the Appellants' May 22, 2025 Order to show cause for reconsideration, ECF Docket Entries 280-282, are annexed hereto as **Exhibit "J."**

13.     A true and accurate copy of the district court's May 23, 2025 Order on that application is annexed hereto as **Exhibit "K."**

14.     A true and accurate copy of the district court's decision granting in part and denying in part the Defendants' motion to dismiss, ECF Docket Entry 230, is annexed hereto as **Exhibit "L."**

I declare under penalty of perjury that the foregoing is true and correct.   Executed on May 23, 2025.

_/s/ Emanuel Kataev, Esq._____
Emanuel Kataev, Esq.

3

**2:23-cv-06188-JMW** Superb Motors Inc. et al v. Deo et al
James M. Wicks, presiding
**Date filed:** 08/16/2023
**Date of last filing:** 05/23/2025

# History

| Doc. No. | Dates | Description |
|---|---|---|
| | *Filed & Entered:*      08/17/2023 | Filing Fee Received |
| | *Docket Text:* FILING FEE: $ 402, receipt number ANYEDC-16999229 (LJ) | |
| | *Filed & Entered:*      08/17/2023 | Incorrect Case/Document/Entry Information. |
| | *Docket Text:* Incorrect Case/Document Entry Information. Corrected defendants Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC and Gold Coast Motors of Smithtown LLC on the docket to conform to the Complaint. Deleted Document Entry No. 1 (Complaint) and re-entered as against all Defendants. (LJ) | |
| | *Filed & Entered:*      08/17/2023 | Case Assigned/Reassigned |
| | *Docket Text:* Case Assigned to Judge Diane Gujarati and Magistrate Judge Steven Tiscione. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (LJ) | |
| | *Filed & Entered:*      08/17/2023 | Quality Control Check - Summons |
| | *Docket Text:* Your proposed summons was not issued for the following reason: **The full case caption must appear on the summons.**<br><br>Please correct and resubmit using the event Proposed Summons/Civil Cover Sheet. (LJ) | |
| 1 | *Filed & Entered:*      08/17/2023 | Complaint |
| | *Docket Text:* COMPLAINT against All Defendants Was the Disclosure Statement on Civil Cover Sheet completed -Yes,, filed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Brian Chabrier, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. (LJ) | |
| 2 | *Filed & Entered:*      08/17/2023 | Proposed Summons/Civil Cover Sheet |
| | *Docket Text:* Civil Cover Sheet.. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | |
| 3 | *Filed & Entered:*      08/17/2023 | Proposed Summons/Civil Cover Sheet |
| | *Docket Text:* Proposed Summons. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | |

| 4 | Filed & Entered: | 08/17/2023 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Jamie Scott Felsen on behalf of Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (aty to be noticed) (Felsen, Jamie)

| 5 | Filed & Entered: | 08/17/2023 | Quality Control Check - Attorney Case Opening |
|---|---|---|---|

*Docket Text:* This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made. (LJ)

| 6 | Filed & Entered: | 08/17/2023 | Clerks Notice of Rule 73 |
|---|---|---|---|

*Docket Text:* In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **Do NOT return or file the** consent <u>unless all parties have signed the</u> **consent.** (LJ)

| 7 | Filed & Entered: | 08/17/2023 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Jeffrey C. Ruderman on behalf of 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (aty to be noticed) (Ruderman, Jeffrey)

| 8 | Filed & Entered: | 08/18/2023 | Proposed Summons/Civil Cover Sheet |
|---|---|---|---|

*Docket Text:* Proposed Summons. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| 9 | Filed & Entered:<br>Terminated: | 08/20/2023<br>08/25/2023 | Motion for TRO |
|---|---|---|---|

*Docket Text:* Emergency MOTION for Temporary Restraining Order , Emergency MOTION for Preliminary Injunction , Emergency MOTION for Permanent Injunction by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 10 | Filed & Entered: | 08/20/2023 | Memorandum in Support |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 11 | Filed & Entered: | 08/20/2023 | Affidavit in Support of Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Cross-Purchase Agreement dated December 1, 2022, # (2) Exhibit B - Bounced Check from Deo, # (3) Exhibit C - Screenshot of Funds on Hold from Deo, # (4) Exhibit D - Screenshot of Deo's Stolen Funds Taken From Deo, # (5) Exhibit E - Proof of Wires Sent by Deo to Urrutia, # (6) Exhibit F - Shareholders' Agreement Executed by Deo, # (7) Exhibit G - Indemnity Agreement for Northshore Signed by Deo, # (8) Exhibit H - Indemnity Agreement for

Sunrise Signed by Deo, # (9) Exhibit I - Forged Instrument Signed by Deo for Flushing Bank account for Superb with Statements from Flushing Bank, # (10) Exhibit J - Forged Instrument Signed by Deo for NESNA Credit, # (11) Exhibit K - Signature Cards for Superb's Bank Account, # (12) Exhibit L - Cash Reconciliations for April May & June 2023 with Cash Receipts, # (13) Exhibit M - Correspondence from Jones with False Accounting Entries, # (14) Exhibit N - Correspondence with NMAC Regarding Deo's Fraud, # (15) Exhibit O - List of Missing Vehicles & Dealer Plates, # (16) Exhibit P - Copies of Unauthorized Checks Signed by Deo with Summary, # (17) Exhibit Q - List of Five Additional Vehicles Stolen by Deo, # (18) Exhibit R - Letter Demand to Deo to Return Vehicles, etc., # (19) Exhibit S - Second Letter Demand to Deo to Return Vehicles & Cooperate with NMAC and Next Gear) (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 12 | *Filed & Entered:* | 08/20/2023 | Affidavit in Support of Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Thomasson August 9, 2023 Letter (FRE 408 Material Redacted), # (2) Exhibit B - Thomasson August 11, 2023 Letter, # (3) Exhibit C - Thomasson August 15, 2023 Letter) (Kataev, Emanuel)

| | *Filed & Entered:* | 08/21/2023 | Order of Recusal |
|---|---|---|---|

*Docket Text:* ORDER OF RECUSAL. Judge Diane Gujarati recused. Case reassigned to Judge Orelia E. Merchant for all further proceedings. Type of Recusal: party.Ordered by Judge Diane Gujarati on 8/21/2023. (BBM)

| 13 | *Filed & Entered:* | 08/21/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *re the proposed Order to Show Cause* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Exhibit Nassau Supreme Court Order in a related action) (Thomasson, Harry)

| 14 | *Filed & Entered:* | 08/21/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *response in opposition to Defendants' letter request for extension of time* by Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - Letter from NMAC dated August 9, 2023, # (2) Exhibit B - Letter from NMAC dated August 15, 2023) (Kataev, Emanuel)

| | *Filed & Entered:* | 08/24/2023 | Quality Control Check - Summons |
|---|---|---|---|

*Docket Text:* Your proposed summons was not issued for one of the following reasons: **If multiple defendants, there must me a rider attached to the summons with the name and addresses of all defendants included.,**

Please correct and resubmit using Proposed Summons/Civil Cover Sheet. (IH)

| 15 | *Filed & Entered:* | 08/25/2023 | Order on Motion for TRO |
|---|---|---|---|

*Docket Text:* ORDER: For the reasons stated in the attached ruling, Superb Plaintiffs' request for a TRO is GRANTED in part and DENIED in part.
The TRO is GRANTED in part only to the extent that Defendants are enjoined from "disposing of any automobiles in" in their "possession belonging to Superb" or the Superb Plaintiffs, as agreed to by Attorney Thomasson in his letter. (See ECF [13]).

For clarity's sake this TRO binds only defendants: Anthony Deo, Sara Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

All other requests for injunctive relief in the TRO are **DENIED**.

The deadline for opposition to preliminary injunction motion is September 13, 2023; the deadline for reply, if any, is due September 20, 2023; a hearing on the preliminary injunction is set for September 27, 2023.The [9] motions for preliminary and permanent injunctions are taken under advisement. Ordered by Judge Orelia E. Merchant on 8/25/2023. (CS)

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 08/26/2023 | Order |
| | *Docket Text:* ORDER re [15] Order on Motion for TRO: Counsel for Superb Plaintiffs is hereby ORDERED to serve upon all defendants a copy of this order to their last known address and email address. See [12] Kataev Decl. ¶ 7. Counsel shall submit a report on docket detailing the status of service and all attempts and/or acknowledgements of service no later than 8/27/2023 by 5:00 PM EST. Ordered by Judge Orelia E. Merchant on 8/26/2023. (CS) | | |
| 16 | *Filed & Entered:*<br>*Terminated:* | 08/26/2023<br>08/27/2023 | Motion for Reconsideration |
| | *Docket Text:* Letter MOTION for Reconsideration re [15] Order on Motion for TRO,,,,, Order on Motion for Preliminary Injunction,,,,, Order on Motion for Permanent Injunction,,,, by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 17 | *Filed & Entered:* | 08/26/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [16] Letter MOTION for Reconsideration re [15] Order on Motion for TRO,,,,, Order on Motion for Preliminary Injunction,,,,, Order on Motion for Permanent Injunction,,,, filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 18 | *Filed & Entered:* | 08/26/2023 | 1 - Sealed Document CV |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [16] Letter MOTION for Reconsideration re [15] Order on Motion for TRO,,,,, Order on Motion for Preliminary Injunction,,,,, Order on Motion for Permanent Injunction,,,, *filed under seal* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Confidential Agreement with NMAC, # (2) Exhibit B - Termination Letter from NMAC) (Kataev, Emanuel) | | |
| 19 | *Filed & Entered:* | 08/26/2023 | Declaration |
| | *Docket Text:* DECLARATION *of Emanuel Kataev, Esq. as to Service in accordance with this Court's Order dated August 26, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 08/27/2023 | Order on Motion for Reconsideration |
| | *Docket Text:* ORDER denying [16] Motion for Reconsideration: "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). The purpose of this strict standard is to "ensure the finality of decisions and to prevent the practice of a losing party [from] examining a decision and then plugging the gaps of a lost motion with additional matters." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003).<br><br>Superb Plaintiffs proffer that "[r]econsideration may also be granted to correct clear error, prevent manifest injustice, or review the court's decision in light of the availability of new evidence." ECF [16] at 2 (quoting Mendez-Caton v. Caribbean Fam. Health Ctr., 340 F.R.D. 60, 74 (E.D.N.Y. 2022)) (citation omitted) (emphasis in letter). As to the latter point, Superb Plaintiffs fail to show here that either of the pieces of evidence attached to their motion for reconsideration were somehow unavailable prior to its initial motion for a TRO such that the evidence can be | | |

considered newly available evidence. This itself warrants denial. Indeed, the NMAC letter attached to the reconsideration letter, see ECF [18-2], is dated August 18, 2023, two days before the TRO motion was filed; Superb Plaintiffs neglected to attach this evidence in their follow up letter, ECF [14], filed at 4:40 PM on August 21, 2023 (the day Superb Plaintiffs state they received the August 18 NMAC letter), which attached two other NMAC letters. Further, Superb Plaintiffs did not offer it to the Court as newly available evidence in the days leading up to the TRO decision. Equally, the confidential operating agreement attached to the letter is dated October 29, 2021, long before this dispute began.

Even if the either piece of evidence was properly before the Court, neither provide any reason to alter the Court's prior order. The August 18 NMAC letter (the only piece of evidence relevant to the Court's consideration of imminent and irreparable harm) merely confirms the Court's prior conclusion: that the Nissan floor plan financers will terminate their contract with Superb and require payment of any outstanding amounts at some point in the future, not imminently; NMAC's letter states that termination is "effective September 18, 2023" and it is at that point which any outstanding monies are due (though whether Superb has any outstanding or will pay it is not clear as it reports already repaying $2M to NMAC). ECF 18-2 at 1. The NMAC letter further provides that NMAC's reason for terminating the contract was because NMAC "determined" that termination was in its "best interests." Id. Despite Superb Plaintiffs' assurances that granting the TRO would "avert" these risks, it is entirely unclear and unsupported whether, even if the Court granted Superb Plaintiff's requested injunctive relief, that doing so would cause NMAC would change its position or cause them to reenter or remain in the contract.

Similarly, Superb Plaintiffs discussion about another floor plan financer, Next Gear, rehashes the same arguments about imminent harm but substitutes a new player. Superb Plaintiffs again raise Deo's alleged "abscotion" of the subject vehicles as triggering a default and, in that scenario, Superb's putative inability to pay outstanding balances owed to Next Gear given a lack of operating capital and, consequently, the potential shut down of Superb's business. The Court has already addressed such similar concerns in its TRO and sees no ground to relitigate this point. "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257. Moreover, Superb Plaintiffs provide no further evidence beyond what was included in their initial submission that any such harm is actually imminent.

However, in the interest of justice, the Court advances the preliminary injunction motion briefing and hearing schedule as follows: Opposition briefing is **due by 9/11/2023**; reply, if any, is **due by 9/13/2023**. The hearing is **RESET to 9/14/2023 at 3:30 PM**. Superb Plaintiffs' Counsel shall submit a report on the docket detailing the status of service and all attempts and/or acknowledgements of service of this order on the parties no later than **8/27/2023 by 5:00 PM EST**. Ordered by Judge Orelia E. Merchant on 8/27/2023. (CS)

| 20 | Filed & Entered: | 08/27/2023 | Letter |
|----|------------------|------------|--------|

Docket Text: Letter *in response to Plaintiffs' application for reconsideration* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| 21 | Filed & Entered: | 08/27/2023 | Letter |
|----|------------------|------------|--------|

Docket Text: Letter *Regarding status of service of August 27, 2023 Order* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Felsen, Jamie)

| 22 | Filed & Entered: | 08/28/2023 | Declaration |
|----|------------------|------------|-------------|

Docket Text: DECLARATION *of Emanuel Kataev, Esq. as to service in accordance with this Court's Order dated August 27, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 09/05/2023 | Scheduling Order |

*Docket Text:* **SCHEDULING ORDER**: A telephonic preliminary injunction hearing is set for **September 14, 2023**, at **11:00 AM** before Judge Orelia E. Merchant. The parties are directed to call the toll-free number **646-828-7666** and follow these steps: (1) Enter the meeting ID number: 161 714 0966 and then press #. (2) Press # again. (3) Enter the passcode: 563736. The parties shall dial in five (5) minutes before the conference. Ordered by Judge Orelia E. Merchant on 9/5/2023. (TPL)

| | | | |
|---|---|---|---|
| [23](#) | *Filed & Entered:* | 09/06/2023 | Motion for Hearing |
| | *Terminated:* | 09/07/2023 | |

*Docket Text:* Letter MOTION for Hearing re Scheduling Order, *to convert from telephonic to in-person hearing to permit live testimony* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 09/07/2023 | Order on Motion for Hearing |

*Docket Text:* ORDER RE: [23]: The Court hereby clarifies that the hearing scheduled for 9/14/2023 is to address the parties' briefing on the preliminary injunction motion (*see* Order dated 8/27/2023) and the issues raised in the various letters to the Court. *Cf. Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) ("There is, however, a difference between an evidentiary hearing and a hearing at which a subject is allowed to present oral argument.") The Court reserves decision on holding an evidentiary hearing on the preliminary injunction motion at this time.

Separately, plaintiffs' counsel has failed twice to submit a proper summons to the Clerk (*see* Clerk's docket entry at 8/17 and 8/24), and defendants assert that they have not yet been properly served. Plaintiffs' counsel shall make all attempts to properly serve the defendants and submit a status report to the Court as to the same on 9/13/2023.

Lastly, all counsel participating in the 9/14/2023 conference must enter a notice of appearance on the docket prior to the hearing. *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH), 2016 WL 777906, at *6 (D. Conn. Feb. 29, 2016) ("[I]t is a well-settled principle of law in this Circuit that merely appearing before the court does not waive the defense of insufficient service of process.") (citing *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).

Superb Plaintiffs' Counsel shall submit a report on the docket detailing the status of service and all attempts and/or acknowledgements of service of this order on the parties by September 8, 2023. Ordered by Judge Orelia E. Merchant on 9/7/2023. (CS)

| | | | |
|---|---|---|---|
| [24](#) | *Filed & Entered:* | 09/07/2023 | Letter |

*Docket Text:* Letter *in Response to Second Request for Reconsideration* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| | | | |
|---|---|---|---|
| [25](#) | *Filed & Entered:* | 09/07/2023 | Proposed Summons/Civil Cover Sheet |

*Docket Text:* Proposed Summons. by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 09/08/2023 | Quality Control Check - Summons |

*Docket Text:* Your proposed summons was not issued for the following reason: **The full case caption must appear on the summons. Granted that the full case caption cannot fit in the space provided, Counsel is directed to put the full case caption on the Rider.**

| | | | |
|---|---|---|---|
| | Please correct and resubmit using Proposed Summons/Civil Cover Sheet. (EG) | | |
| 26 | *Filed & Entered:* | 09/08/2023 | Proposed Summons/Civil Cover Sheet |
| | *Docket Text:* Proposed Summons. by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| 27 | *Filed & Entered:* | 09/08/2023 | Declaration |
| | *Docket Text:* DECLARATION *of Service in accordance with this Court's Order dated September 7, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| 28 | *Filed & Entered:* | 09/11/2023 | Summons Issued |
| | *Docket Text:* Summons Issued as to Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Flushing Bank, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Thomas Jones, CPA, Jones, Little & Co., CPA's LLP, Michael Laurie, Libertas Funding LLC, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (EG) | | |
| 29 | *Filed & Entered:* | 09/11/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Harry R. Thomasson, Jr on behalf of Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (aty to be noticed) (Thomasson, Harry) | | |
| 30 | *Filed & Entered:* | 09/11/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction *Declaration of Anthony Deo* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Harry Thomasson in further opposition to OSC, # (2) Exhibit A, Deo leases of Syosset and Amityville properties, # (3) Exhibit B, Aaronson email approval of Deo as owner on tax returns, # (4) Exhibit C, Superb Motors 2022 Financial Statement, # (5) Exhibit D, Deo audit inquiry to Superb CFO, # (6) Exhibit E, Superb mid-year 2023 P. & L. Statement, # (7) Exhibit F, NMAC negative review of 2022 Superb Financial Statement, # (8) Exhibit G, Plaintiffs' car list as marked up; Ex. H not uploadable, # (9) Exhibit I, August communications regarding direct contact between parties) (Thomasson, Harry) | | |
| 31 | *Filed & Entered:* | 09/11/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction *Missing Exhibit H DMV Regulations Pertaining to NY Auto Dealerships* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Thomasson, Harry) | | |
| 32 | *Filed & Entered:* | 09/12/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Peter Seiden on behalf of Jones, Little & Co., CPA's LLP (aty to be noticed) (Seiden, Peter) | | |

| 33 | Filed & Entered: | 09/12/2023 | Notice of Appearance |
|---|---|---|---|
| | *Docket Text:* NOTICE of Appearance by John Anthony Lentinello on behalf of Jones, Little & Co., CPA's LLP (aty to be noticed) (Lentinello, John) | | |
| 34 | Filed & Entered: | 09/12/2023 | Letter |
| | *Docket Text:* Letter *regarding status of service to assist the Court ahead of this week's hearing* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| 35 | Filed & Entered: | 09/13/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Thomas Baylis on behalf of Flushing Bank (aty to be noticed) (Baylis, Thomas) (Main Document 35 replaced on 9/13/2023) (JT). | | |
| 36 | Filed & Entered: | 09/13/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Ariel E. Ronneburger on behalf of Flushing Bank (aty to be noticed) (Ronneburger, Ariel) | | |
| 37 | Filed & Entered: | 09/13/2023 | Letter |
| | *Docket Text:* Letter *response in opposition to Defendants' objections regarding service* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| 38 | Filed & Entered: | 09/13/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction *of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Next Gear Floor Plan Payoff Demand 9/15/2023, # (2) Exhibit B - Text Messages Exchanged Between Urrutia & Deo, # (3) Exhibit C - February 2023 Email Correspondence, # (4) Exhibit D - Shareholder Agreement Excerpts, # (5) Exhibit E - Stock Purchase Agreement Excerpts, # (6) Exhibit F - March 2023 Email Exchanges, # (7) Exhibit G - Redacted July 2023 Superb Statement, # (8) Exhibit H - July & August 2023 Email Exchange with NMAC, # (9) Exhibit I - February 2023 Email Exchange with Deo, # (10) Exhibit J - Titles to Superb's Vehicles, # (11) Exhibit K - Superb June 2023 YTD Financial Statement, # (12) Exhibit L - Gold Coast Motors Automotive Group Documents) (Kataev, Emanuel) | | |
| 39 | Filed & Entered: | 09/13/2023 | Reply in Support |
| | *Docket Text:* REPLY in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | Filed & Entered: | 09/14/2023 | Scheduling Order |
| | *Docket Text:* SCHEDULING ORDER: A Telephone Conference is scheduled for **September 14, 2023 at 3:00 PM** before Magistrate Judge James M. Wicks. The parties should dial 1-866-434-5269 and enter access code 9025281# at the prompt. So Ordered by Magistrate Judge James M. Wicks on 9/14/2023. (DF) | | |
| | Filed & Entered: | 09/14/2023 | Motion Hearing |
| | *Docket Text:* **Minute Entry** for proceedings held before Judge Orelia E. Merchant: Preliminary Injunction Hearing held on September 14, 2023. Appearances made by: plaintiffs' attorneys Emanuel Kataev and Jeffrey C. Ruderman and defendants' attorneys Harry R. Thomasson, Peter Seiden, and Ariel E. Ronneburger. Case called. Conference held. At the hearing, defense counsel for responding defendants, Attorney Thomasson, conceded that his clients had received notice of the application for preliminary injunctive relief (the "Application") through him and this notice was | | |

sufficient to proceed to argument on the merits of the application. Oral arguments on the Application were presented by Attorneys Kataev and Thomasson. Counsel for the other parties had an opportunity to be heard. The Court took the Application under advisement and reserved decision on an evidentiary hearing. The parties were also separately referred to Magistrate Judge Wicks to discuss potential settlement. The parties shall file a joint status report on the docket by 5:00 PM tomorrow, September 15, 2023, indicating their progress in that regard, whether the Application remains a live issue and, if so, the specific relief requested. If the parties report a settlement in principle, they should indicate whether they seek more time to draft a stipulation or related documents. (Court Reporter Charleane Heading.) (TPL)

| 40 | *Filed & Entered:* | 09/14/2023 | Affidavit in Support of Motion |
|----|----|----|----|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 41 | *Filed & Entered:* | 09/14/2023 | Telephone Conference |
|----|----|----|----|

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR TELEPHONE CONFERENCE. Counsel for Plaintiff: Jamie Scott Felsen, Emanuel Kataev. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Harry R. Thomasson, Jr.. Counsel for Defendants (Jones, Little & Co., CPA's LLP): Peter Seiden. Telephone Conference held on 9/14/2023 at 3:00 PM. Judge Merchant has directed that parties appear before the undersigned for a settlement conference. The parties advised the Court that the conference would only involve issues related to the Temporary Restraining Order ("TRO") portion of the motion for preliminary injunction (ECF No. [9]). Accordingly, parties are directed to submit concise settlement statements *ex parte* to the Chamber's email by **this evening**. These statements should contain: A recitation of each party's positions as to the cars, A history of settlement discussions, Perceived impediments to settlement, Realistic settlement positions and how they can be resolved, and Identity of client or client representatives with full authority to appear at the conference. A Settlement Conference has been scheduled for **September 15, 2023 at 10:30 AM** at the U.S. District Court, Eastern District of New York, 100 Federal Plaza, Courtroom 1020, Central Islip, New York. Parties shall comply with Judge Wicks Individual Practice Rules regarding Settlement Conferences (Rules §5). As discussed on the record, Jones, Little & Co., CPA's LLP as well as Flushing Bank and each of their respective counsel are excused from attending this conference. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #3:05-3:15 (Telephone).) (DF)

| 42 | *Filed & Entered:* | 09/14/2023 | Letter |
|----|----|----|----|

*Docket Text:* Letter *to Hon. James W. Wicks, U.S.M.J. re: 9/15/23 10:30 AM settlement conference* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (Ruderman, Jeffrey)

| 43 | *Filed & Entered:* | 09/15/2023 | Declaration |
|----|----|----|----|

*Docket Text:* DECLARATION re [40] Affidavit in Support of Motion, *Declaration in Opposition to Emergency Motion* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc

| | | | |
|---|---|---|---|
| | Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Declaration in Support, # (2) Exhibit Car List as Marked Up, # (3) Exhibit Proof of Plaintiffs' Knowledge of Dealerships, # (4) Exhibit Proof of Plaintiffs' Knowledge of Bank Account) (Thomasson, Harry) | | |
| [44](#) | *Filed & Entered:* | 09/15/2023 | Transcript |
| | *Docket Text:* NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 09/15/2023, before Mag. Judge James M. Wicks. Transcriber Transcriptions Plus II, Inc., Telephone number 917-817-2825. Email address: RL.Transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/6/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/14/2023.(CG) | | |
| [45](#) | *Filed & Entered:* | 09/15/2023 | Settlement Conference |
| | *Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR SETTLEMENT CONFERENCE. Counsel for Plaintiff: Emanuel Kataev, Esq. appearing with Robert Anthony Urrutia and Bruce Novicky. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Harry R. Thomasson, Jr., Esq. appearing with Anthony Deo. Settlement Conference held on 9/15/2023 at 10:30 AM with counsel and their respective parties to attempt to resolve by stipulation a portion of the Temporary Restraining Order ("TRO") relating to the return of cars from defendants to plaintiffs. The parties stipulated on the record to the following relief on the TRO which supplements, and does not in any way impact, prior orders and directives issued by Judge Merchant in connection with the TRO: 1. Defendant will release thirty (30) vehicles to plaintiffs to be kept at plaintiffs' lot. The 30 vehicles consist of the following: two (2) Isuzu flatbed trucks; and twenty-eight (28) cars listed on the list at DE 30-8 ("List") indicated with "YES", with the exception of the 2023 Chevy Suburban with VIN ending "8675". These vehicles are to be returned to Plaintiffs' lot by today, **September 15, 2023**. Parties are to meet and confer as to the method in which the vehicles shall be returned. 2. Plaintiffs will not sell or dispose any of the 30 vehicles during the period of the TRO. 3. Defendants will retain and not sell or dispose of the following vehicles on the List: 2023 Suburban ending in 8675; 2020 Mercedes-Benz ending in 4078; 2019 Land Rover Range Rover ending in 3297; 2017 Rolls Royce ending in 2728; 2016 Audi A6 ending in 9650; 2016 Audi Q5 ending in 0272. 4. This stipulated portion of the TRO remains in effect until the motion for a preliminary injunction is determined by Judge Merchant. 5. Defendants to provide proof of insurance to Plaintiffs for the two (2) "DEMO" cars. 6. Plaintiffs agree to turn over the two dealer plates used by Eugene and Landi in their possession. However, if the plates are *not* in their possession, Plaintiffs are to file an affidavit by the end of the day **today** stating such. 7. All other rights are reserved by the parties. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #11:31-11:41.) (DF) | | |
| [46](#) | *Filed & Entered:*<br>*Terminated:* | 09/17/2023<br>09/29/2023 | Motion for Leave to Electronically File Document under Seal |
| | *Docket Text:* Notice of MOTION for Leave to Electronically File Document under Seal *ECF Docket Entry 18-1* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| [47](#) | *Filed & Entered:* | 09/17/2023 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [46] Notice of MOTION for Leave to Electronically File Document under Seal *ECF Docket Entry 18-1* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |

| 48 | *Filed & Entered:* | 09/17/2023 | Motion for Extension of Time to File Document |
|---|---|---|---|
| | *Terminated:* | 09/19/2023 | |

*Docket Text:* Letter MOTION for Extension of Time to File *motion for leave to electronically file document under seal as required by this Court's Order dated September 14, 2023, nunc pro tunc, pursuant to Fed. R. Civ. P. 6(b)(1)(B)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | *Filed & Entered:* | 09/19/2023 | Order on Motion for Extension of Time to File |
|---|---|---|---|

*Docket Text:* ORDER granting [48] Motion for Extension of Time to File, *nunc pro tunc.* Ordered by Judge Orelia E. Merchant on 9/18/2023. (GM)

| 49 | *Filed & Entered:* | 09/19/2023 | Summons Returned Executed |
|---|---|---|---|

*Docket Text:* SUMMONS Returned Executed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Brian Chabrier, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. Flushing Bank served on 9/18/2022, answer due 10/9/2022. (Ruderman, Jeffrey)

| 50 | *Filed & Entered:* | 09/20/2023 | Motion to Strike |
|---|---|---|---|
| | *Terminated:* | 09/25/2023 | |

*Docket Text:* Letter MOTION to Strike [43] Declaration,, , Letter MOTION for Leave to File Document *in response to improperly filed sur-reply declaration in the alternative* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Declaration of Robert Anthony Urruta, # (2) Exhibit A - email exchange with Deo, # (3) Exhibit B - email exchange with Flushing Bank, # (4) Exhibit C - email exchange with Flushing Bank, # (5) Exhibit D - copy of operating agreement) (Kataev, Emanuel)

| | *Filed & Entered:* | 09/25/2023 | Order on Motion to Strike |
|---|---|---|---|

*Docket Text:* ORDER denying [50] Letter MOTION to Strike [43] Declaration. The Court will consider both Defendants 9/15/2023 Declaration [43] and Plaintiffs 9/20/2023 Sur-Reply Declaration [50]. Ordered by Judge Orelia E. Merchant on 9/25/2023. (GM)

| 51 | *Filed & Entered:* | 09/26/2023 | Waiver of Service Executed |
|---|---|---|---|

*Docket Text:* WAIVER OF SERVICE Returned Executed by UEA Premier Motors Corp., DLA Capital Partners Inc., Dwight Blankenship, Gold Coast Cars of Syosset LLC, Anthony Deo, Gold Coast Motors of Roslyn LLC, Car Buyers NYC Inc., Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Harry Thomasson, Gold Coast Motors of Smithtown LLC, Flushing Bank, Marc Merckling, Michael Laurie, Gold Coast Motors of LIC LLC, Sarah Deo. UEA Premier Motors Corp. waiver sent on 9/26/2023, answer due 11/27/2023; Dwight Blankenship waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Cars of Syosset LLC waiver sent on 9/26/2023, answer due 11/27/2023; Anthony Deo waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Motors of Roslyn LLC waiver sent on 9/26/2023, answer due 11/27/2023; Car Buyers NYC Inc. waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Cars of Sunrise LLC waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Motors Automotive Group LLC waiver sent on 9/26/2023, answer due 11/27/2023; Harry Thomasson waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Motors of Smithtown LLC waiver sent on 9/26/2023, answer due 11/27/2023; Marc Merckling waiver sent on 9/26/2023, answer due 11/27/2023; Michael Laurie waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Motors of LIC LLC waiver sent on 9/26/2023, answer due 11/27/2023; Sarah Deo waiver sent on 9/26/2023, answer due 11/27/2023. (Thomasson, Harry)

| 52 | *Filed & Entered:* | 09/26/2023 | Motion for Pre Motion Conference |
|---|---|---|---|
| | *Terminated:* | 10/11/2023 | |

| | | | |
|---|---|---|---|
| | *Docket Text:* Letter MOTION for pre motion conference by Flushing Bank. (Baylis, Thomas) | | |
| [53](#) | *Filed & Entered:* | 09/26/2023 | Waiver of Service Executed |
| | *Docket Text:* WAIVER OF SERVICE Returned Executed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. Thomas Jones, CPA waiver sent on 9/19/2023, answer due 11/20/2023; Jones, Little & Co., CPA's LLP waiver sent on 9/19/2023, answer due 11/20/2023. (Seiden, Peter) | | |
| | *Filed & Entered:* | 09/27/2023 | Order Reassigning Case |
| | *Docket Text:* ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge James M. Wicks for all further proceedings. Magistrate Judge Steven Tiscione no longer assigned to case Please download and review the Individual Practices of the assigned Judges, located on our [website](#). Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.Ordered by Chief Judge Margo K. Brodie on 9/27/2023. (AF) | | |
| [54](#) | *Filed & Entered:* | 09/28/2023 | Scheduling Order |
| | *Docket Text:* INITIAL CONFERENCE SCHEDULING ORDER: An Initial Conference via Zoom will be held **October 17, 2023 at 12:30 PM** before Magistrate Judge James M. Wicks. The Court will email the Zoom invitation closer to the conference date. All counsel must attend. Counsel are directed to complete the attached Proposed 26(f) Scheduling Order and electronically file same with the Court no later than **October 10, 2023**. Should the parties wish to adopt a plan for discovery different from the structure in the discovery worksheet, they may do so only if they file a letter explaining why such a plan is appropriate in this case. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625.THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. So Ordered by Magistrate Judge James M. Wicks on 9/28/2023. (Attachments: # (1) Proposed Rule 26(f) Scheduling Order, # (2) JMW Individual Practice Rules) (DF) | | |
| | *Filed & Entered:* | 09/29/2023 | Order on Motion for Leave to Electronically File Document under Seal |
| | *Docket Text:* ORDER GRANTING in part and DENYING in part [46] Notice of MOTION for Leave to Electronically File Document under Seal ECF Docket Entry 18-1 without prejudice.<br><br>Plaintiff has submitted a 77-page exhibit containing multiple contracts and schedules between Plaintiff and its financier, NMAC, under seal maintaining that they all must be kept under seal.<br><br>However, this Circuit demands that sealing of judicial documents, such as this one, be narrowly tailored. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006). A sealing request is "narrowly tailored" when it seeks to seal *only* that information that needs to be sealed in order to preserve higher values. *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd.*, 2021 U.S. Dist. LEXIS 151075, 2021 WL 3540221, at *4 (S.D.N.Y. Aug. 11, 2021). Portions of documents "with no apparent relation" to sensitive material generally should not be redacted or sealed. *Id.* (denying motion to seal where proposed redactions were "extensive" and covered non-commercially sensitive information). *Robinson v. De Niro*, 2022 U.S. Dist. LEXIS 124140, at *4 (S.D.N.Y. July 12, 2022).<br><br>Plaintiff maintains broadly that the Exhibit contains trade secrets, confidential business or commercial information, and is subject to a confidentiality agreement signed with NMAC. *See* [47] Superbs Memorandum of Law (describing the material to be sealed as "the information concerning [Superb's] business," "business and financial information," and the "financial information and confidential agreement"). *See* ECF 18-1 at 63-65 (NMAC Confidentiality Agreement). | | |

As an initial matter, the general fact that commercial information may be important to the parties does not in itself automatically warrant sealing. *See In re Lifetrade Litig.*, 2022 WL 974448, at *1 (S.D.N.Y. Mar. 31, 2022) (granting and denying sealing where "[p]laintiffs main concern is that the documents have been designated as confidential between them and S&P and may be commercially sensitive to the parties.").

Equally, the mere presence of a confidentiality agreement is not determinative of higher values requiring sealing of an entire document. *See Alexandria Real Estate Equities, Inc. v. Fair*, 2011 U.S. Dist. LEXIS 138455, 2011 WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011) ( "[T]he mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access.").

Upon the Court's review, much of the information contained in the exhibit is not in itself business or financial information that is beyond the First Amendment's reach. For example, the exhibit contains agreements covering Superb's promises to carry insurance, or use certain invoice presentment and payment systems, and many pages of boilerplate contractual definitions and language. ECF 18-1 at 66-75. Superb has not detailed anywhere in its submissions how such information serves "higher values" such that it should be sealed from the public's eye. Accordingly, Superb fails to carry the burden of narrow tailoring. Lastly, the Court notes that by Superb's own admission, its contracts and relationship with NMAC were ostensibly canceled on 9/18/2023. ECF 18-2; 9/15/23 Hearing Transcript 38:23. It is entirely unclear, then, the enforceability of such contracts, notwithstanding any language in the contracts to the contrary.

Nonetheless, the Court finds that at least certain information implicated by the Confidentiality Agreement should be redacted. Namely the "interest rates, loan amounts, maturity and curtailments, eligible vehicles, advances, capitalization guides, wholesale bonus, floor plan take-out." These items may be redacted wherever they may appear in the Exhibit.

By October 5, 2023, Superb shall file a renewed motion with the proposed redactions in the Exhibit. Should Superb wish to further seal portions of the exhibit it shall file an additional memorandum detailing exactly which portions and why sealing is warranted under the *Lugosch* standard.

Lastly, any motions for a protective order spanning the pendency of this litigation should be addressed to Magistrate Judge Wicks in compliance with his individual practice rules.

So Ordered by Judge Orelia E. Merchant on 9/29/2023. (GM)

| 55 | *Filed & Entered:* | 09/29/2023 | Order on Motion for Preliminary Injunction |
|---|---|---|---|

*Docket Text:* ORDER granting in part and denying in part [9] Motion for Preliminary Injunction; deferring ruling on [9] Motion for Permanent Injunction. See attached ruling for exact details and deadlines. Ordered by Judge Orelia E. Merchant on 9/29/2023. (CS)

| 56 | *Filed & Entered:* | 10/02/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *regarding injunctive relief awarded with request for clarification as to remaining vehicles* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Declaration of compliance with this Court's Memorandum and Order on Preliminary Injunction dated September 29, 2023 (ECF Docket Entry 55), # (2) Exhibit A - list of remaining vehicles) (Kataev, Emanuel)

| 57 | *Filed & Entered:* | 10/02/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *regarding delay in filing Declaration* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| 58 | *Filed & Entered:* | 10/03/2023 | Declaration |
|----|----|----|----|
| | *Docket Text:* DECLARATION *OF COMPLIANCE and REQUESTING CLARIFICATION OF INJUNCTION DATED SEPTEMBER 29, 2023,* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson (Thomasson, Harry) | | |
| 59 | *Filed & Entered:* | 10/03/2023 | Affidavit |
| | *Docket Text:* AFFIDAVIT/AFFIRMATION re [58] Declaration, *Exhibit A thereto,* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| 60 | *Filed & Entered:* | 10/03/2023 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [52] Letter MOTION for pre motion conference filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 61 | *Filed & Entered:* | 10/03/2023 | Letter |
| | *Docket Text:* Letter *in response to Flushing Bank's requested Pre-Motion Conference and Plaintiffs' response thereto* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| 62 | *Filed & Entered:* *Terminated:* | 10/05/2023 10/10/2023 | Motion for Extension of Time to File Document |
| | *Docket Text:* Letter MOTION for Extension of Time to File *renewed motion to seal as set forth in this Court's Order dated September 29, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 63 | *Filed & Entered:* | 10/08/2023 | Letter |
| | *Docket Text:* Letter *response in opposition to Deo Defendants' procedurally and substantively improper request (ECF Docket Entry 58) to avoid compliance with this Court's preliminary injunction (ECF Docket Entry 55)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - stipulated temporary restraining Order) (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 10/10/2023 | Order on Motion for Extension of Time to File |
| | *Docket Text:* ORDER granting [62] Motion for Extension of Time to File. Superb Plaintiffs renewed motion to seal is now due by October 31, 2023. So ordered by Judge Orelia E. Merchant on 10/10/2023. (GM) | | |
| 64 | *Filed & Entered:* | 10/10/2023 | Letter |
| | *Docket Text:* Letter *enclosing discovery plan pursuant to the Hon. James M. Wicks, U.S.M.J.'s Initial Conference Order dated September 28, 2023 (ECF Docket Entry 54)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - proposed discovery plan) (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 10/11/2023 | Order on Motion for Pre Motion Conference |
| | *Docket Text:* ORDER denying without prejudice [52] Motion for Pre Motion Conference by Flushing Bank regarding its anticipated Motion to Dismiss, in light of plaintiffs' anticipated filing of an amended complaint [60]. The parties are directed to address requests related to the timing of amended and/or responsive pleadings to Magistrate | | |

Judge Wicks. Further, matters related to compliance with the Preliminary Injunction [55] are hereby respectfully referred to Magistrate Judge Wicks. So Ordered by Judge Orelia E. Merchant on 10/11/2023. (GM)

| | | |
|---|---|---|
| *Filed & Entered:* | 10/12/2023 | Order on Motion for Permanent Injunction |

*Docket Text:* ORDER denying [9] Emergency MOTION for Permanent Injunction. A permanent injunction is the ultimate relief requested by plaintiffs in their Complaint [1]. *See* Compl. ¶¶ 262, 356, 357, 358. Thus, the Court will consider this request for relief in relation to its adjudication of plaintiffs claims. So Ordered by Judge Orelia E. Merchant on 10/12/2023. (GM)

| | | | |
|---|---|---|---|
| 65 | *Filed & Entered:* | 10/13/2023 | Amended Complaint |

*Docket Text:* AMENDED COMPLAINT *pursuant to Fed. R. Civ. P. 15(a)(1)(B)* against Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Flushing Bank, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Thomas Jones, CPA, Jones, Little & Co., CPA's LLP, Michael Laurie, Libertas Funding LLC, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp., J.P. Morgan Chase Bank, N.A., filed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Brian Chabrier, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. (Attachments: # (1) Exhibit A - May 31, 2023 Transcript) (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 66 | *Filed & Entered:* | 10/16/2023 | Consent to Jurisdiction by US Magistrate Judge |

*Docket Text:* CONSENT to Jurisdiction by US Magistrate Judge by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 67 | *Filed & Entered:* | 10/16/2023 | Proposed Summons/Civil Cover Sheet |

*Docket Text:* Proposed Summons. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 10/17/2023 | Case No Longer Referred |

*Docket Text:* Case no longer referred to Magistrate Judge James M. Wicks. (TPL)

| | | | |
|---|---|---|---|
| 68 | *Filed & Entered:* | 10/17/2023 | Summons Issued |

*Docket Text:* Summons Issued as to J.P. Morgan Chase Bank, N.A. (JC)

| | | | |
|---|---|---|---|
| 69 | *Filed & Entered:* | 10/17/2023 | Initial Conference Hearing |

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR INITIAL CONFERENCE. Counsel for Plaintiffs: Emanuel Kataev, Jeffrey C. Ruderman. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): No Appearance. Counsel for Defendants (Jones, Little & Co., CPA's LLP): Peter Seiden. Counsel for Defendant (Flushing Bank): Thomas Baylis. Counsel for Defendant (Libertas Funding LLC): Bonnie Golub. Initial Conference Hearing held on 10/17/2023 at 12:30 PM. Following

discussion with counsel, the Court adopted the following Scheduling Order: November 17, 2023: Exchange of Rule 26(a)(1) disclosures; January 5, 2024: Motions to join new parties or amend the pleadings; January 15, 2024: Meet and confer regarding 30(b)(6) depositions; June 30, 2024: Completion of all fact discovery; July 15, 2024: Identification of case in chief experts and service of Rule 26 disclosures; August 15, 2024: Identification of rebuttal experts and service of Rule 26 disclosures; September 30, 2024: Close of all discovery, including experts; and November 1, 2024: Final date for parties to take the first step of summary judgment motion practice. Parties are also directed to bundle file the motion papers regarding the scope or clarification of the preliminary injunction in accordance with the undersigned's Individual Rules. A Status Conference has been scheduled for **May 7, 2024 at 9:00 AM** via the Court's Video Zoom. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625. An in-person Final Pretrial Conference has been scheduled for **November 18, 2024 at 9:00 AM** to take place in Courtroom 1020 in the Central Islip Courthouse. A joint proposed pretrial order ("JPTO") in compliance with the Individual Practice Rules of the Hon. James M. Wicks, signed by counsel for each party, must be filed on ECF at least five (5) business days prior to this conference. If a motion for summary judgment is pending, the final pretrial conference will be cancelled and filing of the JPTO will be held in abeyance. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #12:39-12:57 (Video).) (DF)

| [70] | *Filed:* | 10/17/2023 | Consent to Jurisdiction by US Magistrate Judge |
| | *Entered:* | 10/18/2023 | |

*Docket Text:* CONSENT to Jurisdiction by US Magistrate Judge. Case reassigned to Magistrate Judge James M. Wicks for all further proceedings. Judge Orelia E. Merchant no longer assigned to case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (TPL)

| [71] | *Filed & Entered:* | 10/19/2023 | Letter |

*Docket Text:* Letter *concerning briefing schedule for Plaintiffs' motion to disqualify Harry R. Thomasson, Esq. as counsel for the Deo Defendants* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| [72] | *Filed:* | 10/19/2023 | Motion for Leave to File Document |
| | *Entered:* | 10/20/2023 | |
| | *Terminated:* | 11/09/2023 | |

*Docket Text:* Letter MOTION for Leave to File Document *in accordance with this Court's October 17, 2023 minute Order requiring the parties to bundle file the motion papers regarding the scope or clarification of the preliminary injunction* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Plaintiffs' October 2, 2023 letter motion for clarification, # (2) Exhibit B - Defendants' October 3, 2023 declaration of "compliance" with accompanying exhibit, # (3) Exhibit C - Plaintiffs' October 8, 2023 letter response in opposition) (Kataev, Emanuel)

| | *Filed & Entered:* | 10/20/2023 | Order |

*Docket Text:* ORDER. The Court is in receipt of Plaintiffs' briefing schedule request regarding their motion to disqualify Defendants' counsel (ECF No. [71]). Since the Plaintiffs have already served the motion upon Defendants' counsel, the briefing schedule is as follows: opposition shall be served on Plaintiffs' counsel on or before

**October 30, 2023** and any reply shall be served upon Defendants' counsel on or before **November 6, 2023**. Parties are to adhere to the undersigned's individual rules with regard to bundle filing the respective motion papers and file the documents on ECF once the last set of papers is served. So Ordered by Magistrate Judge James M. Wicks on 10/20/2023. (HM)

| 73 | Filed & Entered:<br>Terminated: | 10/26/2023<br>10/27/2023 | Motion for Pre Motion Conference |
|---|---|---|---|

*Docket Text:* Letter MOTION for pre motion conference re [65] Amended Complaint,,,, by Flushing Bank. (Baylis, Thomas)

| | Filed & Entered: | 10/27/2023 | Order on Motion for Pre Motion Conference |
|---|---|---|---|

*Docket Text:* ORDER granting [73] Motion for Pre-Motion Conference. A Pre-Motion Conference has been scheduled for **November 20, 2023 at 3:00 PM via the Court's Zoom** before the undersigned. A Zoom link will be sent to the parties closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625. So Ordered by Magistrate Judge James M. Wicks on 10/27/2023. (HM)

| 74 | Filed & Entered: | 10/27/2023 | Proposed Summons/Civil Cover Sheet |
|---|---|---|---|

*Docket Text:* Proposed Summons. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (Ruderman, Jeffrey)

| 75 | Filed & Entered: | 10/30/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *to Magistrate Judge Wicks regarding Briefing Schedule* by Flushing Bank (Baylis, Thomas)

| 76 | Filed & Entered: | 10/30/2023 | Summons Issued |
|---|---|---|---|

*Docket Text:* Summons Issued as to Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Flushing Bank, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, J.P. Morgan Chase Bank, N.A., Thomas Jones, CPA, Jones, Little & Co., CPA's LLP, Michael Laurie, Libertas Funding LLC, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (AMF)

| | Filed & Entered: | 10/31/2023 | Scheduling Order |
|---|---|---|---|

*Docket Text:* ORDER. In light of Flushing Bank's letter (ECF No. [75]) and Flushing Bank's proposed schedule in ECF No. [73], the Court adopts Flushing Bank's briefing schedule. Motion papers must be served on the proposed dates and bundle filed on ECF only once the reply (or last set of papers) has been served. Accordingly, the Pre-Motion Conference scheduled for November 20, 2023 is <u>CANCELLED</u>. Oral Argument on Flushing Bank's motion has been scheduled for **January 25, 2024 at 10:00 AM in Courtroom 1020 in the Central Islip Courthouse** before the undersigned. So Ordered by Magistrate Judge James M. Wicks on 10/31/2023. (HM)

| 77 | Filed & Entered:<br>Terminated: | 10/31/2023<br>11/05/2023 | Motion for Leave to Electronically File Document under Seal |
|---|---|---|---|

*Docket Text:* Letter MOTION for Leave to Electronically File Document under Seal *with renewed request to seal information solely related to wholesale payoffs and insurance, other than what the Hon. Orelia E. Merchant, U.S.D.J. has already permitted to be sealed in her September 29, 2023 Text Only Order,* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - proposed redacted agreement(s) with NMAC) (Kataev, Emanuel)

| | Filed & Entered: | 11/01/2023 | Scheduling Order |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER. The Court is in receipt of the parties' bundled motion for scope or clarification on the preliminary injunction (ECF No. [72]). Accordingly, the parties are directed to appear in-person for oral argument on the motion on **November 9, 2023 at 12:30 PM in Courtroom 1020** in the Central Islip Courthouse before the undersigned. In addition, parties should be prepared to discuss whether a bond should be imposed in accordance with Fed. R. Civ. P. 65(c). So Ordered by Magistrate Judge James M. Wicks on 11/1/2023. (HM) | | |
| | *Filed & Entered:* | 11/01/2023 | Order |
| | *Docket Text:* ORDER. In connection with Plaintiffs' motion to seal (ECF No. [77]), on or before **Friday, November 3, 2023**, Plaintiffs are directed to articulate the purpose of filing the sealed document and whether it is considered a judicial document. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006) ("Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'") Defendants shall also file an opposition, if any, by that date. So Ordered by Magistrate Judge James M. Wicks on 11/1/2023. (HM) | | |
| 78 | *Filed & Entered:* | 11/01/2023 | Waiver of Service Executed |
| | *Docket Text:* WAIVER OF SERVICE Returned Executed by Libertas Funding LLC. Libertas Funding LLC waiver sent on 10/17/2023, answer due 12/18/2023. (Golub, Bonnie) | | |
| 79 | *Filed & Entered:*<br>*Terminated:* | 11/02/2023<br>11/10/2023 | Motion for Contempt |
| | *Docket Text:* Letter MOTION for Contempt by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| 80 | *Filed & Entered:* | 11/02/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [79] Letter MOTION for Contempt filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C) (Felsen, Jamie) | | |
| 81 | *Filed & Entered:* | 11/02/2023 | Letter |
| | *Docket Text:* Letter *to Magistrate Wicks in opposition to Plaintiffs' letter request for sanctions* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| | *Filed & Entered:* | 11/03/2023 | Order |
| | *Docket Text:* ORDER. In light of the parties' recent filings, counsel should be directed to address the motion to clarify, motion to disqualify, and the motion for contempt at the Oral Argument scheduled for **November 9, 2023**. So Ordered by Magistrate Judge James M. Wicks on 11/3/2023. (HM) | | |
| 82 | *Filed & Entered:* | 11/03/2023 | Letter |
| | *Docket Text:* Letter *submitted in accordance with this Court's Order dated November 1, 2023 in connection with the Superb Plaintiffs' renewed letter motion to seal* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| 83 | *Filed & Entered:*<br>*Terminated:* | 11/04/2023<br>11/05/2023 | Motion to Adjourn Conference |
| | *Docket Text:* Consent MOTION to Adjourn Conference *from 12:30 PM to 3:00 PM on Thursday, November 9, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 11/05/2023 | Order on Motion for Leave to Electronically File Document under Seal |

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER granting [77] Motion for Leave to Electronically File Document under Seal. Counsel is directed to file the original document under seal as a separate entry. Instructions on filing sealed documents on ECF are located at www.nyed.uscourts.gov. Counsel shall redact the portions of the document already granted by the Hon. Orelia E. Merchant and redact and seal the discrete portions relating to wholesale payoffs and insurance. So Ordered by Magistrate Judge James M. Wicks on 11/5/2023. (HM) | | |
| | *Filed & Entered:* | 11/05/2023 | Order on Motion to Adjourn Conference |
| | *Docket Text:* ORDER denying [83] Motion to Adjourn Conference. In light of the parties' letter to adjourn Oral Argument and the Court's further communications with the parties, the <u>in-person</u> Oral Argument currently scheduled for **November 9, 2023 at 12:30PM** remains as scheduled. Parties should be prepared to discuss the motions as stated in the undersigned's prior order dated November 3, 2023. So Ordered by Magistrate Judge James M. Wicks on 11/5/2023. (HM) | | |
| 85 | *Filed & Entered:*<br>*Terminated:* | 11/06/2023<br>12/01/2023 | Motion to Disqualify Counsel |
| | *Docket Text:* MOTION to Disqualify Counsel by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| 86 | *Filed & Entered:* | 11/06/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [85] MOTION to Disqualify Counsel *Declaration of Bruce Novicky* filed by All Plaintiffs. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C) (Felsen, Jamie) | | |
| 87 | *Filed & Entered:* | 11/06/2023 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [85] MOTION to Disqualify Counsel filed by All Plaintiffs. (Felsen, Jamie) | | |
| 88 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of harry Thomasson, Esq.* filed by All Plaintiffs. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Exhibit E) (Felsen, Jamie) | | |
| 89 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Anthony Deo* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 90 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Dwight Blankenship* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 91 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Michael Laurie* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 92 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Marc Merckling* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 93 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |

| | | | |
|---|---|---|---|
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Sarah Deo* filed by All Plaintiffs. (Felsen, Jamie) | | |
| [94](#) | *Filed & Entered:* | 11/06/2023 | Memorandum in Opposition |
| | *Docket Text:* MEMORANDUM in Opposition re [85] MOTION to Disqualify Counsel filed by All Plaintiffs. (Felsen, Jamie) | | |
| [95](#) | *Filed & Entered:* | 11/06/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [85] MOTION to Disqualify Counsel *Reply Declaration of Robert Anthony Urrutia* filed by All Plaintiffs. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Exhibit E) (Felsen, Jamie) | | |
| [96](#) | *Filed & Entered:* | 11/06/2023 | Reply in Support |
| | *Docket Text:* REPLY in Support re [85] MOTION to Disqualify Counsel filed by All Plaintiffs. (Felsen, Jamie) | | |
| [97](#) | *Filed & Entered:* | 11/09/2023 | Order on Motion for Leave to File |
| | *Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR MOTION HEARING. Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Russell J. Shanks. Counsel for Defendants: (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Harry R. Thomasson, Jr. Counsel for Defendants (Jones, Little & Co., CPA's LLP): Peter Seiden. Counsel for Defendant (Flushing Bank): Ariel R. Ronneburger. Counsel for Defendant (Libertas Funding LLC): No Appearance. Motion Hearing/Oral Argument/Oral Ruling held on November 9, 2023 at 12:30 PM regarding Letter Motion for Leave to File Document in accordance with the Court's October 17, 2023 Order (ECF No. [72]); Letter Motion for Contempt (ECF No. [79]) and Motion to Disqualify Counsel (ECF No. [85]). Parties' arguments were heard. Motion for Leave to File Document in accordance with the Court's October 17, 2023 Order (ECF No. 72) is denied without prejudice with leave to renew. The relief sought seeks to modify, not clarify that which was ordered at ECF No. 55. Accordingly, to the extent the parties seek additional preliminary injunctive relief or modification of the existing order, a motion for such modification may be filed. The Court reserves decision on the Letter Motion for Contempt (ECF No. 79) and for disqualification (ECF No. 85). Defendants are directed to move the six (6) "Injuncted Deo Vehicles" identified in the Preliminary Injunction Order (ECF No. 55) to an independent licensed and insured vehicle storage facility on Long Island **on or before 5pm Tuesday, November 14, 2023**. Those six vehicles are: 2023 Chevrolet Suburban with a VIN # ending in "8675"; 2020 Mercedes-Benz GLE with a VIN # ending in "4078"; 2019 Land Rover Range Rover with a VIN # ending in "3297"; 2017 Rolls Royce with a VIN # ending in "2728"; 2016 Audi A6 with a VIN # ending in "9650"; and 2016 Audi Q5 with a VIN # ending in 0272. (ECF No. [55] at 29). Defendants' counsel shall file on ECF proof of storage of same with the Court. Defendants are to bear all expenses related to said storage, and the six Injuncted Deo Vehicles are *not* to be used or driven. The parties are also directed to file letter briefs to supplement the parties' positions on the Motion to Disqualify Counsel (ECF No. [85]), particularly regarding the three cases identified on the record at Oral Argument on or before **November 20, 2023**. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #12:36-1:33 (FTR).) (DF) | | |
| [98](#) | *Filed & Entered:* | 11/10/2023 | Order on Motion for Contempt |

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER re [79] Motion for Contempt. As set forth in the attached Order, Plaintiffs' motion for contempt (ECF No. [79]) is denied as is Plaintiffs' request for sanctions. Per this Court's prior Order issued at Oral Argument, all six (6) vehicles, including the two (2) DEMO vehicles are to be placed in an independent, licensed, and insured facility at the expense of the Deo Defendants and none are permitted to be driven or otherwise used, absent a court order to the contrary. (*See* ECF No. [97].) So Ordered by Magistrate Judge James M. Wicks on 11/10/2023. (DF) | | |
| 99 | *Filed & Entered:* | 11/13/2023 | Corporate Disclosure Statement |
| | *Docket Text:* Corporate Disclosure Statement by Flushing Bank identifying Corporate Parent Flushing Financial Corporation for Flushing Bank. (Ronneburger, Ariel) | | |
| 100 | *Filed & Entered:* | 11/13/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Russell J. Shanks on behalf of 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (aty to be noticed) (Shanks, Russell) | | |
| | *Filed & Entered:* | 11/15/2023 | Order |
| | *Docket Text:* ORDER. Deo Defendants' counsel was to file a letter with the Court advising whether the six (6) "Injuncted Deo Vehicles" have been moved to an independent licensed and insured vehicle storage facility by November 14, 2023. (ECF No. [97].) However, to date, no such filing has been made. Accordingly, Defendants' counsel is to file a letter **by the end of the day today** certifying whether the 6 cars have been moved to the independent lot. Failure to do so may result in sanctions. So Ordered by Magistrate Judge James M. Wicks on 11/15/2023. (HM) | | |
| 101 | *Filed & Entered:*<br>*Terminated:* | 11/15/2023<br>11/21/2023 | Motion for Pre Motion Conference |
| | *Docket Text:* Letter MOTION for pre motion conference re [65] Amended Complaint,,,, by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Seiden, Peter) | | |
| 102 | *Filed & Entered:* | 11/15/2023 | Letter |
| | *Docket Text:* Letter *Regarding Storage of Automobiles* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| 103 | *Filed & Entered:* | 11/15/2023 | Letter |
| | *Docket Text:* Letter *Addendum with additional information regarding insurance* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| | *Filed & Entered:* | 11/16/2023 | Order |
| | *Docket Text:* ORDER. The Court is in receipt of the Thomas Jones, CPA and Jones, Little & co., CPAs LLP letter motion for a pre-motion conference (ECF No. [101]). The parties are directed to meet and confer on a proposed briefing schedule, or otherwise confirm that the proposed briefing schedule in ECF No. [101] suits all relevant parties, and file a letter by **November 20, 2023** stating same. So Ordered by Magistrate Judge James M. Wicks on 11/16/2023. (HM) | | |

| 104 | *Filed & Entered:* | 11/16/2023 | Transcript |
|---|---|---|---|

*Docket Text:* NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 11/09/2023, before Mag. Judge James M. Wicks. Transcriber Transcriptions Plus II, Inc., Telephone number 917-817-2825. Email address: RL.Transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/7/2023. Redacted Transcript Deadline set for 12/18/2023. Release of Transcript Restriction set for 2/14/2024.(CG)

| 105 | *Filed & Entered:* | 11/20/2023 | Corporate Disclosure Statement |
|---|---|---|---|

*Docket Text:* Corporate Disclosure Statement by Jones, Little & Co., CPA's LLP (Seiden, Peter)

| 106 | *Filed & Entered:* | 11/20/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *requested by Magistrate Wicks regarding disqualification* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| 107 | *Filed & Entered:* | 11/20/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *to Judge re compliance with 11-16-23 Order* by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP (Seiden, Peter)

| 108 | *Filed & Entered:* | 11/20/2023 | Memorandum in Support |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Support re [85] MOTION to Disqualify Counsel *with supplemental letter brief in accordance with this Court's Order dated November 9, 2023* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - November 9, 2023 oral argument transcript, # (2) Exhibit B - sampling of 49 of over 180 emails sent to Thomasson with sensitive & confidential information, # (3) Exhibit C - March 2023 correspondence between Thomasson, Deo, Urrutia, and Jones) (Kataev, Emanuel)

| 109 | *Filed & Entered:* | 11/21/2023 | Order on Motion for Pre Motion Conference |
|---|---|---|---|

*Docket Text:* ORDER denying [101] Motion for Pre-Motion Conference. The Court finds no need to hold a pre-motion conference and instead adopts parties' proposed briefing schedule as set forth in ECF No. [107]. Parties shall serve the opposing party on those respective dates but shall file their own set of papers only once the reply papers are served on **January 29, 2024**. An in-person Oral Argument has been scheduled for **February 22, 2024 at 2:00 PM in Courtroom 1020** before the undersigned. Please see attached document for further details. So Ordered by Magistrate Judge James M. Wicks on 11/21/2023. (HM)

| 110 | *Filed & Entered:*<br>Terminated: | 11/25/2023<br>05/08/2024 | Motion for Order to Show Cause |
|---|---|---|---|

*Docket Text:* MOTION for Order to Show Cause *to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. on September 29, 2023 (ECF Docket Entry 55)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) Modified on 5/9/2024 (DF).

| 111 | *Filed & Entered:* | 11/25/2023 | Memorandum in Support |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Support re [110] MOTION for Order to Show Cause *to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. on September 29, 2023 (ECF Docket Entry 55)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 112 | Filed & Entered: | 11/25/2023 | Affidavit in Support of Motion |
|---|---|---|---|
| | Docket Text: AFFIDAVIT/DECLARATION in Support re [110] MOTION for Order to Show Cause *to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. on September 29, 2023 (ECF Docket Entry 55) of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - operative list of remaining forty-three (43) vehicles, # (2) Exhibit B - CarFax Report for Missing Vehicle, # (3) Exhibit C - May 2023 Correspondence with Deo regarding Missing Vehicle, # (4) Exhibit D - June 2023 Correspondence with Deo regarding Missing Vehicle, # (5) Exhibit E - Deal Recap for Another Missing Vehicle, # (6) Exhibit F - Proof of Ownership for Defendant Michael Laurie's Vehicle, # (7) Exhibit G - August 4, 2023 Capital Call Letter, # (8) Exhibit H - Twelve (12) Vehicles Owned by Team Auto Sales LLC) (Kataev, Emanuel) | | |
| | Filed & Entered: | 11/26/2023 | Order |
| | Docket Text: ORDER. In light of the Plaintiffs' Motion for Order to Show Cause to modify the preliminary injunction (ECF No. [110]), the opposition shall be filed on or before **December 1, 2023** and the reply (if any) shall be filed on or before **December 5, 2023**. So Ordered by Magistrate Judge James M. Wicks on 11/26/2023. (HM) | | |
| 113 | Filed & Entered: | 11/29/2023 | Notice of Appearance |
| | Docket Text: NOTICE of Appearance by Bonnie Rae Golub on behalf of Libertas Funding LLC (aty to be noticed) (Golub, Bonnie) | | |
| 114 | Filed & Entered: | 11/29/2023 | Letter |
| | Docket Text: Letter *requesting Pre-Motion Conference* by Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Proposed Briefing Scheduling Order) (Thomasson, Harry) | | |
| | Filed & Entered: | 11/30/2023 | Scheduling Order |
| | Docket Text: ORDER. Plaintiffs' opposition to Defendants' letter requesting a pre-motion conference (ECF No. [114]) shall be filed on or before **December 8, 2023**. In addition, a Pre-Motion Conference has been scheduled for **December 13, 2023 at 11:00 AM <u>via the Court's Zoom</u>** before the undersigned. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks's Courtroom Deputy at (631) 712-5625. So Ordered by Magistrate Judge James M. Wicks on 11/30/2023. (HM) | | |
| 115 | Filed & Entered:<br>Terminated: | 11/30/2023<br>12/01/2023 | Motion for Extension of Time to File Document |
| | Docket Text: MOTION for Extension of Time to File: Letter *requesting additional time to oppose pending Order to Show Cause* by Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) Modified on 12/1/2023 to change event type to Motion for Extension of Time to File (DF). | | |
| 116 | Filed & Entered: | 11/30/2023 | Letter |
| | Docket Text: Letter *response in opposition to the Deo Defendants' letter motion for an extension of time* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| | Filed & Entered: | 12/01/2023 | Order on Motion for Extension of Time to File |

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER granting [115] Motion for Extension of Time to File. Deo Defendants shall file the opposition to the motion to modify the preliminary injunction on or before **December 4, 2023** and Plaintiffs shall file their reply on or before **December 6, 2023**. So Ordered by Magistrate Judge James M. Wicks on 12/1/2023. (HM) | | |
| [117] | *Filed & Entered:* | 12/01/2023 | Order on Motion to Disqualify Counsel |
| | *Docket Text:* MEMORANDUM ORDER RE [85] Motion to Disqualify Counsel. As set forth in the attached Memorandum Order, Plaintiffs' motion for disqualification of Harry R. Thomasson, Jr. as counsel for Defendants (ECF No. [85]) is granted. This action is stayed until **January 2, 2024** to enable Defendants previously represented by Thomasson to obtain substitute counsel and file notices of appearances. A status conference will be held on **January 9, 2024 at 3:00 p.m.** in person in courtroom 1020 to address the pre-motion conference letter filed by the Deo Defendants (ECF No. [114]) and the motion to modify the preliminary injunction (ECF No. [110]). So Ordered by Magistrate Judge James M. Wicks on 12/1/2023. (DF) | | |
| | *Filed & Entered:* | 12/05/2023 | Order |
| | *Docket Text:* ORDER. In light of the Order on the Motion to Disqualify Counsel (ECF No. [117]) which stayed the action until January 2, 2024, opposition to the motion to modify the preliminary injunction shall be filed on or before **January 7, 2024** and reply **January 8, 2024**. The Status Conference scheduled for January 9, 2024 remains in place, at which time the parties should be prepared to discuss (1) the motion to modify the preliminary injunction (ECF No. [110]) and (2) the pre-motion letter for Defendants' anticipated motion to dismiss (ECF No. [114]). So Ordered by Magistrate Judge James M. Wicks on 12/5/2023. (HM) | | |
| [118] | *Filed & Entered:*<br>*Terminated:* | 12/07/2023<br>12/08/2023 | Motion to Amend/Correct/Supplement |
| | *Docket Text:* Joint MOTION to Amend/Correct/Supplement [75] Letter, Order on Motion for Pre Motion Conference,, Scheduling Order,, [109] Order on Motion for Pre Motion Conference,,, Scheduling Order,, by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC. (Ruderman, Jeffrey) | | |
| | *Filed & Entered:* | 12/08/2023 | Order on Motion to Amend/Correct/Supplement |
| | *Docket Text:* ORDER. In light of the Motion to Amend (ECF No. [118]) and the stay (ECF No. [117]) the briefing on the anticipated motions is as follows: (1) As to Flushing Bank's motion, since that has already been served on November 13, 2023, the briefing schedule as to Flushing Bank's motion to dismiss shall remain in place. Thus, the parties are still to bundle file the motion on or before **January 5, 2024**. (2) As to the other two anticipated motions from the Jones and Libertas Defendants, those papers need not be served and all briefing shall be held in abeyance until the January 9, 2024 Status Conference. (3) At the January 9 Conference, the Court will address a briefing schedule for the Jones and Libertas motions and the Deo Defendants should be prepared to discuss whether they intend to take a position on the Flushing Bank motion. (4) The Oral Arguments originally scheduled for January 25, 2024 and February 22, 2024 are <u>ADJOURNED</u> *sine die* and will be rescheduled during the January 9 Conference. So Ordered by Magistrate Judge James M. Wicks on 12/8/2023. (HM) | | |
| [119] | *Filed & Entered:* | 12/12/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Anthony Carmine Valenziano on behalf of J.P. Morgan Chase Bank, N.A. (aty to be noticed) (Valenziano, Anthony) | | |
| [120] | *Filed & Entered:*<br>*Terminated:* | 12/12/2023<br>12/13/2023 | Motion for Extension of Time to File Answer |
| | *Docket Text:* MOTION for Extension of Time to File Answer re [68] Summons Issued *Letter Motion Requesting Extension of Time to Respond to Complaint* by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony) | | |

| 121 | Filed & Entered: | 12/12/2023 | Letter |
|---|---|---|---|
| | Docket Text: Letter *to Magistrate Judge James M. Wicks* by Flushing Bank (Baylis, Thomas) | | |
| | Filed & Entered: | 12/13/2023 | Order on Motion for Extension of Time to Answer |
| | Docket Text: ORDER granting [120] Motion for Extension of Time to Answer. Defendant JP Morgan Chase's time within which to respond to the complaint is hereby extended to and including January 19, 2024. In addition, the briefing schedule of Flushing Bank's anticipated motion to dismiss is held in abeyance and included within the stay issued by the court on 12/8/2023. The briefing schedules of all anticipated motions will be addressed at the January 9, 2024 conference. So Ordered by Magistrate Judge James M. Wicks on this 13th day of December, 2023. (Wicks, James) | | |
| 122 | Filed & Entered:<br>Terminated: | 12/14/2023<br>12/15/2023 | Motion for Reconsideration |
| | Docket Text: Letter MOTION for Reconsideration re Order on Motion for Extension of Time to Answer,, *for Flushing Bank's request to include its motion to dismiss within the ambit of the December 1, 2023 stay* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 123 | Filed & Entered: | 12/14/2023 | Letter |
| | Docket Text: Letter *in Opposition to Plaintiffs' Motion for Reconsideration of the Order granting Flushing Bank's request for the motion to dismiss and Plaintiffs' cross-motion to be included in the stay* by Flushing Bank (Ronneburger, Ariel) | | |
| | Filed & Entered: | 12/15/2023 | Order on Motion for Reconsideration |
| | Docket Text: ORDER denying [122] Motion for Reconsideration. Plaintiffs' motion for reconsideration of this Court's Order staying Briefing on Flushing's motion to dismiss is hereby denied. "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Furthermore, reconsideration is appropriate in order to correct "clear error" or "manifest injustice". See Carpac v. Rubin & Rothman LLC, 10 F. Supp.3d 349 (E.D.N.Y. 2013). Such a motion is not simply an opportunity for a litigant to restate its position or present new or alternative theories that were not presented before. See Trans Pro Logistice Inc. v. Coby Elecs. Corp., No. 05 Civ. 1759, 2010 U.S. Dist. LEXIS 109902, 2010 WL 4065603, at *1 (E.D.N.Y. Oct. 15, 2010). It's simply not an opportunity for a "do-over". Volpe v. Ryder, 2022 WL 16553231 (E.D.N.Y. Oct. 31, 2022). Accordingly, since Plaintiffs have not identified any controlling authority or factual matters that the court may have overlooked, or that there was clear error or a manifest injustice, the application for reconsideration is denied. So Ordered by Magistrate Judge James M. Wicks on 12/15/2023. (Wicks, James) | | |
| 124 | Filed & Entered: | 12/22/2023 | Corporate Disclosure Statement |
| | Docket Text: Corporate Disclosure Statement by Libertas Funding LLC (Golub, Bonnie) | | |
| 125 | Filed & Entered: | 01/02/2024 | Letter |
| | Docket Text: Letter *requesting additional time for replacement counsel to file Notice(s) of Appearance* by Harry Thomasson (Thomasson, Harry) | | |
| 126 | Filed & Entered: | 01/02/2024 | Letter |
| | Docket Text: Letter *Pre-Motion Letter to Judge James M. Wicks M. Wicks* by Libertas Funding LLC (Golub, Bonnie) | | |

| | *Filed & Entered:* | 01/04/2024 | Order |
|---|---|---|---|

*Docket Text:* ORDER. In light of Defendant's letter (ECF No. [125]), the stay in this case shall continue up to and including **January 5, 2024**. So Ordered by Magistrate Judge James M. Wicks on 1/4/2024. (HM)

| [127] | *Filed & Entered:*<br>*Terminated:* | 01/05/2024<br>01/09/2024 | Motion for Pre Motion Conference |
|---|---|---|---|

*Docket Text:* Letter MOTION for pre motion conference by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony)

| [128] | *Filed & Entered:* | 01/05/2024 | Proposed Scheduling Order |
|---|---|---|---|

*Docket Text:* Proposed Scheduling Order *to Pre-Motion Letter to Judge James M. Wicks M. Wicks at ECF No. 126* by Libertas Funding LLC (Golub, Bonnie)

| [129] | *Filed & Entered:*<br>*Terminated:* | 01/05/2024<br>01/07/2024 | Motion to Appear by Telephone/Video |
|---|---|---|---|

*Docket Text:* MOTION to Appear by Telephone/Video *for Status Conference scheduled January 9, 2024 pursuant to Court Order docketed December 8, 2023* by Libertas Funding LLC. (Attachments: # (1) Declaration of Service) (Golub, Bonnie)

| | *Filed & Entered:* | 01/07/2024 | Order on Motion to Appear by Telephone/Video |
|---|---|---|---|

*Docket Text:* ORDER granting [129] Motion to Appear by Telephone/Video. Counsel for Defendant Libertas Funding LLC is permitted to appear remotely via Zoom for the Status Conference on January 9, 2024. A Zoom link will be emailed to her closer to the conference date. So Ordered by Magistrate Judge James M. Wicks on 1/7/2024. (HM)

| | *Filed & Entered:* | 01/08/2024 | Order |
|---|---|---|---|

*Docket Text:* ORDER. J.P. Morgan Chase Bank's recently filed pre-motion letter (ECF No. [127]) will be discussed at the status conference on January 9, 2024. So Ordered by Magistrate Judge James M. Wicks on 1/8/2024. (HM)

| | *Filed & Entered:* | 01/08/2024 | Order on Motion to Appear by Telephone/Video |
|---|---|---|---|

*Docket Text:* ORDER granting [130] Motion to Appear by Telephone/Video. In light of the concerns raised in the recent motion to appear remotely, the in-person status conference scheduled for tomorrow (1/9/24) is <u>CONVERTED</u> to a remote status conference to take place via the Court's Zoom. A Zoom link will be circulated to the parties shortly. So Ordered by Magistrate Judge James M. Wicks on 1/8/2024. (HM)

| [130] | *Filed & Entered:*<br>*Terminated:* | 01/08/2024<br>01/08/2024 | Motion to Appear by Telephone/Video |
|---|---|---|---|

*Docket Text:* Letter MOTION to Appear by Telephone/Video *for the January 9, 2024, conference* by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony)

| [131] | *Filed:*<br>*Entered:* | 01/09/2024<br>01/10/2024 | Order on Motion for Pre Motion Conference |
|---|---|---|---|

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR STATUS CONFERENCE. Counsel for Plaintiffs: (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev (With Principle Bruce Novicky). Counsel for Plaintiffs: (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hyland Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Jeffrey C. Ruderman. Counsel for Defendants: (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC,

Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Harry R. Thomasson, Jr. (Terminated Counsel). Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Peter Seiden. Counsel for Defendants (Flushing Bank): Ariel E. Ronneburger, Thomas Baylis. Counsel for Defendants (Libertas Funding LLC): Bonnie Rae Golub, David Epstein (Represented Defendant in State Court Matter). Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Anthony Carmine Valenziano. Status Conference held on January 9, 2024 at 3:00 PM. All Defendants' motions to dismiss shall be served as follows: 1.Defendants shall serve all papers in support of the motions to dismiss the Amended Complaint on or before **February 9, 2024**. 2.Opposition to Defendants' motion to dismiss the Amended Complaint shall be served on or before **March 11, 2024**. 3.Defendants' reply papers, if any, in further support of the motions to dismiss shall be served on or before **April 1, 2024**. 4.Parties are to bundle file their respective papers on ECF on **April 2, 2024**. The parties are to arrange for courtesy copies of the served to be sent to Chambers as they are served upon each opposing party. A Scheduling Conference has been scheduled for **January 26, 2024 at 10:30 AM** via the Court's Video Zoom. The parties should be prepared to discuss an expedited six-month discovery schedule, given the issues raised in this case. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #3:03-3:33 (Video).) (DF)

| [132] | *Filed & Entered:* | 01/14/2024 | Request for Certificate of Default |
|---|---|---|---|
| | *Docket Text:* Request for Certificate of Default by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Declaration in Support of Plaintiffs' Request for Certificate of Default, # (2) Proposed Order - Proposed Certificate of Default) (Kataev, Emanuel) | | | |
| [133] | *Filed & Entered:* | 01/15/2024 | Declaration |
| | *Docket Text:* DECLARATION re [132] Request for Certificate of Default,, *with proof of mailing* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - proof of mailing) (Kataev, Emanuel) | | | |
| [134] | *Filed & Entered:* | 01/18/2024 | Order on Motion for Order to Show Cause |
| | *Docket Text:* MEMORANDUM ORDER re [110] Motion for Order to Show Cause. As set forth in the attached Memorandum Order, the Court denies in part and grants in part Plaintiffs' motion for modification of the preliminary injunction (ECF No. [110]). The Court directs the following: *First*, an evidentiary hearing for the 43 Remaining Vehicles is scheduled for **February 20, 2024 at 1:00 p.m.** in courtroom 1020. Proposed witness and exhibit lists shall be filed on ECF on or before **February 15, 2024**. *In addition* on or before **January 31, 2024**, Deo Defendants are to provide to Plaintiffs photographs of the vehicles' odometer readings along with a sworn affidavit, proof that the vehicles are in an enclosed facility, and proof of full vehicle insurance coverage and file proof on ECF. *Finally*, the parties shall meet and confer and file by **January 24, 2024**, a proposed joint schedule for discovery on an expedited six-month track, which will be addressed at the next Status Conference on January 26, 2024. So Ordered by Magistrate Judge James M. Wicks on 1/18/2024. (DF) | | | |

| 135 | *Filed & Entered:* | 01/19/2024 | Affidavit of Service |
|---|---|---|---|

*Docket Text:* AFFIDAVIT of Service for January 18, 2024 Memorandum & Order served on Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Automotive Group LLC, Gold Coast Cars of LIC LLC, Gold Coast Cars of Roslyn LLC, Gold Coast Cars of Smithtown LLC, UEA Premier Motors Corp., DLA Capital Partners Inc. on January 19, 2024, filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| 136 | *Filed & Entered:* | 01/22/2024 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Brooke Suarez on behalf of J.P. Morgan Chase Bank, N.A. (aty to be noticed) (Suarez, Brooke)

| 137 | *Filed & Entered:* | 01/23/2024 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Brian M. Levine on behalf of Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (aty to be noticed) (Levine, Brian)

| 138 | *Filed & Entered:* | 01/24/2024 | Summons Returned Executed |
|---|---|---|---|

*Docket Text:* SUMMONS Returned Executed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Brian Chabrier, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. DLA Capital Partners Inc. served on 10/5/2023, answer due 10/26/2023. (Kataev, Emanuel)

| 139 | *Filed & Entered:* | 01/24/2024 | Proposed Scheduling Order |
|---|---|---|---|

*Docket Text:* Proposed Scheduling Order *submitted jointly by the parties pursuant to this Court's Orders dated January 9, 2024 and January 18, 2024 (ECF Docket Entries 131 & 134)* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| 140 | *Filed & Entered:* | 01/25/2024 | Clerk's Entry of Default |
|---|---|---|---|

*Docket Text:* **(VACATED as to all Defendants *except DLA CAPITAL PARTNERS INC.,*)**

Clerk's ENTRY OF DEFAULT: It appearing from the docket maintained in this action that defendants Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, and UEA Premier Motors Corp., have failed to appear or otherwise defend this action, the defaults of defendants Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, and UEA Premier Motors Corp., are hereby noted pursuant to Rule 55a of the Federal Rules of Civil Procedure. (JT) Modified on 2/2/2024 to comply with Court Order dated 2/1/2024 (JT).

| 141 | *Filed & Entered:* | 01/26/2024 | Scheduling Conference |
|---|---|---|---|

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR SCHEDULING CONFERENCE. Counsel for Plaintiffs (Superb Motors Inc, TeamAuto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev, Jamie Scott Felsen. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hyland Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Jeffrey C. Ruderman. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Brian M. Levine. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Peter Seiden. Counsel for Defendants (Flushing Bank): Ariel E. Ronneburger. Counsel for Defendant (Libertas Funding LLC): Bonnie Rae Golub, David Epstein (Represented Defendant in State Court Matter). Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Anthony Carmine Valenziano. Scheduling Conference held on 1/26/2024 at 10:30 AM. The Court adopted the parties' submitted schedule at ECF No. [139], finalized at ECF No. [142]. In addition to the dates they provided, the Court designated the new final date for the first step of summary judgment motion practice as **September 6, 2024**. On or before **January 31, 2024**, Plaintiffs' counsel shall file a letter with the Court stating whether Plaintiffs agree stipulate to the vacatur of the entry of default (ECF No. [140]) or require the Deo Defendants to move to vacate. Counsel for Defendants Thomas Jones, CPA, Jones, Little & Co., CPA's LLP; Counsel for Defendant Flushing Bank; Counsel for Defendant Libertas Funding LLC; and Counsel for Defendant J.P. Morgan Chase Bank, N.A. all presented oral applications requesting that their appearances be excused at the Evidentiary Hearing on February 20, 2024 at 1:00 PM in Courtroom 1020. The Court granted those Defendants' applications, but to the extent any of those parties become witnesses to the hearing, then their presence is not excused. The Status Conference previously scheduled for **May 7, 2024 at 9:00 AM** will remain in place and will proceed via the Court's Video Zoom. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625. The Final Pretrial Conference scheduled for November 18, 2024 at 9:00 AM is **CHANGED** to **September 30, 2024 at 10:00 AM** at the United States District Courthouse, Eastern District of New York, 100 Federal Plaza, Courtroom 1020, Central Islip, New York. A joint proposed pretrial order ("JPTO") in compliance with the undersigned's Individual Practice Rules, signed by counsel for each party, must be filed on ECF at least five (5) business days prior to this conference. If a motion for summary judgment is pending, the final pretrial conference will be cancelled and filing of the JPTO will be held in abeyance. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #10:32-10:48 (Video).) (DF)

| 142 | *Filed & Entered:* | 01/26/2024 | Scheduling Order |
|---|---|---|---|

*Docket Text:* SCHEDULING ORDER: Please See Order for Further Details. So Ordered by Magistrate Judge James M. Wicks on 1/26/2024. (DF)

| 143 | *Filed & Entered:* | 01/29/2024 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Emanuel Kataev on behalf of Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia (notification declined or already on case) (Kataev, Emanuel)

| 144 | *Filed & Entered:*<br>*Terminated:* | 01/31/2024<br>02/01/2024 | Motion to Withdraw |
|---|---|---|---|

*Docket Text:* MOTION to Withdraw Certificate of Default: Letter *requesting withdrawal of Plaintiffs' certificate of default against the Deo Defendants* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto

LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) Modified on 2/1/2024 to change event type to Motion to Withdraw (DF).

| 145 | *Filed & Entered:* | 01/31/2024 | Declaration |
|---|---|---|---|
| | *Docket Text:* DECLARATION *of Anthony Deo* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Exhibit Exhibit A - Photographs of Odometers, # (2) Exhibit Exhibit B - Photographs of Vehicles in an Enclosed Storage Facility, # (3) Exhibit Exhibit C - Insurance) (Levine, Brian) | | |
| | *Filed & Entered:* | 02/01/2024 | Order on Motion to Withdraw |
| | *Docket Text:* ORDER granting [144] Motion to Withdraw. The Clerk of the Court is directed to withdraw the certificate of default entered at ECF No. [140], with the exception of Defendant DLA Capital Partners Inc.. So Ordered by Magistrate Judge James M. Wicks on 2/1/2024. (HM) Modified on 2/2/2024 to add additional docket entry text (DF). | | |
| 146 | *Filed & Entered:* | 02/15/2024 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Nicole Marie Koster on behalf of Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (aty to be noticed) (Koster, Nicole) | | |
| 147 | *Filed & Entered:* | 02/15/2024 | Exhibit List |
| | *Docket Text:* Exhibit List *for Evidentiary Hearing on the Motion to Modify the Preliminary Injunction* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Koster, Nicole) | | |
| 148 | *Filed & Entered:* | 02/15/2024 | Witness List |
| | *Docket Text:* Witness List by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Koster, Nicole) | | |
| 149 | *Filed & Entered:* | 02/15/2024 | Exhibit List |
| | *Docket Text:* Exhibit List *for Evidentiary Hearing Scheduled for February 20, 2024* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Levine, Brian) | | |
| 150 | *Filed & Entered:* | 02/15/2024 | Witness List |
| | *Docket Text:* Witness List by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Levine, Brian) | | |
| 151 | *Filed & Entered:* | 02/20/2024 | Evidentiary Hearing |
| | *Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR EVIDENTIARY HEARING. Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev, Jamie Scott Felsen. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hyland Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): **Excused**. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight | | |

Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Brian M. Levine. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): **Excused**. Counsel For Defendants (Flushing Bank): **Excused**) Counsel For Defendant (Libertas Funding LLC): **Excused**. Counsel For Defendants (J.P. Morgan Chase Bank, N.A.): **Excused**. Court Reporter: Paul Lombardi. Evidentiary Hearing held on 2/20/2024 at 1:00 PM. Parties' arguments were heard. Witnesses for both parties were called and sworn; testimony given. Parties rested. Exhibits were entered into evidence. The Court directed the parties to order the transcript from today's Evidentiary Hearing. On or before **March 22, 2024**, the parties are directed to file any post hearing submissions and describe the impact on the preliminary injunction order entered into by Judge Orelia E. Merchant (ECF No. [55]). (Court Reporter Paul Lombardi.) (DF)

| | | | |
|---|---|---|---|
| 163 | *Filed:*<br>*Entered:* | 02/20/2024<br>04/01/2024 | Exhibit List |
| | *Docket Text:* Exhibit and Witness List from Evidentiary Hearing held on February 20, 2024. (DF) | | |
| 152 | *Filed & Entered:*<br>*Terminated:* | 02/28/2024<br>05/08/2024 | Motion for Contempt |
| | *Docket Text:* Letter MOTION for Contempt by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Anthony Deo in Support, # (2) Exhibit A - Photographs of the 215 Northern Boulevard Location, # (3) Exhibit B - Selling Facility Search Results (Peak), # (4) Exhibit C - Selling Facility Search Results (Superb), # (5) Exhibit D - Wholesale License List for Nassau County, # (6) Exhibit E - Retail License List (Letters S & T), # (7) Exhibit F - VerifiNY Pages, # (8) Exhibit G - Superb Injuncted Vehicle Search Results, # (9) Exhibit H - Deo Vehicle Search Results) (Levine, Brian) | | |
| | *Filed & Entered:* | 02/29/2024 | Order |
| | *Docket Text:* ORDER. The Court is in receipt of the Deo Defendants' motion for contempt against the Superb Plaintiffs (ECF No. [152]). Any opposition to the motion shall be filed on or before **March 8, 2024** and any replies shall be filed on or before **March 15, 2024**. So Ordered by Magistrate Judge James M. Wicks on 2/29/2024. (HM) | | |
| 153 | *Filed & Entered:*<br>*Terminated:* | 03/01/2024<br>03/03/2024 | Motion for Extension of Time to File Response/Reply |
| | *Docket Text:* Letter MOTION for Extension of Time to File Response/Reply as to Order, by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| | *Filed & Entered:* | 03/03/2024 | Order on Motion for Extension of Time to File Response/Reply |
| | *Docket Text:* ORDER granting [153] Motion for Extension of Time to File Response/Reply. In light of the representations made in (ECF No. [153]): (1) Plaintiffs shall have until **March 18, 2024** to meet and confer with Defendants regarding the motion for contempt and file an opposition within that time if necessary. Any replies shall be filed on or before **March 25, 2024**. (2) Plaintiffs shall serve any opposition to the remaining motions to dismiss on or before **March 29, 2024**. Any replies must be served on or before **April 19, 2024**. The parties are to bundle file their respective papers on ECF on April 19, 2024 and are to arrange for courtesy copies of the served papers to be sent to Chambers as they are served upon each opposing party. So Ordered by Magistrate Judge James M. Wicks on 3/3/2024. (HM) Modified on 3/4/2024 to edit docket entry text (DF). | | |
| 154 | *Filed & Entered:* | 03/18/2024 | Response in Opposition to Motion |

| | | | |
|---|---|---|---|
| | *Docket Text:* RESPONSE in Opposition re [152] Letter MOTION for Contempt filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit - Transcript of Proceedings Held on September 14, 2023) (Kataev, Emanuel) | | |
| 155 | *Filed & Entered:* | 03/18/2024 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [152] Letter MOTION for Contempt *of Bruce Novicky* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - proof that vehicles were returned to Superb) (Kataev, Emanuel) | | |
| 156 | *Filed & Entered:* | 03/22/2024 | Proposed Findings of Fact |
| | *Docket Text:* Proposed Findings of Fact by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Exhibit Ex A - Transcript from February 20, 2024 Evidentiary Hearing) (Levine, Brian) | | |
| 157 | *Filed & Entered:* | 03/22/2024 | Proposed Findings of Fact |
| | *Docket Text:* Proposed Findings of Fact by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Declaration, # (2) Exhibit A, # (3) Exhibit B, # (4) Exhibit C, # (5) Exhibit D, # (6) Exhibit E, # (7) Exhibit F, # (8) Exhibit G, # (9) Exhibit H, # (10) Exhibit I, # (11) Exhibit J, # (12) Exhibit K, # (13) Exhibit L, # (14) Exhibit M, # (15) Declaration) (Felsen, Jamie) | | |
| 158 | *Filed & Entered:* | 03/25/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support *of Letter Motion for Contempt* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration Reply Declaration of Brian M. Levine, Esq., # (2) Exhibit A - Certified DMV Records, # (3) Exhibit B - Organized DMV Records with Plaintiffs' Alleged Supplemental Assignments) (Levine, Brian) | | |
| 159 | *Filed & Entered:* | 03/25/2024 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [152] Letter MOTION for Contempt *supplemental response with request for leave to submit same* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 160 | *Filed & Entered:*<br>*Terminated:* | 03/28/2024<br>03/29/2024 | Motion for Leave to File Excess Pages |
| | *Docket Text:* MOTION for Leave to File Excess Pages by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| 161 | *Filed & Entered:* | 03/28/2024 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [160] MOTION for Leave to File Excess Pages filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Levine, Brian) | | |
| | *Filed & Entered:* | 03/29/2024 | Order on Motion for Leave to File Excess Pages |

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER granting [160] Motion for Leave to File Excess Pages. The Plaintiffs' request to file up to five (5) excess pages for their memorandum of law in opposition to the four (4) sets of motions to dismiss filed by all Defendants is **granted**. So Ordered by Magistrate Judge James M. Wicks on 3/29/2024. (HM) | | |
| 162 | *Filed & Entered:* | 03/29/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support re [160] MOTION for Leave to File Excess Pages filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| 164 | *Filed & Entered:*<br>*Terminated:* | 04/02/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |
| | *Docket Text:* Fully Briefed MOTION to Dismiss for Failure to State a Claim by Libertas Funding LLC. (Attachments: # (1) Memorandum in Support, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Certification of Bonnie R. Golub, Esquire, # (5) Proposed Order, # (6) Certificate of Service) (Golub, Bonnie) | | |
| | *Filed & Entered:* | 04/03/2024 | Scheduling Order |
| | *Docket Text:* ORDER. In-person Oral Argument on the Defendants' motions to dismiss and the respective oppositions shall take place on **June 10, 2024 at 3:00 PM in Courtroom 1020** before the undersigned in the Central Islip Courthouse. So Ordered by Magistrate Judge James M. Wicks on 4/3/2024. (HM) | | |
| 165 | *Filed & Entered:*<br>*Terminated:* | 04/05/2024<br>04/10/2024 | Motion for Extension of Time to File Response/Reply |
| | *Docket Text:* Letter MOTION for Extension of Time to File Response/Reply *as to Order* by Flushing Bank. (Ronneburger, Ariel) | | |
| 166 | *Filed & Entered:*<br>*Terminated:* | 04/08/2024<br>04/11/2024 | Motion to Adjourn Conference |
| | *Docket Text:* MOTION to Adjourn Conference by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| | *Filed & Entered:* | 04/10/2024 | Order on Motion for Extension of Time to File Response/Reply |
| | *Docket Text:* ORDER granting [165] Motion for Extension of Time to File Response/Reply. The parties' briefing schedule on the motions for leave to amend the Complaint is set forth as follows: (1) Any opposition to the second cross-motion for leave to amend and any replies in support of the motion to dismiss shall be served on or before **April 30, 2024**; (2) Plaintiffs' reply to the first motion for leave to amend shall also be served on **April 30, 2024**; (3) Plaintiffs' reply to the second cross-motion for leave to amend shall be served on or before **May 13, 2024**; and (4) all motion papers shall be electronically bundle filed on or before **May 14, 2024**. So Ordered by Magistrate Judge James M. Wicks on 4/10/2024. (HM) | | |
| | *Filed & Entered:* | 04/11/2024 | Order on Motion to Adjourn Conference |
| | *Docket Text:* ORDER granting [166] Motion to Adjourn Conference. The Oral Argument originally scheduled for June 10, 2024 has been **RESCHEDULED** for **June 21, 2024 at 12:00 PM in Courtroom 1020 in the Central Islip Courthouse** before the undersigned. So Ordered by Magistrate Judge James M. Wicks on 4/11/2024. (HM) Modified on 4/11/2024 (DF). | | |
| 167 | *Filed & Entered:*<br>*Terminated:* | 04/30/2024<br>05/01/2024 | Motion for Leave to File Document |
| | *Docket Text:* Letter MOTION for Leave to File Document *in excess of the word count limit for Plaintiffs' reply in further support of their motion for leave to amend the pleadings vis-a-vis Defendant Flushing Bank's motion to dismiss* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island | | |

| | Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
|---|---|---|---|
| 168 | *Filed & Entered:* | 04/30/2024 | Motion to Dismiss for Failure to State a Claim |
| | *Terminated:* | 03/21/2025 | |
| | *Docket Text:* MOTION to Dismiss for Failure to State a Claim by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) | | |
| 169 | *Filed & Entered:* | 04/30/2024 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [168] MOTION to Dismiss for Failure to State a Claim filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Attachments: # (1) Exhibit First Amended Complaint, # (2) Exhibit JLC's Notice of Appearance, # (3) Exhibit JLC's Pre Motion Letter, # (4) Exhibit Judge Wick's Order, # (5) Exhibit Declaration of Thomas Jones, CPA) (Lentinello, John) | | |
| 170 | *Filed & Entered:* | 04/30/2024 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [168] MOTION to Dismiss for Failure to State a Claim *of Thomas Jones, CPA* filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Attachments: # (1) Exhibit Plaintiff's First Amended Complaint, # (2) Exhibit Email from Kendra Kernizant, # (3) Exhibit 7.7.2023 Email from JLC, # (4) Exhibit 7.13.2023 Email chain from JLC, # (5) Exhibit December 2022 financial figures for Superb, # (6) Exhibit Invoices sent to Superb Motors) (Lentinello, John) | | |
| 171 | *Filed & Entered:* | 04/30/2024 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [168] MOTION to Dismiss for Failure to State a Claim filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) | | |
| | *Filed & Entered:* | 05/01/2024 | Order on Motion for Leave to File |
| | *Docket Text:* ORDER granting [167] Motion for Leave to File. Plaintiffs' reply shall not exceed 3,600 words. So Ordered by Magistrate Judge James M. Wicks on 5/1/2024. (HM) | | |
| | *Filed & Entered:* | 05/06/2024 | Terminate Deadlines and Hearings |
| | *Docket Text:* ORDER. The Status Conference scheduled for **tomorrow, May 7, 2024** is <u>CANCELLED</u>. On or before **June 1, 2024**, the parties are to submit a joint status report outlining the status of discovery. So Ordered by Magistrate Judge James M. Wicks on 5/6/2024. (HM) | | |
| 172 | *Filed:* | 05/08/2024 | Order on Motion for Order to Show Cause |
| | *Entered:* | 05/09/2024 | |
| | *Docket Text:* MEMORANDUM AND ORDER re [110] Motion for Order to Show Cause and re [152] Motion for Contempt. As set forth in the attached Memorandum and Order, Plaintiffs' motion for modification of the preliminary injunction (ECF No. [110]) is granted in part and denied in part and Defendants' motion for contempt (ECF No. [152]) is granted in part and denied in part as follows: **1. Plaintiffs' Motion for a Modification of the Preliminary Injunction Order** a. Evidentiary Hearing: Return 43 Vehicles to Superb: *Denied* b. Sell the *Superb* Injuncted Vehicles and Retain Proceeds: *Granted* c. Return Deo Vehicles: *Denied* d. Require Deo's Cooperation in Winding Up: *Granted* e. Lifting the Injunction on the Other Vehicles: *Denied* **2. Defendants' Motion for Contempt** a. Finding Plaintiffs in Contempt: *Denied* b. Returning the Superb Vehicles: *Denied as Moot* c. Delivering Titles of the Superb Vehicles to a Court-Appointed Third-Party: *Denied* d. Directing Plaintiffs to: i. Store the Vehicles in an Independent Storage Unit: *Denied* ii. File Proof of Insurance: *Granted* iii. Provide Date Stamped Odometer Reading Photos: *Granted* e. Awarding Costs, Fees, and Monetary Sanctions: *Denied*. So Ordered by Magistrate Judge James M. Wicks on 5/8/2024. (DF) | | |
| 173 | *Filed & Entered:* | 05/11/2024 | Motion to Adjourn Conference |
| | *Terminated:* | 05/13/2024 | |

*Docket Text:* Consent MOTION to Adjourn Conference *Oral Argument Scheduled for June 21, 2024* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC. (Ruderman, Jeffrey)

| | |
|---|---|
| *Filed & Entered:* | 05/13/2024 | Order on Motion to Adjourn Conference |

*Docket Text:* ORDER granting [173] Motion to Adjourn Conference. In light of the representations in ECF No. [173]), the in-person Oral Argument originally set for June 21, 2024 has been **RESCHEDULED** for **July 10, 2024 at 10:00 AM in Courtroom 1020** before the undersigned. So Ordered by Magistrate Judge James M. Wicks on 5/13/2024. (HM)

| | | | |
|---|---|---|---|
| 174 | *Filed & Entered:*<br>*Terminated:* | 05/13/2024<br>05/14/2024 | Motion for Leave to File Document |

*Docket Text:* Letter MOTION for Leave to File Document *in excess of the word count limit for Plaintiffs' reply memorandum of law in further support of their cross-motion for leave to file amended pleadings vis-a-vis the remaining Defendants' motions to dismiss* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | |
|---|---|
| *Filed & Entered:* | 05/14/2024 | Order on Motion for Leave to File |

*Docket Text:* ORDER granting [174] Motion for Leave to File. Plaintiffs' reply memorandum in further support of their cross-motion for leave to amend the pleadings shall not exceed **10,000 words**. So Ordered by Magistrate Judge James M. Wicks on 5/14/2024. (HM)

| | | | |
|---|---|---|---|
| 175 | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |

*Docket Text:* MOTION to Dismiss for Failure to State a Claim by Flushing Bank. (Attachments: # (1) Declaration of Ariel Ronneburger, # (2) Exhibit A - Amended Complaint, # (3) Memorandum in Support) (Ronneburger, Ariel)

| | | | |
|---|---|---|---|
| 176 | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |

*Docket Text:* MOTION to Dismiss for Failure to State a Claim by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Memorandum in Support in Support of Motion to Dismiss, # (2) Declaration of Brian M. Levine, Esq., # (3) Exhibit A) (Levine, Brian)

| | | | |
|---|---|---|---|
| 177 | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |

*Docket Text:* MOTION to Dismiss for Failure to State a Claim by J.P. Morgan Chase Bank, N.A.. (Attachments: # (1) Memorandum in Support, # (2) Declaration of Anthony C. Valenziano, Esq., # (3) Exhibit A to Valenziano Certification (Plaintiff's First Amended Complaint), # (4) Proposed Order) (Valenziano, Anthony)

| | | | |
|---|---|---|---|
| 178 | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion for Leave to File Document |

*Docket Text:* Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto

LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| <u>179</u> | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |

*Docket Text:* MEMORANDUM in Opposition re [175] MOTION to Dismiss for Failure to State a Claim *by Flushing Bank*, MEMORANDUM in Support re [178] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| <u>180</u> | *Filed & Entered:* | 05/14/2024 | Affidavit in Support of Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [178] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Plaintiffs' Proposed Second Amended Complaint in red-line) (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| <u>181</u> | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion for Leave to File Document |

*Docket Text:* Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| <u>182</u> | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |

*Docket Text:* MEMORANDUM in Opposition re [164] Fully Briefed MOTION to Dismiss for Failure to State a Claim , [168] MOTION to Dismiss for Failure to State a Claim , [177] MOTION to Dismiss for Failure to State a Claim , [176] MOTION to Dismiss for Failure to State a Claim *by remaining Defendants*, MEMORANDUM in Support re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| <u>183</u> | *Filed & Entered:* | 05/14/2024 | Affidavit in Opposition to Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [164] Fully Briefed MOTION to Dismiss for Failure to State a Claim , [176] MOTION to Dismiss for Failure to State a Claim , [168] MOTION to Dismiss for Failure to State a Claim , [177] MOTION to Dismiss for Failure to State a Claim *by remaining Defendants*, AFFIDAVIT/DECLARATION in Support re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto

LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Plaintiffs' Proposed Third Amended Complaint ("TAC"), # (2) Exhibit B - Redline of Plaintiffs' First Amended Complaint & TAC, # (3) Exhibit C - Redline of Plaintiffs' Second Amended Complaint & TAC) (Kataev, Emanuel)

| 184 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [178] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* filed by Flushing Bank. (Ronneburger, Ariel)

| 185 | *Filed & Entered:* | 05/14/2024 | Affidavit in Opposition to Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by Flushing Bank. (Attachments: # (1) Exhibit A - Flushing Bank's Memorandum of Law in Support of its Motion to Dismiss, # (2) Exhibit B - Flushing Bank's Memorandum of Law in Further Support of its Motion to Dismiss First Amended Complaint and in Opposition to Plaintiff's Cross-Motion to Amended their First Amended Complaint) (Ronneburger, Ariel)

| 186 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by Flushing Bank. (Ronneburger, Ariel)

| 187 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss*, [182] Memorandum in Opposition,,,, Memorandum in Support,,, [164] Fully Briefed MOTION to Dismiss for Failure to State a Claim *Opposition of Defendant Libertas Funding LLC to Plaintiffs' Cross Motion for Leave to Further Amend Complaint* filed by Libertas Funding LLC. (Attachments: # (1) Proposed Order) (Golub, Bonnie)

| 188 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [183] Affidavit in Opposition to Motion,,,,,, Affidavit in Support of Motion,,,,, [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss*, [182] Memorandum in Opposition,,,, Memorandum in Support,,, [176] MOTION to Dismiss for Failure to State a Claim , MEMORANDUM in Support re [183] Affidavit in Opposition to Motion,,,,,, Affidavit in Support of Motion,,,,, [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss*, [182] Memorandum in Opposition,,,, Memorandum in Support,,, [176] MOTION to Dismiss for Failure to State a Claim filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Levine, Brian)

| 189 | *Filed & Entered:* | 05/14/2024 | Reply in Support |
|---|---|---|---|

*Docket Text:* REPLY in Support re [177] MOTION to Dismiss for Failure to State a Claim filed by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony)

| 190 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | *Docket Text:* MEMORANDUM in Opposition re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony) | | |
| 191 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
| | *Docket Text:* MEMORANDUM in Opposition re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) | | |
| 192 | *Filed & Entered:* | 05/14/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support re [168] MOTION to Dismiss for Failure to State a Claim filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) | | |
| 193 | *Filed & Entered:* | 05/14/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support re [178] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 194 | *Filed & Entered:* | 05/14/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 195 | *Filed & Entered:*<br>*Terminated:* | 05/20/2024<br>05/21/2024 | Motion to Adjourn Conference |
| | *Docket Text:* MOTION to Adjourn Conference by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| | *Filed & Entered:* | 05/21/2024 | Order on Motion to Adjourn Conference |
| | *Docket Text:* ORDER granting [195] Motion to Adjourn Conference. In light of the representations in ECF No. [195], the oral argument scheduled for July 10, 2024 is **ADJOURNED** *sine die*. So Ordered by Magistrate Judge James M. Wicks on 5/21/2024. (HM) | | |
| 196 | *Filed & Entered:*<br>*Terminated:* | 06/02/2024<br>06/03/2024 | Motion for Protective Order |
| | *Docket Text:* MOTION for Protective Order: STATUS REPORT by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit 1) (Felsen, Jamie) Modified on 6/3/2024 to change Event Type to Motion for Protective Order (DF). | | |
| 197 | *Filed & Entered:* | 06/03/2024 | Order on Motion for Protective Order |
| | *Docket Text:* ORDER granting [196] Motion for Confidentiality Order. The Confidentiality Order is So Ordered. Please see attachment for further details. So Ordered by Magistrate Judge James M. Wicks on 6/3/2024. (HM) | | |
| 198 | *Filed & Entered:*<br>*Terminated:* | 09/16/2024<br>09/25/2024 | Motion for Extension of Time to Complete Discovery |

*Docket Text:* MOTION for Extension of Time to Complete Discovery by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| *Filed & Entered:* | 09/17/2024 | Scheduling Order |
|---|---|---|

*Docket Text:* ORDER. In light of the representations in the recently filed motion (ECF No. [198]), a Status Conference has been scheduled for **September 24, 2024 at 2:00 PM via the Court's Zoom** before the undersigned. A Zoom link will be sent to counsel closer to the conference date. So Ordered by Magistrate Judge James M. Wicks on 9/17/2024. (HM)

| *Filed & Entered:* | 09/18/2024 | Order |
|---|---|---|

*Docket Text:* ORDER: In light of the pending Motion for Extension of Time to Complete Discovery and the Status Conference scheduled for September 24, 2024 at 2:00 PM before the undersigned, the Final Pretrial Conference scheduled for September 30, 2024 at 10:00 AM is hereby **adjourned** *sine die*. So Ordered by Magistrate Judge James M. Wicks on 9/18/2024. (DF)

| 199 | *Filed:* *Entered:* | 09/24/2024 09/25/2024 | Status Conference |
|---|---|---|---|

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR STATUS CONFERENCE: Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Jamie Scott Felsen, Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hyland Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Jeffrey C. Ruderman. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Brian M. Levine. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): John Anthony Lentinello. Counsel for Defendants (Flushing Bank): Ariel E. Ronneburger. Counsel for Defendant (Libertas Funding LLC): Bonnie Rae Golub. Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Anthony Carmine Valenziano. Status Conference held on September 24, 2024 at 2:00 PM. All discovery dates and deadlines are held in abeyance pending the next Status Conference. A Status Conference has been scheduled for **November 4, 2024 at 3:00 PM** via the Court's Video Zoom. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks Courtroom Deputy at (631) 712-5625. **Parties shall comply with Judge Wicks' Individual Rules regarding Expectations for Remote Appearances (Rule §1E)**. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #2:02-2:11 (Video).) (DF)

| *Filed & Entered:* | 09/25/2024 | Order on Motion for Extension of Time to Complete Discovery |
|---|---|---|

*Docket Text:* ORDER. In light of the undersigned's holding all dates and deadlines in abeyance pending the next Status Conference (ECF No. [199]), the Motion for Extension of Time to Complete Discovery (ECF No. [198]) is **granted**. So Ordered by Magistrate Judge James M. Wicks on 9/25/2024. (HM)

| *Filed & Entered:* | 09/27/2024 | Order on Motion to Amend/Correct/Supplement |
|---|---|---|

*Docket Text:* ORDER denying [200] Motion to Amend/Correct/Supplement. Plaintiffs' motion is denied for the following reasons: (1) the motion is beyond the Court's imposed discovery schedule deadline for motions for leave to amend (*see* ECF No. [142]); (2) the issue raised in the filed motion was never presented in the recent status

| | | | |
|---|---|---|---|
| | conference held on September 24, 2024; (3) the motion does not meet the requirements of Fed R. Civ. P. 15 and 16; and (4) there are pending motions for leave to amend the complaint, so the request is deemed premature. So Ordered by Magistrate Judge James M. Wicks on 9/27/2024. (HM) | | |

| | | | |
|---|---|---|---|
| [200](#) | *Filed & Entered:* <br> *Terminated:* | 09/27/2024 <br> 09/27/2024 | Motion to Amend/Correct/Supplement |
| | *Docket Text:* Letter MOTION to Amend/Correct/Supplement *Plaintiffs' complaint* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit - Plaintiffs' proposed Fourth Amended Complaint) (Kataev, Emanuel) | | |
| [201](#) | *Filed & Entered:* | 10/01/2024 | Notice of Related Case |
| | *Docket Text:* Notice of Related Case: **The Civil Cover Sheet filed in civil action 24cv6903(AYS) indicates this is a related case.** (LJ) | | |
| [202](#) | *Filed & Entered:* <br> *Terminated:* | 10/09/2024 <br> 03/21/2025 | Motion for Contempt |
| | *Docket Text:* Letter MOTION for Contempt *and Modification of the Preliminary Injunction* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Anthony Deo in Support, # (2) Exhibit Exhibit A - Photographs of GCM Lot, # (3) Exhibit Exhibit B - Certificate of Insurance, # (4) Declaration of Brian M. Levine, Esq., # (5) Exhibit Exhibit C - List of Vehicles from So-Ordered Stipulation) (Levine, Brian) | | |
| [203](#) | *Filed & Entered:* | 10/15/2024 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction with cross-request for consolidation and sanctions against the Deo Defendants for evading the disqualification Order as well as engaging in vexatious litigation* filed by All Plaintiffs. (Kataev, Emanuel) | | |
| [204](#) | *Filed & Entered:* | 10/15/2024 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - NMAC UCC Financing Statement, # (2) Exhibit B - Defendant Anthony Deo's fraudulent March 1, 2023 financial statement) (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 10/16/2024 | Scheduling Order |
| | *Docket Text:* ORDER. The parties are directed to appear before the undersigned for an in-person Oral Argument on the Motion for Contempt at ECF No. [202] on **November 1, 2024 at 1:00 PM** in Courtroom 1020. Defendants are directed to file any Reply to the Response in Opposition at ECF No. [203] on or before **October 25, 2024**. So Ordered by Magistrate Judge James M. Wicks on 10/16/2024. (DN) | | |
| | *Filed & Entered:* | 10/16/2024 | Order |
| | *Docket Text:* ORDER. Any opposition to the Motion to Consolidate Cases at ECF No. 22 in Case No. 2:24-cv-06903-JMW *Deo et al v. Baron et al* must be filed on or before **October 30, 2024**. So Ordered by Magistrate Judge James M. Wicks on 10/16/2024. (DN) | | |
| [205](#) | *Filed & Entered:* | 10/22/2024 | Letter |
| | *Docket Text:* Letter *Requesting Flushing Bank be Excused from Attending the In-Person Oral Argument Scheduled for November 1, 2024* by Flushing Bank (Ronneburger, Ariel) | | |
| [206](#) | *Filed & Entered:* | 10/22/2024 | Letter |

| | | | |
|---|---|---|---|
| | *Docket Text:* Letter *Requesting Thomas Jones and JLC be excused from oral argument* by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP (Lentinello, John) | | |
| 207 | *Filed & Entered:* | 10/22/2024 | Letter |
| | *Docket Text:* Letter *Requesting Libertas Funding LLC be Excused from Attending the In-Person Oral Argument Scheduled for November 1, 2024* by Libertas Funding LLC (Golub, Bonnie) | | |
| 208 | *Filed & Entered:* | 10/23/2024 | Letter |
| | *Docket Text:* Letter *Requesting JPMorgan Chase Bank, NA be Excused from Attending In-Person Oral Argument Scheduled for November 1, 2024* by J.P. Morgan Chase Bank, N.A. (Valenziano, Anthony) | | |
| 209 | *Filed & Entered:* | 10/23/2024 | Letter |
| | *Docket Text:* Letter *request excusing appearance at November 1, 2024 oral argument* by 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, Marc Merckling, 189 Sunrise Auto LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hylan Blvd Auto LLC (Ruderman, Jeffrey) | | |
| | *Filed & Entered:* | 10/25/2024 | Terminate Deadlines and Hearings |
| | *Docket Text:* ORDER. The in-person Oral Argument on the Motion for Contempt at ECF No. [202] on November 1, 2024 at 1:00 PM in Courtroom 1020 is hereby **RESCHEDULED** for **December 13, 2024 at 12:00 PM**. The deadline in which Defendants were directed to file any Reply to the Response in Opposition at ECF No. [203], today, October 25, 2024, otherwise remains in place. The parties are directed to submit courtesy copies of the Motion papers to Chambers by November 8, 2024. So Ordered by Magistrate Judge James M. Wicks on 10/25/2024. (DN) | | |
| | *Filed & Entered:* | 10/25/2024 | Order |
| | *Docket Text:* ORDER re [205], [206], [207], [208], and [209] Letters Requesting to Be Excused. Defendants Flushing Bank, Thomas Jones, CPA, Jones, Little & Co., CPA's, LLP, Libertas Funding LLC, JPMorgan Chase Bank, N.A, and Island Auto Plaintiffs are hereby excused from attending the in-person Oral Argument scheduled for December 13, 2024 at 12:00 PM on the Motion for Contempt at ECF No. 202. So Ordered by Magistrate Judge James M. Wicks on 10/25/2024. (DN) | | |
| 210 | *Filed & Entered:* | 10/25/2024 | Reply to Response to Motion |
| | *Docket Text:* REPLY to Response to Motion re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction* , AFFIDAVIT/DECLARATION in Support re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction* filed by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Anthony Deo in Reply) (Levine, Brian) | | |
| 211 | *Filed & Entered:*<br>*Terminated:* | 10/27/2024<br>10/28/2024 | Motion for Leave to File Document |
| | *Docket Text:* Letter MOTION for Leave to File Document *consisting of sur-reply in opposition to the Deo Defendants' letter motion for contempt* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 10/28/2024 | Order on Motion for Leave to File |
| | *Docket Text:* ORDER denying [211] Motion for Leave to File. The Superb Plaintiffs' request to file a sur-reply to the Deo Defendants' letter reply in further support of their Motion for Contempt is **denied**, as its contents would not change the result in this case. That sur-reply repeats an argument "already present in [the Superb Plaintiffs'] opposition [letter]." *See* ECF No. 203; *Convergen Energy LLC v. Brooks*, 2020 WL 4500184, at *3 (S.D.N.Y. | | |

Aug. 5, 2020), *reconsideration denied*, 2020 WL 5549039 (S.D.N.Y. Sept. 16, 2020); *see also Kapiti v. Kelly*, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit sur-replies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs."). So Ordered by Magistrate Judge James M. Wicks on 10/28/2024. (DN)

| 212 | *Filed & Entered:* | 10/29/2024 | Reply in Opposition |

*Docket Text:* REPLY in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction*, [203] Response in Opposition to Motion, *Opposition to Cross-Letter MOTION for Consolidation* filed by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp., DLA Capital Partners Inc.. (Levine, Brian)

| | *Filed & Entered:* | 11/01/2024 | Order |

*Docket Text:* ORDER. The Status Conference scheduled for November 4, 2024 at 3:00 PM via the Court's Video Zoom is hereby **cancelled**. All discovery dates and deadlines are held in abeyance pending the undersigned's issuance of a decision on the pending motions to dismiss in this case. So Ordered by Magistrate Judge James M. Wicks on 11/1/2024. (DN)

| | *Filed & Entered:* | 11/28/2024 | Terminate Deadlines and Hearings |

*Docket Text:* ORDER. Due to a conflict in the Court's calendar, the in-person Oral Argument on the Motion for Contempt at ECF No. [202] on December 13, 2024 at 12:00 PM in Courtroom 1020 is hereby **RESCHEDULED** for **December 20, 2024 at 12:00 PM**. So Ordered by Magistrate Judge James M. Wicks on 11/28/2024. (DN)

| 213 | *Filed & Entered:* | 12/03/2024 | Motion to Adjourn Conference |
| | *Terminated:* | 12/06/2024 | |

*Docket Text:* Consent MOTION to Adjourn Conference *currently scheduled for Friday, December 20, 2024* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | *Filed & Entered:* | 12/06/2024 | Order on Motion to Adjourn Conference |

*Docket Text:* ORDER granting [213] Motion to Adjourn Conference. The in-person Oral Argument on the Motion for Contempt at ECF No. [202] is hereby **RESCHEDULED** for **January 10, 2025 at 12:30 PM** in Courtroom 1020 before the undersigned. So Ordered by Magistrate Judge James M. Wicks on 12/6/2024. (DN)

| 214 | *Filed & Entered:* | 01/10/2025 | Motion Hearing |

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR MOTION HEARING: Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Appearance Excused. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Brian M. Levine. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Appearance Excused. Counsel for Defendants (Flushing Bank): Appearance Excused. Counsel for Defendants (Libertas Funding LLC): Appearance Excused. Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Appearance Excused. Oral Argument held on 01/10/2025 at 12:30 PM regarding Motion for Contempt and Modification of the Preliminary Injunction (ECF No. [202]) and Cross Motion for Consolidation and Sanctions (ECF No. [203]). Parties' arguments were heard. The decision as to the

| | | | |
|---|---|---|---|
| | Motion for Contempt at ECF No. [202] was reserved. The Court will issue a written decision. Interim rulings were made as to the remaining Motions, as specified in the attached Order at ECF No. [215]. (FTR Log #12:35-1:03 (FTR).) (DF) | | |
| 215 | *Filed & Entered:* | 01/10/2025 | Order |
| | *Docket Text:* ORDER re: Interim Rulings: Please See attached Order for Further Details. So Ordered by Magistrate Judge James M. Wicks on 1/10/2025. (DF) | | |
| 216 | *Filed & Entered:* | 01/13/2025 | Declaration |
| | *Docket Text:* DECLARATION re [215] Order *in compliance with this Court's Order dated January 10, 2025* by Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit B - insurance certificates) (Kataev, Emanuel) | | |
| 217 | *Filed & Entered:*<br>*Terminated:* | 01/17/2025<br>01/27/2025 | Motion to Amend/Correct/Supplement |
| | *Docket Text:* Letter MOTION to Amend/Correct/Supplement [215] Order by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Levine, Brian) | | |
| | *Filed & Entered:* | 01/20/2025 | Order |
| | *Docket Text:* ORDER re [217] Motion to Amend/Correct/Supplement. The Deo Defendants are directed to provide a Proposed Order to Plaintiffs' Counsel regarding the relocation of the Deo Injuncted Vehicles on or before January 22, 2025. The parties are directed to file a Joint Letter, on or before January 24, 2025, with the Proposed Order agreed upon by the parties. So Ordered by Magistrate Judge James M. Wicks on 1/20/2025. (DN) | | |
| 218 | *Filed & Entered:* | 01/23/2025 | Letter |
| | *Docket Text:* Letter *Joint Letter* by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp. (Attachments: # (1) Proposed Order) (Levine, Brian) | | |
| 219 | *Filed & Entered:* | 01/24/2025 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction submitted as a supplemental letter brief in accordance with this Court's Order dated January 10, 2025 (ECF Docket Entry 215)* filed by Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 220 | *Filed & Entered:* | 01/24/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction submitted as a supplemental declaration in accordance with this Court's Order dated January 10, 2025 (ECF Docket Entry 215)* filed by Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - First Amended and Restated Cross-Guaranty, Cross-Collateral, and Cross-Default Agreement, # (2) Exhibit B - Superb 2023 Bank Statements, # (3) Exhibit C - Correspondence with Superb and Deo dated December 5, 2022, # (4) Exhibit D - Summary of Financials, # (5) Exhibit E - Correspondence with NMAC and Spreadsheet regarding floored Superb Injuncted Vehicles, # (6) Exhibit F - Team Mitsubishi-Hartford September 2023 Bank Statement, # (7) Exhibit G - Volkswagen of Freehold September 2023 Bank Statement, # (8) Exhibit H - Proof of Payment & Titles for Deo Injuncted Vehicles, # (9) Exhibit I - Summary of Financial Status of Injuncted Vehicles, # (10) Exhibit J - Counterclaim against NMAC, # | | |

(11) Exhibit K - Correspondence with NMAC in April 2024, # (12) Exhibit L - Correspondence with NMAC in April & May 2024, # (13) Exhibit M - Possession and Surrender Agreement with NMAC, # (14) Exhibit N - Proof of Deo's Violations of Justice Gianelli's Injunction, # (15) Exhibit O - Proof of Payment by Superb for Deo Vehicles Sold in Violation of Justice Gianelli's Injunction, # (16) Exhibit P - Proof of Deo's Payment of Double-Floored Rolls Royce, # (17) Exhibit Q - Correspondence with NMAC in April 2023) (Kataev, Emanuel)

| 221 | Filed & Entered: | 01/24/2025 | Letter |
|---|---|---|---|
| | Docket Text: Letter *Brief on Issue of Encumbrances* by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp. (Levine, Brian) | | | |
| 222 | Filed & Entered: | 01/27/2025 | Order on Motion to Amend/Correct/Supplement |
| | Docket Text: ORDER granting [217] Motion to Amend/Correct/Supplement. See attached Order for further details. So Ordered by Magistrate Judge James M. Wicks on 1/27/2025. (DN) | | | |
| 223 | Filed & Entered:<br>Terminated: | 01/28/2025<br>01/29/2025 | Motion for Leave to File Document |
| | Docket Text: Letter MOTION for Leave to File Document *Supplemental Reply to Superb Plaintiffs' Supplemental Opposition* by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Levine, Brian) | | | |
| | Filed & Entered: | 01/29/2025 | Order on Motion for Leave to File |
| | Docket Text: ORDER granting [223] Motion for Leave to File. The Deo Defendants shall file their Supplemental Reply on or before February 5, 2025. So Ordered by Magistrate Judge James M. Wicks on 1/29/2025. (DN) | | | |
| 224 | Filed & Entered: | 02/05/2025 | Reply in Support |
| | Docket Text: REPLY in Support re [219] Response in Opposition to Motion, Order on Motion for Leave to File, [221] Letter, [220] Affidavit in Opposition to Motion,,,,,, filed by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Levine, Brian) | | | |
| 225 | Filed & Entered:<br>Terminated: | 02/07/2025<br>05/22/2025 | Motion for Contempt |
| | Docket Text: Third MOTION for Contempt by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Brian M. Levine, # (2) Exhibit A - Odometer Photographs) (Levine, Brian) | | | |
| | Filed & Entered: | 02/09/2025 | Order |
| | Docket Text: ORDER. Plaintiffs are directed to file any opposition to the Third Motion for Contempt at ECF No. 225 on or before **February 19, 2025**. So Ordered by Magistrate Judge James M. Wicks on 2/9/2025. (DN) | | | |
| 226 | Filed & Entered:<br>Terminated: | 02/18/2025<br>02/19/2025 | Motion for Extension of Time to File Document |
| | Docket Text: Consent MOTION for Extension of Time to File *response in opposition to Deo Defendants' third letter motion for contempt* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, | | | |

| | Emanuel) | | |
|---|---|---|---|
| | *Filed & Entered:* | 02/19/2025 | Order on Motion for Extension of Time to File |
| | *Docket Text:* ORDER granting [226] Motion for Extension of Time to File. Plaintiffs are directed to file any opposition to the Third Motion for Contempt at ECF No. 225 on or before **March 5, 2025**. There will be no further extensions. So Ordered by Magistrate Judge James M. Wicks on 2/19/2025. (DN) | | |
| 227 | *Filed & Entered:* | 03/02/2025 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [225] Third MOTION for Contempt filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 228 | *Filed & Entered:* | 03/02/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [225] Third MOTION for Contempt filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - September and October 2023 email correspondence (business records), # (2) Exhibit B - 2016 Audi A6 documents, # (3) Exhibit C - 2016 Audi Q5 documents, # (4) Exhibit D - 2017 Rolls Royce Dawn documents, # (5) Exhibit E - 2019 Land Rover Range Rover documents, # (6) Exhibit F - 2023 Chevrolet Suburban documents, # (7) Exhibit G - 2020 Mercedes Benz GLE documents) (Kataev, Emanuel) | | |
| 229 | *Filed & Entered:* 03/18/2025<br>*Terminated:* 05/20/2025 | | Motion to Intervene |
| | *Docket Text:* MOTION to Intervene *and upon intervention vacating the injunction order dated September 29, 2023 and the order dated May 8, 2024 modifying the injunction and for related relief* by Nissan Motor Acceptance Company LLC. (Attachments: # (1) Declaration of Nicholas A Savino, # (2) Declaration of Gregory Brown (NMAC Declaration), # (3) Declaration of Robert Anthony Urrutia, # (4) Exh. 1 Wholesale Agreement, # (5) Exh. 2 Capital Loan Agreement, # (6) Exh. 3 Cross Collateralization Agreement, # (7) Exh. 4 Surrender Agreement, # (8) Memorandum of law in support of motion to intervene) (Savino, Nicholas) | | |
| | *Filed & Entered:* | 03/19/2025 | Order |
| | *Docket Text:* ORDER. Any opposition to the Motion to Intervene at ECF No. 229 is due on or before **April 2, 2025**. So Ordered by Magistrate Judge James M. Wicks on 3/19/2025. (DN) | | |
| 230 | *Filed & Entered:* | 03/21/2025 | Order on Motion to Dismiss for Failure to State a Claim |
| | *Docket Text:* OPINION AND ORDER re [164] Motion to Dismiss for Failure to State a Claim; re [168] Motion to Dismiss for Failure to State a Claim; re [175] Motion to Dismiss for Failure to State a Claim; re [176] Motion to Dismiss for Failure to State a Claim and re [177] Motion to Dismiss for Failure to State a Claim. As set forth in the attached Opinion and Order, the Deo Defendants' Motion to Dismiss (ECF No. [176]) is **GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed with prejudice: (a) Tortious Interference with Contracts, Business Relations, and Prospective Economic Advantage against the Deo Defendants;(b) Defend Trade Secrets Act Claims, including Misappropriation under the DTSA against the Deo Defendants; (c) Violation of New York Judiciary Law § 487 against Thomasson; (d) Piercing the Corporate Veil against Deo;(e) Violation of New York GBL § 349 against Deo; (f) Permanent Injunction against Deo; Libertas Funding (g) Declaratory Judgment against Deo (h) Contribution and Indemnification for Fraud, Breach of Fiduciary Duty, Breach of Loyalty and Conversion against Deo; and (i) Contribution and Indemnification for Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary Duty, Bready of Fiduciary Duty against Thomasson. (ii)the Bank Defendants' Motions to Dismiss (ECF Nos. [164], [175] and [177]) are **GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed with prejudice: (a) Permanent Injunction against Libertas Funding; (b) Plaintiffs' RICO Claims against Bank Defendants; (c) Conversion claims against the Bank Defendants; (d)Negligence and Unauthorized Payments against the Bank Defendants; (e) Drawee Liability against Chase Bank; (f)New York UCC §3-419 against the Bank Defendants; (iii) the CPA Defendants' Motions to Dismiss (ECF No. [168]) is **GRANTED**. The following claims are dismissed with prejudice: (a) Plaintiffs' RICO Claims against CPA Defendants; (b)Plaintiffs' Fraud Claims | | |

against Jones; and (c)Professional Malpractice against the CPA Defendants. (iv) Plaintiffs' Motions for Leave to Amend (ECF Nos. [178] and [181]) are **GRANTED** *in part* and **DENIED** *in part*, consistent with this Order. Plaintiffs are directed to file an Amended Complaint consistent with the rulings in the Order on or before April 4, 2025. So Ordered by Magistrate Judge James M. Wicks on 3/21/2025. (DF)

| 231 | *Filed:* | 03/21/2025 | Order on Motion for Contempt |
| | *Entered:* | 03/24/2025 | |

*Docket Text:* MEMORANDUM AND ORDER re [202] Motion for Contempt: As set forth in the attached Memorandum and Order, the Deo Defendants' Motion for Contempt (ECF No. [202]) is **GRANTED**. Accordingly, it is **HEREBY ORDERED** that Superb Plaintiffs are held in civil contempt for failing to comply with an express order of this Court. Based on the finding of civil contempt, the undersigned directs the parties to appear for an evidentiary hearing on **April 25, 2025 at 2:00 p.m.** in courtroom 1020 at 100 Federal Plaza, Central Islip, New York, pursuant to the Local Rule §83.6(b) of the United States District Courts for the Southern and Eastern District of New York, to assess the damages and remedies available to the Defendants for the violation of the preliminary injunction. Both parties are directed to file letter briefs addressing this sole issue on **April 11, 2025**. There will be no oppositions or replies unless ordered by the Court. So Ordered by Magistrate Judge James M. Wicks on 3/21/2025. (DF)

| 232 | *Filed & Entered:* | 03/24/2025 | Motion to Withdraw as Attorney |
| | *Terminated:* | 03/25/2025 | |

*Docket Text:* Letter MOTION to Withdraw as Attorney by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| | *Filed & Entered:* | 03/25/2025 | Order on Motion to Withdraw as Attorney |

*Docket Text:* ORDER: The Motion to Withdraw as Attorney [232] is **denied, *without prejudice and with leave to renew*.** Counsel for Plaintiffs' application fails to comply with Local Rule 1.4 of the United States District Court for the Southern and Eastern Districts of New York and, as such, the application is denied without prejudice and with leave to renew. Counsel for Plaintiffs is directed to file a motion conforming to Rule 1.4 on ECF on or before **March 28, 2025**. Opposition papers to this renewed application shall be filed on or before **April 4, 2025**. Counsel for Plaintiffs is directed to serve its client with a copy of this Order and file proof of service on ECF on or before **March 27, 2025**. So Ordered by Magistrate Judge James M. Wicks on 3/25/2025. (JAF)

| 233 | *Filed & Entered:* | 03/25/2025 | Motion to Withdraw as Attorney |
| | *Terminated:* | 04/07/2025 | |

*Docket Text:* MOTION to Withdraw as Attorney by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| 234 | *Filed & Entered:* | 03/25/2025 | Affidavit in Support of Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [233] MOTION to Withdraw as Attorney filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| 235 | *Filed & Entered:* | 03/25/2025 | Memorandum in Support |

*Docket Text:* MEMORANDUM in Support re [233] MOTION to Withdraw as Attorney filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| 236 | *Filed & Entered:* | 03/25/2025 | Certificate of Service |

*Docket Text:* CERTIFICATE OF SERVICE by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia re [235] Memorandum in Support, [233] MOTION to Withdraw as Attorney , [234] Affidavit in Support of Motion, Order on Motion to Withdraw as Attorney,,, (Felsen, Jamie)

| 237 | *Filed & Entered:* | 03/25/2025 | Letter |

| | | | |
|---|---|---|---|
| | *Docket Text:* Letter *to Honorable James M. Wicks Requesting Flushing Bank Be Excused from Attending the Evidentiary Hearing Scheduled for April 25, 2025* by Flushing Bank (Ronneburger, Ariel) | | |
| | *Filed & Entered:* | 03/26/2025 | Order |
| | *Docket Text:* ORDER granting [237] excusing Defendant Flushing Bank from attending the Evidentiary Hearing on April 25, 2025. So Ordered by Magistrate Judge James M. Wicks on 3/26/2025. (JAF) | | |
| 238 | *Filed & Entered:* | 03/28/2025 | Letter |
| | *Docket Text:* Letter *to the Honorable James M. Wicks Requesting Libertas Funding LLC be Excused from Attending the Hearing scheduled for April 25, 2025* by Libertas Funding LLC (Golub, Bonnie) | | |
| | *Filed & Entered:* | 03/29/2025 | Order |
| | *Docket Text:* ORDER granting [238] excusing Defendant Libertas Funding LLC from attending the Evidentiary Hearing on April 25, 2025. So Ordered by Magistrate Judge James M. Wicks on 3/29/2025. (JAF) | | |
| 239 | *Filed & Entered:* | 04/02/2025 | Memorandum in Opposition |
| | *Docket Text:* MEMORANDUM in Opposition re [229] MOTION to Intervene *and upon intervention vacating the injunction order dated September 29, 2023 and the order dated May 8, 2024 modifying the injunction and for related relief* , AFFIDAVIT/DECLARATION in Opposition re [229] MOTION to Intervene *and upon intervention vacating the injunction order dated September 29, 2023 and the order dated May 8, 2024 modifying the injunction and for related relief* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Brian M. Levine) (Levine, Brian) | | |
| 240 | *Filed & Entered:* | 04/03/2025 | Motion for Reconsideration |
| | *Docket Text:* Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fraud and malpractice claims against the CPA Defendants*, Letter MOTION for Extension of Time to File *complaint sine die pending the resolution of the instant motion* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 241 | *Filed & Entered:* | 04/03/2025 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [240] Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fLetter MOTION for Extension of Time to File complaint sine die pending the resolution of the instant motion filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - email produced by Deo Defendants, # (2) Exhibit B - financial statement produced by CPA Defendants, # (3) Exhibit C - email produced by CPA Defendants, # (4) Exhibit D - email produced by CPA Defendants, # (5) Exhibit E - email produced by CPA Defendants)* (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 04/04/2025 | Order |

*Docket Text:* ORDER. Any opposition to Plaintiffs' Motion for Reconsideration [240] must be filed **on or before April 11, 2025** . No reply papers are to be submitted unless the Court directs otherwise. So Ordered by Magistrate Judge James M. Wicks on 4/4/2025. (JAF)

| *Filed & Entered:* | 04/07/2025 | Order on Motion to Withdraw as Attorney |
|---|---|---|

*Docket Text:* ORDER granting [233] Motion to Withdraw as Attorney. Jamie Felsen and the firm of Milman Labuda Law Group PLLC is terminated for this matter as counsel for Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia. Courts in this District have granted motions to withdraw under similar circumstances. *See, e.g., Chase Bank USA, N.A. v. Allegro Law, LLC* , No. 08-CV-4039 (DRH) (WDW), 2011 WL 13302729, at *1 (E.D.N.Y. June 23, 2011) (finding that clients failure to pay legal fees constituted a basis for granting motion to withdraw) (collecting cases); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.* , 464 F. Supp. 2d 164, 166 (E.D.N.Y. 2006) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a satisfactory reason for withdrawal under Local Rule 1.4.") (collecting cases). Local Rule 1.4 provides that "[a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court" and that "[s]uch an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement." Here, counsel for Plaintiffs, the Milman Labuda Law Group PLLC ("MLLG") is requesting withdrawal as counsel of record due to Plaintiffs' inability to continue payment. (ECF No. 235.) MLLG has represented Plaintiffs alongside Sage Legal LLC since the commencement of this action, which remains as counsel of record (*Id.*) No opposition has been filed. In light of these circumstances, there is no likelihood of prejudice to Plaintiffs. Further, this Court finds that Counsel has complied with Local Rule 1.4. Jamie Felsen and MLLG are terminated as counsel of record in this matter. So Ordered by Magistrate Judge James M. Wicks on 4/7/2025. (JAF).

| *Filed & Entered:* | 04/09/2025 | Order on Motion to Stay |
|---|---|---|

*Docket Text:* ORDER denying in part Motion to Stay (ECF No. 243). The parties are directed to file letter briefs as ordered on or before 4/11/2025 (ECF No. 231). The letter briefs are a result of this court's ruling on Defendants' motion to compel filed at ECF No. 202. The Court notes that counsel's application to withdraw is based solely upon non-payment (NY Rule of Prof. Conduct 1.16(c)(5)), and not irreconcilable differences (NY Rule of Prof. Conduct 1.16(c)(7)). Without prejudging the motion to withdraw filed at ECF No. 242, the Court does note however that non-payment or failure to pay alone, without "deliberate disregard" of a fee arrangement, may not be sufficient for permissive withdrawal under the rules. See United States v. Parker, 439 F.3d 81 (2d Cir, 2006). The evidentiary hearing is adjourned sine die and will not take place on 4/25/2025. Furthermore, any opposition to the motion to withdraw filed at ECF No. 242 shall be filed on or before 4/18/2025. Counsel for Deo Defendants shall serve a copy of this Electronic Order upon his clients and file proof of service of same on ECF by 4/11/2025. So Ordered by Magistrate Judge James M. Wicks on 4/9/2025. (Wicks, James)

| 242 | *Filed & Entered:*<br>*Terminated:* | 04/09/2025<br>04/22/2025 | Motion to Withdraw as Attorney |
|---|---|---|---|

*Docket Text:* First MOTION to Withdraw as Attorney *of the Deo Defendants* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Memorandum in Support of Motion to be Relieved, # (2) Declaration of Brian M. Levine, # (3) Affidavit of Service of Motion to be Relieved) (Levine, Brian)

| 243 | *Filed & Entered:*<br>*Terminated:* | 04/09/2025<br>04/09/2025 | Motion to Stay |
|---|---|---|---|

*Docket Text:* Letter MOTION to Stay *the April 11, 2025 deadlines, and the Evidentiary Hearing scheduled for April 25, 2025,* Letter MOTION *for Extension of Time to File* letter briefs on damages and remedies, and opposition to Plaintiffs' motion for reconsideration by Dwight Blankenship, Car Buyers NYC Inc., Anthony

| | | | |
|---|---|---|---|
| | Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Levine, Brian) | | |
| 244 | *Filed & Entered:* | 04/09/2025 | Reply in Support |
| | *Docket Text:* REPLY in Support re [229] MOTION to Intervene *and upon intervention vacating the injunction order dated September 29, 2023 and the order dated May 8, 2024 modifying the injunction and for related relief /Reply memorandum of law in further support of motion to intervene* filed by Nissan Motor Acceptance Company LLC. (Savino, Nicholas) | | |
| 245 | *Filed & Entered:* | 04/10/2025 | Affidavit |
| | *Docket Text:* AFFIDAVIT/AFFIRMATION *Declaration of Service of 04/09/25 Text Only Order* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Levine, Brian) | | |
| 246 | *Filed & Entered:*<br>*Terminated:* | 04/10/2025<br>04/11/2025 | Motion to Stay |
| | *Docket Text:* Letter MOTION to Stay */Seeking Clarification of 4/9/25 Text Only Order* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Affidavit of Service) (Levine, Brian) | | |
| | *Filed & Entered:* | 04/11/2025 | Order on Motion to Stay |
| | *Docket Text:* ORDER granting [246] Motion to Stay. The date for any opposition to the motion for reconsideration filed at ECF No. 230 is adjourned sine die. The Court will set a new opposition date once the motion to withdraw is decided. So Ordered by Magistrate Judge James M. Wicks on 4/11/2025. (Wicks, James) | | |
| 247 | *Filed & Entered:* | 04/11/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [240] Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fLetter MOTION for Extension of Time to File complaint sine die pending the resolution of the instant motion* filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) | | |
| 248 | *Filed & Entered:* | 04/11/2025 | Memorandum in Opposition |
| | *Docket Text:* MEMORANDUM in Opposition re [247] Affidavit in Opposition to Motion,, *PLAINTIFFS MOTION FOR REARGUMENT/RECONSIDERATION* filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) | | |
| 249 | *Filed & Entered:* | 04/11/2025 | Letter |
| | *Docket Text:* Letter *Brief on Available Damages and Remedies* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Levine, Brian) | | |
| 250 | *Filed & Entered:* | 04/11/2025 | Response to Motion |

| | | | |
|---|---|---|---|
| | *Docket Text:* RESPONSE to Motion re [225] Third MOTION for Contempt *as to contempt sanctions pursuant to this Court's Order dated March 21, 2025 (ECF Docket Entry 231)* filed by Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 251 | *Filed & Entered:* | 04/11/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [225] Third MOTION for Contempt *of Robert Anthony Urrutia* filed by Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - NMAC records, # (2) Exhibit B - NMAC subpoena) (Kataev, Emanuel) | | |
| 252 | *Filed & Entered:* | 04/18/2025 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [242] First MOTION to Withdraw as Attorney *of the Deo Defendants* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Nissan Motor Acceptance Company LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 04/22/2025 | Order on Motion to Withdraw as Attorney |
| | *Docket Text:* ORDER: Counsel for Deo Defendants Brian M. Levine's motion to withdraw as counsel of record in this matter (ECF No. [242]) is granted, and Brian M. Levine and the firm of Levine Singh, LLP is terminated for this matter. Courts in this District have granted motions to withdraw under similar circumstances. *See, e.g., Chase Bank USA, N.A. v. Allegro Law, LLC*, No. 08-CV-4039 (DRH) (WDW), 2011 WL 13302729, at *1 (E.D.N.Y. June 23, 2011) (finding that client's failure to pay legal fees constituted a basis for granting motion to withdraw) (collecting cases); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F. Supp. 2d 164, 166 (E.D.N.Y. 2006) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a satisfactory reason for withdrawal under Local Rule 1.4.") (collecting cases). Local Rule 1.4 provides that "[a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court" and that "[s]uch an order may be granted only upon a showing by affidavit or otherwise satisfactory reasons for withdrawal or displacement." Here, counsel for the "Deo" Defendants, Levine Singh, LLP is requesting withdrawal as counsel of record due to Defendants' inability to continue payment. (ECF No. [242].) Plaintiffs do not oppose. Rather Plaintiffs request that this Court condition the withdrawal on waiving any opposition to the pending Motion for Reconsideration. The undersigned rejects Plaintiffs' invitation to impose such conditions. The Court finds that Counsel has complied with Local Rule 1.4 and sufficient grounds exist to grant the motion. Brian M. Levine and the firm of Levine Singh, LLP, are hereby terminated as counsel of record in this matter. The "Deo" Defendants are to retain new counsel on or before **May 9, 2025**, and incoming counsel is to file a Notice of Appearance on or before **May 9, 2025**. Defendants Car Buyers NYC Inc., Gold Coast Cars of Syosset, LLC., Gold Coast Cars of Sunrise, LLC., Gold Coast Motors Automotive Group, LLC, Gold Coast Motors of LIC, LLC., Gold Coast Motors of Roslyn, LLC., Gold Coast Motors of Smithtown, LLC., and UEA Premier Motors Corp., are reminded that they are not permitted to appear *pro se. See La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) ("Such a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se.") (citing *Shapiro, Bernstein & Co. v. Contl Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam)). Outgoing counsel is directed to serve a copy of this order upon Defendants and file proof of service on ECF **within two business days**. As a result, all proceedings are stayed until then. Any opposition to the Motion for Reconsideration (ECF No. [240]) is to be filed on or before **June 6, 2025**, and any reply is to be filed on or before **June 20, 2025**. There are to be no sur-replies. So Ordered by Magistrate Judge James M. Wicks on 4/22/2025. (JAF) | | |
| 253 | *Filed & Entered:* | 04/22/2025 | Letter |
| | *Docket Text:* Letter *to the Honorable James M. Wicks, U.S.M.J. Excusing Appearance on April 25, 2025 Hearing* by J.P. Morgan Chase Bank, N.A. (Valenziano, Anthony) | | |

| 254 | Filed & Entered: | 04/22/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER. Defendant JPMorgan Chase Bank's Application to be excused from attending the Evidentiary Hearing (ECF No. [253]) is denied as *moot*. The Evidentiary Hearing has been adjourned *sine die*. *See* Electronic Order dated 4/9/2025. So Ordered by Magistrate Judge James M. Wicks on 4/22/2025. (JAF)

| 255 | Filed & Entered: | 04/22/2025 | Affidavit |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/AFFIRMATION re Order on Motion to Withdraw as Attorney,,,,,,,,,,,,, *Declaration of Service of Text-Only Order* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp., DECLARATION by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Levine, Brian)

| | Filed & Entered: | 04/29/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER: Plaintiffs are directed to file a supplemental declaration in detail as to when and how Plaintiffs learned that their lease at the "Team Mitsubishi-Hartford" Lot would be terminated, **on or before May 2, 2025** . This action remains stayed until May 9, 2025, or when Counsel for Deo Defendants makes a Notice of Appearance, whichever is earlier. An in-person Conference to address the issues on this matter has been scheduled for **May 9, 2025 at 3:00 PM** in Courtroom 1020. So Ordered by Magistrate Judge James M. Wicks on 4/29/2025. (JAF)

| | Filed & Entered: | 04/29/2025 | Scheduling Order |
|---|---|---|---|

*Docket Text:* SCHEDULING ORDER: An in-person Conference to address the issues at ECF No. [256] has been scheduled for **May 9, 2025 at 3:00 PM** to take place in Courtroom 1020 in the Central Islip Courthouse. So Ordered by Magistrate Judge James M. Wicks on 4/29/2025. (JAF)

| 256 | Filed & Entered: | 04/29/2025 | Motion for Order to Show Cause |
|---|---|---|---|
| | Terminated: | 05/09/2025 | |

*Docket Text:* MOTION for Order to Show Cause *to modify preliminary injunction* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 257 | Filed & Entered: | 04/29/2025 | Memorandum in Support |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Support re [256] MOTION for Order to Show Cause *to modify preliminary injunction* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 258 | Filed & Entered: | 04/29/2025 | Affidavit in Support of Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [256] MOTION for Order to Show Cause *to modify preliminary injunction of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 259 | Filed & Entered: | 04/30/2025 | Letter |
|---|---|---|---|

*Docket Text:* Letter *to Honorable James M. Wicks requesting Flushing be excused from attending the May 9, 2025 conference* by Flushing Bank (Ronneburger, Ariel)

| | Filed & Entered: | 05/01/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER granting [259] excusing Defendant Flushing Bank from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/1/2025. (JAF)

| 260 | Filed & Entered: | 05/02/2025 | Letter |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | *Docket Text:* Letter *to the Honorable James M. Wicks requesting Libertas Funding LLC be excused from attending the May 9, 2025 Conference* by Libertas Funding LLC (Golub, Bonnie) | | |
| [261](#) | *Filed & Entered:* | 05/02/2025 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [256] MOTION for Order to Show Cause *to modify preliminary injunction supplemental declaration of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - copy of lease, # (2) Exhibit B - copy of assignment, # (3) Exhibit C - copy of notice) (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 05/03/2025 | Order |
| | *Docket Text:* ORDER granting ECF No. [260] excusing Defendant Libertas Funding LLC from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/3/2025. (JAF) | | |
| [262](#) | *Filed & Entered:* | 05/03/2025 | Letter |
| | *Docket Text:* Letter *requesting to waive appearance* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (Ruderman, Jeffrey) | | |
| | *Filed & Entered:* | 05/05/2025 | Order |
| | *Docket Text:* ORDER granting [262] excusing the Island Auto Plaintiffs from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/5/2025. (JAF) | | |
| [263](#) | *Filed & Entered:* | 05/05/2025 | Letter |
| | *Docket Text:* Letter *to U.S. Mag. Judge Wicks to Request Excused Appearance* by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP (Lentinello, John) | | |
| | *Filed & Entered:* | 05/06/2025 | Order |
| | *Docket Text:* ORDER granting [263] excusing Defendants Thomas Jones, CPA and Jones, Little & Co., CPA's, LLP from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/6/2025. (JAF) | | |
| [264](#) | *Filed & Entered:* | 05/07/2025 | Letter |
| | *Docket Text:* Letter *to the Honorable James M. Wicks, U.S.M.J. Excusing Appearance on May 9, 2025 Hearing* by J.P. Morgan Chase Bank, N.A. (Valenziano, Anthony) | | |
| | *Filed & Entered:* | 05/08/2025 | Order |
| | *Docket Text:* ORDER granting [264] excusing Defendant JPMorgan Chase Bank from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/8/2025. (JAF) | | |
| [265](#) | *Filed & Entered:* | 05/08/2025 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Harry R. Thomasson, Jr on behalf of Harry Thomasson (notification declined or already on case) (Thomasson, Harry) | | |
| [266](#) | *Filed & Entered:*<br>*Terminated:* | 05/08/2025<br>05/21/2025 | Motion to Stay |
| | *Docket Text:* Letter MOTION to Stay *and other relief requested* by Harry Thomasson. (Attachments: # (1) Exhibit A, letter to EDNY Court dated 4.21.25, # (2) Exhibit B, Affirmation of Emanuel Kataev) (Thomasson, Harry) | | |
| | *Filed & Entered:* | 05/09/2025 | Order |
| | *Docket Text:* ORDER. The parties are directed to file any opposition to Mr. Thomasson's Motion to Stay and Other Relief (ECF No. [266]), **on or before May 16, 2025** . So Ordered by Magistrate Judge James M. Wicks | | |

on 5/9/2025. (JAF)

| | | |
|---|---|---|
| *Filed & Entered:* | 05/09/2025 | Email Test |

*Docket Text:* Email Notification Test - DO NOT REPLY (GO)

| | | |
|---|---|---|
| *Filed & Entered:* | 05/09/2025 | Order on Motion for Order to Show Cause |

*Docket Text:* ORDER granting *in part* and denying *in part* [256] Motion to Modify the Preliminary Injunction. Oral Argument was held on the unopposed Motion to Modify the Preliminary Injunction (ECF No. [256]). Appearances were as follows: Superb Plaintiffs represented by Emanuel Kataev, Harry Thomasson appearing *pro se*, and Anthony Deo appearing *pro se*. District courts in this Circuit have applied the following standard for modifying preliminary injunctions, namely, the movant must demonstrate "a material change in circumstances justifies the alteration." *New Falls Corp. v. Soni Holdings*, No. 19-CV-0449 (ADS) (AKT), 2020 U.S. Dist. LEXIS 186395, at *30 (E.D.N.Y. Sept. 30, 2020).; *see also Lawsky v. Condor Capital Corp.*, No. 14-cv-2863 (CM), 2014 U.S. Dist. LEXIS 107253, at *15 (S.D.N.Y. Aug. 1, 2014) (stating that parties must show a change in circumstances warranting such relief). "An injunction should be modified only when the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or [] will work oppressively against the enjoined parties." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006). Changed circumstances having been shown and stated on the record, the motion is granted in part and denied in part as follows: (i) denied to the extent the application seeks to permit sales of the Injuncted Superb Vehicles and (ii) granted to the extent relocation of the Injuncted Superb Vehicles is sought. The 30 Injuncted Vehicles shall be removed from the Hartford location to the Hicksville location ("Deo Lot") owned by Anthony Deo (108 New South Road, Hicksville, NY 11801) at Plaintiffs' expense. The current conditions of the existing Preliminary Injunction remain in place, and the Deo Defendants are to segregate the Injuncted Superb Vehicles from any other vehicles in the Deo Lot. The relocation to the Deo Lot is to be completed **on or before May 23, 2025**. Deo Defendants are to file proof of insurance **within five (5) business days** of delivery of the Injuncted Superb Vehicles. The time within which the corporate entity Deo Defendants are to retain counsel and have incoming counsel file a Notice of Appearance has been extended to and includes **May 23, 2025**. As a result, all proceedings are stayed until then. Any opposition to the Motion for Reconsideration (ECF No. [240]) is to be filed on or before **June 20, 2025**, and any reply is to be filed on or before **July 3, 2025**. There are to be no sur-replies. So Ordered by Magistrate Judge James M. Wicks on 5/9/2025. (JAF)

| 267 | *Filed & Entered:* | 05/09/2025 | Status Conference |
|---|---|---|---|

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR STATUS CONFERENCE: Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Appearance Excused. Counsel for Defendants Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): No Appearance. Pro Se Defendant (Anthony Deo): Anthony Deo, appearing Pro Se. Pro Se Defendant (Harry Thomasson): Harry Thomasson, appearing Pro Se. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Appearance Excused. Counsel for Defendants (Flushing Bank): Appearance Excused. Counsel for Defendant (Libertas Funding LLC): Appearance Excused. Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Appearance Excused. Arguments held on May 9, 2025 at 3:00 PM. For the reasons stated on the record and in the Electronic Order dated May 9, 2025, the Motion for Modifying the Preliminary Injunction (ECF No. [256]) is **granted** *in part* and **denied** *in part*. The relocation of the Injuncted Superb Vehicles to the Deo Lot is to be completed **on or before May 23, 2025**. Deo Defendants are to file proof of insurance **within five business days** of delivery of the Injuncted Superb Vehicles. The time within which the

corporate entity Deo Defendants are to retain counsel and have incoming counsel file a Notice of Appearance has been extended to and includes **May 23, 2025**. As a result, all proceedings are stayed until then. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #3:09-3:41 (FTR).) (DF)

| | | | |
|---|---|---|---|
| 268 | *Filed & Entered:* | 05/16/2025 | Response in Opposition to Motion |

*Docket Text:* RESPONSE in Opposition re [266] Letter MOTION to Stay *and other relief requested* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Nissan Motor Acceptance Company LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 269 | *Filed & Entered:* | 05/19/2025 | Transcript |

*Docket Text:* NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on May 9, 2025, for hearing type STATUS CONFERENCE, before Judge JAMES M. WICKS. Court Reporter/Transcriber Transcriptions Plus II, Inc., Telephone number 917-817-2825. Email address: rl.transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/9/2025. Redacted Transcript Deadline set for 6/19/2025. Release of Transcript Restriction set for 8/18/2025. (KS)

| | | | |
|---|---|---|---|
| 270 | *Filed & Entered:* | 05/20/2025 | Order on Motion to Intervene |

*Docket Text:* MEMORANDUM AND ORDER re [229] Motion to Intervene: As set forth in the attached Memorandum and Order, Nissan's Motion to Intervene (ECF No. [229]) is **DENIED**. So Ordered by Magistrate Judge James M. Wicks on 5/20/2025. (DF)

| | | | |
|---|---|---|---|
| 271 | *Filed & Entered:*<br>Terminated: | 05/20/2025<br>05/21/2025 | Motion for Order to Show Cause |

*Docket Text:* MOTION for Order to Show Cause *why the Superb Injuncted Vehicles should not remain at the Hartford Lot pending an agreement with the purchaser of the Hartford Lot or an agreement with the landlord of a nearby dealership*, MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,,,,, [267] Status Conference,,,,,,,,,, by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 272 | *Filed & Entered:* | 05/20/2025 | Memorandum in Support |

*Docket Text:* MEMORANDUM in Support re [271] MOTION for Order to Show Cause *why the Superb Injuncted Vehicles should not remain at the Hartford Lot pending an agreement with the purchaser of the Hartford Lot or an agreement with the landlord of a nearby dealership* MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,,,,, [267] Status Conference,,,,,,,,,, filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - transcript of proceedings held on May 9, 2025) (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 273 | *Filed & Entered:* | 05/20/2025 | Affidavit in Support of Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [271] MOTION for Order to Show Cause *why the Superb Injuncted Vehicles should not remain at the Hartford Lot pending an agreement with the purchaser of the Hartford Lot or an agreement with the landlord of a nearby dealership* MOTION for Reconsideration

re Order on Motion for Order to Show Cause,,,,,,,,,, [267] Status Conference,,,,,,,,, *of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | |
|---|---|---|
| *Filed & Entered:* | 05/21/2025 | Order on Motion for Order to Show Cause |

*Docket Text:* ORDER denying [271] Motion for Order to Show Cause regarding the Motion for Reconsideration of the May 9, 2025 Order and the Motion for Reconsideration. Plaintiffs submit this application for reconsideration pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Under Local Rule 6.3, a party has fourteen (14) days following the entry of a court order to serve a notice of motion with an accompanying memorandum, that concisely sets forth the issues, facts, or laws that were overlooked. Loc. Civ. R. 6.3.

"A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009). As such, motions for reconsideration "[are] appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion... and which, had they been considered, might have reasonably altered the result before the court." *Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal quotation marks and citation omitted). Notably, "a party may not advance new facts, issues, or arguments not previously presented to the Court on a motion for reconsideration." *Superior Site Work, Inc. v. NASDI, LLC*, No. 14-cv-01061 (ADS) (SIL), 2017 U.S. Dist. LEXIS 77453, at *4 (E.D.N.Y. May 22, 2017) (internal quotations omitted); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.* , 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted) (noting that a motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple). Reconsideration is warranted when: (i) the moving party points to an intervening change in controlling law, (ii) newly available evidence is identified, (iii) clear error is established, or (iv) reconsideration is necessary to avoid a manifest injustice. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (same); *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) (same). It is well-settled that it is within the sound discretion of the district court to decide whether or not to grant a motion for reconsideration. *See Gupta v. Attorney Gen. of United States*, 52 F. Supp. 3d 677, 679-80 (S.D.N.Y. 2014); *Rivas v. Melecio*, No. 23-CV-05718 (JMA), 2024 WL 1096065, at *1 (E.D.N.Y. Feb. 21, 2024).

Here, Plaintiffs seek a "do-over" on the eve of their deadline to deliver the Injuncted Superb Vehicles to the Deo Lot. (*See* ECF No. 267.) Moreover, Plaintiffs assert that the Court overlooked the potential damage that could occur by the Deo Defendants holding the Vehicles. (ECF Nos. 272 at 3, 273 at 5-7.) Contrary to that assertion, the Court provided clear direction and imposed certain conditions to preserve the parties' assets at the last Conference. (*See* Electronic Order dated 05/09/2025.) As to the "newly available evidence" that Plaintiffs submit, this still does not provide a long-term solution. Specifically, Plaintiffs state that they "have negotiated a deal with the landlord of the Hartford Lot for the Superb Injuncted Vehicles to remain there until the closing date, currently scheduled for June 9, 2025, and thereafter to either remain at the Hartford Lot pending a deal with the purchaser of the Hartford Lot, or to be moved less than fifteen (15) miles away to 223 Broad Street, Bristol, CT 06010 (the "New Premises") subject to the Superb Plaintiffs' agreement with the landlord for the New Premises." (ECF No. 272 at 3.) These proposed modifications are not concrete and are subject to the agreements of two third-parties, the New Premises landlord or the new purchaser of the Hartford Lot. Absent here is evidence that would reasonably alter the undersigned's conclusion at the previous Conference. *See Shrader v. CSX Transp. Inc.* , 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738 (MKB), 2025 WL 510041, at *2 (E.D.N.Y. Feb. 14, 2025) (same).

Therefore, the Motion for Reconsideration filed at ECF No. [271] is **DENIED**, and the previously ordered date for the relocation of the Injuncted Superb Vehicles to the Deo Lot remains in place, which is this **Friday, May 23, 2025**. So Ordered by Magistrate Judge James M. Wicks on 5/21/2025. (JAF)

| 274 | *Filed & Entered:* | 05/21/2025 | Order on Motion to Stay |
|---|---|---|---|

*Docket Text:* MEMORANDUM AND ORDER re [266] Motion to Stay: As set forth in the attached Memorandum and Order, Mr. Thomasson's motion for reconsideration of the prior disqualification order and other requested relief (ECF No. [266]) is **DENIED**. So Ordered by Magistrate Judge James M. Wicks on 5/21/2025. (DF)

| 275 | *Filed & Entered:* | 05/21/2025 | Response to Motion |
|---|---|---|---|

*Docket Text:* RESPONSE to Motion re [271] MOTION for Order to Show Cause *why the Superb Injuncted Vehicles should not remain at the Hartford Lot pending an agreement with the purchaser of the Hartford Lot or an agreement with the landlord of a nearby dealership* MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,,,,,, [267] Status Conference,,,,,,,,,, filed by Harry Thomasson. (Thomasson, Harry)

| 276 | *Filed & Entered:* | 05/21/2025 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Jeffrey Benjamin on behalf of Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, UEA Premier Motors Corp. (aty to be noticed) (Benjamin, Jeffrey)

| | *Filed & Entered:* | 05/22/2025 | Order on Motion to Amend/Correct/Supplement |
|---|---|---|---|

*Docket Text:* ORDER granting [277] Motion to Amend/Correct/Supplement. The vehicles to be delivered to the Deo's Hicksville New York lot shall be done so by May 23, 2025 by 6:00 p.m. The keys and all title documents for the vehicles shall be delivered at the time the vehicles are delivered. So Ordered by Magistrate Judge James M. Wicks on 5/22/2025. (Wicks, James)

| 277 | *Filed & Entered:*<br>*Terminated:* | 05/22/2025<br>05/22/2025 | Motion to Amend/Correct/Supplement |
|---|---|---|---|

*Docket Text:* Letter MOTION to Amend/Correct/Supplement *and/or modify this Court's Orders regarding the delivery of 30 automobiles* by Harry Thomasson. (Thomasson, Harry)

| 278 | *Filed & Entered:* | 05/22/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER re [231] Order on Motion for Contempt: As set forth in the attached Order, the sanctions imposed on Superb Plaintiffs are as follows: Plaintiffs are to file proof of the payment to Nissan that allegedly satisfied the floorplan loan on ECF on or before **June 3, 2025**, and failure to do so, will result in the undersigned imposing a compensatory fine. In the event Plaintiffs fail to file on or before June 3 as ordered, per-diem fine of $500.00 for each day of non-compliance will be imposed. So Ordered by Magistrate Judge James M. Wicks on 5/22/2025. (DF)

| 279 | *Filed & Entered:* | 05/22/2025 | Order on Motion for Contempt |
|---|---|---|---|

*Docket Text:* MEMORANDUM AND ORDER re [225] Motion for Contempt: As set forth in the attached Memorandum and Order, the Deo Defendants' Motion for Contempt (ECF No. [225]) is **GRANTED** *in part* and **DENIED** *in part*. Accordingly, it is **HEREBY ORDERED** that Superb Plaintiffs are held in civil contempt for failing to comply with an express order of this Court. Based on this finding of civil contempt, the undersigned imposes the following sanctions: (i) A fine in the amount of $1,000.00 to be paid to the Deo Defendants on or before **June 2, 2025**; (ii) Attorneys' fees and costs, which are to be awarded upon a formal application submitted by Deo Defendants on or before **June 3, 2025**; and (iii) Per-diem sanctions of $100.00, for each weekday that Plaintiffs are non-compliant with this Court's Order beginning **June 3, 2025**. So Ordered by Magistrate Judge

| | |
|---|---|
| | James M. Wicks on 5/22/2025. (DF) (Main Document 279 replaced on 5/22/2025) (DF). Modified on 5/22/2025 to revise docket entry text. (DF). |

| 280 | *Filed & Entered:* 05/22/2025 *Terminated:* 05/23/2025 | Motion for Order to Show Cause |
|---|---|---|
| | *Docket Text:* Emergency MOTION for Order to Show Cause *to permit the sale of the remaining Superb Injuncted Vehicles owned by Team Auto Sales LLC and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford as previously permitted for vehicles owned by Superb Motors Inc.* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | |

| 281 | *Filed & Entered:* 05/22/2025 | Memorandum in Support |
|---|---|---|
| | *Docket Text:* MEMORANDUM in Support re [280] Emergency MOTION for Order to Show Cause *to permit the sale of the remaining Superb Injuncted Vehicles owned by Team Auto Sales LLC and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford as previously permitted for vehicles owned by Superb Mo* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | |

| 282 | *Filed & Entered:* 05/22/2025 | Affidavit in Support of Motion |
|---|---|---|
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [280] Emergency MOTION for Order to Show Cause *to permit the sale of the remaining Superb Injuncted Vehicles owned by Team Auto Sales LLC and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford as previously permitted for vehicles owned by Superb Mo* of Robert Anthony Urrutia filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | |

| 283 | *Filed & Entered:* 05/22/2025 | Response in Opposition to Motion |
|---|---|---|
| | *Docket Text:* RESPONSE in Opposition re [280] Emergency MOTION for Order to Show Cause *to permit the sale of the remaining Superb Injuncted Vehicles owned by Team Auto Sales LLC and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford as previously permitted for vehicles owned by Superb Mo* filed by Harry Thomasson. (Thomasson, Harry) | |

| 284 | *Filed & Entered:* 05/22/2025 *Terminated:* 05/23/2025 | Motion to Strike |
|---|---|---|
| | *Docket Text:* Letter MOTION to Strike [283] Response in Opposition to Motion, *due to Harry R. Thomasson, Esq.'s willful evasion of the Order disqualifying him from representing the Deo Defendants* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | |

| | *Filed & Entered:* 05/23/2025 | Scheduling Order |
|---|---|---|
| | *Docket Text:* SCHEDULING ORDER: In light of the filing at 18:43 yesterday (ECF No. [280]), all interested parties are directed to attend the hearing scheduled for **today at 12:30 PM** via the Court's Video Zoom on the issues raised therein. A Zoom link will be provided via e-mail shortly. So Ordered by Magistrate Judge James M. Wicks on 5/23/2025. (JAF) | |

| | *Filed & Entered:* 05/23/2025 | Order on Motion to Strike |
|---|---|---|
| | *Docket Text:* ORDER denying [284] Motion to Strike. So Ordered by Magistrate Judge James M. Wicks on 5/23/2025. (JAF) | |

| | *Filed & Entered:* 05/23/2025 | Order on Motion for Order to Show Cause |
|---|---|---|
| | *Docket Text:* ORDER denying [280] Emergency Motion for Order to Show Cause. After hearing the parties' arguments, and Plaintiffs having failed to establish irreparable harm, the application is denied for the reasons stated on the record. It is well-settled that "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 278 (E.D.N.Y. 2014) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). Likewise "[i]rreparable harm is 'a continuing harm which cannot be adequately redressed by final relief on the merits | |

and for which money damages cannot provide adequate compensation.'" *Crye Precision LLC v. Concealed Carrier, LLC*, 749 F. Supp. 3d 308, 334 (E.D.N.Y. 2024) (quoting *Kamerling*, 295 F.3d at 214). "Where, by contrast, 'there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.'" *Id.* (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)). Furthermore, the Court finds that Plaintiffs have not met their burden to establish a basis to modify the injunction. The grounds urged to modify the injunction - the cost to move vehicles and the threat that Plaintiffs will be in contempt - does not establish irreparable harm sufficient to modify the Injunction which was modified on May 9, 2025. Therefore, the Injunction as modified on May 9, 2025, remains in place and in effect and the Vehicles are to be delivered to the Deo Lot by 6:00 PM tonight with keys and titles as previously ordered. So Ordered by Magistrate Judge James M. Wicks on 5/23/2025. (JAF)

| | | | |
|---|---|---|---|
| 285 | *Filed & Entered:* | 05/23/2025 | Notice of Appeal |

*Docket Text:* NOTICE OF APPEAL as to Order on Motion for Order to Show Cause,,,,,,,,,, Order on Motion for Order to Show Cause,,,,,,, Order on Motion for Order to Show Cause,,,,,,,,,,,,,,,,,, Order on Motion for Reconsideration,,,,,,,,,,,,,,,,,, by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. Filing fee $ 605, receipt number ANYEDC-19079027. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 286 | *Filed & Entered:* | 05/23/2025 | Motion Hearing |

*Docket Text:* Minute Order CIVIL CAUSE FOR STATUS CONFERENCE: Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Appearance Excused. Counsel for Defendants Anthony Deo, Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Jeffrey Benajmin. Pro Se Defendant (Harry Thomasson): Harry Thomasson, appearing Pro Se. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Appearance Excused. Counsel for Defendants (Flushing Bank): Appearance Excused. Counsel for Defendant (Libertas Funding LLC): Appearance Excused. Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Appearance Excused. Arguments held on May 23, 2025 at 12:30 PM. For the reasons stated on the record, Plaintiffs' Emergency Motion for Order to Show Cause (ECF No. [280]) is **denied**. The Injunction as modified as of May 9, 2025, remains in effect and the Vehicles are to be delivered to the Deo Lot by 6:00 PM today, with keys and titles. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (Time Log #12:36-12:52 (Via Zoom)). (DF/JT)

| | | | |
|---|---|---|---|
| 287 | *Filed & Entered:* | 05/23/2025 | Letter |

*Docket Text:* Letter *to Hon. James M. Wicks, U.S.M.J., notifying the Court of the sale of two vehicles* by Nissan Motor Acceptance Company LLC (Savino, Nicholas)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/23/2025 16:33:59 | | |
| **PACER Login:** ekesq2014 | **Client Code:** | |
| **Description:** History/Documents | **Search Criteria:** | 2:23-cv-06188-JMW |

| **Billable Pages:** | 30 | **Cost:** | 3.00 |
|---|---|---|---|

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, *individually and derivatively as a member of* NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, *individually and derivatively as a member of* 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

---------------------------------------------------------------------X

**Case No.: 2:23-cv-6188 (OEM) (JMW)**

**PLAINTIFFS' FIRST
AMENDED COMPLAINT**

*Amended as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B)*

Plaintiffs Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (the "Superb Plaintiffs"), 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier,

1

*individually and derivatively as a member of* Northshore Motor Leasing, LLC, Joshua Aaronson, *individually and derivatively as a member of* 189 Sunrise Hwy Auto, LLC, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC (collectively "IAG Plaintiffs") (Superb Plaintiffs and IAG Plaintiffs collectively hereinafter the "Plaintiffs"), by their respective attorneys Milman Labuda Law Group PLLC and Cyruli Shanks & Zizmor LLP, as and for their First Amended Complaint against Defendants Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp., (collectively the "Deo Defendants") DLA Capital Partners Inc. ("DLA Capital"), Jones, Little & Co., CPA'S LLP, Thomas Jones, CPA, (collectively the "CPA Defendants"), Flushing Bank, Libertas Funding LLC, and J.P. Morgan Chase Bank, N.A. (collectively the "Bank Defendants") (the Deo Defendants, DLA, CPA Defendants, and the Bank Defendants collectively hereinafter the "Defendants"), hereby allege as follows:

## **NATURE OF THE CASE**

1. The Deo Defendants, with the participation of other Defendants, have engaged in outrageous schemes to gain access to the Plaintiffs' businesses by the Deo Defendants holding themselves out as qualified to run automobile dealerships, then usurping operational control of two separate groups of dealerships to pillage and plunder them, while misrepresenting having ownership of Plaintiffs' businesses, leaving Plaintiffs holding the bag while the Deo Defendants start a separate group of dealerships propped up by stolen assets and funds of Plaintiffs.

2.      Defendants' brazen and criminal scheme, carried out by engaging in wire fraud and the use of forged instruments, must be stopped immediately.

3.      Absent relief, Plaintiffs' businesses are at risk of being forced to shut down.

4.      This is an action for damages and injunctive relief related to Defendants' unlawful conspiracy and scheme to engage in wire fraud by, among other things, signing checks they had no authority to sign, opening bank accounts by providing false and misleading information to financial institutions and depositing into those accounts, in the name of Superb Plaintiffs but controlled by Defendants, checks made payable to the Superb Plaintiffs, then to be diverted to Defendants' own use, improper poaching of Superb Plaintiffs' employees, and misappropriating Superb Plaintiffs' confidential information and trade secrets resulting in Defendants' (i) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); (ii) violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (iii) misappropriation of trade secrets; (iv) unfair competition; (v) tortious interference with contractual relations, business relations, and prospective economic advantage; (vi) unjust enrichment; (vii) conversion; (viii) fraud; (ix) breach of fiduciary duty; and (x) civil conspiracy.

5.      Defendants' diabolical scheme to infiltrate and leech off of Plaintiffs' businesses, causing Plaintiffs inconceivable harm, must be stopped.

6.      Specifically, Defendants must be prevented from operating businesses that were formed solely through Defendants' fraudulent schemes and utilizing Superb Plaintiffs' confidential information and trade secrets stolen by the Defendants who have utilized Superb Plaintiffs' employees to compete against Superb Plaintiffs while said employees were being paid by Superb Plaintiffs, all of which is being done to decimate Superb Plaintiffs' businesses.

7.     In addition to being enjoined from their conduct which has threatened the imminent closure of Plaintiffs' businesses, Defendants must pay for damages for the harm they have caused to Plaintiffs' businesses.

**PARTIES**

i.     IAG Plaintiffs

8.     At all times hereinafter mentioned, Northshore Motor Leasing, LLC ("Northshore") was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 180 Michael Drive, Syosset, New York 11791.

9.     At all times hereinafter mentioned, 189 Sunrise Hwy Auto, LLC ("Sunrise") was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 189 Sunrise Highway, Amityville, New York 11701.

10.     At all times hereinafter mentioned, plaintiff Brian Chabrier ("Chabrier") is an individual residing in the State of New York within the County of Nassau.

11.     At all times hereinafter mentioned, plaintiff Joshua Aaronson ("Aaronson") is an individual residing in the State of New York within the County of Nassau.

12.     At all times hereinafter mentioned, plaintiff Jory Baron ("J. Baron") is an individual residing in the State of New York within the County of Nassau.

13.     At all times hereinafter mentioned, plaintiff 1581 Hylan Blvd Auto LLC ("1581"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

14.     At all times hereinafter mentioned, plaintiff 1580 Hylan Blvd Auto LLC ("1580"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

15.     At all times hereinafter mentioned, plaintiff 1591 Hylan Blvd Auto LLC ("1591"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

16.     At all times hereinafter mentioned, plaintiff 1632 Hylan Blvd Auto LLC ("1632"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

17.     At all times hereinafter mentioned, plaintiff 1239 Hylan Blvd Auto LLC ("1239"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

18.     At all times hereinafter mentioned, plaintiff 2519 Hylan Blvd Auto LLC ("2519"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

19.     At all times hereinafter mentioned, plaintiff 76 Fisk Street Realty, LLC ("76"), was and still is a foreign limited liability company duly organized and existing under and by the virtue of the laws of the State of New Jersey, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

20.     At all times hereinafter mentioned, plaintiff 446 Route 23 Auto LLC ("446"), was and still is a foreign limited liability company duly organized and existing under and by the virtue of the laws of the State of New Jersey, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

21.     At all times hereinafter mentioned, plaintiff Island Auto Management, LLC ("IAM"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business at 1580 Hylan Boulevard, Staten Island, New York 10305.

22.     1581, 1580, 1591, 1632, 1239, 2519, 76, 446 and IAM are collectively referred to herein as "Island Auto Group" or "IAG."

ii.     <u>Superb Plaintiffs</u>

23.     Robert Anthony Urrutia ("Urrutia") resides in the State of New Jersey; he is the President of Superb Motors Inc. ("Superb") and member of Team Auto Sales LLC ("Team Auto").

24.     At all times relevant, Superb is and was a corporation duly formed under the laws of the State of New York with its principal place of business in Nassau County, New York.

25.     At all times relevant, Team Auto is and was a limited liability company duly organized under the laws of the State of New Jersey with its principal place of business in Monmouth County, New Jersey.

6

iii.    Deo Defendants

26.     Upon information and belief, Anthony Deo ("Deo") and Sarah Deo ("S. Deo") are individuals who reside in the State of New York within the County of Nassau and who are married to each other.

27.     Upon information and belief, Harry Thomasson ("Thomasson") is an attorney-at-law who resides in the State of New York within the County of Nassau.

28.     Upon information and belief, Dwight Blankenship ("Blankenship") is a retired police officer who works for Deo and S. Deo and who resides in the State of New York within the County of Nassau.

29.     Upon information and belief, Marc Merckling ("Merckling") is an active police officer who works for Deo and S. Deo and who resides in the State of New York within the County of Nassau.

30.     Upon information and belief, Michael Laurie ("Laurie") is a principal of DLA Capital who resides in the State of New York within the County of Nassau.

31.     At all times relevant, Car Buyers NYC Inc. is and was a corporation duly formed under the laws of the State of New York with its principal place of business in Nassau County, New York.

32.     At all times relevant, Gold Coast Cars of Syosset LLC ("GCC Syosset") is and was a limited liability company duly organized under the laws of the State of New York with its principal place of business in Nassau County, New York.

33.     At all times relevant, Gold Coast Cars of Sunrise LLC ("GCC Sunrise") is and was a limited liability company duly organized under the laws of the State of New York with its principal place of business in Nassau County, New York.

7

34.     At all times relevant, Gold Coast Motors Automotive Group LLC ("GCM Auto") is and was a limited liability company duly organized under the laws of the State of New York with its principal place of business in Nassau County, New York.

35.     At all times relevant, Gold Coast Cars of LIC LLC ("GCC LIC") is and was a limited liability company duly organized under the laws of the State of New York with its principal place of business in Nassau County, New York.

36.     At all times relevant, Gold Coast Cars of Roslyn LLC ("GCC Roslyn") is and was a limited liability company duly organized under the laws of the State of New York with its principal place of business in Nassau County, New York.

37.     At all times relevant, Gold Coast Cars of Smithtown LLC ("GCC Smithtown") is and was a limited liability company duly organized under the laws of the State of New York with its principal place of business in Nassau County, New York.

38.     At all times relevant, UEA Premier Motors Corp. ("UEA Motors") is and was a corporation duly formed under the laws of the State of New York with its principal place of business in Nassau County, New York.

iv.     <u>CPA Defendants</u>

39.     Upon information and belief, Thomas Jones, CPA ("Jones") is a principal of Jones, Little & Co., CPA's LLP ("Jones CPA LLP") who resides in the State of New York within the County of Nassau.

40.     At all times relevant, Jones CPA LLP is and was a limited liability partnership formed under the laws of the State of New York with its principal place of business in Nassau County, New York.

     v.     <u>DLA Capital</u>

41.     At all times relevant, DLA Capital is and was a corporation duly formed under the laws of the State of New York with its principal place of business in Nassau County, New York.

     vi.     <u>Bank Defendants</u>

42.     At all times relevant, Libertas Funding LLC ("Libertas") is and was a foreign limited liability company duly organized under the laws of the State of Connecticut and authorized to conduct business in the State of New York with offices located at 411 West Putnam Avenue, Suite 220, Greenwich, Connecticut 06830.

43.     At all times relevant, Flushing Bank was and is a commercial bank organized and existing under and by virtue of the laws of the  State of New York.

44.     At all times relevant, JP Morgan Chase Bank, N.A., was and is a national association organized and existing under and by virtue of the laws of the United States of America

## **<u>JURISDICTION AND VENUE</u>**

45.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, given that Plaintiff pursues claims under RICO and DTSA, both of which are federal laws.

46.     Further, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims against Defendants because they are part of the same case or controversy and arise under a common nucleus of operative facts.

47.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district, and each of the Defendants resides in this district.

## FACTS

**i.    Deo is Not a Member of Northshore**

48.    At all times hereinafter mentioned, Chabrier was and still is an owner and holder of a one-third (1/3) membership interest in Northshore.

49.    Upon information and belief, at all times hereinafter mentioned, David Baron was an owner and holder of a one-third (1/3) membership interest in Northshore.

50.    Upon information and belief, David Baron died in 2021, and his estate ("Estate") is now the owner and holder of his one-third (1/3) membership interest in Northshore.

51.    Upon information and belief, at all times hereinafter mentioned, Asad Khan was and still is an owner and holder of a one-third (1/3) membership interest in Northshore.

52.    At all times hereinafter mentioned, Deo was never an owner of any membership interest in Northshore.

53.    The operating agreement for Northshore (the "Northshore Operating Agreement") provides that Northshore shall be managed by its members.

54.    Article V (A) of the Northshore Operating Agreement provides that decisions must be approved by a majority in interest of the members.

55.    Article IX (A) of the Northshore Operating Agreement prohibits transfers or assignments of membership interests without the unanimous consent of all members.

56.    Under Article IX (A) of the Northshore Operating Agreement, if the Members do not unanimously approve of the transfer, "the transferee shall have no right to participate in the management of the business and affairs of the Company or to become a Member."

### ii.     Deo is Not a Member of Sunrise

57.     Upon information and belief, at all times hereinafter mentioned, Aaronson was and still is an owner and holder of a twenty-five (25%) percent membership interest in Sunrise.

58.     At all times hereinafter mentioned, David Baron was an owner and holder of a twenty (25%) percent membership interest in Sunrise.

59.     David Baron died in 2021 and his estate is now the owner and holder of his twenty (25%) percent membership interest in Sunrise.

60.     At all times hereinafter mentioned, J. Baron was and still is an owner and holder of a twenty (25%) percent membership interest in Sunrise.

61.     At all times hereinafter mentioned, Raymond Phelan was and still is an owner and holder of a twenty (25%) percent membership interest in Sunrise.

62.     At all times hereinafter mentioned, Deo was never an owner of any membership interest in Sunrise.

63.     The operating agreement for Sunrise (the "Sunrise Operating Agreement") provides that Sunrise shall be managed by its members.

64.     Article V (A) of the Sunrise Operating Agreement provides that decisions must be approved by a majority in interest of the members.

65.     Article IX (A) of the Sunrise Operating Agreement prohibits transfers or assignments of membership interests without the unanimous consent of all members.

66.     Under Article IX (A) of the Sunrise Operating Agreement, if the Members do not unanimously approve of the transfer, "the transferee shall have no right to participate in the management of the business and affairs of the Company or to become a Member."

### iii.     Defendants 'Unlawful Schemes at Island Auto Group

67.     Northshore operates a retail used car dealership from its lot located at 180 Michael Drive, Syosset, New York 11791.

68.     Sunrise operates a retail used car dealership from its lot located at 189 Sunrise Highway, Amityville, New York 11701.

69.     The operation of a used car dealership in the State of New York requires a license (the "License") issued by the New York State Department of Motor Vehicles ("DMV").

70.     The application for the License requires an individual applicant who remains responsible as the licensee for the dealership's compliance.

71.     Chabrier holds the License as applicant for Northshore.

72.     Aaronson and J. Baron hold the License as applicants for Sunrise.

73.     At all times hereinafter mentioned until December 2022, Deo was employed by Northshore as its general manager.

74.     At all times hereinafter mentioned until December 2022, Deo was employed by Sunrise as its general manager.

75.     As an employee and general manager of both Northshore and Sunrise, Deo was obligated to act in the best interests of Northshore and Sunrise and their respective members.

76.     Deo, however, took numerous actions for his own benefit, causing damage to Northshore and Sunrise and the other IAG Plaintiffs and jeopardizing the Licenses.

### iv.     Deo Sells Vehicles for Less Than Their Purchase Price, Causing a Deficiency Toward Repayment of the Floor Plan at IAG

77.     Northshore and Sunrise maintain a floor plan credit line with Ally Bank used to purchase inventory (the "Floor Plan").

78.     Ally Bank maintains a lien on all vehicles purchased using the Floor Plan.

79. When the vehicles are sold, Ally Bank must be repaid the amount borrowed to purchase that vehicle in order to release the lien or security interest on the vehicle.

80. The Floor Plan is guaranteed by IAG.

81. IAG is a group of franchised new car dealerships in New York and New Jersey in which David Baron had certain direct or family ownership.

82. Chabrier is affiliated with IAG.

83. Aaronson is affiliated with IAG.

84. J. Baron is affiliated with IAG.

85. IAG agreed to guarantee the Floor Plan because of the interrelationship among Northshore, Sunrise, David Baron, Chabrier, Aaronson, and J. Baron.

86. Deo, on behalf of Northshore and Sunrise, purchased many vehicles using the Floor Plan.

87. Deo then sold those vehicles for less than their purchase price, causing Northshore and Sunrise to sustain significant damages.

88. Selling vehicles for less than their purchase price created a deficiency toward repayment of the loan made by Ally Bank to purchase each such vehicle.

89. As guarantor, IAG had to pay Ally Bank over $3,000,000.00 to satisfy Northshore's and Sunrise's Floor Plan deficiency.

90. A recent inspection by IAG Plaintiffs as well as a recent audit by Ally Bank of the floor planned vehicles revealed that several vehicles could not be located.

91. That audit also revealed that several vehicles were damaged.

      **v.**      **Deo Fails to Cause Northshore and Sunrise to Pay Off Existing Loans on Vehicle Trade-Ins**

92.     Northshore and Sunrise accepted customer trade-ins of vehicles to be used toward their purchase ("Trade-ins").

93.     Trade-ins with existing loan or lease balances were required to be satisfied by Northshore.

94.     Deo failed to have Northshore and Sunrise pay off the existing loan or lease balances on numerous Trade-ins.

95.     The prior owners of these vehicles remained liable to make payments on the debt despite no longer having ownership or control of the vehicle.

96.     Deo's failure to cause Northshore and Sunrise to pay off the loans on the Trade-ins has potential criminal liability, civil liability, and loss of the DMV Licenses.

97.     Deo's failure to have Northshore and Sunrise pay off the loans may also affect the ability of the licensees, Chabrier, Aaronson and J. Baron, to obtain a DMV License for any other dealership facility.

98.     In order to avert the consequences of Deo's failure to pay off the loans on Trade-ins, IAG satisfied $191,400.54 of the outstanding obligations and will be paying another $130,226.38.

      **vi.**     **Deo Failed to Perfect Liens on Behalf of Various Lenders, Resulting in Additional Potential Liability to IAG**

99.     Northshore and Sunrise arranged financing for their customers through contracted lenders.

100.     Northshore and Sunrise have written agreements with these lenders that require Northshore and Sunrise to ensure that title to any vehicle they finance has a lien placed thereon to protect the lender in the event of a default by the consumer.

101.     These agreements also require Northshore and Sunrise to repurchase any loan made by the lender to a consumer if Northshore and Sunrise do not follow their contractual requirements when arranging the loan, such as the failure to place a lien on the title.

102.     Deo failed to have Northshore and Sunrise perfect liens on behalf of the various lenders upon the sale and financing of numerous vehicles sold by Northshore and Sunrise.

103.     As a result of Deo's actions, in clear violation of lender agreements, those lenders demanded repurchase of those loans.

104.     In order to protect the investment of David Baron, Chabrier, Aaronson and J. Baron in Northshore and Sunrise and their goodwill with these lenders, with whom they have other agreements through IAG, IAG has or will have to pay over $850,000.00 if Deo does not do so.

**vii.     Deo Failed to Pay Warranty Companies and Vendors, and Failed to Account for Dealer and Other License Plates**

105.     Northshore and Sunrise sell, on behalf of third party warranty providers, extended warranties to consumers.

106.     Under Deo's direction, Northshore and Sunrise have issued warranties to consumers and collected the fees but have failed to pay over $100,000.00 due to the warranty companies, which will result in the voiding of the warranties for which consumers have paid.

107.     Deo has caused Northshore and Sunrise to fail to pay more than $58,000.00 owed to vendors.

108.     In addition, Deo has not completed the documentation necessary to complete registrations for out of state customers and cannot account for numerous missing titles on vehicles.

109.    The DMV License authorizes Northshore and Sunrise to have "dealer" license plates and to issue New York State license plates on purchased vehicles.

110.    These license plates are carefully accounted for, and the License holder is responsible for their protection and proper issuance.

111.    Despite due demand, Deo has refused to account for the dealer license plates and a number of unissued New York State license plates that would ultimately be used for customers.

112.    Upon information and belief, Deo's family and friends continue to use the dealer plates.

**viii.    Deo Wastes Company Assets and Further Obligates IAG Plaintiffs**

113.    Deo delivered certain unsold vehicles owned by Northshore and liened by Ally to repair facilities to be repaired.

114.    Despite due demand, however, Deo has failed to disclose the identity or location of the various repair facilities housing these vehicles.

115.    Upon information and belief, one or more of the repair facilities has placed a garagemen's lien on one or more of these vehicles for repair and/or storage charges.

116.    Deo has failed to arrange for payment to these facilities or alert IAG Plaintiffs of any garagemen's lien, resulting in the sale of these vehicles at auction to satisfy the garagemen's lien.

117.    Northshore and IAG Plaintiffs remain liable to Ally to satisfy the loans on these vehicles.

**ix.    Deo Takes and Uses Dealership Assets for His Own Purposes**

118.    Deo has been treating Northshore, Sunrise, and their respective assets as his own.

119.    Deo has personally taken over $230,000.00 in customers 'cash deposits, rather than deposit the money in Northshore's account.

120.    Despite Deo having no signatory authority on Northshore's bank accounts, he has been issuing and signing checks from its accounts to pay for his personal expenses, among other things.

121.    For example, Deo issued a $60,000.00 check from Northshore to Car Buyers NYC, Inc., a corporation formed and owned by Deo.

122.    Deo also used an American Express card issued in the name of Sunrise, which he obtained without authority or approval, to pay for personal expenses.

123.    In addition, Deo failed to terminate $303,043.12 of lender financing for consumers who canceled their purchases.

124.    Upon information and belief, Deo personally took those loan proceeds.

125.    Finally, Deo's son continues to drive, for his personal use, a luxury Maserati, valued at almost $80,000 and paid for by IAG, without IAG's consent.

**x.      Deo Falsified Financial Statements at Northshore and Sunrise with the Assistance of Jones**

126.    In order for Deo to perpetuate his financial wrongdoings he needed the IAG Plaintiffs and their Floor Plan lender, Ally Bank, to continue to provide the Floor Plan to Northshore and Sunrise.

127.    In order for IAG Plaintiffs and Ally Bank to continue to provide the Floor Plan to Northshore and Sunrise, Northshore and Sunrise were required to provide IAG Plaintiffs and Ally Bank monthly financial reports.

128.    These monthly financial reports were provided to IAG Plaintiffs and Ally Bank by Deo.

129.    Had Deo provided IAG Plaintiffs and Ally Bank the accurate monthly financial reports, IAG Plaintiffs and Ally Bank would have discontinued providing the Floor Plan to Northshore and Sunrise because the accurate monthly financial reports would not have satisfied Ally Bank's financial requirements.

130.    During Deo's tenure overseeing and managing Northshore and Sunrise, he falsely manipulated Northshore's and Sunrise's monthly financial reports submitted to IAG Plaintiffs and Ally Bank.

131.    Deo engaged the services of Jones and Jones CPA LLP on behalf Northshore and Sunrise to work on their financial reporting.

132.    Each month during Deo's tenure overseeing and managing Northshore and Sunrise, Jones was engaged and paid by Northshore and Sunrise to assist Deo in preparing the information to create the monthly financial reports.

133.    Deo and Jones manipulated Northshore's and Sunrise's monthly financial information.

134.    Deo and Jones falsified the monthly financial statements provided to the IAG Plaintiffs and Ally Bank.

135.    Deo and Jones falsified the monthly financial statements with an intent to defraud the the IAG Plaintiffs and Ally Bank.

136.    Deo and Jones falsified the monthly financial statements to induce the IAG Plaintiffs and Ally Bank to continue to provide the Floor Plan to Northshore and Sunrise.

137.    The IAG Plaintiffs and Ally Bank reasonably relied upon the falsified monthly financial statements to continue to provide the Floor Plan to Northshore and Sunrise.

138.     The IAG Plaintiffs and Ally Bank would not have continued to provide the Floor Plan to Northshore and Sunrise had they been aware that Deo was committing the wrongdoings alleged.

139.     The IAG Plaintiffs and Ally Bank would not have continued to provide the Floor Plan to Northshore and Sunrise had they been aware that the monthly financial statements were false.

140.     Due to the falsified monthly financial statements the IAG Plaintiffs and Ally Bank were unaware of the significant losses accruing at Northshore and Sunrise.

141.     When the IAG Plaintiffs and Ally Bank became aware of the significant losses accruing at Northshore and Sunrise, Ally Bank demanded that all financial deficiencies owed to Ally Bank be repaid, which the IAG Plaintiffs did, causing them significant damages.

### xi.     Deo Falsely Claims Full Ownership of Northshore and Sunrise to Obtain EIDL Loans, The Proceeds of Which Deo Personally Converted

142.     Almost immediately after the death of David Baron, Deo, purportedly on behalf of Northshore, applied through the Small Business Association ("SBA") for a COVID-19 Economic Injury Disaster Loan ("EIDL") in the amount of $196,425.00.

143.     In connection with the EIDL application, Deo falsely claimed to be a fifty percent (50%) owner of Northshore.

144.     Deo submitted the false application without the knowledge or approval of Northshore's members.

145.     Similarly, Deo submitted to the SBA an EIDL application purportedly on behalf of Sunrise, falsely claiming he has been the sole owner of Sunrise since January 1, 2021.

146.     Deo submitted this false application without the knowledge or approval of Sunrise's members.

147. Upon information belief, Deo personally took the proceeds from each of the EIDL loans.

**xii.  Deo Falsely Claims Full Ownership of Northshore and Sunrise to Obtain The Libertas Funds and Converts the Libertas Funds**

148. On or about November 15, 2022, Deo, purportedly on behalf of Northshore, entered into an agreement with Libertas ("Libertas Agreement") pursuant to which Northshore agreed to sell $997,500.00 of its future receipts (the "Future Receipts") to Libertas for the purchase price of $735,000 (the "Libertas Funds").

149. Deo, purportedly on behalf of Northshore, entered the Libertas Agreement without the knowledge or consent of Northshore's members.

150. In connection with the Libertas Agreement, Deo falsely misrepresented to Libertas that he was the sole owner of Northshore.

151. Deo's purported sale of the Future Receipts was the first step in his scheme to wrongfully convert for himself the Libertas Funds.

152. Deo, aware of his inability to withdraw the Libertas Funds from Northshore's bank account, arranged for the Libertas Funds to be deposited into Sunrise's bank account, from which he was able to withdraw funds.

153. When IAG Plaintiffs confronted Deo concerning his actions, Deo falsely claimed that he was the sole owner of Northshore and Sunrise.

**xiii.  Despite His Obligation to Safeguard the Libertas Funds, Thomasson Aids and Abets Deo's Conversion by Disbursing the Libertas Funds to Deo**

154. Upon learning of Deo's misconduct, IAG Plaintiffs took reasonable steps to ensure Deo would not abscond with the Libertas Funds.

155. At all relevant times, Thomasson claimed to be the attorney for Northshore, Sunrise, and Deo.

156. Upon information and belief, Thomasson was aware that the Libertas Funds were paid by Libertas to Northshore for the purported sale of the Future Receipts.

157. Thomasson was aware that there was a dispute among IAG Plaintiffs, Deo, and Libertas concerning Deo's right to have acted on Northshore's behalf with respect to the sale of the Future Receipts.

158. Thomasson was aware that there was a dispute concerning the rights to the Libertas Funds.

159. IAG Plaintiffs arranged to place the Libertas Funds into Thomasson's attorney trust account for safekeeping pending resolution of the parties 'dispute, rather than turn over the Libertas Funds to Deo, who was not the rightful owner of the Libertas Funds.

160. IAG Plaintiffs did so because Detective Marx at Second Precinct of the Nassau County Police Department ("NCPD") threatened to have Aaronson arrested if he did not turn over the funds.

161. Upon information and belief, Blankenship and Merckling, at the behest of Deo, abused their authority as retired and active police officers to engage Detective Marx to make this threat.

162. As a result of these threats, and to ensure the Libertas Funds would remain secure, IAG Plaintiffs requested that Thomasson maintain the Libertas Funds in his attorney trust account pending resolution of the parties 'dispute concerning the Libertas Funds.

163. Despite Thomasson's knowledge of the dispute concerning the parties 'rights to the Libertas Funds, he did as he pleased and immediately disbursed the Libertas Funds to Deo.

164.    Indeed, Thomasson has declared in open Court, in sum and substance, that no one was going to tell him what to do with his escrow account.

165.    And so, despite Thomasson's knowledge that the Libertas Funds were the consideration paid by Libertas to Northshore for the purported sale of the Future Receipts, Thomasson disbursed the Libertas Funds to Deo.

166.    Libertas had interposed counterclaims against the IAG Plaintiffs in a state court action seeking to recover the value of the Future Receipts and/or the return of the Libertas Funds (the "Libertas Claims").  See Chabrier, et al. v. Deo, et al., Index No.: 617224/2022 (Nassau County Supreme Court), NYSCEF Docket Entry 57, (the "State Action").

167.    The State Action has been discontinued without prejudice for the specific purpose of asserting in this action all claims and counterclaims raised in the State Action including the Libertas Claims.  See NYSCEF Docket Entry 116.

168.    Libertas specifically asserted the Libertas Claims against the IAG Plaintiffs and, upon information and belief, intends to pursue the Libertas Claims in this case.

**xiv.    Deo Further Encumbers and Diverts Northshore's Assets**

169.    Upon information and belief, Deo, falsely claiming to be the sole owner of Northshore, arranged to borrow funds from Flushing Bank and/or Flushing Financial Solutions (collectively "Flushing").

170.    Deo's representations to Flushing concerning his ownership of Northshore and Sunrise were false and supported by false financial records which were altered by Jones and Jones CPA LLP.

171.    Upon information and belief, Deo employed the assets of Northshore to secure the loan from Flushing and did so for the purpose of personally taking those Flushing loan proceeds.

172.    Deo arranged this loan without the knowledge or approval of Northshore's members.

xv.    **Defendants 'Unlawful Schemes at Superb**

173.    At all times relevant, since its inception in June 2021, Urrutia was the President and majority shareholder of Superb.

174.    In addition to Superb, Urrutia owns Volkswagen of Freehold, Team-Mitsubishi Hartford, and Team Nissan of Pittsfield Massachusetts.

a.    <u>**Deo meets with Urrutia and gains his confidence**</u>

175.    Urrutia first met Deo in November 2022, through a mutual friend in the automobile industry, at which time Deo held himself out to be qualified to run an automobile dealership and sought to enter into a partnership with Urrutia at Superb.

176.    Urrutia and Deo entered into a Cross-Purchase Agreement (the "Cross Purchase Agreement") dated as of December 1, 2022, in which Deo would pay Urrutia $500,000.00 and issue him a twenty-five percent (25%) interest in Northshore Motor Leasing LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise") in exchange for Deo obtaining a forty-nine percent (49%) interest in Superb.

177.    Prior to entering into and included in the Cross-Purchase Agreement, Deo made representations and warranties to Urrutia[1] that, among other things, he

(i) is the sole owner of Northshore and Sunrise, respectively;

(ii) has full power and legal right to transfer and deliver units of Northshore and Sunrise, respectively;

---

[1] Plaintiffs Superb and Urrutia do not pursue claims for breach of those representations and warranties in this case but provide this information as relevant to the facts and circumstances warranting relief here.  Plaintiffs Superb and Urrutia shall pursue their claims concerning the Cross-Purchase Agreement and related causes of action in the Supreme Court of the State of New York, Nassau County.

(iii) has not made any representation or warranty that constitutes an untrue statement of a material fact or omits to state a material fact necessary to make it not misleading; and

(iv) has no pending or threatened suit, action, bankruptcy, or administrative proceeding, or other arbitration or proceeding, which could adversely affect the ability of Deo to perform any of his obligations, including Deo's obligation to convey the units of Northshore and Sunrise free and clear of all liens and encumbrances.

178.    Deo issued a check to Urrutia on November 14, 2022, in the amount of $100,000.00 as a deposit on the foregoing agreement.

179.    However, this check bounced the following day due to being returned for insufficient funds.

180.    Due to Thomasson's direct participation in the perpetuation of Deo's fraudulent scheme, unbeknownst to Urrutia, Thomasson enabled Deo to pay Urrutia funds fraudulently obtained from Libertas.

181.    Indeed, on November 21, 2022, $735,000.00 was wired into Thomasson's escrow account due to Blankenship's and Merckling's intervention with the NCPD in making Aaronson believe that he would be arrested if he did not turn over the $735,000.00 fraudulently obtained from Libertas.

182.    Deo then wired Urrutia $500,000.00 in two (2) separate wires of $300,000.00 on November 22, 2022, and $200,000.00 on November 29, 2022, both of which were issued from Car Buyers NYC Inc. despite the fact those funds obviously came from Thomasson's escrow account.

183.    Having paid for his shares of Superb with these stolen funds, on December 1, 2022, Deo executed the Cross-Purchase Agreement.

### b.  Deo has limited powers as a minority shareholder of Superb

184.    A few weeks later, Urrutia and Deo executed a Shareholders' Agreement.

185.    The Shareholders' Agreement provides that effective December 22, 2022, Urrutia holds a fifty-one percent (51%) interest in Superb while Deo owns a forty-nine percent (49%) interest in Superb.

186.    The Shareholders' Agreement provides that Urrutia is the President, and that he, alone, and independent of any other shareholders, directors, and officers may exercise

(i)    the right to make all decisions concerning day-to-day operations of the Corporation, or to delegate such authority as the President desires; and

(ii) the right to hire and/or terminate all employees of the Corporation, except as otherwise provided, it being expressly agreed, that this power does not include the right to terminate a Shareholder.

187.    It similarly provides that all actions requiring shareholder consent require the written consent of least a majority of the voting shares; crucially, this includes the granting of any mortgage, lien, or other security interest in the assets of Superb or any loans or guarantees by Superb.

188.    The Shareholders' Agreement restricts the right to sell the stock of Superb only by a majority of the voting stock of Superb, *i.e.*, by the written consent of Urrutia, its majority shareholder.

189.    The Shareholders' Agreement provides that Urrutia has, among other responsibilities,

(i) final say on hiring and firing of employees and all other personnel decisions, including but not limited to third party vendors, agents and/or contractors;

(ii) capitalization of the Corporation;

(iii) establishment of policies and standards for services provided by Superb, as well as supervision and complete authority over Superb's activities;

(iv) review and final approval of financing arrangements with lending institutions to be utilized by Superb in financing the purchase of used vehicles by customers and approval of creditworthiness of potential purchasers of automobiles; and

(v) supervision and complete control of the accounting department of Superb, which shall include but not be limited to sole check authorization and sole control of bank accounts owned by Superb.

190.     In contrast, Deo's only responsibilities under the Shareholders' Agreement were to propose an individual who will serve as the General Manager of the day-to-day operations of Superb, whom Urrutia had final authority to approve or reject.

191.     Notwithstanding the clear and unambiguous language in the foregoing agreements, Superb Plaintiffs later learned that Deo made a series of material false representations.

192.     First, despite his representation that he is the sole member of Northshore and Sunrise, it was discovered that, in fact, Deo is not the sole member of either; in fact, within five days of entering into the Cross-Purchase Agreement, Deo was sued in New York Supreme Court, Nassau County by the actual owners of Northshore and Sunrise!

193.     In that lawsuit, the *real* owners of Northshore and Sunrise alleged that Deo has engaged in financial improprieties and massive fraud that is strikingly similar to the conduct complained of with respect to Superb.  Those claims were dismissed without prejudice so that they can be asserted herein.

194.    Second, because Deo never held any membership interest in Northshore or any ownership interest in Sunrise, Deo misrepresented that he had full power and legal right to transfer and deliver shares of Northshore and Sunrise to Plaintiff.

195.    Third, Deo made a material misrepresentation when he informed Urrutia that there was no active or anticipated litigation against him. Northshore and Sunrise commenced an action against him in state court!

196.    As set forth below, on or after August 3, 2023, the Superb Plaintiffs uncovered numerous schemes perpetrated against them by Defendants.

    **c.**    **Deo Defendants' first scheme against Superb: impermissible double-flooring**

197.    Dealerships typically operate with the assistance of banks that provide "floor plan" financing, which is collateralized by the vehicles available for sale at the dealership.

198.    When a dealership obtains such financing, the bank that provides same perfects a security interest in the vehicle, and certain rules attach as a condition of the financing, *i.e.*, with limited exceptions, any such vehicle financed must be present and available for sale at the dealership.

199.    On July 31, 2023, Nissan Motor Acceptance Corporation ("NMAC") contacted Bruce Novicky ("Novicky"), the Chief Operating Officer ("COO") of Superb, to inform him that NMAC discovered that vehicles financed by it were financed, in breach of Superb's floor plan agreement with NMAC, with another bank.

200.    This practice is called "double flooring" in dealership lexicon and is prohibited.

201.    Because of this prohibited conduct, Urrutia was required to pay NMAC $760,868.75 to cure the default under Superb's agreement with NMAC.

202.    Novicky confronted Deo about this, who provided inadequate explanations.

203.    Defendants S. Deo, Thomasson, Blankenship, Merckling, Laurie, and Jones each substantially assisted Deo in carrying out this scheme by acting as his agents at his direction in, among other things, filling out applications for financing and making material misrepresentations in said applications, discussing together the plan to defraud Superb Plaintiffs and the floor plan financing companies, and profiting from the scheme together.

204.    Superb and Urrutia thus were damaged by the Defendants' conduct, including – but not limited to – by causing Superb's floor plan line of credit with NMAC to be terminated, resulting in a finding of irreparable harm by this Court.  See ECF Docket Entry 55 ("In light of the foregoing record and the possibility of losing Superb Motors as a going concern …, the Court concludes that Superb has demonstrated irreparable harm").

### d.    Defendants' second scheme against Superb: misappropriation & theft of vehicles

205.    When Novicky informed Urrutia about the double-flooring, it caused great concern such that, on August 3, 2023, consistent with his authority over the day-to-day operations at Superb under the Shareholders' Agreement, Urrutia delegated to Novicky the task of conducting a physical inventory at Superb in order to ensure that (i) all "floor planned" vehicles were on premises at Superb as required; and (ii) that all vehicles entered into the dealership management system ("DMS") were also on premises.

206.    The inventory resulted in the astonishing amount of over one hundred (100) vehicles missing despite the fact that they were listed as assets in Superb's DMS system and on its general ledger. Novicky confronted Deo about the missing vehicles; in response, Deo demonstrably lied as to certain vehicles and failed to adequately explain why other vehicles were missing from Superb.

207.   As an example of Deo's clear lies, Deo explained that one particular vehicle was sold. However, when Novicky contacted the customer listed for that purchase, the customer denied purchasing that particular vehicle.   Moreover, Deo was unable or unwilling to supply documentation to substantiate the supposed sale.

208.   Due to the foregoing, Urrutia exercised his right to remove Deo from the day-to-day operations of Superb and instituted a top-down audit of all operations.  The findings included incontrovertible proof of Deo's duplicity and clear breaches of his fiduciary obligations.

### e.   Defendants' third scheme against Superb: use of forged instruments

209.   Urrutia discovered that Deo misrepresented to Flushing Bank that he is the sole owner of Superb in order to open and maintain a bank account for Superb with Flushing Bank.

210.   Deo's representation to Flushing Bank was blatantly false.

211.   Deo's actions violated the Shareholders' Agreement because only Urrutia had check authorization and only Urrutia was to have control over bank accounts owned by Superb.

212.   Deo opened this account to divert Superb's funds to an account that he can control.

213.   Upon information and belief, Deo paid Defendants S. Deo, Thomasson, Blankenship, Merckling, Laurie, and Jones out of funds placed in this account for their substantial assistance in carrying out his fraudulent schemes.

### f.   Defendants' fourth scheme against Superb: misappropriation of funds

214.   Urrutia learned that Deo misappropriated customer payments for certain vehicles sold by depositing those funds into the unauthorized Flushing Bank account and then transmitting those funds into his own accounts and, upon information and belief, into those of Defendants S. Deo, Thomasson, Blankenship, Merckling, Laurie, and Jones for their substantial assistance to Deo in carrying out his unlawful schemes.

215.    To Urrutia's knowledge, Deo misappropriated approximately $455,000.00 under this scheme.

**g.    Defendants 'fifth scheme against Superb: theft of cash payments by customers**

216.    Deo misappropriated cash payments from customers by receipting the cash in to Superb's DMS system but never depositing any of those cash payments into Superb's bank account and, instead, pocketing the money for himself.

217.    Upon information and belief, Defendants Merckling and Blankenship substantially assisted Deo in this scheme by physically taking the cash out of the safe at Superb and failing to deposit the cash into Superb's bank account as required.

218.    Upon information and belief, Defendants Merckling and Blankenship were paid out of these cash funds because they are officers with the NCPD and are not permitted to have any outside employment without advance approval from the NCPD.

219.    To Urrutia's knowledge, Deo misappropriated in excess of $400,000.00 under this scheme.

**h.    Defendants' sixth scheme against Superb: signing unauthorized checks**

220.    Deo knew that only Urrutia had sole check authorization, including because he executed the Shareholders' Agreement stating so. Notwithstanding this, Deo signed multiple checks from Superb's bank accounts that were under the control of Urrutia, although Deo had no authority to sign any checks from any bank account maintained by Superb.

221.    During its top-down audit, Urrutia discovered that Deo routinely wrote and signed checks issued by Superb made payable to Northshore, other entities Deo owns, Thomasson, Laurie, and others; none of these checks was authorized and each was signed by Deo despite the fact he had no authority to do so.

222.    Deo's conduct constitutes wire fraud.

**i.    Defendants' seventh scheme against Superb: purchase of vehicles under its name**

223.    Before Deo was removed from Superb, the Deo Defendants purchased five (5) vehicles from Manheim, an automobile auctioneer, under Superb's account.

224.    Upon information and belief, the Deo Defendants intended to sell these vehicles for 100% profit with no cost to Defendants and to leave Superb holding the proverbial bag.

**j.    Defendants 'eighth scheme against Superb: build their own group of dealerships**

225.    In trying to understand Deo's motive for engaging in these schemes, the top-down audit conducted by Urrutia soon made Deo's intentions very clear.

226.    For months, while he was repeatedly lying to and stealing from Superb Plaintiffs, Deo has been forming various corporate entities – GCC Syosset, GCC Sunrise, GCC LIC, GCC Roslyn, and GCC Smithtown – in order to begin his own group of dealerships to be operated under the master entity Gold Coast Motors Automotive Group.

227.    Prior to Deo's working relationship with Urrutia, Deo had no familiarity with Urrutia's dealership processes and know-how, which Urrutia imparted to him as a business partner for the mutual success of Superb.

228.    For example, Urrutia introduced Deo to Tekion, a unique DMS system that was specifically customized for Superb.

229.    Urrutia also taught Deo the process of successfully operating an automobile dealership using Tekion, such as processes to streamline dealership operations, inventory management, cash flow management, and reporting features that identify areas of improvement. *See also* ECF Docket Entry 38-2 at 38 (February 23, 2023 text messages).

230.    The information Urrutia imparted to Deo was unique, confidential, and proprietary.

231.    Specifically, the DMS system Urrutia implemented at Superb is unique because it was custom-designed for Superb and cost over $120,000.00 to set up.

232.    It contained the blueprint for Urrutia's success at his dealerships because Urrutia knew how to use the customized features of Tekion to operate dealerships profitably.

233.    During the top-down audit, Novicky discovered that Deo sought to misappropriate this customized, unique, and proprietary blueprint for the purpose of setting it up at his own group of dealerships.

234.    In other words, Deo stole the exact customization used by Superb to use at his competing group of dealerships.

235.    In addition, in a blatant breach of his fiduciary duties to Superb and Urrutia, Deo had Superb employees work for his own group of dealerships *while they were employed by Superb and were being paid to perform work only for Superb!*

236.    Moreover, Deo illegally imparted the confidential know-how Urrutia imparted to him, as well as the proprietary information Superb had in its possession, i.e., Superb's customer lists with contact information of its customers, customized Tekion DMS system, and other sensitive information, to these employees for the purpose of setting up Deo's own group of dealerships.

237.    Urrutia initially partnered with Bobby Clarke ("Clarke"), who owns a radio station named Irie Jam, 93.5 FM, and with whom Urrutia advertised to over 2 million listeners in the Caribbean community both during and after his partnership with Clarke ended.  See ECF Docket Entry 38-4 and 38-5.

238.    That partnership included approximately $1.5M in advertising, which generated the substantial customer list Urrutia developed to foster business at Superb.

239.    Due to the unique nature of Urrutia's partnership with Clarke, the customer list cannot be reverse engineered or independently generated without a substantial investment in Irie Jam, which the Defendants did not make.

240.    To add insult to injury, Deo and the employees he poached misappropriated Superb's customer list and used it to divert Superb's customers to other dealerships, including those in which Deo had an interest.

241.    Defendants S. Deo, Thomasson, Blankenship, Merckling, Laurie, and Jones each substantially assisted Deo in carrying out his unlawful schemes.  S. Deo managed and controlled the improperly-opened bank account in which Superb's funds were diverted.

242.    Blankenship and Merckling each misappropriated cash payments paid to Superb by customers of Superb and abused their authority as former or active police officers in carrying out their actions at the behest of Deo.

243.    For example, when Urrutia called the NCPD to remove Deo, upon information and belief, Blankenship and Merckling used their positions as retired and active police officers to stymie an investigation and to protect Deo from being arrested for his blatantly criminal conduct.

244.    Laurie enabled Defendants by substantially assisting them in opening a bank account at Flushing Bank, with whom Laurie has a relationship through his business DLA Capital. Laurie knew that Deo was not the 100% shareholder of Superb because he had sat in on meetings with Urrutia and Deo and knew that Urrutia was the majority shareholder of Superb with sole check authorization and sole control of all Superb bank accounts.

245.    Similarly, although Jones and his firm knew Superb was operating at a loss, they nonetheless altered journal entries in its accounting systems to create the appearance that it was operating profitably in order to deceive Urrutia and maintain his confidence in Deo.

246.     Jones and his firm were thus complicit in the fraudulent schemes perpetrated by Deo, and Jones and his firm aided and abetted Deo and the remaining Defendants in carrying out the fraudulent schemes.

247.     Finally, Thomasson serves as counsel to the Deo Defendants and substantially assisted them in carrying out their unlawful schemes by defending their blatantly criminal conduct despite knowing that Defendants have engaged in fraud.

248.     Thomasson has engaged in the aforesaid fraud together with the remaining Defendants.

249.     For example, although Thomasson purports to maintain an office at 380 Sunrise Highway, Wantagh, NY, this address is a UPS Store and not an office.

250.     Instead, Thomasson maintained an office at Superb where he directly conspired with and carried out the directives of Deo in furthering his unlawful schemes for the benefit of Deo, Thomasson, and the remaining Defendants.

251.     Urrutia also learned and is continuing to learn of other schemes to plunder and destroy Superb.

252.     For example, on February 22, 2023, Deo applied for a license with the Department of Motor Vehicles ("DMV") for GCC Sunrise and *lied* to the DMV stating that he had never been convicted of a crime when, in fact, he had. Specifically, Deo  previously was convicted in 2016 for wire fraud in relation to a mortgage.

253.     Defendants engaged in wide-ranging schemes to defraud the Superb Plaintiffs through wire fraud and the use of forged instruments.

254.     Defendants S. Deo, Thomasson, Blankenship, and Merckling aided and abetted Deo in delivering unauthorized checks to banks and presenting them for payment.

255. Defendants Laurie and Jones enabled wire fraud and the use of forged instruments to occur by creating or submitting the forged instruments, *i.e.*, false tax returns, false bank applications, and false loan applications, to assist in the remaining Defendants' scheme to steal from Superb.

256. Defendants' conduct constitutes a violation of the DTSA, and related state law common claims for misappropriation of trade secrets and unfair competition, as well as, among other things, a breach of Deo's fiduciary duty to Urrutia.

257. Defendants S. Deo, Thomasson, Blankenship, Merckling, Laurie, and Jones assisted Deo in setting up his competing group of dealerships built with the stolen trade secrets and confidential information of Superb, which these Defendants did in exchange for payments by Deo out of the funds stolen from Superb.

258. Defendants are currently benefitting from the confidential information Urrutia developed and sourced over thirty years in the automobile dealership industry, and since 2020, when he came to own his first dealership, which Defendants stole from the Superb Plaintiffs.

259. This information includes Superb's customer lists, Urrutia's contacts, including Tekion and Superb's customized DMS system from Tekion, and other proprietary information.

260. Superb's business model, its customer lists, information related to its revenues and profit margins, and the related information Deo obtained during his employment with Superb are confidential and proprietary, and took great costs and efforts to create, including Urrutia's decades of experience in the automobile industry, the relationships Urrutia developed with contacts in the automobile industry, and the unique know-how he has in how to successfully operate automobile dealerships.

261.    Urrutia went through painstaking efforts, time, and money to build the group of dealerships he owns to what it is today.

262.    Superb and Urrutia have spent the last three years marketing Superb, developing its brand, and cultivating relationships with Superb's customers and contacts in the automobile industry, many of whom worked with Urrutia for decades.

263.    Deo only learned of Superb's know-how and trade secrets through his fiduciary relationship with Urrutia, for the sole purpose of maximizing Superb's success, and Defendants have sought to exploit this information through improper means.

264.    Defendants have done so by working with Deo to pillage and plunder Superb because Deo has paid and is paying other Defendants out of the funds he has stolen from Superb for their assistance in carrying out his fraudulent schemes.

265.    Superb's trade secrets, including but not limited to its customer lists, employees, processes, and unique DMS system are vital to its business; possession of that information, which Defendants, as set forth herein, misappropriated in contravention of their fiduciary duty to Plaintiff and in violation of the law, provided Plaintiff a unique competitive advantage in the automobile dealership industry, a competitive advantage it has been stripped of by Defendants' unlawful acts.

266.    Superb took many reasonable measures to keep its confidential information secret, including restricting access to this information only to employees who have a fiduciary duty to Superb, all of whom are required to maintain it in a secured computer system protected by firewalls and other appropriate safeguards, such as usernames and passwords.

267.    The confidential information derives independent economic value from not being generally known to and not being readily ascertainable through proper means from others who could otherwise obtain economic value from the disclosure or use of the information.

268.   This confidential information is related to services used in and intended for use in interstate or foreign commerce because Superb sells vehicles in New Jersey, Connecticut, Pennsylvania, and Massachusetts, among others, in the regular course of its business.

269.   Deo, S. Deo, Thomasson, Blankenship, and Merckling knew and had reason to know that the trade secrets and confidential information they obtained – including customer lists, financial information, details about customers, and Superb's proprietary DMS system – were acquired by improper means.  This is evidenced by their bad faith conduct in plundering, pillaging, and massacring the goodwill and value of Superb.

270.   The unauthorized acts of Defendants in using critical confidential information to cut Superb out of its business in order to build a competing group of dealerships is unlawful.

271.   There was no other way to obtain this information and Deo, S. Deo, Thomasson, Blankenship, and Merckling used it as a "roadmap" and "step by step manual" to establish their own operations to the exclusion of Superb and Urrutia to whom they owed fiduciary duties.

272.   For example, Deo, S. Deo, Thomasson, Blankenship, and Merckling did not need to expend time, effort, and money in building a customized DMS system: They simply stole it from Superb and Urrutia.

273.   Similarly, Deo, S. Deo, Thomasson, Blankenship, and Merckling did not need to search for customers: They simply diverted them from Superb to their own group of dealerships.

274.   Moreover, Deo, S. Deo, Thomasson, Blankenship, and Merckling did not need to hire and pay employees: They simply had Superb's employees work for the benefit of their own group of dealerships while being paid by Superb.

275.     Superb's trade secrets and confidential information that Deo, S. Deo, Thomasson, Blankenship, and Merckling misappropriated through gaining the trust of Urrutia by and through Deo's fiduciary relationship as a minority shareholder of Superb provided them with the ability to duplicate operational, service, and development techniques that Urrutia has spent years, if not decades, establishing. Meanwhile, Deo, S. Deo, Thomasson, Blankenship, and Merckling through subterfuge gained access to information that they would have no other way of obtaining.

276.     Deo, S. Deo, Thomasson, Blankenship, and Merckling misappropriated confidential and trade secret information by improper means; no permission was given to them to utilize Superb's customer lists, customer information, proprietary DMS system, financial information, and details about its customers for any purpose except for the benefit of Superb.

277.     It is obvious from the brazen tactics of Deo, S. Deo, Thomasson, Blankenship, and Merckling's that they are actively engaged in a scheme to plunder and to destroy Superb - a company Urrutia spent years building.

278.     Upon information and belief, a significant number of Superb's customers have been solicited by Deo, S. Deo, Thomasson, Blankenship, and Merckling using Superb's trade secrets and confidential information.

279.     Immediate injunctive relief and a permanent injunction is necessary to prevent Deo, S. Deo, Thomasson, Blankenship, and Merckling from destroying the customer relationships, brand, and goodwill that Urrutia and Superb have spent years building, from profiting on a business that they stole from Superb, and causing further imminent and irreparable financial harm to Superb.

280.     In addition to shutting down Deo's other businesses, specifically, Defendants Car
Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast
Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn
LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp., Deo, S. Deo,
Thomasson, Blankenship, and Merckling should be directed to return the misappropriated
information and enjoined from engaging in any further unlawful conduct, it is essential that Superb
also be permitted forensically to examine Deo, S. Deo, Thomasson, Blankenship, and Merckling's
email accounts, computers, cellular phones, and any other electronic devices or cloud storage
accounts, to determine the exact nature and extent of their unlawful scheme to steal Superb's
business.

### AS AND FOR THEIR FIRST CAUSE OF ACTION OF ALL PLAINTIFFS
**(Violation of RICO, 18 U.S.C. § 1962 – All Defendants)**

281.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully
set forth herein.

282.     Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and
1962(c) in that each is either an individual, corporation, or limited liability company, or other
person capable of holding a legal interest in property.

283.     At all relevant times, each of the Deo Defendants was, and is, a person that exists
separate and distinct from the Enterprise, described below.

284.     Deo controls the Gold Coast entities and is the mastermind of the Enterprise, which
consists of Deo, S. Deo, Thomasson, Blankenship, Merckling, Laurie, Jones, and each of their
respective corporate entities.

285.     Deo was previously convicted in 2016 for wire fraud in relation to a mortgage.

286.    Defendants S. Deo, Thomasson, Blankenship, Merckling, Laurie, Jones are individuals and instrumental in the furtherance of the Enterprise, each of whom engaged in wire fraud or substantially assisted in carrying out the wire fraud through the use of forged instruments as outlined *supra*.

287.    The corporate entity Deo Defendants were utilized by the individual Deo Defendants to assist, enable, and perpetuate their fraudulent schemes.

288.    Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

289.    Defendants constitute an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

290.    Deo Defendants are a group of persons that are associated-in-fact for the common purpose of carrying on an ongoing unlawful enterprise engaged in the conduct of their affairs through a continuing pattern of racketeering activity.

291.    The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of the racketeering activity.

292.    There may also be other members of the enterprise who are unknown at this time.

293.    Since at least 2018 and continuing through the present, the members of the Enterprise have had ongoing relations with each other through common control/ownership, shared personnel and/or one or more contracts or agreements relating to and for the purpose of purportedly working for dealerships.

294.    These activities constitute racketeering activity within the meaning of 18 U.S.C. § 1962(c), (d), 18 U.S.C. § 1961(6) because they violate 18 U.S.C. §§ 1341 and 1343.

295.    Deo Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1).

296.    The racketeering activity was made possible by Deo Defendants' regular and repeated use of the facilities and services of the enterprise.  Deo Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

297.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below.

298.    Deo Defendants each committed at least two such acts or else aided and abetted such acts.  The acts of racketeering were not isolated, but rather the acts of Deo Defendants were related in that they had the same or similar purpose and result, participants, victims, and method of commission, as is evidenced by the fact two (2) separate groups of dealerships have been impacted by Deo Defendants' unlawful conduct.

299.    Further, the acts of racketeering by Deo Defendants have been continuous.

300.    There was repeated conduct during a period of time beginning in approximately 2018 and continuing to the present, and there is a continued threat of repetition of such conduct.

301.    The Enterprise, as alleged herein, was not limited to the predicate acts and extended beyond the racketeering activity. Rather, it existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of running automobile dealerships.

302.    Plaintiffs specifically allege that Deo Defendants participated in the operation and management of the Enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described below.

303.    Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud) in that they devised or intended to devise a scheme or artifice to defraud Plaintiffs or to obtain money from Plaintiffs and others by means of false or fraudulent pretenses, representations, or promises.

304.    For the purpose of executing their scheme or artifice, Deo Defendants caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers or received such therefrom.

305.    Defendants also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings, signs, and signals.

306.    The acts of Deo Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business or that such use could have been foreseen, even if not actually intended.

307.    These acts were done intentionally and knowingly with the specific intent to advance Deo Defendants' scheme or artifice.

308.    Deo Defendants could not have carried out their scheme had they not used the U.S. mails or private or commercial interstate carriers or interstate wires. In furtherance of their scheme alleged herein, Deo Defendants communicated among themselves and with Plaintiffs and others in furtherance of the scheme to defraud Plaintiffs.

309.    These communications were typically transmitted by wire (*i.e.*, electronically) and/or through the United States mails or private or commercial carriers.

310.    Specifically, each Deo Defendant did transmit the executed form of their operative contracts through electronic mail or other means of electronic communications.

311.    Additionally, upon information and belief, each Deo Defendant did use electronic means of communications in order to advance the aims of the Enterprise.

312.    Deo Defendants did sign checks without authorization and utilized forged instruments and false financial records to obtain bank accounts and financing for Northshore, Sunrise, and Superb without the authority to do so, constituting wire fraud.

313.    Deo Defendants' shared objective was and is to divert funds to their own benefit and to defraud Plaintiffs.

314.    Plaintiffs reasonably and justifiably relied upon Deo Defendants' false representations, false pretenses, and deceptive communications, and have been damaged as a direct and proximate result of Deo Defendants' participation in such enterprise, as alleged herein.

315.    Flushing Bank's employees and agents participated in this scheme by permitting Deo to open a bank account for Superb when they knew that he had no authority to do so. Among other things, Flushing Bank was in possession of documentation indicating that Deo had no such authority.

316.    Chase Bank's employees and agents participated in this scheme by permitting Deo to process checks from Superb's bank account when it knew that he had no authority to sign checks. Deo was not an authorized signatory on Superb's account at Chase Bank.

317.    Deo along with the other "persons" listed above violated 18 USCS § 1962(a) by using income and the proceeds of income derived from a pattern of racketeering activity and through the wrongful activities described in connection with their use and operation of Northshore and 189 Sunrise in which they participated as a principal within the meaning of section 18 U.S.C. § 2 to use or invest such income and proceeds in the acquisition of an interest in Superb which is engaged in, or the activities of which affect, interstate and foreign commerce

318.    The Enterprise has organized itself into a cohesive group with specific and assigned responsibilities and a command structure to operate as a unit in order to accomplish the common goals and purposes of defrauding the Project.

319.    S. Deo managed and controlled the improperly-opened bank account in which Superb's funds were diverted.

320.    Blankenship and Merckling each misappropriated cash payments and abused their authority as former or active police officers in carrying out their actions at the behest of Deo.

321.    Laurie enabled Deo Defendants by substantially assisting them in opening an account at Flushing Bank, with whom Laurie has a relationship through his business DLA Capital.

322.    Jones submitted false financials to create the illusion that Superb was profitable.

323.    Finally, Thomasson serves as counsel to the Deo Defendants and substantially assisted them in carrying out their unlawful schemes by defending their blatantly criminal conduct despite knowing that Deo Defendants have engaged in fraud.

324.    In fact, Thomasson helped divert the stolen funds.

325.    The *raison d'etre* of this fraud was to extract money from Plaintiffs and leave them holding the liabilities for Deo Defendants' conduct.

326.    It is prototypical racketeering – i.e., creating a problem (incurring liabilities and taking away the ability to pay those liabilities) for the purpose of solving it through extortion (attempting to obtain or obtaining both operational control and/or ownership of dealerships).

327.    Each defendant benefitted directly from these schemes either through direct participation in Deo's schemes by receiving portions of the money stolen by Deo.   The Enterprise is engaged in interstate commerce and uses instrumentalities of interstate commerce in its daily activities, *i.e.*, buying and selling vehicles from outside the State of New York.

328. All communications between the members of the Enterprise were by interstate email and mail, wire transfers, or ACH debits and other interstate wire communications.

329. Specifically, the Enterprise used interstate emails to communicate and collect monies purportedly owed for made up sales of automobiles that were never actually sold.

330. Plaintiffs have and will continue to be injured in their businesses and property by reason of the Enterprise's violations of 18 U.S.C. § 1962(c), in an amount to be determined at trial.

331. The injuries are proximately and reasonably foreseeably resulting from or caused by these violations of 18 U.S.C. §1962(d) include, but are not limited to, millions of dollars paid as a result of Defendants' fraudulent conduct. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble damages, plus costs and attorneys fees from Defendants.

## AS AND FOR THEIR SECOND CAUSE OF ACTION OF ALL PLAINTIFFS
### (Conspiracy Under 18 U.S.C. § 1962(d) – All Defendants)

332. Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

333. Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

334. By and through each of the Defendants' business relationships with one another, their close coordination with one another in the affairs of the Enterprise, and frequent email communications among the Defendants concerning the dealerships, purchase and sale of vehicles, opening of bank accounts, and issuing of checks, each Defendant knew the nature of the Enterprise, and each Defendant knew that the Enterprise extended beyond each Defendant's individual role. Moreover, through the same connections and coordination, each Defendant knew that the other Defendants were engaged in a conspiracy in violation of 18 U.S.C. § 1962(c).

335.    Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to defraud the Plaintiffs, including in violation of 18 U.S.C. § 1962(c). In particular, each Defendant was a knowing, willing, and active participant in the Enterprise and its affairs, and each of the Defendants shared a common purpose, namely, the orchestration, planning, preparation, and execution of the schemes to steal monies and assets of the dealerships, as well as to obtain operational control of the dealerships.

336.    The participation and agreement of each of Defendant was necessary to allow the commission of this scheme.

337.    Plaintiffs have been and will continue to be injured in their business and property by reason of the Defendants' violations of 18 U.S.C. § 1962(d), in an amount to be determined at trial.

338.    The injuries to Plaintiffs directly, proximately, and reasonably foreseeably resulting from or caused by these violations of 18 U.S.C. § 1962(d) include, but are not limited to, hundreds of thousands of dollars.

339.    Plaintiffs also have suffered damages by incurring attorneys' fees and costs associated with exposing and prosecuting Defendants' criminal activities.

340.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble damages, plus costs and attorneys' fees from the Defendants.

341.    The Court should also enter such equitable relief as it deems just and proper to preclude the Defendants from continuing in their illegal activity.

## AS AND FOR THEIR THIRD CAUSE OF ACTION OF SUPERB PLAINTIFFS
### (Injunctive Relief Under RICO, 18 U.S.C. § 1964(a) – Deo Defendants)

342.    Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

343.     Superb Plaintiffs have sustained or are immediately in danger of sustaining direct injury as the result of the challenged conduct.

344.     Namely, because Deo Defendants have misappropriated vehicles owned by Superb purchased with floor plan financing with various lenders, Superb Plaintiffs will be required to shut down its operations if Deo Defendants do not immediately return the vehicles.

345.     Due demand has been made for the return of the vehicles, both by Superb and its various lenders, but Deo Defendants have willfully refused to return the vehicles.

346.     Accordingly, Superb is entitled to an injunction, pursuant to 18 U.S.C. § 1964(a), requiring Deo Defendants to return Superb's vehicles, in order to prevent continued actual and threatened harm arising out of the challenged conduct.

## AS AND FOR THEIR FOURTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
### (Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. §1836 – Deo, S. Deo, Merckling, Blankenship, and Thomasson)

347.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

348.     Deo Defendants' actions, as set forth herein, constitute misappropriation under the DTSA, 18 U.S.C. § 1836.

349.     Deo Defendants possess trade secrets and confidential information belonging to Plaintiff, including the identity of all of its customers, contact information, financial information, and Superb's customized DMS system information.

350.     Superb Plaintiffs have made and make reasonable efforts to maintain the secrecy of this information, including limiting its disclosure to those who owe a fiduciary duty to the dealerships, *i.e.*, Deo, and Deo Defendants had no authority to utilize confidential information and trade secrets of Superb.

351.    The confidential information and trade secrets belonging to Superb that Deo Defendants possess derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through, proper means by another person who can obtain economic value from the disclosure or use of the information.

352.    Indeed, Deo Defendants utilized this very information as a road map to open a competing group of dealerships and to unfairly compete against Superb in dastardly fashion.

353.    Deo Defendants knew that this information contained confidential information and trade secrets belonging to Superb.

354.    Deo Defendants have no right to retain or to use any of Superb's trade secrets or other confidential and proprietary information due to their illegal conduct.

355.    Upon information and belief, Deo Defendants are retaining and using Superb's confidential information and trade secrets to compete with Superb; Superb did not consent to Deo Defendants' use of the information as set forth above.

356.    At all relevant times, Deo Defendants knew that the information obtained by them contained Superb's proprietary trade secrets that they had no right to receive and could not receive absent their improper acts.  Deo Defendants' conduct thus constitutes knowing, willful, and malicious misappropriation.

357.    Deo Defendants have used Superb's confidential information and trade secrets to sell vehicles, through interstate commerce, and to compete with Superb Plaintiffs, causing substantial loss of sales to them and damage to its relationships with its clients and the potential obliteration of the Superb Plaintiffs' dealerships.  Deo Defendants have wrongfully acquired and used Superb's confidential information and trade secrets and continue to do so, without the express or implied consent of Superb, for Deo Defendants' own benefit and the benefit of others.

358.    The public policy in favor of protecting Superb's interest in maintaining its trade secrets outweighs any interest Deo Defendants could have in using Superb's confidential information and trade secrets.

359.    As a direct and proximate result of Deo Defendants' misappropriation of Superb's confidential information and trade secrets, Superb has suffered and continues to suffer immediate and irreparable injury, loss, harm, or damage, including, without limitation, the loss of its brand recognition and goodwill with its clients, and will continue to suffer said injury, loss, harm, or damage unless and until Deo Defendants are restrained from their continued misappropriation of confidential information and trade secrets.

### AS AND FOR THEIR FIFTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
**Injunctive Relief under the DTSA (18 U.S.C. § 1836, *et seq.* – Deo Defendants)**

360.    Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

361.    Superb operates its business in interstate commerce in New York, New Jersey, Pennsylvania, and other states, by selling vehicles to customers in those states, and the trade secrets misappropriated by Deo Defendants are related to, and intended for use in, interstate commerce.

362.    As set forth above, Deo Defendants improperly acquired Superb's trade secrets, including information regarding its business, operations, services, customers, pricing, sales, and marketing strategies, and other confidential business and/or financial information that was secret, valuable in the industry, and had not been disclosed to anyone except those with a fiduciary duty who were obligated to keep this information confidential.

363.    The aforementioned information qualifies as "trade secrets" under the DTSA, as defined in 18 U.S.C. § 1839(3).

364.    The misappropriated documents concern Superb's operations, services, customers, pricing, sales, and marketing strategies, including financial, business, and economic information, plans, methods, techniques, procedures, formulas, and processes.

365.    Further, Superb has taken reasonable measures to keep such information secret by, *inter alia*, limiting highly sensitive information to those who have a fiduciary duty to it.

366.    The trade secrets misappropriated by Deo Defendants include those which required substantial resources, time, and investment by Superb to create and/or develop, and thus derive independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information.

367.    Deo Defendants' misappropriation of Superb's trade secrets has caused Superb to suffer harm, including, but not limited to, the loss of clients, loss of reputation, damage to their brand, and customer goodwill, and loss of the confidentiality of, and investment in, its trade secrets.

368.    This harm cannot be adequately remedied at law and requires injunctive relief.

369.    Superb will suffer irreparable and imminent harm in the absence of a permanent injunction.

370.    Deo Defendants' continued misappropriation of Superb's trade secrets and failure to return Superb's documents containing Trade Secrets, including Superb's customer information, will cause Superb further loss of clients, customers, accounts and/or market share.

371.    This imminent injury is neither remote nor speculative, because Superb has already been harmed in precisely this manner by Deo Defendants' misappropriation and use thereof and will continue to be irreparably harmed in the absence of a permanent injunction.

372.     Deo Defendants will not suffer harm from the rightful return of Superb Plaintiffs' proprietary information and trade secrets and will not be prevented from conducting their ordinary business by lawful means; Deo Defendants will merely be prevented from continuing to gain an unfair and unlawful advantage at Superb Plaintiffs' expense.  The ongoing, continuing, and future harm to Superb Plaintiffs cannot be adequately remedied at law and requires permanent injunctive relief.  The public interest would not be disserved by the issuance of an injunction preventing Deo Defendants from misappropriating Superb Plaintiffs' Trade Secrets.

373.     Accordingly, Superb Plaintiffs are entitled to an injunction, pursuant to 18 U.S.C. § 1836(b)(3)(A), enjoining Deo Defendants from continuing to use Superb Plaintiff's trade secrets, in order to prevent continued actual and threatened misappropriation of Superb Plaintiffs' trade secrets and requiring Deo Defendants to return and/or destroy the trade secrets improperly accessed and retained by Deo Defendants, pursuant to 18 U.S.C. § 1836(b)(3)(A)(ii).

### AS AND FOR THEIR SIXTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
#### (Misappropriation – Deo Defendants)

374.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

375.     Deo Defendants' actions, as set forth herein, constitute misappropriation under New York law.  Deo Defendants currently possess information belonging to and used in the operation of Superb Plaintiffs' businesses, which information constitutes confidential, proprietary, and trade secret information under New York law.

376.     Such information was developed by Superb Plaintiffs through great effort and expense, in terms of manpower, time, and costs, and is extremely valuable to Superb Plaintiffs, as it is crucial to the operation of its business, cannot easily be  acquired or duplicated by others, and, if made available to others, would enable competition with Superb Plaintiffs to their detriment.

377.     Superb Plaintiffs make reasonable efforts to maintain the secrecy of this information, including limiting its disclosure to those who have a fiduciary duty to them.

378.     Upon information and belief, Deo Defendants knowingly and improperly obtained and used such trade secrets and confidential information for their own benefit.

379.     The improperly retained information constitute trade secrets and Deo Defendants' actions pose a real and actualized risk that they will and have misappropriated these secrets by using the information to their advantage or for their own personal economic gain and with the willful and malicious intent to injure Superb Plaintiffs' business and their brand.

380.     As a result, Superb Plaintiffs have suffered direct and consequential damages and are entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

## AS AND FOR THEIR SEVENTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
### (Unfair Competition – Deo Defendants)

381.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

382.     Through Deo Defendants' misappropriation of Superb Plaintiffs' confidential trade secrets, Deo Defendants have stolen customers and poached employees and employed them while they were solely being paid by Superb to work solely for Superb to serve their own dealerships.

383.     As a result of Deo Defendants' use of the trade secrets they misappropriated to obtain a competitive advantage against Superb Plaintiffs, Deo Defendants have caused economic damages to Superb Plaintiffs along with diminishing their goodwill.

## AS AND FOR THEIR EIGHTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
**(Tortious Interference with Contracts, business relations, and prospective economic advantage – Deo Defendants)**

384.    Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

385.    Superb Plaintiffs have entered into valid written agreements with their vendors, customers, and employees concerning their businesses.

386.    Deo Defendants were at all relevant times aware of these agreements between Superb Plaintiffs and their banks, vendors, customers, and employees.

387.    Deo Defendants engaged in conduct designed to damage those relationships.

388.    For example, Deo Defendants double-floored vehicles in violation of their contracts with Superb Plaintiffs' floor plan lenders knowing that doing so would constitute a breach of those agreements.  As another example, Deo Defendants diverted customers away from Superb Plaintiffs to other dealerships owned or operated by Deo Defendants.

389.    As yet another example, Deo Defendants poached employees away from Superb Plaintiffs to other dealerships owned or operated by Deo Defendants, some of which were poached while those employees remained on Superb Plaintiffs' payroll, such that Deo Defendants interfered with Superb Plaintiffs' employment relationship with their employees.

390.    As a consequence of Deo Defendants' acts to sabotage Superb Plaintiffs' relationships with vendors, customers, and employees of Superb Plaintiffs for their benefit, they have been injured, for which they are entitled to recover damages including but not limited to financial loss, loss of goodwill and reputation, compensatory and special damages, interest, and punitive damages in an amount to be proven at trial. Deo Defendants' conduct was intentional, willful, and malicious, thus justifying the award of punitive damages and/or exemplary damages.

## AS AND FOR THEIR NINTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
### (Conversion – Deo Defendants)

391.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

392.     Superb Plaintiffs have a possessory right and legal ownership to their vehicles, dealer plates, confidential information, and trade secrets referenced herein.

393.     Deo Defendants exercised unauthorized dominion over Superb Plaintiffs' vehicles, dealer plates, confidential information, and trade secrets.

394.     Deo Defendants willfully exercised unauthorized dominion over Superb Plaintiffs' vehicles, dealer plates, confidential information, and trade secrets to the detriment of Plaintiff.

395.     Deo Defendants' unauthorized dominion over Superb Plaintiffs' vehicles, dealer plates, confidential information, and trade secrets was and is to their exclusion of their rights.

396.     Deo Defendants' unauthorized dominion over Superb Plaintiffs' vehicles, dealer plates, confidential information, and trade secrets constitutes conversion.

397.     Deo Defendants have thus committed the tort of conversion under New York common law.

## AS AND FOR THEIR TENTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
### (Civil Conspiracy – Deo Defendants)

398.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

399.     Deo Defendants conspired with each other for an unlawful purpose, to wit: to obtain Superb Plaintiffs' confidential information and to develop a business to compete with Superb using Superb Plaintiffs' confidential information and property obtained through fraud.

400.     Deo Defendants have entered into a civil conspiracy to engage in, *inter alia*, misappropriation, unfair competition, unjust enrichment, and tortious interference with contract.

401.     Deo Defendants each agreed to this common goal and acted in concert with the specific object of harming Superb Plaintiffs for their own personal gain.

402.     Each Deo Defendant performed an overt act in furtherance of the conspiracy.

403.     The unlawful alleged herein, including acts directed into the State of New York, were committed in furtherance of that conspiracy.

404.     As a result of the Deo Defendants' combined, concerted, and continuing efforts, Superb Plaintiffs were, are, and continue to be damaged.

405.     As a consequence of Deo Defendants' acts to steal from Superb Plaintiffs, they have been injured, for which they are entitled to recover damages including but not limited to financial loss, loss of goodwill and reputation, compensatory and special damages, interest, and punitive damages, in an amount to be determined at trial, directly caused by Deo Defendants' misconduct.

### AS AND FOR THEIR ELEVENTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
**(Professional Malpractice –Jones CPA LLP)**

406.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

407.     At all times hereinafter mentioned, Defendant Jones CPA LLP was and still is an accounting firm consisting of Certified Public Accountants ("CPA") licensed by the State of New York with offices at East Islip, Hampton Bays, and Port Jefferson Station within the State of New York, and did hold themselves out to the general public as being possessed of the skill and knowledge of such profession.

408.    In or before March 2023, Superb engaged the services of Jones CPA LLP and Jones – by and through the conduct of Deo – to perform various accounting services for Superb.

409.    Included within those accounting services for Superb were the monthly reconciliation of bank accounts, including general ledger, profit and loss, and inventory, as well as the preparation of the monthly financial statement required to be sent to Superb's lenders.

410.    In advising Superb, Jones CPA LLP and Jones each owed a duty of possessing and exercising the degree of learning, knowledge, skill, care, and diligence which was ordinarily possessed and exercised by CPAs in the community.

411.    Under standards of care and conduct prevailing in the accounting industry generally and applicable to Jones CPA LLP specifically, Jones CPA LLP had an affirmative duty to Superb Plaintiffs to undertake each and every one of its tasks for Superb Plaintiffs with caution and care, to be vigilant for discrepancies or irregularities and to report any such findings to Superb Plaintiffs accordingly.

412.    In addition, under Article V of the Principles of Professional Conduct of the AICPA Code of Professional Conduct, Jones CPA LLP owed Superb Plaintiffs an affirmative duty to identify and inform Superb Plaintiffs of any fraud red flags, such as suspicious activities or internal control deficiencies.

413.    As set forth above more fully, Jones CPA LLP failed to exercise independence and due professional care in a variety of ways, including without limitation failing to notice, investigate and/ or report to Urrutia the existence of Deo's scheme to create a false record that he is the 100% owner of the Superb Plaintiffs' dealerships and to fail to report missing cash that was never deposited into Superb Plaintiffs' dealership bank accounts despite seeing cash receipted in to the dealerships' DMS systems.

56

414.    As a result, Jones CPA LLP violated their duty to Superb.

415.    Jones CPA LLP did not possess and exercise the degree of learning, knowledge, skill, care, and diligence which was ordinarily possessed and exercised by CPAs in the community.

416.    Jones CPA LLP did not follow the accepted practice and procedure in the community.

417.    Jones CPA LLP actions, as set forth above, and otherwise were careless, negligent, and improper, resulting in damage to Superb due to the foregoing conduct.

418.    Jones CPA LLP rendered services for Superb in such a negligent and improper manner as to cause the loss alleged herein.

419.    Solely by reason of the foregoing negligence of Jones CPA LLP, and without any negligence on the part of Superb contributing thereto, Superb has been damaged by the foregoing conduct.

420.    Jones CPA LLP's wrongful and deficient conduct proximately caused Superb Plaintiffs to suffer damages which are more fully set forth above by failing to cause Superb Plaintiffs to arrest such misconduct earlier or in a preventative manner.

421.    All such losses were reasonably foreseeable at the time Jones CPA LLP were retained to provide accounting services.

422.    As a result of Jones CPA LLP's professional malpractice and fraud, Superb Plaintiffs have suffered, and continue to suffer, damages in an amount to be established at trial but in no event less than $10 million, plus interest and reasonable attorneys' fees, all of which continue to accrue.

## AS AND FOR THEIR TWELFTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
### (Fraud – Deo and Jones)

423.   Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

424.   Jones provided Urrutia, by and through Deo, with monthly financials that falsely showed Superb was profitable.

425.   This was false because Defendants' conduct caused Superb substantial losses such that Superb was actually operating at a loss.

426.   As a result, Jones made material misrepresentations of fact in providing the monthly financials to Urrutia by and through Deo.

427.   Jones knew or should have known that the information provided or reviewed by him was false and nonetheless reported to Superb Plaintiffs that the dealership bank accounts were balanced and that there were no discrepancies or issues.

428.   Jones submitted the monthly financials to Urrutia, by and through Deo, with an intent to defraud the Superb Plaintiffs as he stood to gain compensation for engaging in fraud.

429.   The Superb Plaintiffs reasonably relied on Jones's monthly financial statements.

430.   Indeed, Jones is licensed as a CPA and carried himself as knowledgeable in accounting; without him, the Defendants' fraud would not have gone on for so long.

431.   Jones's conduct resulted in damages to the Superb Plaintiffs.

432.   Jones therefore participated in the fraud at the behest of Deo and the remaining Defendants.

433.   Jones' wrongful and deficient conduct proximately caused Superb Plaintiffs to suffer damages which are more fully set forth above by failing to cause Superb Plaintiffs to arrest such misconduct earlier or in a preventative manner.

434. As a result of Jones' fraud, Superb Plaintiffs have suffered, and continue to suffer, damages in an amount to be established at trial, but in no event less than $10 million, plus interest and reasonable attorneys' fees, all of which continue to accrue.

### AS AND FOR THEIR THIRTEENTH CAUSE OF ACTION OF IAG PLAINTIFFS
### (Permanent Injunction – Against Libertas)

435. Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

436. Libertas claims ownership over Northshore's Future Receipts.

437. Libertas 'ownership over Northshore's Future Receipts is not legitimate.

438. IAG Plaintiffs seek a judgment permanently enjoining Libertas from exercising any rights over Northshore's Future Receipts.

### AS AND FOR THEIR FOURTEENTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
### (Article 4-A of the New York UCC – Against Flushing Bank)

439. Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

440. The fraudulent transfers at issue were not authorized and Deo Defendants did not have authority to make transfers or sign checks on behalf of Superb, Northshore, or Sunrise.

441. Deo and the remaining Defendants lacked apparent authority to enter into the fraudulent transfers because Flushing Bank knew, or should have known, that Urrutia is the majority shareholder, had sole check authorization, and sole control of bank accounts based on the signature card for Superb's bank accounts and prior meetings with agents of Flushing Bank.

442. Similarly, Deo and the remaining Defendants lacked apparent authority to enter into the fraudulent transfers because Flushing Bank knew, or should have known, that Deo had no membership interest in Northshore or Sunrise.

443.     A commercially reasonable actor, and certainly a sophisticated bank like Flushing

Bank, would have been alerted to the fact that the transfers were fraudulent and, thus, unauthorized.

444.     At a minimum, the suspicious or unusual account activity would have led a

commercially reasonable actor to make further inquiries.

445.     If those inquiries were made, they would have confirmed that Deo lacked actual

authority.

446.     The New York Uniform Commercial Code ("UCC") provides in pertinent part:

> If a receiving bank accepts a payment order issued in the name of its
> customer as sender which is (a) not authorized and not effective as
> the order of the customer under [§] 4-A-202, . . . the bank shall
> refund any payment of the payment order received from the
> customer to the extent the bank is not entitled to enforce payment
> and shall pay interest on the refundable amount …

See UCC § 4-A-204(1).

447.     Because the fraudulent transfers were not authorized, Flushing Bank is required to

refund the transfers pursuant to Article 4-A of the N.Y. U.C.C. because Flushing Bank cannot

establish that it (i) followed commercially reasonable and agreed upon security procedures; and

(ii) acted in good faith and in accordance with the reasonable expectations of the parties.


448.     As a result, section 4-A-204(1) of the N.Y. U.C.C. requires that Flushing Bank

refund the payment orders made by Defendants, plus interest.

449.     To date, Flushing Bank has failed to comply with Section 4-A-204(1) by refusing

to refund the payment orders made by Defendants to Superb Plaintiffs.

450.     As a direct and proximate result of Flushing Bank's breaches of its duty, Superb

Plaintiffs have suffered damages in an amount to be determined at trial.

## AS AND FOR THEIR FIFTEENTH CAUSE OF ACTION OF SUPERB PLAINTIFFS
### (Negligence – Against Flushing Bank)

451.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

452.     As customers of Flushing Bank, Flushing Bank owed Superb Plaintiffs a duty of care, independent of any contractual agreement, to act in a manner consistent with commercially reasonable standards.

453.     Flushing Bank violated this duty of care by, among other things, failing to follow their own "Know Your Customer" procedures.

454.     Flushing Bank had actual knowledge that Urrutia was the majority shareholder of Superb and sole member or shareholder of his remaining dealerships because Urrutia previously provided Flushing Bank with all information concerning his ownership interest in Superb.

455.     As a result, Flushing Bank should have known that Deo's application to open an account with Flushing Bank was fraudulent because it falsely stated that he was the sole shareholder of Superb.

456.     As a direct and proximate result of Flushing Bank's breaches of its duty, Superb Plaintiffs have suffered damages in an amount to be determined at trial.

## AS AND FOR THEIR SIXTEENTH CAUSE
## OF ACTION ON BEHALF OF PLAINTIFF CHABRIER
## AND OTHER MEMBERS OF NORTHSHORE SIMILARLY SITUATED
### (Declaratory Judgment-Against Deo)

457.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

458.     Chabrier, Khan, and the Estate of David Baron are the sole members of Northshore.

459.     Deo falsely claims to be the sole owner of Northshore.

460.     Determination of the ownership of Northshore is necessary to resolve the rights and obligations of each of the parties to each other and to Northshore.

461.     There exists a justiciable controversy which is ripe for judgment.

462.     Chabrier, on behalf of himself and other members of Northshore similarly situated, seeks a declaratory judgment declaring that he, Khan, and the Estate of David Baron are the sole members of Northshore.

463.     Chabrier, on behalf of himself and other members of Northshore similarly situated, has no adequate remedy at law.

**AS AND FOR THEIR SEVENTEENTH CAUSE OF
ACTION ON BEHALF OF PLAINTIFF AARONSON
<u>AND OTHER MEMBERS OF SUNRISE SIMILARLY SITUATED</u>
(Declaratory Judgment-Against Deo)**

464.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

465.     Aaronson, J. Baron, Raymond Phelan, and the Estate of David Baron are the sole members of Sunrise.

466.     Deo falsely claims to be the sole owner of Sunrise.

467.     Determination of the ownership of Sunrise is necessary to resolve the rights and obligations of each of the parties to each other and to Sunrise.

468.     There exists a justiciable controversy which is ripe for judgment.

469.     Aaronson, on behalf of himself and other members of Sunrise similarly situated, seeks a declaratory judgment declaring that Aaronson, J. Baron, Raymond Phelan, and the Estate of David Baron are the sole members of Sunrise.

470.     Aaronson, on behalf of himself and other members of Sunrise similarly situated, has no adequate remedy at law.

**AS AND FOR THEIR EIGHTEENTH CAUSE OF ACTION**
**DERIVATIVELY ON BEHALF OF NORTHSHORE**
**(Conversion-Against Deo)**

471.   Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

472.   Northshore is the rightful owner of, and has superior rights to, the assets alleged herein, including but not limited to the Libertas Funds.

473.   Deo has exercised unauthorized dominion or control over the assets of Northshore, including the Maserati and the Libertas Funds.

474.   By selling Northshore's Future Receipts to Libertas in exchange for the Libertas Funds, Deo was under an obligation to maintain the Libertas Funds in Northshore's account and/or use the Libertas Funds for the benefit of Northshore and was not permitted to use the Libertas Funds for his own personal benefit.

475.   Despite due demand, Deo has refused to return to Northshore the assets converted, including the Maserati and the Libertas Funds.

476.   Deo has wrongfully converted the foregoing assets for his own, personal use, thereby damaging Northshore.

477.   By reason of the foregoing, Northshore demands judgment against Deo in an amount to be determined by the Court.

**AS AND FOR THEIR NINETEENTH CAUSE OF ACTION**
**DERIVATIVELY ON BEHALF OF NORTHSHORE**
**(Unjust Enrichment-Against Deo)**

478.   Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

479.     Deo's retention of the assets of Northshore has caused him to be unjustly enriched at Northshore's expense.

480.     The circumstances of Deo's enrichment are such that equity and good conscience require Deo to make restitution.

481.     By reason of the foregoing, Northshore demands judgment against Deo for a sum of $10,000,000.00.

## AS AND FOR THEIR TWENTIETH CAUSE OF ACTION
## DERIVATIVELY ON BEHALF OF NORTHSHORE
### (Breach of Duty of Loyalty-Against Deo)

482.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

483.     As an employee and the general manager of Northshore, Deo owed duties of loyalty and good faith to Northshore.

484.     As set forth in detail above, Deo has breached such duties.

485.     By virtue of the foregoing, Northshore has been damaged in the amount of $10,000,000.00.

## AS AND FOR THEIR TWENTY-FIRST CAUSE OF ACTION
## DERIVATIVELY ON BEHALF OF NORTHSHORE
### (Breach of Fiduciary Duty-Against Deo)

486.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

487.     As an employee and the general manager of Northshore, Deo had a fiduciary duty to act in the best interest of Northshore.

488.     As set forth in detail above, Deo has breached such duty.

489. By virtue of the foregoing, Northshore has been damaged in the amount of $10,000,000.00.

**AS AND FOR THEIR TWENTY-SECOND CAUSE OF ACTION
DERIVATIVELY AND DIRECTLY BY CHABRIER AND
THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED**
(Permanent Injunction-Against Deo)

490. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

491. Deo has misrepresented his ownership of Northshore for the purpose of defrauding Chabrier and the other members of Northshore as well as those conducting business with Northshore.

492. Deo has engaged in illegal and fraudulent conduct towards the members of Northshore, and has looted, wasted, or otherwise diverted for his own personal use the property and assets of Northshore, thereby enriching himself at Northshore's expense.

493. Deo has used the License issued to Chabrier to continue to operate Northshore in a manner to perpetuate his wrongful activities.

494. Deo's actions jeopardize the License issued to Chabrier and put Chabrier at risk of criminal and civil liability.

495. Deo's actions have harmed and will continue harm Chabrier and the other members of Northshore.

496. IAG Plaintiffs have no adequate remedy at law.

497. IAG Plaintiffs seek a permanent injunction restraining Deo from participating in the continued management and operation of Northshore.

**AS AND FOR THEIR TWENTY-THIRD CAUSE OF ACTION
DERIVATIVELY ON BEHALF OF SUNRISE**
(Conversion-Against Deo)

468. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

469. As set forth in detail above, Deo has exercised unauthorized dominion or a right of ownership over the assets of Sunrise, which has superior rights to the assets, and refused their return to Sunrise despite due demand.

470. Deo has converted the assets of Sunrise for his own use.

471. By reason of the foregoing, Sunrise demands judgment against Deo for a sum of $10,000,000.00.

**AS AND FOR THEIR TWENTY-FOURTH CAUSE OF
ACTION DERIVATIVELY ON BEHALF OF SUNRISE**
**(Unjust Enrichment-Against Deo)**

472. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

473. Deo's retention of the assets of Sunrise has caused him to be unjustly enriched at Sunrise's expense.

474. The circumstances of Deo's unjust enrichment are such that equity and good conscience require Deo to make restitution.

475. By reason of the foregoing, Sunrise demands judgment against Deo for a sum of $10,000,000.00.

**AS AND FOR THEIR TWENTY-FIFTH CAUSE OF
ACTION DERIVATIVELY ON BEHALF OF SUNRISE**
**(Breach of Duty of Loyalty-Against Deo)**

476. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

477. As an employee and the general manager of Sunrise, Deo owed duties of loyalty and good faith to Sunrise, and as set forth in detail above, Deo has breached such duties.

478. By virtue of the foregoing, Sunrise has been damaged in the amount of $10,000,000.00.

**AS AND FOR THEIR TWENTY-SIXTH CAUSE OF**
**ACTION DERIVATIVELY ON BEHALF OF SUNRISE**
**(Breach of Fiduciary Duty-Against Deo)**

479. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

480. As an employee and the general manager of Sunrise, Deo had a fiduciary duty to act in the best interest of Sunrise.

481. As set forth in detail above, Deo has breached such duty.

482. By virtue of the foregoing, Sunrise has been damaged in the amount of $10,000,000.00.

**AS AND FOR THEIR TWENTY-SEVENTH CAUSE OF ACTION**
**DERIVATIVELY AND DIRECTLY BY AARONSON, J. BARON,**
**AND THOSE MEMBERS OF SUNRISE SIMILARLY SITUATED**
**(Permanent Injunction-Against Deo)**

483. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

484. Deo has misrepresented his ownership of Sunrise for the purpose of defrauding Aaronson and the other members of Sunrise as well as those conducting business with Sunrise.

485. Deo has engaged in illegal, fraudulent actions towards the members of Sunrise, and has looted, wasted, or otherwise diverted for his own personal use the property and assets of Sunrise, thereby enriching himself at Sunrise's expense.

486.   Deo has used the License issued to Aaronson and J. Baron to continue to operate Sunrise in a manner to perpetuate his wrongful activities.

487.   Deo's actions jeopardize the License issued to Aaronson and J. Baron and put them at risk of criminal and civil liability.

488.   Deo's actions have harmed and will continue harm Aaronson, J. Baron, and the other members of Sunrise.

489.   IAG Plaintiffs have no adequate remedy at law.

490.   IAG Plaintiffs seek a permanent injunction restraining Deo from participating in the continued management and operation of Sunrise.

**AS AND FOR THEIR TWENTY-EIGHTH CAUSE OF ACTION
DERIVATIVELY AND DIRECTLY BY CHABRIER AND
THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED
(Contribution and Indemnification for Fraud, Breach of Fiduciary Duty,
Breach of Loyalty and Conversion-Against Deo)**

491.   Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

492.   Libertas alleges that the Future Receipts are the rightful property of Northshore.

493.   Libertas alleges it has a superior right to the Future Receipts under the Libertas Agreement.

494.   Libertas alleges that the Libertas Funds were the rightful property of Northshore.

495.   Libertas alleges a superior right to the Libertas Funds, as pledged to Libertas.

496.   Libertas has asserted the Libertas Claims against IAG Plaintiffs for tortious interference and conversion concerning the Future Receipts.

497.   Libertas has asserted the Libertas Claims against IAG Plaintiffs for conversion and unjust enrichment in allegedly wrongfully taking the Libertas Funds.

498. Deo, through fraudulent means, and without the knowledge and consent of Northshore's members, sold the Future Receipts to Libertas in exchange for the Libertas Funds.

499. Deo, in breach of his fiduciary duties, sold the Future Receipts and acquired the Libertas Funds for himself.

500. Deo, in breach of his duty of loyalty, sold the Future Receipts and acquired the Libertas Funds for himself.

501. Deo was unjustly enriched by the sale of the Future Receipts and acquisition of the Libertas Funds.

502. If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Deo; Libertas shall have recourse against Deo who, fraudulently and without authority and in breach of his fiduciary duties and duty of loyalty, sold the Future Receipts in exchange for the Libertas Funds and was unjustly enriched thereby and/or converted same. As such, Deo would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims, and IAG Plaintiffs request that they shall have judgment over and against Deo for any damages assessed against IAG Plaintiffs arising out of Deo's actions chargeable to IAG Plaintiffs running in favor of Libertas and/or for any liability arising out of the aforesaid causes of action.

503. If Libertas recovers herein against IAG Plaintiffs, such damages will have been caused and brought about by reason of Deo's fraud, breach of fiduciary duties and duty of loyalty, unjust enrichment, and conversion.

504. If Libertas recovers from IAG Plaintiffs, then IAG Plaintiffs will have been injured and seek indemnification and/or contribution for any and all amounts that IAG Plaintiffs may have

to pay, and seek a judgment over and against Deo for any such amounts, together with the costs, expenses, and disbursements incurred in the defense of the Libertas Claims.

### AS AND FOR THEIR TWENTY-NINTH CAUSE OF ACTION DERIVATIVELY AND DIRECTLY BY CHABRIER AND THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED
(Conversion-Against Thomasson)

505.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

506.    IAG Plaintiffs delivered the Libertas Funds to Thomasson, as he demanded, claiming to be the rightful attorney for Northshore.

507.    IAG Plaintiffs delivered the Libertas Funds to Thomasson for safekeeping in his attorney escrow account pending a resolution of the parties 'dispute over the Libertas Funds

508.    By delivering the Libertas Funds to Thomasson, IAG Plaintiffs relinquished possession and control of the Libertas Funds to Thomasson to be held in escrow for the benefit of Northshore.

509.    By failing to safeguard the Libertas Funds, and subsequently disbursing the Libertas Funds to Deo, Thomasson, intentionally and without authority, assumed or exercised control over the Libertas Funds belonging to Northshore, interfering with Northshore's right of possession.

510.    Despite due demand, Thomasson has refused to return to Northshore the Libertas Funds.

511.    Thomasson has wrongfully converted the Libertas Funds, thereby damaging Northshore.

512.    By reason of the foregoing, Northshore demands judgment against Thomasson in the amount of $735,000.00.

70

**AS AND FOR THEIR THIRTIETH CAUSE OF ACTION**
**DERIVATIVELY AND DIRECTLY BY CHABRIER AND**
**THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED**
**(Aiding and Abetting Conversion-Against Thomasson)**

513.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

514.    By turning over the Libertas Funds to Deo, Thomasson aided and abetted Deo in intentionally and without authority, assuming or exercising control over the Libertas Funds belonging to Northshore, interfering with Northshore's superior right of possession.

515.    Despite due demand, Thomasson has refused to return the Libertas Funds.

516.    As set forth in detail above, Thomasson has wrongfully aided and abetted Deo in converting the the Libertas Funds, thereby damaging Northshore.

517.    By reason of the foregoing, Northshore demands judgment against Thomasson in the amount of $735,000.00.

**AS AND FOR THEIR THIRTY-FIRST CAUSE OF ACTION**
**DERIVATIVELY AND DIRECTLY BY CHABRIER AND**
**THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED**
**(Contribution and Indemnification for Conversion-Against Thomasson)**

518.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

519.    If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Thomasson; and/or Libertas shall have recourse against Thomasson as the party who converted the Libertas Funds, and as such, Thomasson would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims; and IAG Plaintiffs request that they shall have judgment over and against Thomasson for any damages assessed against IAG Plaintiffs arising out of Thomasson's

actions chargeable to IAG Plaintiffs running in favor of Libertas and/or for any liability arising out of the aforesaid causes of action.

520.    If Libertas recovers herein against IAG Plaintiffs, such damages will have been caused and brought about by reason of Thomasson's conversion of the Libertas Funds.

521.    If Libertas recovers from IAG Plaintiffs, then IAG Plaintiffs will have been injured and seek indemnification and/or contribution for any and all amounts that IAG Plaintiffs may have to pay, and that IAG Plaintiffs have judgment over and against Thomasson, together with the costs, expenses and disbursements incurred in the defense of the Libertas Claims.

### AS AND FOR THEIR THIRTY-SECOND CAUSE OF ACTION DERIVATIVELY AND DIRECTLY BY CHABRIER AND THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED
**(Contribution & Indemnification for Aiding & Abetting Conversion-Against Thomasson)**

522.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

523.    If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Thomasson; and/or Libertas shall have recourse against Thomasson as the party who aided and abetted Deo's conversion of the Libertas Funds, and as such, Thomasson would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims; and IAG Plaintiffs request that they shall have judgment over and against Thomasson for any damages assessed against IAG Plaintiffs arising out of Thomasson's actions chargeable to IAG Plaintiffs running in favor of Libertas and/or for any liability arising out of the aforesaid causes of action.

524.    If Libertas recovers herein against IAG Plaintiffs, such damages will have been caused and brought about by reason of the aiding and abetting conversion of the Libertas Funds by Deo.

525.    If Libertas recovers from IAG Plaintiffs, then IAG Plaintiffs will have been injured

and seek indemnification and/or contribution for any and all amounts that IAG Plaintiffs may have

to pay, and IAG Plaintiffs seek judgment over and against Thomasson, together with the costs,

expenses, and disbursements incurred in the defense of the Libertas Claims.

**AS AND FOR THEIR THIRTY-THIRD CAUSE OF ACTION**
**DERIVATIVELY AND DIRECTLY BY CHABRIER AND**
**THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED**
**(Contribution and Indemnification for Aiding and Abetting Fraud-Against Thomasson)**

526.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the

preceding paragraphs as though fully set forth herein.

527.    Thomasson aided and abetted Deo's fraud of selling the Future Receipts so as to

acquire the Libertas Funds.

528.    If it is determined that Libertas sustained damages, as alleged in its Libertas Claims,

then such damages were necessarily caused by Thomasson; and/or Libertas shall have recourse

against Thomasson as the party who aided and abetted Deo's fraud of selling the Future Receipts

so as to acquire the Libertas Funds, and, as such, Thomasson would ultimately be liable to Libertas

for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims; and

IAG Plaintiffs request that they shall have judgment over and against Thomasson for any damages

assessed against IAG Plaintiffs arising out of Thomasson's actions chargeable to IAG Plaintiffs

running in favor of Libertas and/or for any liability arising out of the aforesaid causes of action.

529.    If Libertas recovers herein against IAG Plaintiffs, such damages will have been

caused and brought about by reason of Thomasson's aiding and abetting Deo's fraud of selling the

Future Receipts so as to acquire the Libertas Funds.

530.    If Libertas recovers from IAG Plaintiffs, then IAG Plaintiffs will have been injured

and seek indemnification and/or contribution for any and all amounts that IAG Plaintiffs may have

to pay, and IAG Plaintiffs seek judgment over and against Thomasson, together with the costs, expenses, and disbursements incurred in the defense of the Libertas Claims.

**AS AND FOR THEIR THIRTY-FOURTH CAUSE OF ACTION**
**DERIVATIVELY AND DIRECTLY BY CHABRIER AND**
**THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED**
**(Aiding and Abetting Breach of Fiduciary Duty-Against Thomasson)**

531.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

532.     As set forth above, Thomasson aided and abetted Deo's breach of fiduciary duty of selling the Future Receipts so as to acquire the Libertas Funds personally for Deo's own benefit.

533.     By reason of the foregoing, Northshore demands judgment against Thomasson in the amount of $735,000.00.

**AS AND FOR THEIR THIRTY-FIFTH CAUSE OF ACTION**
**DERIVATIVELY AND DIRECTLY BY CHABRIER AND**
**THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED**
**(Contribution and Indemnification for Aiding and Abetting Breach of Fiduciary**
**Duty-Against Thomasson)**

534.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

535.     As set forth above, Thomasson aided and abetted Deo's breach of fiduciary duty of selling the Future Receipts so as to acquire the Libertas Funds for Deo's own personal benefit.

536.     If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Thomasson; and/or Libertas shall have recourse against Thomasson as the party who aided and abetted Deo's breach of fiduciary duty of selling the Future Receipts so as to acquire the Libertas Funds, and, as such, Thomasson would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims; and IAG Plaintiffs request that they shall have judgment over and against

Thomasson for any damages assessed against IAG Plaintiffs arising out of Thomasson's actions chargeable to IAG Plaintiffs running in favor of Libertas and/or for any liability arising out of the aforesaid causes of action.

537.    If Libertas recovers herein against IAG Plaintiffs, such damages will have been caused and brought about by reason of Thomasson's aiding and abetting Deo's breach of fiduciary duty of selling the Future Receipts so as to acquire the Libertas Funds.

538.    If Libertas recovers from IAG Plaintiffs, then IAG Plaintiffs will have been injured and seek indemnification and/or contribution for any and all amounts that IAG Plaintiffs may have to pay, and IAG Plaintiffs seek judgment over and against Thomasson, together with the costs, expenses, and disbursements incurred in the defense of the Libertas Claims.

**AS AND FOR THEIR THIRTY-SIXTH CAUSE OF ACTION
DERIVATIVELY AND DIRECTLY BY CHABRIER AND
THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED
(Aiding and Abetting Breach of Duty of Loyalty-Against Thomasson)**

539.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

540.    As set forth above, Thomasson aided and abetted Deo's breach of the duty of loyalty of selling the Future Receipts so as to acquire the Libertas Funds for Deo's own personal benefit. By reason of the foregoing, Northshore demands judgment against Thomasson in the amount of $735,000.00.

**AS AND FOR THEIR THIRTY-SEVENTH CAUSE OF ACTION
DERIVATIVELY AND DIRECTLY BY CHABRIER AND
THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED
(Contribution and Indemnification for Aiding and Abetting Breach of Duty of
Loyalty-Against Thomasson)**

541.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

542.    As set forth above, Thomasson aided and abetted Deo's breach of the duty of loyalty of selling the Future Receipts so as to acquire the Libertas Funds for Deo's own personal benefit.

543.    If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Thomasson; and/or Libertas shall have recourse against Thomasson as the party who aided and abetted Deo's breach of the duty of loyalty of selling the Future Receipts so as to acquire the Libertas Funds, and, as such, Thomasson would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims; and IAG Plaintiffs request that they shall have judgment over and against Thomasson for any damages assessed against IAG Plaintiffs arising out of Thomasson's actions chargeable to IAG Plaintiffs running in favor of Libertas and/or for any liability arising out of the aforesaid causes of action.

544.    If Libertas recovers herein against IAG Plaintiffs, such damages will have been caused and brought about by reason of Thomasson's aiding and abetting Deo's breach of the duty of loyalty of selling the Future Receipts so as to acquire the Libertas Funds.

545.    If Libertas recovers from IAG Plaintiffs, then IAG Plaintiffs will have been injured and seek indemnification and/or contribution for any and all amounts that IAG Plaintiffs may have to pay, and that IAG Plaintiffs have judgment over and against Thomasson, together with the costs, expenses, and disbursements incurred in the defense of the Libertas Claims.

## AS AND FOR THEIR THIRTY-EIGHTH CAUSE OF ACTION BY IAG PLAINTIFFS
### (Unjust Enrichment-Northshore)

546.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

547.    IAG has paid for Northshore's obligations as follows, which includes:

    a.      1581 Hylan Blvd Auto LLC:            $74,000.00

b.     1580 Hylan Blvd Auto LLC:     $53,800.00
c.     1591 Hylan Blvd Auto LLC:     $104,809.88
d.     1632 Hylan Blvd Auto LLC:     $108,000.00
e.     1239 Hylan Blvd Auto LLC:     $2,322,576.00
f.     2519 Hylan Blvd Auto LLC:     $385,597.10
g.     76 Fisk Street Realty LLC:     $683,316.95
h.     446 Route 23 Auto LLC:     $8,918.58
i.     Island Auto Management, LLC:     $65,606.43
j.     The Maserati automobile paid for by IAG for over $80,000.00.

549.     Should the Court find that ownership of Northshore rests with Deo, then Northshore will have been enriched at IAG's expense for all of Northshore's obligations paid for by IAG.

550.     The circumstances of Northshore's enrichment are such that equity and good conscience requires Northshore to make restitution.

551.     By reason of the foregoing, IAG demands judgment against Northshore as follows:

a.     1581 Hylan Blvd Auto LLC:     $74,000.00
b.     1580 Hylan Blvd Auto LLC:     $53,800.00
c.     1591 Hylan Blvd Auto LLC:     $104,809.88
d.     1632 Hylan Blvd Auto LLC:     $108,000.00
e.     1239 Hylan Blvd Auto LLC:     $2,322,576.00
f.     2519 Hylan Blvd Auto LLC:     $385,597.10
g.     76 Fisk Street Realty LLC:     $683,316.95
h.     446 Route 23 Auto LLC:     $8,918.58
i.     Island Auto Management, LLC:     $65,606.43
j.     $80,000.00 for the Maserati automobile paid for by IAG.

## AS AND FOR THEIR THIRTY-NINTH CAUSE OF ACTION BY IAG PLAINTIFFS
### (Piercing the Corporate Veil-Against Deo)

552.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

553.     In the event the Court determines that Deo is an owner of, or is the sole owner of Northshore, then IAG Plaintiffs allege the following:

554.     Deo failed to adequately capitalize Northshore.

555.     Deo intermingled his personal assets with Northshore.

556.     Deo used Northshore's assets for his personal use, using the company accounts as his personal piggy bank.

557.     Deo, through his domination and control over Northshore, abused the privilege of doing business in the limited liability form to perpetrate a wrong or injustice such that a Court in equity will intervene by his actions in using Northshore for his own personal purposes.

558.     IAG seeks to pierce the veil of Northshore and enter judgment against Deo for Northshore's obligations to IAG.

## AS AND FOR THEIR FORTIETH CAUSE OF ACTION BY IAG PLAINTIFFS
### (Unjust Enrichment-Against Sunrise)

559.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

560.     IAG has paid for Sunrise's obligations as follows, which may include:

| | | |
|---|---|---|
| a. | 1581 Hylan Blvd Auto LLC: | $74,000.00 |
| b. | 1580 Hylan Blvd Auto LLC: | $53,800.00 |
| c. | 1591 Hylan Blvd Auto LLC: | $104,809.88 |
| d. | 1632 Hylan Blvd Auto LLC: | $108,000.00 |
| e. | 1239 Hylan Blvd Auto LLC: | $2,322,576.00 |
| f. | 2519 Hylan Blvd Auto LLC: | $385,597.10 |
| g. | 76 Fisk Street Realty LLC: | $683,316.95 |
| h. | 446 Route 23 Auto LLC: | $8,918.58 |
| i. | Island Auto Management, LLC: | $65,606.43 |

562.     Should the Court find that ownership of Sunrise rests with Deo, then Northshore will have been enriched at IAG's expense for all of Sunrise's obligations paid for by IAG.

563.     The circumstances of Sunrise's enrichment are such that equity and good conscience requires Sunrise to make restitution.

564.     By reason of the foregoing, IAG demands judgment against Sunrise as follows:

565.     IAG has paid for Sunrise's obligations as follows, which may include:

a.            1581 Hylan Blvd Auto LLC:          $74,000.00

| | | |
|---|---|---|
| b. | 1580 Hylan Blvd Auto LLC: | $53,800.00 |
| c. | 1591 Hylan Blvd Auto LLC: | $104,809.88 |
| d. | 1632 Hylan Blvd Auto LLC: | $108,000.00 |
| e. | 1239 Hylan Blvd Auto LLC: | $2,322,576.00 |
| f. | 2519 Hylan Blvd Auto LLC: | $385,597.10 |
| g. | 76 Fisk Street Realty LLC: | $683,316.95 |
| h. | 446 Route 23 Auto LLC: | $8,918.58 |
| i. | Island Auto Management, LLC: | $65,606.43 |

## AS AND FOR THEIR FORTY-FIRST CAUSE OF ACTION BY IAG PLAINTIFFS
### (Piercing the Corporate Veil-Against Deo)

566.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

567.    Should it be found that Deo has legitimate ownership of Sunrise, then the following concerning Deo and Sunrise are alleged.

568.    Deo failed to adequately capitalize Sunrise.

569.    Deo intermingled his personal assets with Sunrise.

570.    Deo used Sunrise's assets for his personal use.

571.    Deo, through his domination and control over Sunrise, abused the privilege of doing business in the limited liability form to perpetrate a wrong or injustice such that a Court in equity will intervene by his actions in using Sunrise for his own personal purposes.

572.    IAG seeks to pierce the veil of Sunrise and enter judgment against Deo for Sunrise's obligations to IAG.

## AS AND FOR THEIR FORTY-SECOND CAUSE OF
## ACTION DERIVATIVELY ON BEHALF OF NORTHSHORE
### (Violation of NY GBL § 349-Against Deo)

573.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

574.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

575.    Deo's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

576.    Many of Deo's practices described herein were specifically directed to consumers.

577.    The practices employed by Deo, accepting Trade-ins whereby Deo represented, and was required but failed to satisfy the consumer's existing loan, are deceptive, and misleading and are in violation of NY GBL § 349.

578.    Deo's deceptive practices were knowing and willful.

579.    Deo's actions impact the public interest because this deception is directed to the purchasing consumer and the public at large.

580.    The foregoing deceptive acts and practices proximately caused actual damages.

581.    IAG Plaintiffs are entitled to recover compensatory damages, statutory damages, attorneys' fees and costs, and any other relief the Court deems appropriate.

582.    Deo should be enjoined from engaging in any further consumer transactions.  IAG Plaintiffs respectfully demand a judgment enjoining Deo's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

### AS AND FOR THEIR FORTY-THIRD CAUSE OF ACTION
#### (Accounting)

583.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

584.    Deo has engaged in illegal and fraudulent actions towards the members of Northshore and looted, wasted, and/or otherwise diverted for his personal use the property and assets of Northshore, thereby enriching himself at Northshore's expense.

585.    The exact amount(s) due Northshore are presently unknown and cannot be ascertained without an accounting, because the information necessary to determine that amount is in the exclusive knowledge of Deo.

586.    IAG Plaintiffs have no adequate remedy at law.

587.    IAG Plaintiffs seek an accounting.

## AS AND FOR THEIR FORTY-FOURTH CAUSE OF ACTION
### (Accounting)

588.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

589.    Deo has engaged in illegal and fraudulent actions towards the members of Sunrise and has looted, wasted and/or otherwise diverted for his own personal use the property and assets of Sunrise, thereby enriching himself at Sunrise's  expense.

590.    The exact amount(s) due Sunrise are presently unknown and cannot be ascertained without an accounting, because the information necessary to determine that amount is in the exclusive knowledge of Deo.

591.    IAG Plaintiffs have no adequate remedy at law.

592.    IAG Plaintiffs seek an accounting.

## AS AND FOR THEIR FORTY-FIFTH CAUSE OF ACTION BY PLAINTIFFS AGAINST THOMASSON
### (Violation of New York Judiciary Law § 487)

593.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

594.    New York Judiciary Law § 487 provides: "An attorney or counselor who: 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party… is guilty of a misdemeanor…."

595.    On Wednesday, May 31, 2023, Thomasson appeared before the Hon. Sharon M.J. Gianelli, J.S.C. ("Justice Gianelli") for oral argument on the IAG Plaintiffs 'Order to show cause for injunctive relief and the Defendants 'cross-motion to dismiss.  <u>See</u> copy of transcript of proceedings held before Justice Gianelli annexed hereto as **Exhibit "A."**

596.    There, Thomasson represented to Justice Gianelli that there was nothing improper about the use of his escrow account to transfer funds to Deo.

597.    Thomasson made misrepresentations to deceive Justice Gianelli in doing so.

598.    Specifically, Thomasson stated:

> No money has impermissibly come out of my escrow account. As soon as they asked me back in November we're going to send you that money and we want you to hold it. I said, send me the money it's not yours. And I'm not holding it. You're not telling me what to do on behalf of any client. And before this action was ever commenced, that money was out of my account.

<u>See</u> **Exhibit "A"** at 43:12-18.

599.    Thomasson knew or should have known that the monies received and taken from his escrow account were impermissibly taken from the IAG Plaintiffs fraudulently to provide to the Superb Plaintiffs.

600.    Thomasson refused to hold the funds in escrow because he conspired with the Defendants to engage in fraud against the IAG Plaintiffs and the Superb Plaintiffs for his personal benefit and at the direction of the Deo Defendants.

601.    Despite the knowledge of the false information stated before Justice Gianelli, Thomasson decided to continue to advocate for the Deo Defendants and specifically requested the

Plaintiffs 'attorneys to submit Thomasson's letters to the Court in relation to any request for injunctive relief.  See ECF Docket Entry 12-3 at 2 ("I insist on my letters and emails also being given to any judge you may approach on the subject or risk intentionally misleading the Court").

602.    In one such letter, Thomasson referred to the $500,000.00 paid to the Superb Plaintiffs and argued that these funds were part of a legitimate transaction when he knew full well they were not.

603.    Further, Thomasson requested that this letter be submitted to this Court in order to bolster this blatantly false proposition.  Thomasson's conduct was egregious in that he perpetuated a fraud upon the IAG Plaintiffs, and – without Thomasson's help – the Deo Defendants would not be able to perpetuate a fraud upon the Superb Plaintiffs, as they would have no money to purchase a forty-nine percent (49%) interest in Superb.

604.    Thomasson has previously engaged in conduct that violates New York Judiciary Law § 487 such that he has an established pattern of legal delinquency.

605.    Indeed, the Second Department has issued Thomasson an Order to show cause for why he should not be sanctioned because Thomasson raised arguments on an appeal that appear to be "completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law", and/or were undertaken primarily to delay or prolong the resolution of the litigation, such that his appeal in that action may be frivolous.  See Thomasson v. Demarco, No. 2020-03791, 607158/19, 191 N.Y.S.3d 431, 433 (2d Dept. 2023) (citing 22 NYCRR 130–1.1(c)(1)).

606.    Thomasson intended to deceive Justice Gianelli in arguing that the escrow transactions were legitimate, causing the IAG Plaintiffs financial harm.

607.     Thomasson intended to deceive this Court in requesting the submission of the foregoing letters to perpetuate this deceitful misrepresentation, causing the Superb Plaintiffs financial harm.

**AS AND FOR THEIR FORTY-SIXTH CAUSE OF ACTION BY SUPERB
PLAINTIFFS AGAINST FLUSHING BANK AND CHASE BANK**
**(Violation of New York Uniform Commercial Code §3-419)**

608.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

609.     Flushing Bank, in opening an account in the name of Superb, when it knew or had reason to know that Deo was not, as he represented, the owner of 100% of Superb, did not act in a commercially reasonable manner.

610.     Flushing Bank, in not doing reasonable due diligence when Deo attempted to open an account in the name of Superb, did not act in a commercially reasonable manner.

611.     By opening an account in the name of Superb, based on Deo's representation that he owned 100% of Superb, without proper due diligence and when Urrutia was in the process of seeking to open an account, in the name of Superb, at Flushing Bank and when Flushing Bank had documentation contradicting Deo's claim of 100% ownership of Superb, Flushing Bank did not act in a commercially reasonable manner.

612.     Accordingly, Flushing Bank, as a depositary or collecting bank, is liable, pursuant to N.Y. U.C.C. § 3-419(3), to Superb, the true owner of any cash deposits from Superb, deposited by Deo into an account or accounts opened by him, in the name of Superb, at Flushing Bank, for the full amount of any such cash deposits; is liable to Superb, the true owner of the checks made payable to Superb deposited by Deo into an account or accounts opened by him, in the name of Superb, at Flushing Bank, for the full amount of those checks; and is liable to Superb, the true

owner of a $95,000 wire to Superb, wired, according to instructions provided by Deo, into an account or accounts opened by him, in the name of Superb, at Flushing Bank, for the full amount of the wire.

613. Similarly, Chase Bank, in permitting Deo to draw checks on Superb's account, when it knew or had reason to know that Deo was not an authorized signer on Superb's account with Chase Bank, did not act in a commercially reasonable manner.

614. Chase Bank, in not doing reasonable due diligence when Deo drew checks on the account in the name of Superb, did not act in a commercially reasonable manner.

615. By authorizing payment on checks in the name of Superb with Deo's signature, when Chase Bank had documentation contradicting Deo's authority to sign any such checks, Chase Bank did not act in a commercially reasonable manner.

616. Accordingly, Chase Bank is liable, pursuant to N.Y. U.C.C. §3-419(3), to Superb, the true owner of the funds in its account, for the full amount of those checks drawn by Deo from Superb's account.

617. For the foregoing reasons, Flushing Bank is liable to Superb in an amount to be determined at trial but believed to be at least $500,000.00.

618. For the foregoing reasons, Chase Bank is liable to Superb in an amount to be determined at trial but believed to be at least $250,000.00.

### AS AND FOR THEIR FORTY-SEVENTH CAUSE OF ACTION BY SUPERB PLAINTIFFS AGAINST FLUSHING BANK AND CHASE BANK
### (Conversion)

619. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

620.     The cash, checks, and wire transfer deposited into an account or accounts in the name of Superb, opened at Flushing Bank by Deo without authority, belong to Superb.

621.     Similarly, the funds in the account Superb maintained with Chase Bank belong to Superb.

622.     Flushing Bank and Chase Bank each exercised unauthorized dominion over the funds of Superb to the exclusion of Superb's rights.

623.     Accordingly, Flushing Bank is liable to Superb for conversion in an amount to be determined at trial but believed to be at least $500,000.00.

624.     Similarly, Chase Bank is liable to Superb for conversion in an amount to be determined at trial but believed to be at least $250,000.00.

### AS AND FOR THEIR FORTY-EIGHTH CAUSE OF ACTION BY SUPERB PLAINTIFFS AGAINST FLUSHING BANK AND CHASE BANK
### (Negligence)

625.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

626.     In opening an account and collecting funds in the name of Superb, Flushing Bank and Chase Bank each owed Superb a duty of care.

627.     By opening an account or accounts in the name of Superb, giving banking authority to Deo, without proper due diligence into Deo's ownership or authority, and allowing Deo, without authority, to withdraw funds from accounts deposited in the name of Superb, Flushing Bank breached its duty of care to Superb.

628.     Similarly, by authorizing payments for checks drawn by Deo, despite the fact he is not a signer on Superb's account with Chase Bank, without proper due diligence in verifying the

86

signature is made by an authorized signer, and allowing Deo, without authority, to have payments

authorized on checks drawn by him, Chase Bank breached its duty of care to Superb.

629.     Accordingly, Flushing Bank is liable to Superb for negligence in an amount to be

determined at trial but believed to be at least $500,000.00.

630.     Similarly, Chase Bank is liable to Superb for negligence in an amount to be

determined at trial but believed to be at least $250,000.00.

**AS AND FOR THEIR FORTY-NINTH CAUSE OF ACTION BY SUPERB
PLAINTIFFS AGAINST FLUSHING BANK**
**(Unauthorized Payments)**

631.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the

preceding paragraphs as though fully set forth herein.

632.     Having accepted the cash, checks, and wire deposited by Deo into an account in the

name of Superb, Flushing Bank allowed the funds to be disbursed from accounts in the name of

Superb.

633.     The funds paid by Flushing Bank from an account opened by Deo in the name of

Superb belonged to Superb.

634.     Flushing Bank, having opened an account in the name of Superb, is liable to Superb

for the unauthorized payment of funds from such account.

635.     Accordingly, Flushing Bank is liable to Superb for unauthorized payments in an

amount to be determined at trial but believed to be at least $500,000.00.

**AS AND FOR THEIR FIFTIETH CAUSE OF ACTION BY SUPERB
PLAINTIFFS AGAINST CHASE BANK**
**(Drawee Liability)**

636.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the

preceding paragraphs as though fully set forth herein.

637.     Chase Bank has on file the authorized signatories on Superb's account at Chase Bank.

638.     Deo is not and never was an authorized signatory on Superb's account at Chase Bank.

639.     Nevertheless, Deo signed checks from Superb's account at Chase Bank, and Chase Bank paid them.

640.     Accordingly, as the drawee bank, Chase Bank is liable to Superb for the full amount of the checks paid from Superb's account that were signed by Deo.

641.     For the foregoing reasons, Chase Bank is liable to Superb in an amount to be determined at trial but believed to be at least $250,000.00.

### AS AND FOR THEIR FIFTY-FIRST CAUSE OF ACTION OF IAG PLAINTIFFS
#### (Professional Malpractice – Jones CPA LLP)

642.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

643.     At all times hereinafter mentioned, Defendant Jones CPA LLP was and still is an accounting firm consisting of CPAs licensed by the State of New York with offices at East Islip, Hampton Bays, and Port Jefferson Station within the State of New York, and did hold themselves out to the general public as being possessed of the skill and knowledge of such profession.

644.     In or before November 2023, Northshore and Sunrise engaged the services of Jones CPA LLP – by and through the conduct of Deo – to perform various accounting services for Northshore and Sunrise.

645.     Included within those accounting services for Superb were the monthly reconciliation of bank accounts, including general ledger, profit and loss, and inventory, as well as the preparation of the monthly financial statement required to be sent to Ally Bank.

646.    In advising Northshore and Sunrise, Jones CPA LLP each owed a duty of possessing and exercising the degree of learning, knowledge, skill, care and diligence which was ordinarily possessed and exercised by CPAs in the community.

647.    Under standards of care and conduct prevailing in the accounting industry generally and applicable to Jones CPA LLP specifically, Jones CPA LLP had an affirmative duty to IAG Plaintiffs to undertake each and every one of its tasks for IAG Plaintiffs with caution and care, to be vigilant for discrepancies or irregularities and to report any such findings to IAG Plaintiffs accordingly.

648.    In addition, under Article V of the Principles of Professional Conduct of the AICPA Code of Professional Conduct, Jones CPA LLP owed IAG Plaintiffs an affirmative duty to identify and inform IAG Plaintiffs of any fraud red flags, such as suspicious activities or internal control deficiencies.

649.    As set forth above more fully, Jones CPA LLP failed to exercise independence and due professional care in a variety of ways, including without limitation failing to notice, investigate and/ or report to Chabrier or Aaronson of the existence of Deo's scheme to create false financial records.

650.    As a result, Jones CPA LLP violated their duty to Northshore and Sunrise.

651.    Jones CPA LLP did not possess and exercise the degree of learning, knowledge, skill, care, and diligence which was ordinarily possessed and exercised by CPAs in the community.

652.    Jones CPA LLP did not follow the accepted practice and procedure in the community.

653.    Jones CPA LLP actions, as set forth above, and otherwise were careless, negligent, and improper, resulting in damage to Northshore and Sunrise due to the foregoing conduct.

654. Jones CPA LLP rendered services for Northshore and Sunrise in such a negligent and improper manner as to cause the loss alleged herein.

655. Solely by reason of the foregoing negligence of Jones CPA LLP, and without any negligence on the part of Northshore and Sunrise contributing thereto, Northshore and Sunrise has been damaged by the foregoing conduct.

656. Jones CPA LLP's wrongful and deficient conduct proximately caused IAG Plaintiffs to suffer damages which are more fully set forth above by failing to cause IAG Plaintiffs to arrest such misconduct earlier or in a preventative manner.

657. All such losses were reasonably foreseeable at the time Jones CPA LLP were retained to provide accounting services.

658. Due to Jones CPA LLP's professional malpractice and fraud, IAG Plaintiffs have suffered, and continue to suffer, damages in an amount to be established at trial, but in no event less than $5 million, plus interest and reasonable attorney's fees, all of which continue to accrue.

## AS AND FOR THEIR FIFTY-SECOND CAUSE OF ACTION OF IAG PLAINTIFFS
### (Fraud – Deo and Jones)

659. Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

660. Deo's and Jones's fraudulent conduct in preparing and providing falsified monthly financial statements to the IAG Plaintiffs and Ally Bank proximately caused IAG Plaintiffs to suffer damages which are more fully set forth above, and all such losses were reasonably foreseeable at the time Jones were retained to provide accounting services.

661. As a result of Deo's and Jones' fraud, IAG Plaintiffs have suffered, and continue to suffer, damages in an amount to be established at trial, but in no event less than $5 million, plus interest and reasonable attorney's fees, all of which continue to accrue.

## DEMAND FOR JURY TRIAL

662.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby

demand a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor as against Defendants as follows:

a.     Awarding treble damages resulting from Defendants' violation of 18 U.S.C. § 1962;

b.     Awarding injunctive relief in returning operational control, vehicles, dealer plates, and

any other assets of Plaintiffs pursuant to 18 U.S.C. § 1964(a);

c.     Injunctive relief restraining and enjoining Defendants from further violations of RICO

and the DTSA, including the use of confidential information or trade secrets of Superb Plaintiffs,

and unfairly competing with Superb Plaintiffs in any manner;

d.     Injunctive relief restraining and enjoining Defendants from having any contact with

Plaintiffs' current and/or former employees;

e.     Compensatory damages for misappropriation of Plaintiffs' goodwill,

misappropriation and unfair competition, violation of the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C § 1962, Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836,

misappropriation, unfair competition, tortious interference with contract, business relations, and

prospective economic advantage, conversion, civil conspiracy, professional malpractice, fraud,

according to proof at trial, including but not limited to, lost profits, disgorgement of all profits and

revenues received by Defendants, and – to the extent calculable – damages for reputational

damage, lost customers, lost relationships, lost revenue, loss of goodwill, corrective advertising,

and all other available damages;

f.     Compensatory damages of at least $10,000,000.00 to the IAG Plaintiffs;

g.     Compensatory damages of at least $4,600,000.00 to the Superb Plaintiffs;

h.     Ordering that Defendants return all of Superb Plaintiffs' confidential and proprietary information, including a forensic examination of all of Defendants' computing devices, cellular phones, and cloud storage sites;

i.     Prohibiting the Defendants or their agents from selling vehicles to Superb Plaintiffs' customers, whether directly or indirectly;

j.     Punitive and exemplary damages in an amount to be determined at trial in this case;

k.     Interest (pre-judgment & post-judgment);

l.     Equitable relief in the form of the imposition of an injunction, constructive trust, accounting, and a disgorgement of profits and other benefits received by reason of the unlawful conduct complained of herein;

m.    Enjoining Defendants from operating their enterprise by virtue of their illegal conduct since they were created entirely through theft of Plaintiffs' businesses;

n.     Ordering that Defendants pay the costs of suit, including attorneys' fees; and

o.     Such other and further relief as this Court deems just, equitable, and proper.

Dated: Lake Success, New York
       October 13, 2023

Respectfully submitted,
**MILMAN LABUDA LAW GROUP PLLC**
_____/s_____
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, &*
*Robert Anthony Urrutia*

Dated: New York, New York
           October 13, 2023

**CYRULI SHANKS & ZIZMOR LLP**

_____/s_____

Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiffs*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*
*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SUPERB MOTORS INC., et al.

               Plaintiffs,

                                              **MEMORANDUM & ORDER ON**
                                              **PRELIMINARY INJUNCTION**

          v.
                                              2:23-cv-6188 (OEM) (JMW)

ANTHONY DEO, et al.,

               Defendants.

    ----------------------------------------------------------x
**ORELIA E. MERCHANT, United States District Judge:**

       Before the Court is an application for injunctive relief sought by plaintiffs Superb Motors

Inc. ("Superb Motors"), Team Auto Sales LLC ("Team Auto"), and Robert Anthony Urrutia

("Urrutia"), the owner of Superb and Team (collectively, "Superb" or the "Superb Plaintiffs")[1]

against defendants Anthony Deo ("Deo"), Deo's derivative corporate entities (also car

dealerships), and other individuals named in this action who work for or are otherwise connected

to Deo (collectively referred to in this motion as "Deo Defendants")[2] in connection with certain

vehicles that had been removed from Superb Plaintiffs' various dealership lots.   For the reasons

stated below and, upon review of all submissions and the arguments heard at the September 14,

2023 hearing, the Court finds a preliminary injunction is warranted to maintain the *status quo ante*.

---

[1] Though the Superb Plaintiffs are only three of the 17 named plaintiffs in this action, they are the plaintiffs animating this case and the ones that face irreparable harm.

[2]   Together, Plaintiffs have named a bank and financial companies as defendants, but only insofar as they were part of a purported RICO scheme.  These defendants are DLA Capital Partners, Inc., Thomas Jones, Jones, Little & Co. CPA's LLP, Flushing Bank, and Libertas Funding LLC.  The Court's order for injunctive relief does not apply to them. *See, e.g.*, Kataev Decl. (ECF 12) ¶ 8.  This injunction binds Superb Plaintiffs and the Deo Defendants only.  For clarity, Deo Defendants are: Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Meckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp., and any agents thereof.

I.      **PROCEDURAL HISTORY**

On August 16, 2023, Superb Plaintiffs brought an action against the defendants in this Court alleging that the defendants collectively engaged in numerous acts of fraud and schemes to pocket proceeds from Superb Plaintiffs' car sales in violation of the Civil RICO statute, 18 U.S.C. § 1962, as well as use Superb and Urrutia's trade secrets to compete against Superb Plaintiffs at car dealerships owned by Deo.  Complaint (ECF 1) ¶¶ 1-7, 176-219, 264-328, 334-360; Urrutia TRO Decl. (ECF 11) ¶¶ 99-201.

On August 20, 2023, Superb Plaintiffs filed a motion for a temporary restraining order ("TRO") and a preliminary injunction against defendants.  *See* ECF 9.  On August 25, 2023, this Court then granted the TRO in part only to the extent that the Deo Defendants were enjoined from "disposing of any automobiles in" their "possession belonging to Superb" or the Superb Plaintiffs, as agreed to by defendant's counsel, Harry R. Thomasson, Esq. ("Thomasson").  *Superb Motors Inc. v. Deo*, 2023 WL 5952145, at *5 (E.D.N.Y. August 25, 2023).  All other requests for injunctive relief in the TRO were denied.  *Id.*

On August 26, 2023, Superb Plaintiffs filed a Motion for Reconsideration (ECF 16), which the Court denied on August 27, 2023.  However, in the interest of justice, the Court advanced the preliminary injunction briefing schedule and set a hearing for oral argument on the preliminary injunction application for September 14, 2023.  At the preliminary injunction hearing, the parties indicated they would be amenable to settlement discussions involving the central dispute in this case so far: the relocation of various cars to Superb's lots.  The parties made their arguments and were then referred to Magistrate Judge Wicks to discuss a potential resolution pending this Court's ruling.  The next day, on September 15, 2023, the parties reached some agreements regarding certain cars and entered a stipulation as to them on the record.  *See* Wicks Settlement Rulings (ECF

45) ¶¶ 1-7.  Since the conference, the parties have not submitted any further requests, changes, or modifications of this stipulation or informed the Court of any other new or materializing harms.

## II.    RELEVANT FACTUAL BACKGROUND[3]

### A.  Deo & Superb Plaintiffs' Relationship

Urrutia and Deo met in November 2022 to discuss a potential partnership.  Compl. ¶ 155.  At this time, Urrutia solely owned Superb as well as a wholesale operation, Team Auto.  Urrutia TRO Decl. ¶ 1;  Cross Purchase Agreement (ECF 11-1).  On December 1, 2022, Deo and Urrutia entered into the Cross Purchase Agreement in which Deo received a forty-nine percent (49%) ownership stake in Superb via a stock transfer in exchange for $500,000 and a twenty-five percent (25%) interest in Northshore Motor Leasing LLC ("Northshore") and Sunrise Hwy Auto LLC ("Sunrise"), the two dealerships Deo claimed and represented to wholly own.  Compl. ¶¶ 156-157; Urrutia TRO Decl.¶¶ 22-23, 38;  *see generally* Cross Purchase Agreement.  However, Urrutia remained the majority shareholder and president of Superb after the Cross-Purchase Agreement was signed.  Urrutia TRO Decl. ¶ 1.[4]

On December 22, 2022, Urrutia and Deo executed a shareholders agreement (the "Shareholders Agreement") which contained, *inter alia*, certain provisions regarding the "management of the Corporation's affairs."  Shareholders Agreement (ECF 11-6); Compl. ¶¶ 164-70; Urrutia TRO Decl. ¶¶ 41-43.  The Shareholders Agreement granted Urrutia "the right to make all decisions concerning day-to-day operations of the Corporation or to delegate such authority as

---

[3] The following background is taken from the entirety of the record and is undisputed for the purposes of this motion unless otherwise noted.

[4] There is no dispute that the Shareholder Agreement is valid, even though Urrutia claims that Deo misrepresented that he wholly owned Northshore and Sunrise at the time of execution.  Urrutia TRO Decl. ¶ 23.  Deo has provided amended tax returns that indicate he was the sole owner but no other corporate documentation.  Deo Preliminary Injunction Decl. at Ex. 3 (ECF 30-3).

the President desires." Shareholders Agreement (ECF 11-6) ¶ 1(C)(i). It also contained a provision that effectively required Urrutia's written consent for:

> . . . (iv) the granting of any mortgage, lien, or other security interest in the assets of the Corporation;
>
> (v) loans and guarantees by the Corporation;
>
> (vi) sale or lease of real or personal property by the Corporation.

*Id.* ¶ 2(A)(iv)-(vi).

Additionally, under a section entitled "Business Responsibilities," the Shareholders Agreement provides, in relevant part, that:

> Urrutia shall have the following responsibilities . . . :
>
> (iii) establishment of sales and administrative policies, as well as marketing techniques for automobile sales;
>
> (iv) approval and management of all sales and resales of used vehicles;
>
> (vi) establishment of policies and standards for services provided by the Corporation, as well as supervision and complete authority over Corporation's activities;
>
> (vii) review and final approval of financing arrangements with lending institutions to be utilized by the Corporation in financing the purchase of used vehicles by customers and approval of creditworthiness of potential purchasers of automobiles;
>
> (viii) supervise and have complete control of the accounting department of the Corporation, which shall include but not be limited to sole check authorization and sole control of bank accounts owned by the Corporation."

*Id.* ¶ 12(A)(iii)-(viii); *accord* Compl. ¶¶ 166-69.

Both the Complaint and Urrutia TRO Declaration generally establish that Deo was delegated day-to-day operations of Superb until August 2023, when Urrutia "exercised his right to remove Deo from the day-to-day operations of Superb Motors[.]" Compl. ¶ 189; *see* Urrutia TRO Decl. ¶ 41 ("Deo chose to serve as the General Manager."); *id.* ¶ 49.

During their partnership, Deo began forming various corporate entities – GCC Syosset, GCC Sunrise, GCC LIC, GCC Roslyn, and GCC Smithtown – to begin his own group of dealerships to be operated under the master entity Gold Coast Motors Automotive Group. Compl. ¶ 210. In February of 2023, Deo sought licenses with the Department of Motor Vehicles ("DMV") for one of his competing dealerships. Urrutia TRO Decl. ¶ 154. However, the time at which Urrutia became aware of this is disputed. Deo 9/15/23 Decl. (ECF 43) ¶ 12; *id.* at Ex. B2 at 6-7 (ECF 43-3).

### B. Dealerships: Floor Plan Financing

As described in the Complaint and Urrutia's TRO Declaration, car dealers buy cars using specialized "floor plan" financing banks:

> Dealerships typically operate with the assistance of banks who provide "floor plan" financing, which is collateralized by the vehicles available for sale at the dealership. When a dealership obtains such financing, the bank that provides the same perfects a security interest in the vehicles chosen and certain rules attached as a condition of the financing, i.e., with limited exceptions, any such vehicle financed must be present and available for sale at the dealership. In essence, "floor plan" financing is a credit line for dealerships to purchase vehicles for the purpose of reselling them. Once a vehicle is sold, the dealership must repay the bank the principal amount for each vehicle plus interest and any applicable fees.

Urrutia TRO Decl. ¶ 58 n.7.

Banks perfect a security interest in the cars purchased by the dealer; that is, the cars are collateral that the banks can repossess in the event of default. Dealers are generally not allowed to securitize the same collateral (*i.e.*, cars) more than once and banks condition extending floor plan credit subject to the requirement that the bank hold the most senior interest in the collateral. Compl. ¶¶ 178, 179. In car sales parlance, when a dealer securitizes the same car twice to receive two lines of credit, the dealer has engaged in impermissible "double flooring." Urrutia TRO Decl. ¶ 58. If a car is "double floored," each bank is, on paper, the senior lienholder; accordingly, the

practice is forbidden by floor plan financers. *See, e.g.*, Nissan Motor Acceptance Company ("NMAC") Floor Plan Contract (ECF 18-1) at ¶ 1("NMAC shall have a first priority UCC-1 filing on all dealership assets."). Additionally, floor plan financing agreements also require that the collateralized vehicles remain on the dealership's floor and prohibit the vehicles from being used until sold. Compl. ¶ 177. Noncompliance with these conditions will trigger default events which may then result in penalties that include demands for payment on an accelerated schedule, payment in full, or even termination of the floor plan contract in full with the repayment of the balance due. *See, e.g.*, NMAC Notification of Default and Demand for Payment dated August 15, 2023 (ECF 14-1).

### C. Missing Cars, Double Flooring, and Defaults with Floor Plan Financers

To the Court's knowledge, Superb works with two floor plan financers: NMAC and Next Gear Capital ("Next Gear"). *See generally* Superb Ltr. Mot. for Reconsideration; Next Gear Emails (ECF 11-19).

On July 31, 2023, NMAC contacted Bruce Novicky ("Novicky"), the Chief Operating Officer of Superb Motors, to inform him that NMAC had discovered that certain vehicles NMAC had financed for Superb Motors were also financed with another bank (*i.e.*, double floored) in breach of Superb Motors' floor plan agreement with NMAC. Compl. ¶ 178; Urrutia TRO Decl. ¶ 106.

In any event, on or about August 3, 2023, Urrutia tasked Novicky with doing a physical audit of Superb Motors' car inventory. Novicky's internal audit revealed that "over one hundred (100) vehicles [were] missing despite the fact that they were listed as assets in Superb's DMS system and on its general ledger." Compl. ¶¶ 184-85; Urrutia TRO Decl. ¶ 112; Deo Decl. Opp. TRO ¶ 36 (102 vehicles missing); ECF 11-15 ("List of Missing Cars"). Novicky then confronted

6

Deo about the missing vehicles. On the evening of August 3, 2023, the police were called to Superb Motors and the detectives questioned Deo regarding the missing cars, but no further action was taken. Compl. ¶ 181; Deo Decl. Opp. TRO ¶¶ 35, 36; Superb Ltr. dated 8/9/2023 (ECF 12-1) at 2, ¶¶ 5-6. Later, however, at the September 15, 2023, hearing, Superb's counsel clarified that the list of "missing" vehicles was "currently only 89." PI Hr'g Tr. 43:7-8.

On August 8, 2023, NMAC itself conducted an inventory audit which resulted in a list of 30 cars marked as "stolen." NMAC Demand Ltr. dated 9/8/2023 (ECF 14-1). As a result, NMAC sought payment of $1,183,101.25 by August 11, 2023 for 30 cars reported as "stolen" on the audit. *Id*. at 3. On August 15, 2023, NMAC performed an inventory audit at the Superb Motors dealership and propounded a demand for payment for $756,914.50 for cars that were "not available for inspection and count at the authorized Dealership Location, which is 215 Northern Blvd., Great Neck, NY 11021, or (b) not verifiable as subject to NMAC's first lien security position under the Wholesale Agreement." NMAC Demand Ltr. dated 8/15/23 (ECF 14-2). The balance became due on August 16, 2023. On August 17, 2023, the plaintiffs filed their case against defendants.

On August 18, 2023, NMAC issued a "Notice of Termination" letter to Urrutia and Superb Motors informing them that "effective as of September 18, 2023, NMAC will terminate the [Floor Plan] Agreement, pursuant to its terms, by which date [Superb Motors] is required to repay to NMAC the remaining outstanding balance owed the Wholesale Agreement." NMAC Termination Notice (ECF 18-2). The letter shows, and Superb's counsel confirmed, that Urrutia's three other dealerships were also guarantors to Superb's repayment obligation, and thus, these dealerships were cross-collateralized with Superb Motors. *See id.* As for the reason for the termination, NMAC simply stated that it was "in the best interests of NMAC." *Id.* at 1.

At some point, Urrutia repaid NMAC a balance of nearly $2 million.  *See* Superb Letter

Mot. for Reconsideration at 3; PI Hr'g Tr 33:6-9 (describing $1.9 million in payoffs Urrutia had

made).  As far as the Court is aware, NMAC has also followed through with terminating its

relationship with Urrutia and Superb Motors.  Further, Superb's counsel represented that, in any

event, NMAC had effectively already terminated the contract by refusing to allow Superb Motors

to continue purchasing or "placing" vehicles on the floor plan financing line.  PI Hr'g Tr. 38:19-25,

39:1-15, 40:20-25.  However, Superb Motors financial problems did not stop with NMAC.  Next

Gear also came calling to the tune of $391,698.48 for 12 cars that had been found to be missing

from Superb's lots.  *See* PI Hr'g Tr. 33:16-25, 34:1-7; 35:12-15.  At the preliminary injunction

hearing, Superb centered this latest "margin call" as the impending threat of irreparable harm.  *See*

Next Gear Payoff Demand as of 9/13/2023 (ECF 38-1); PI Hr'g Tr. 22:22-25, 33:11-24 ("If we

don't pay almost $400,000 tomorrow, which we cannot do, we will be declared in default, and

we'll never get another lender to provide full plan financing for us.  We'll be dead in the water.

Right now, we're limping.  Tomorrow, we'll be dead without this.").

### D. Trade Secret Allegations

In addition to the alleged stolen or misappropriated vehicles, Superb Plaintiffs also assert

that defendants misappropriated confidential information and trade secrets.  Through it's

continued filings and at oral argument, it became clear that Superb Plaintiffs claimed interest in

two different types of trade secrets: one in a customizable version of a Tekion brand dealer

management system ("DMS") that was programmed with Urrutia's dealership and car sales

insights and another in a customer relationship management ("CRM") system that contained

customer information and sales leads.  PI Hr'g Tr. 88:1-17.

In general terms, Urrutia explains that it cost him over $120,000 to set up and customize the Tekion DMS, which contained his personalized "blueprint for [his] success" in the car sales business. Urrutia TRO Decl. ¶ 136. He also alleges that Superb Motors' CRM information is confidential and that these trade secrets and confidential information provided Superb a unique competitive advantage in the automobile dealership industry. Compl. ¶¶ 247, 336. As a result, Urrutia asserts he took "many reasonable measures to keep [Superb Motors'] confidential information secret, including restricting access of this information only to employees who have a fiduciary duty to Superb, all of whom are required to maintain it in a secured computer system protected by firewalls and other appropriate safeguards, such as usernames and passwords." Compl. ¶ 248.

Urrutia asserts that Deo only learned of Superb's know-how and trade secrets through his fiduciary relationship with Urrutia as co-owners of Superb Motors. Compl. ¶ 246. Urrutia further alleges that during the top-down audit, Novicky discovered that Deo sought to misappropriate the DMS and bring it to his dealerships. Urrutia TRO Decl. ¶ 137. Further, Urrutia alleges that Deo stole the exact Tekion DMS customizations (created by Urrutia himself) from Superb Motors to use at Deo's competing group of Gold Coast dealerships, and had Superb Motors employees work for Gold Coast dealerships, even though these employees were employed and being paid by Superb Motors. Further, Urrutia alleges that Deo allegedly illegally disclosed confidential and proprietary information (customer list with contact information, custom DMS system, etc.) to these employees to set up Deo's Gold Coast dealerships. Urrutia TRO Decl. ¶¶ 137-141.

9

## III.   STANDARD OF REVIEW

### A.  The Preliminary Injunction Standard

Behind all injunctive relief lies the court's inherent equity powers.  *Wagner v. Long Island Univ.*, 419 F. Supp. 618, 622 (E.D.N.Y. 1976).  Courts should deploy their equitable powers only to keep the parties *in statu quo* until the underlying merits can be sorted.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties.").  Accordingly, a party seeking relief in equity must demonstrate that there exists a harm that is sufficiently certain, "imminent," and irreparable such that, absent an injunction, a potential award of damages after litigation would not suffice.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381-82 (1992) (explaining that "courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief" and that "the prospect of [harm at issue] must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury.").  Additionally, a party must show some reasonable chance of success on its underlying legal claim such that the court can entertain the action.  *See Munaf v. Geren*, 553 U.S. 674, 690 (2008) ("[A] party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'").  Lastly, a court must also "balance the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief," as well as the "public consequences in employing the extraordinary remedy of injunction."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)) (internal quotation marks omitted).

From these principles, the Second Circuit has derived the now-common test courts must apply before granting injunctive relief: "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). "In deciding a motion for preliminary injunction, a court may consider the entire record, including affidavits and other hearsay evidence." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trs. for Femit Tr.*, 368 F. Supp. 3d 723, 725 n.2 (S.D.N.Y. 2019).

### B. Determining the Status Quo Ante and Applicable Merits Review Standard

Before discussing the merits of the application, the Court addresses two related antecedent issues: (1) the applicable "status quo ante" and (2) which merits review standard applies.

As the purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held," it is incumbent on the Court to determine the status quo ante. *See N. Am. Soccer League*, 883 F.3d at 37 (quoting *Camenisch*, 451 U.S. at 395). While courts frequently omit the term "ante," the Second Circuit has taken care to explain that "the 'status quo' in preliminary-injunction parlance is really a 'status quo ante.'" S*ee id.* at n.5. This is for good reason.

First, utilizing the "special 'ante' formulation of the status quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *Id.* Given the unusual facts of this case, the Court finds this formulation more apt.

Second, determining the status quo ante is essential as it informs or "drives" the applicable merits review standard. *Id.* at 37. Injunctive relief is generally described as "prohibitory" or "mandatory" in nature. *Id.* at 36. If the injunctive relief sought "*alters* the status quo, which

usually is done by commanding some positive act," it is considered "mandatory" and, consequently, the Court must set the bar higher for the movant who must show a "substantial likelihood of success on the merits standard." *See JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (emphasis added); *N. Am. Soccer League*, 883 F.3d at 36-37 ("Because mandatory injunctions disrupt the status quo party seeking, one must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merit.") (cleaned up).[5] Conversely, where an injunction "maintain[s] the status quo[,]" it is "prohibitory" in nature, and the Court may apply the "substantial questions" standard. *N. Am. Soccer League*, 883 F.3d at 36-37.

However, as the Second Circuit has repeatedly observed, focusing on the semantics of whether the action itself is "prohibitory" or "mandatory" can obscure the purpose of the injunction, which is to maintain the status quo as it was between the parties prior to litigation. This is a relevant concern for a court exercising its equitable powers, as this Court today. *See N. Am. Soccer League,* 83 F.3d at 36 n.4 ("We focus on the status quo rather than the 'mandatory' and 'prohibitory' terminology because 'in borderline cases, injunctive provisions containing essentially the same command can be phrased either in mandatory or prohibitory terms.'") (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 835 (1994)); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("The distinction between mandatory and prohibitory injunctions is not without ambiguities or critics. Determining whether

---

[5] The Court also notes that this case is also not a case in which the plaintiff "seeks an injunction that provides him substantially all the relief he seeks in the litigation, and that cannot be meaningfully undone in the event that the enjoined party prevails at trial on the merits" and would thus require the "clear or substantial likelihood" to apply. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34-35 (2d Cir. 1995); *accord JTH Tax*, 62 F.4th at 667. The injunction the Court imposes today merely freezes for the time being the geographic placement of the cars at issue. Such a freeze certainly may meaningfully be undone by the end of the litigation when the possessory interests or authority over the vehicles have been sorted. Moreover, the Court has not granted injunctive relief as to any of the other Superb's requests. Equally, this is not a case where the "preliminary injunction [] will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," which would also require a heightened standard. *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010).

the status quo is to be maintained or upset has led to distinctions that are "more semantic [ ] than substantive.").

To ascertain the status quo ante, the Court must look to "the last actual, peaceable uncontested status which preceded the pending controversy." *Id.; accord DJ Direct, Inc. v. Margaliot*, 512 F. Supp. 3d 396, 406 (E.D.N.Y. 2021) (subsequent history omitted). Here, there is no dispute that prior to the pending controversy, and at least as far as August 3, 2023, Superb Motors was a going concern as a car dealership owned in part by both Deo and Urrutia and that Superb Motors was not in default with NMAC or Next Gear.

Further, by the parties' own documentation and assertions by their counsel at oral argument, at some time prior to August 3, 2023 a tranche of cars titled to Superb Motors were removed from Superb Motors' lots.[6] and placed on Deo's Gold Coast Syosset and Amityville lots *prior* to the lenders' floor audits that led to the default findings by NMAC and Next Gear. *See* Urrutia TRO Decl. ¶¶ 111-15; Deo Decl. Opp. TRO ¶ 18 ("In fact, that these Superb cars have been at my other two lots is well documented . . . ") *Id. ¶ 38* ("Attached hereto as Exhibit G is a true and . . . accurate copy of that list, as marked up by me and my wife to confirm which *cars belong to Superb and are in our possession* . . . ") (emphasis added); *id.* at Ex. G. (ECF 30-8) (listing Superb cars, including cars marked as in Deo's possession, as of 9/11/2023); Thomasson Decl. (ECF 30-1) ¶ 25; Ex. J. to Urrutia P.I. Decl. (ECF 38-10) (Titles to Superb Vehicles); PI H'rg Tr. 74:9-12 (defense counsel explaining "Urrutia knew . . . the cars were being stored over at

---

[6] Superb's counsel conceded at oral argument that cars were not strictly required to be on Superb Motors' Northern Boulevard lot but could also be located at any of Urrutia's other cross-collateralized dealerships for a default event. *See* PI H'rg Tr. at 48:16-25; 49:1-21; s*ee* Nissan Demand Ltr. Dated 9/18/2023 (ECF 18-2) at 3 (listing the other cross-collateralized dealerships); *see also* Compl. ¶ 154 (listing Urrutia's dealerships). For ease of comprehension, the Court may refer to Superb's lot or lots, but these references include all cross-collateralized dealerships.

Syosset and Amityville for Superb"); 76:13 ("[Deo] doesn't get titles").[7] So, while the injunction requires affirmative action on the part of the Deo Defendants – a return of the cars to Superb's lots – and is nominally "mandatory," this positive action by the Deo Defendants is required to *keep* the parties in status quo ante, *i.e.*, Superb as it was when it was a going concern without default with the cars on the required lots. Thus, this is, in substance, a "prohibitory" injunction and perhaps exactly one of the "borderline" situations the Second Circuit contemplated when advising courts to eschew semantics when finding the substantive status quo ante.

Given (a) the foregoing finding that the ensuing injunction maintains rather than alters the status quo and (b) the Court's finding below that the balance of hardships decidedly tips in Superb's favor at this juncture, the Court finds it prudent on this record to apply the "substantial questions" standard in its legal merits review. *See Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-38 (2d Cir. 2010).

## IV. DISCUSSION

### A. Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (cleaned up); *accord Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). "To satisfy the irreparable harm requirement, plaintiffs must

---

[7] The Court need not address here any purported knowledge of acquiescence by Superb; the plain terms of at least the NMAC contract require the cars to be on the lot, which is indeed the cause of the harm that Superb was threatened by. *See* NMAC Floor Plan Agreement (ECF 18-1) at § 3.1 (PDF pg. 9) (Dealer's Responsibilities) (The "Dealer shall keep all Property at a Dealership Location."); § 1.8 (PDF pg. 8) (Definitions) ("'Dealership Location' means Dealer's Address and any other location where Property may be located.").

demonstrate that absent a preliminary injunction, they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005).

At the TRO stage, Superb initially advanced two theories of harm. One theory was predicated on Deo's purported use of dealership's trade secrets and proprietary dealership information to usurp Superb's business and clientele, while the other theory was predicated on the imminent closure of Urrutia's dealerships given the default events discovered by NMAC and Next Gear. *See Superb Motors Inc.*, 2023 WL 5952145 at *4. However, as this litigation has progressed, it has become clear that Superb's primary theory of irreparable harm stems from the latter. *See e.g.*, Superb Mot. for Reconsideration at 1, 4-5 (explaining how default repayments have left Superb Motors "with no operating capital" and will result in "imminent shut-down of all four (4) dealerships"), Superb Mot. for P.I. (ECF 39) at 3 (claiming that denial of an injunction will result in "plaintiffs being forced to pay another $1 million and forced out of business due to no operating capital"); PI H'rg Tr. 31:4-33:24 (discussing same). Accordingly, the Court only addresses loss of business theory.[8]

The law finds the threat of a loss of business as a going concern cognizable as an irreparable harm. The Second Circuit reaffirmed this proposition in *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667-68 (2d Cir. 2023). In *JTH Tax*, the Circuit agreed with the district court's "implicit" finding that a small tax preparation business franchisee facing termination of her agreements would "suffer

---

[8] To the extent Superb does maintain a theory of irreparable harm stemming from the use of any purported trade secrets, the Court finds any such theory wanting evidence to support such harm in fact, much less of an order of magnitude such that the loss of business to Superb could be irreparable. *See* PI H'rg Tr. 89:23-91:12.

irreparable harm if she were wrongfully put out of business." *Id.* at n.2.[9]  The court observed that

closure of the franchisee's business would render her "unable to provide for her family" and that

"she needed to continue operating her business in order to have the funds necessary to defend

herself against Liberty." *Id.* at 668.

In doing so, the Court credited a long-running line of Second Circuit that affirmed the

principle that irreparable harm may lie where "the very viability of the plaintiff's business" is

"threatened." *Id.*  (quoting *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 38 (2d Cir.

1995)) (internal quotation marks omitted); *See id.* (citing *Semmes Motors, Inc. v. Ford Motor Co.*,

429 F.2d 1197, 1205 (2d Cir. 1970) (finding that a family-owned car dealership would be

irreparably injured by wrongful termination of its franchise agreement because termination would

"obliterate[]" the business and "the right to continue a business . . . is not measurable entirely in

monetary terms;  the Semmes want to sell automobiles, not to live on the income from a damages

award"); then citing *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York*,

749 F.2d 124, 125-26 (2d Cir. 1984) (holding that a closure of a family-owned business could not

"be fully compensated by subsequent monetary damages" because the "ongoing business

represent[ed] many years of effort and the livelihood of its husband and wife owners").[10]

---

[9] To be clear, the Circuit panel's affirmation of the loss of business as an irreparable harm was in the context of determining whether the district court had properly applied the heightened injunction standard.  In finding so, the Court concluded that because the plaintiff-appellant tax preparation franchisor wanted to terminate the defendant-appellee tax preparer's franchise, and that franchisee would thus be left without a "*meaningful remedy* if she were erroneously forced to close her locations," the lack of meaningful remedy warranted the heightened standard. *JTH Tax*, 62 F.4th at 668 (emphasis in original).  Thus, the Circuit seemed to indicate that demonstrating a lack of meaningful remedy could also act as an indicium of irreparable harm.  Ultimately, the facts of *JTH Tax* are converse to those here.  In *JTH*, the preparation franchisor was the movant for a preliminary injunction and lost on both the irreparable harm and merits showing, given the heightened standard.  *See generally JTH Tax LLC v. Agnant*, 2022 WL 1556656, at *9 (E.D.N.Y. May 17, 2022), *aff'd*, 62 F.4th 658 (2d Cir. 2023).  However, as discussed above, the grant of injunctive relief here will not make it impossible to render Deo a "meaningful remedy" should he prevail on the merits. *JTH Tax*, 62 F.4th at 668.  Thus, in this case, "there is no reason to impose a higher standard." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 35 (2d Cir. 1995).

[10] The Court is aware that unlike *JTH Tax, Semmes,* and *Roso-Lino*, the facts here do not involve a so-called mom-and-pop or individual-proprietorship business.  Additionally, nor does this  necessarily upend the proprietor's individual and personal livelihood.  Here, Urrutia claims that Superb (and likely his other dealerships) – which do not operate on a franchise model as far as the Court is aware – will go out of business and may have to declare bankruptcy absent injunctive relief.  But the Court knows no more about Urrutia's personal financial picture.  Notwithstanding this, the Second Circuit explicitly explained in *JTH Tax* that

Other courts in this district have continued to uphold this principle. *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 152 F. Supp. 3d 90, 106 (E.D.N.Y. 2015), *aff'd in relevant part, vacated on other grounds*, 841 F.3d 133 (2d Cir. 2016) ("A 'substantial loss of business,' particularly where there is a threat of bankruptcy, constitutes irreparable injury sufficient to satisfy this standard."); *Long Island Lighting Co. v. Suffolk Cnty., N.Y.*, 628 F. Supp. 654, 661 (E.D.N.Y. 1986 ) ("It is well settled that an act threatening the destruction of an ongoing business concern constitutes irreparable harm.") (citation omitted); *Janmort Leasing, Inc. v. Econo-Car International Inc.*, 475 F. Supp. 1282 (E.D.N.Y. 1979) ("In this circuit it is firmly settled that the loss or destruction of a going business constitutes irreparable harm."); *Newport Tire & Rubber Company v. Battery,* 504 F. Supp. 143, 150 (E.D.N.Y. 1980) ("In this circuit, it is well settled that an act that threatens an ongoing business with destruction causes that business irreparable injury."); *see also Petereit v. S.B. Thomas, Inc.,* 63 F.3d 1169, 1186 (2d Cir.1995) ("Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury.").

With the validity of this proposition settled, the Court can readily conclude from the parties' submissions that irreparable harm will likely befall Superb Plaintiffs absent an injunction.[11] Because of default events from the missing cars, Urrutia and Superb Motors already

---

its decision "not suggest that only small businesses can suffer irreparable harm when forced to close. The principles that we described above have been applied to larger businesses, too." 62 F.4th at 68 (citing *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 423 (2d Cir. 2013) (operators of a nuclear power plant)). Thus, the Court finds that auto dealerships like Superb Motors fit comfortably within this continuum.

[11] The Court notes that the temporary stipulation capably and swiftly overseen by Magistrate Judge Wicks has actually kept Superb Motors from the alleged financial ruin. However, this does not moot the issue here at the preliminary injunction stage because it is axiomatic that cessation of allegedly wrongful conduct does not moot requests for injunctive relief if the same harm is reasonably likely to recur. *Cf. Ford v. Reynolds*, 326 F. Supp. 2d 392, 405 (E.D.N.Y. 2004) ("Situations 'capable of repetition, yet evading review' constitute an exception to the mootness doctrine.") (citation omitted), *aff'd*, 167 F. App'x 248 (2d Cir. 2006); *Granite State Outdoor Adver., Inc. v. Town of Orange, Conn.*, 303 F.3d 450, 451 (2d Cir. 2002) (a case is moot "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."). Here, it is clear that absent this temporary stipulation, the cars would remain in Deo's lots (as he maintains he has the right and authority to them), and NMAC and Next Gear would once again perform their monthly audits or "touches" of all the cars on Superb Mortors' lots and find Superb Motors in default and likely

had to pay NMAC nearly $2 million dollars.  *See* Urrutia Reply. Decl. ¶ 4 n.1 ("$2,331,714.23 in payoffs"); Superb Mot. for Recons. (ECF 16) at 3 ("repay early $2 million dollars"); *see also* PI H'rg Tr. 33:5-6, 40:22-41:7.  Further, as far as the Court is aware, NMAC has stopped doing business with Superb and may never act as a lender to Superb or Urrutia again.  *See* Notice of NMAC Termination (ECF 18-2); Urrutia Reply Decl. ¶ 9; PI H'rg Tr. 41:20-25.  Thus, while Superb's operational capital is essentially "depleted," Superb still faces the imminent pains of default with at least one other lender, Top Gear, which is owed $391,698.48 in immediate payment for at least 12 vehicles which are not on Superb's lots, and to which Superb does not currently have possession.  PI H'rg Tr. 22:24-25, 33:11-24, 39:14-15; Urrutia Reply Dec. ¶ 7; Next Gear Payoff Demand (ECF 38-1).

As Urrutia explains, while in default Superb Motors "cannot place *any* vehicles on a floor plan with Next Gear" (or NMAC, given the termination) and "[w]ithout relief, [Superb Motors] cannot establish any new line, will not be able to remain a going concern, and will be forced to default on [its] agreement with Next Gear, because [] Superb do[es] not have the funds to make the aforementioned payoff demanded by Next Gear . . . which default will prevent [it] from having a floor plan with any other bank."  Urrutia Reply Decl. ¶¶ 5-8.  Further, as represented by counsel at the hearing, Superb Motors is also "facing . . . bankruptcy, terminations of employees, and we're going to lose this location."  PI H'rg Tr. 34:3-5.  *See* Superb Ltr. Mot. for Reconsideration at 4 (the required repayment to Next Gear with the given level of operating capital will "result in the imminent shut-down of all four (4) dealerships owned by Urrutia, bankruptcy, and the layoff

---

demand the same accelerated or wholesale payments of the remaining credit lines.  *See* PI H'rg Tr. 32:1-20 (explaining monthly "touches"); 42:1- 43:20 (explaining auditors verification processes); 66:18-20 (Deo's counsel stating there have been "touches on these cars at least [since] since January every month");  *see also* Urrutia Reply Decl. ¶ 58 (48 "vehicles were 'touched' by auditors at NMAC and Next Gear after August 3, 2023, in the days thereafter.").  Accordingly, the Court proceeds and analyzes the motion in its factual posture when it was submitted, notwithstanding the temporary stipulation.

of over 100 employees.  Indeed, Defendants' conduct has already caused the layoff of sixteen (16)

employees out of the twenty-seven (27) originally employed at Superb"); Superb Reply MoL (ECF

39) at 2 (Superb will be "forced to pay another $1 million and forced out of business due to no

operating capital.").

Importantly, Deo does not dispute the veracity or validity of any of the foregoing harms.

*See JTH Tax*, 62 F.4th at 668 ("Notably, Liberty has not endeavored to explain how, if at all, a

court could grant [franchisee] a meaningful remedy if she were wrongfully forced to close.").  At

most, Deo levies accusations without supporting facts that Superb Motors wounds were self-

inflicted and that Urrutia is not to be trusted.  *See* Deo Opp. Decl. (ECF 30) ¶¶ 49 ("[T]he

'emergency' that purportedly exists with these cars by and through whatever

correspondence/hearsay is presented purportedly from the Floor Plan providers was entirely

arranged by [Superb Plaintiffs]"), *id.*  ¶ 39 ("We do not and cannot trust these Plaintiffs for any

reason.").  But, even if these accusations bore out as true, it does not make these harms any less

real to Superb Motors now.[12]

In light of the foregoing record and the possibility of losing Superb Motors as a going

concern as well as Urrutia's other cross-collateralized dealerships, the Court concludes that Superb

has demonstrated irreparable harm.

### B.  Substantial Questions as to the Merits

"A party [] is not required to prove his case in full at a preliminary injunction hearing."

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  As the Court has explained above, *see*

Part II.B, *supra*, the Court concludes the "serious questions" standard applies.  Superb must

demonstrate a "serious question going to the merits" on at least one of its claims to make them a

---

[12] Tellingly, while Deo claims that Urrutia has made many other lies, he does not attack these facts.  *See, e.g.*, Deo 9/15/2023 Decl. in Opp. (ECF 43) ¶¶ 5, 12, 14, 15.

fair ground for trial, with a balance of hardships tipping decidedly in the Superb's favor.  *Id.* "Further, Plaintiffs need not demonstrate a likelihood of success on the merits of *every* claim—rather, they need only 'show a likelihood of success on the merits of at least one of [their] claims." *Home It, Inc. v. Wen,* 2020 WL 353098, at *5 (E.D.N.Y. January 21, 2020) (quoting *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019)) (emphasis added);  *see also Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484, 487 (S.D.N.Y. 1997) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits on one of the claims. Because I find plaintiffs' copyright infringement claims provide a basis for granting a preliminary injunction, I will not address their other claims.") (citing *Girls Clubs of Am., Inc. v. Boys Clubs of Am., Inc.*, 683 F. Supp. 50, 52 (S.D.N.Y.), *aff'd*, 859 F.2d 148 (2d Cir. 1988)).  Here, because the Court concludes that there are at least "serious questions" going to Superb's DTSA claim, it does not address merits of any other claims.[13]

Substantively, "[t]he 'serious questions' standard permits a district court to grant a preliminary injunction . . .  where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction."  *Spanski Enters., Inc. v. Telewizja Polska S.A.*, 832 F.

---

[13] The Court briefly pauses to address what may appear as a tension between the demonstrated irreparable harm to Superb's business predicated upon Deo's allegedly wrongful placement of the cars on his lots with the harms potentially caused by his alleged misappropriation of Superb's trade secrets pursuant to the DTSA.  The Court acknowledges that the DTSA allegations are too speculative at this juncture to warrant a finding of "irreparable harm."  *See* Part III.A, *supra*.  The Court is cognizant that the potential harm flowing from a DTSA claim is not the basis upon which the Court finds irreparable harm will likely inure to Superb.  Rule 65 does not require as much.  In any case, the injunction maintaining the cars at Superb's lots will directly ameliorate the business harm created by their absence.  Further, Circuit courts have repeatedly opined that a movant "need not further show that the action sought to be enjoined is the exclusive cause of the injury."  *M.R. v. Dreyfus*, 697 F.3d 706, 728-29 (9th Cir. 2012) ("[T]he risk is not exclusively attributable to the challenged regulation . . . , but the challenged regulation and resulting [effect] will exacerbate that risk.") (citing *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir.2004)); *accord Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 823 (9th Cir. 2018).  Lastly, as the Second Circuit noted in *JTH Tax*, the franchisee "needed to continue operating her business in order to have the funds necessary to defend herself against" the franchisor attempting to terminate her contracts. *JTH Tax*, 62 F.4th at 668.  'The Court is without evidence that Superb could continue to litigate its various claims against Deo absent injunctive relief.

App'x 723, 724 (2d Cir. 2020) (summary order) (quoting *Citigroup*, 598 F.3d at 35).  The value

of the "serious questions" standard "to assessing the merits of a claim at the preliminary injunction

stage lies in its flexibility in the face of varying factual scenarios and the greater uncertainties

inherent at the outset of particularly complex litigation."  *Id.*

### 1.  Defend Trade Secrets Act Claim[14]

The Defend Trade Secret Act ("DTSA") prohibits any person "with intent to convert a

trade secret, that is related to a product or service used in or intended for use in interstate or foreign

commerce, to the economic benefit of anyone other than the owner thereof, and intending or

knowing that the offense will, injure any owner of that trade secret," from, *inter alia*, knowingly,

and without authorization, stealing, misappropriating, copying, duplicating, transmitting,

communicating or conveying such information; receiving or possessing such information,

knowing that it was "stolen or appropriated, obtained, or converted without authorization;"

attempting to commit any such offense; or conspiring with others to commit any such offense,

"and one or more of such persons do[es] any act to effect the object of the conspiracy[.]"  18 U.S.C.

§ 1832(a); *accord Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 339 (E.D.N.Y.

2020).

The statute defines the term "trade secret" to mean:

> all forms and types of financial, business, scientific, technical, economic, or
> engineering information, including patterns, plans, compilations, program devices,
> formulas, designs, prototypes, methods, techniques, processes, procedures,
> programs, or codes, whether tangible or intangible, and whether or how stored,
> compiled, or memorialized physically, electronically, graphically,
> photographically, or in writing if—

---

[14] The Court notes that "the requirements for showing a misappropriation of a trade secret are similar under state and federal law."  *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016).  Here, Superb alleges both in their complaint.  Compl. ¶¶ 349-68.  Because the Court finds that there are substantial questions going to the DTSA claim, it does not address any other claims.

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3); *accord Intertek*, 443 F. Supp. 3d at 339.

The term "misappropriation" is defined in the DTSA to mean:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who-- (i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was-- (I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) before a material change of the position of the person, knew or had reason to know that-- (I) the trade secret was a trade secret; and (II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5); a*ccord Intertek*, 443 F. Supp. 3d at 340.

Putting these elements together, "[t]o succeed on a claim misappropriation of a trade secret under the DTSA, a plaintiff must show that the trade secret was: (A) acquired by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosed by another without express or implied consent." *Intertek*, 443 F. Supp. 3d at 340. *See Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) ("[U]nder the [DTSA], a party must show an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.") (cleaned up). The term "improper means" is defined to include "theft, bribery,

misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means;" but does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

Here, the evidence in totality raises substantial questions as to whether Deo has misappropriated or copied a trade secret without Superb Motors' authorization and against a fiduciary duty he owed Superb Motors as a forty-percent owner. *See DFO Glob. Performance Com. Ltd. (Nevada) v. Nirmel*, No. 20-CV-6093 (JPO), 2021 WL 3475596, at *8 (S.D.N.Y. August 6, 2021) ("It is axiomatic that corporate officers owe fiduciary duties to their corporation."). Superb's submissions and representations at oral argument establish that Urrutia purchased from Tekion a customizable DMS interface for $120,000.00.  Compl. ¶ 214.  Urrutia, who has been established in the car sales business for at least 30 years, then customized the DMS as well as the CRM module, which "contains all the customer's names and the customer database" and claims it as his "blueprint" to success at his dealerships.  Compl. ¶¶ 214-215; Urrutia TRO Decl. ¶ 34, 134-36; *see also* PI H'rg Tr. 58:21-24; Ex. B to Urrutia Reply Decl. (ECF 38-2) (Urrutia-Deo texts) at 1.  As Superb's counsel explained at the PI Hearing:

> Months were spent with the Tekion team.  Mr. Urrutia and others worked at Superb to create a customized setup that allows you to streamline dealership operations.  Think of a flow chart discussing the first step of every dealership operation and what's involved.  There are monthly accounting requirements for all sorts of different things, and Mr. Urrutia's unique knowledge of this industry allowed him to customize the setup of Tekion in such a way as to make the dealership more profitable.  That's his know-how; that's his unique knowledge that Deo does not have.
> . . .
> That customization is based on the knowledge of Mr. Urrutia, who has 30 years of experience in the industry.

PI H'rg Tr. 88:8-17, 63:13-15.

Urrutia avers that "Superb's business model, its customer lists, information related to its revenues and profit margins, and the related information Deo obtained during his employment with Superb are confidential and proprietary." Urrutia TRO Decl. ¶¶ 166; *Id.* ¶ 135 ("unique confidential, and proprietary"). While Urrutia indeed taught Deo how to use the Tekion DMS and allowed him access to the system, it was for the purpose of advancing Superb Motors' business, in which Deo was a financial stakeholder and a fiduciary. *Id.* ¶ 169.

Additionally, Urrutia claims that the purported confidential information had "independent economic value" as it was not generally known or readily ascertainable and that he took "many reasonable measures to keep Superb's confidential information secret" such as "restricting access of this information only to employees who have a fiduciary duty to Superb, all of whom are required to maintain it in a secured computer system protected by firewalls and other appropriate safeguards, such as usernames and passwords." *Id.* ¶¶ 171-73; PI H'rg Tr. 58:11-24. However, Superb's counsel clarified at the hearing that:

> COUNSEL: An employee wouldn't be given complete access to the CRM system. He or she would only be given user-level access to do his or her duties. This list of customers is not something that's publicly posted anywhere that you can just go and get. So, all of those things are evidence of how we acted to keep, you know, this information a trade secret.
>
> THE COURT: Did every sales associate have access to that information?
>
> COUNSEL: It's my understanding that the CRM system allowed leads to be assigned to people. I'm not – I can't state specifically whether a salesperson had access to each and every lead, but it's my understanding that leads can be assigned, and they were assigned.

PI H'rg Tr. 60:5-17.

Ultimately, the thrust of Superb's claims at the hearing was that Deo "stole the exact customization to use at his competing group of [Gold Coast] dealerships" in violation of his fiduciary duties to Superb Motors. Urrutia TRO Decl. ¶¶ 135, 138-39; *see* PI H'rg Tr. 62:11-

63:22.  Even if Deo had purchased a Tekion DMS, he would have had to customize it based on his

own knowledge.  PI H'rg Tr. 57:20-25.  Superb asserts that because Deo did not have Urrutia's

amassed knowledge, Deo resorted to copying the "imparted the confidential know-how Urrutia

imported to him, as well as the proprietary information Superb had in its possession, *i.e.*, Superb's

customer lists with contact information of its customers, customized Tekion DMS system, and

other sensitive information to these employees for the purpose of setting up Deo's own group of

dealerships."  Compl. ¶ 218; Urrutia TRO Decl. ¶¶ 140-41 (The Tekion DMS "contained the

blueprint for my success at my dealerships because I knew how to use the customized features of

Tekion to profitably operate dealerships."); Urrutia-Deo Texts (ECF 38-2) at 1 (Deo: "I would

love to see how Tekion works"); *id.* at 58 (Urrutia: "I need you to understand . . . how Tekion

works."); *see also* PI H'rg Tr. 58:1-3 (Deo also "gained the CRM system and he took with him all

of the leads for all of the customers that were Superb's."); *id.* 63:7-15 (confidential information

derived from Urrutia's amassed 30-year knowledge of the auto sales industry); *id.* 88:14-17.

Superb's counsel admitted that what Deo unlearn what he retained in his memory about

the automotive sales business.  However, counsel maintained that Deo "took the [Tekion] setup"

by copying or downloading it and taking it to his dealerships and did the same with the customer

leads.  *See id.* 89:18-22, 58:1-3 (CRM), 90:9-16.  While Superb's counsel explained that his clients

did not have a chain of custody or forensic evidence to prove so at the time of the hearing, Superb

Motors had conducted a preliminary investigation, which led Superb to this belief.  *Id.* 91:1-12.

Conspicuously, Deo's own declarations do not dispute this account.[15]  *See generally*, Deo Opp.

Decl. (ECF 30); Deo 9/15/2023 Decl. in Opp. (ECF 43).

---

[15] At oral argument, Deo's counsel denied that Deo had any "proprietary information."  However, counsel failed to engage with the difference that it was the customization could be the proprietary trade secret.  *See* PI H'rg Tr. 87:10-15 ("They tell you it's been customized? What does that mean?").

The record does not set out an exemplar of a DTSA claim, but it need not at this juncture. In weighing the evidence available, the Court finds there are at least substantial questions that merit further litigation of the DTSA claim. "Confidential proprietary data relating to pricing, costs, systems, and methods are protected by trade secret law." *Jasco Tools, Inc. v. Dana Corp. ("In re Dana Corp.")*, 574 F.3d 129, 152 (2d Cir. 2009) (applying New York law). Additionally, a customer list "developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . . provided the information it contains is not otherwise readily ascertainable." *Drennen*, 235 F. Supp. 3d 559, 566 (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 46 (2d Cir. 1999)). "The question of whether or not a customer list is a trade secret is generally a question of fact." *Id.* (quoting *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991)).

The Court concludes there are substantial questions as to whether Deo copied Superb Motors' Tekion DMS customization and used it to benefit himself at Gold Coast or disclosed or disseminated the information to his Gold Coast employees in breach of his duties to Urrutia and Superb Motors. Superb has provided enough evidence to demonstrate that the claim is "fair ground[s]" for discovery and further litigation. *Citigroup*, 598 F.3d at 34. Additionally, the evidence establishes that the CRM system associated with the Tekion DMS system contained customer lists and sales leads generated and compiled by Urrutia over his significant period of time in the auto business. Though Deo himself claims his Gold Coast dealerships are not "active," other evidence undercuts that contention. Deo Opp. Decl. (ECF 30) ¶ 45. *See* Decl. of Nethenal Orgad (ECF 40) ¶¶ 22-26 ("In late July 2023, Deo was throwing a 'car event' at [Gold Coast] Syosset, NY which I was invited to and attended. . . . I noticed that many of the vehicles from Superb were moved there.").

26

In sum, allowing further litigation and discovery will sift out the facts and identify whether this claim indeed has any merit and whether Deo has any defenses to raise. The Court's duty at this point is to ensure there is at least the minimum "fair ground[s]" to litigate the claim further, given the irreparable harm Superb faces. *Citigroup*, 598 F.3d at 34. The Court finds so in this case.

### C. Balance of Hardships and Public Interest

#### 1. Balance of the Hardships

Balancing the hardships each party would endure, the Court concludes they tip decidedly in Superb's favor. As Superb argues and the Court has laid out above, absent an injunction Superb Motors and the other cross-collateralized dealerships will likely shutter. Additionally, on top of that irreparable harm, Deo would be in a position to sell or otherwise dispose of the cars without the apparent authority or right to do so. On the other hand, allowing some cars to remain at Superb's lots and others to stay Deo's possession (as outlined in the Court's Order below) will not harm to Deo. Moreover, no other conduct attributable to Superb prohibits Deo from obtaining financing and buying and selling other cars. His dealership may grow and profit—just not using the subject cars at issue. *See Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 436 (2d Cir. 1993) (holding that "the balance of the equities in this case tips decidedly in favor of appellant being granted specific performance of its contract because neither Eagle Sales nor the four new dealers will suffer harm proportionate to appellant's loss of business as a result of a status quo injunction.").

#### 2. Public Interest

Finally, the Court must consider the effect and consequences of any injunction on the public at large. *Winter*, 555 U.S. at 13-14; *see S.E.C. v. Citigroup Glob. Markets Inc.*, 673 F.3d

158, 163 n.1 (2d Cir. 2012) (citations omitted) ("[W]hen a court orders injunctive relief, it should

ensure that injunction does not cause harm to the public interest.").

Here, neither party arguments are neutral as to the issue.  *See, e.g.*, Superb TRO MoL (ECF

10) at 22 ("There is no reason to believe that the relief sought would cause injury to the public.").

This dispute involves private commercial conduct between two business partners.  Still, it is in the

public's interest to ensure that Congress's choice to federally protect trade secrets may be

vindicated upon a valid showing, so the Court finds this element favors granting the injunction.

## V.   CONCLUSION

Considering "all the equities of the situation, including the public interest[,]" the Court

finds that preliminary injunctions are justified in these circumstances to keep the status quo ante

until the merits can be further determined.  *Million Youth March, Inc. v. Safir,* 155 F.3d 124, 125

(2d Cir.1998).  However, it is incumbent on the Court to fashion relief that  keeps the status quo

ante an nothing more.   Thus, the Court continues to assess the scope and terms of such an

injunction. *See Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of

Educ.,* 464 F.3d 229, 245 (2d Cir. 2006) ("District courts have broad authority in crafting equitable

remedies such as injunctions.") (cleaned up).

Thus, the Court finds the following injunctive the minimum necessary to maintain the

status quo ante.  The Court hereby **ORDERS** the following injunctive relief:

1) The following **thirty (30)** vehicles (the "**Injuncted Superb Vehicles**") are to Remain

   at or otherwise be returned to a Cross-Collateralized Urrutia Dealership Lots[16]:

   a. Two (2) Isuzu flatbed trucks;

   b. Twenty-eight (28) cars listed on the list at ECF 30-8 ("**Markup List**") indicated
      with "**YES**",

---

[16] *See* Nissan Termination Ltr. dated 8/18/2023 (ECF 18-2) at 3 (listing cross-collateralized dealerships).  *See also* Compl. ¶
154 (listing Urrutia's dealerships).

      i. ***with the exception of*** the 2023 Chevy Suburban with a Vehicle Identification Number (VIN #) ending in "8675."

2) A Cross-Collateralized Urrutia Dealership Lot ***only*** includes lots located at:

    a. 215 Northern Boulevard, Great Neck, NY 11021 (Superb Motors/Team Auto Direct);

    b. 4360 US Route 9, Freehold, NJ 07728 (Team Auto/VW of Freehold);

    c. 412 New Park Avenue Hartford, CT 06110-2971 (Team Mitsubishi Hartford);

    d. 25 West Housatonic Street, Pittsfield, MA 01201 (Team Nissan of Pittsfield).

3) The following vehicles ("**Injuncted Deo Vehicles**") shall Remain or otherwise be at Deo Defendants' Deo Lots:

    a. 2023 Chevrolet Suburban with a VIN # ending in "8675";

    b. 2020 Mercedes-Benz GLE with a VIN # ending in "4078";

    c. 2019 Land Rover Range Rover with a VIN # ending in "3297";

    d. 2017 Rolls Royce with a VIN # ending in "2728";

    e. 2016 Audi A6 with a VIN # ending in "9650";

    f. 2016 Audi Q5 with a VIN # ending in 0272.

4) A **Deo Lot** only includes:

    a. 180 Michael Drive, Syosset, NY 11791 (Northshore);

    b. 189 Sunrise Highway, Amityville, NY 1701 (Sunrise/Gold Cost).

5) The term "**Remain**" means that the subject injuncted vehicle:

    a. may not leave the geographic area or bounds of the appointed lot;

    b. may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered;

    c. may not otherwise change legal or equitable title except as ordered by another court of competent jurisdiction;

    d. may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle.

6) **No injuncted vehicle may be removed from the appointed lot absent this Court's Order.**

    a. In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle. The same writing must be electronically served on the other party.

7) Deo Defendants shall hold and keep insurance and provide proof thereof to Superb for the **"DEMO" cars**:

    a. 2019 Land Rover Range Rover;
    b. 2023 Chevrolet Suburban.

8) This injunction shall last until the case has settled or dismissed or until the Court resolves the dispute. Any party seeking to modify the injunction must file a pre-motion conference letter with the Court pursuant to the Court's individual practice rules.

9) **By Monday, October 2, 2023, at 5:00 PM,** Superb and Deo Defendants shall each file a declaration on the docket informing the Court of the status of their compliance with this Order.


**IT IS SO ORDERED.**


Dated: September 29, 2023            /s/   Orelia E. Merchant
        Brooklyn, New York           **Orelia E. Merchant**
                                   **United States District Judge**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUPERB MOTORS INC. *et al*,

                       Plaintiffs,

        -against-

ANTHONY DEO *et. al.*,

                      Defendants.
-------------------------------------------------------------X

**MEMORANDUM ORDER**
23-CV-6188 (JMW)

**WICKS,** Magistrate Judge:

      Plaintiffs seek to modify the preliminary injunction order previously entered by the Hon.

Orelia E. Merchant in which she granted in part and denied in part the motion filed at ECF No.

55. (ECF Nos. 110-112). The Court directed that any opposition and reply be filed by January

7, 2024 and January 8, 2024 respectively. (Electronic Order dated Dec. 5, 2023.) To date, Deo

Defendants have not filed any opposition and, as indicated at the Status Conference on January

9, 2023, the motion is now fully submitted. (ECF No. 131.) The question presented on a motion

to modify a preliminary injunction is whether a material change in circumstances arose since the

issuance of original injunction to justify a modification? For the reasons that follow, the motion

is granted in part and denied in part.

## DISCUSSION

**I.      The Original Order on the Preliminary Injunction (ECF No. 55)**

      Of relevance here, Judge Merchant expressly ordered the following preliminary

injunctive relief in order to maintain the *status quo ante*:

1)  The following **thirty (30)** vehicles (the "**Injuncted Superb Vehicles**") are to Remain at
    or otherwise be returned to a Cross-Collateralized Urrutia Dealership Lots16:
    a.  Two (2) Isuzu flatbed trucks;

     b.   Twenty-eight (28) cars listed on the list at ECF 30-8 (**"Markup List"**) indicated with "**YES**",

          i.   ***with the exception of*** the 2023 Chevy Suburban with a Vehicle Identification Number (VIN #) ending in "8675."

…

3) The following vehicles ("**Injuncted Deo Vehicles**") shall Remain or otherwise be at Deo Defendants' Deo Lots:

    a.   2023 Chevrolet Suburban with a VIN # ending in "8675";
    b.   2020 Mercedes-Benz GLE with a VIN # ending in "4078";
    c.   2019 Land Rover Range Rover with a VIN # ending in "3297";
    d.   2017 Rolls Royce with a VIN # ending in "2728";
    e.   2016 Audi A6 with a VIN # ending in "9650";
    f.   2016 Audi Q5 with a VIN # ending in 0272.

4) A **Deo Lot** only includes:
    a.   180 Michael Drive, Syosset, NY 11791 (Northshore);
    b.   189 Sunrise Highway, Amityville, NY 1701 (Sunrise/Gold Co[a]st).

5) The term "**Remain**" means that the subject injuncted vehicle:
    a.   may not leave the geographic area or bounds of the appointed lot;
    b.   may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered;
    c.   may not otherwise change legal or equitable title except as ordered by another court of competent jurisdiction;
    d.   may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle.

6) **No injuncted vehicle may be removed from the appointed lot absent this Court's Order.**
    a.   In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle. The same writing must be electronically served on the other party.

7) Deo Defendants shall hold and keep insurance and provide proof thereof to Superb for the **"DEMO" cars**:
    a.   2019 Land Rover Range Rover;
    b.   2023 Chevrolet Suburban.

8) This injunction shall last until the case has settled or dismissed or until the Court resolves the dispute. Any party seeking to modify the injunction must file a pre-motion conference letter with the Court pursuant to the Court's individual practice rules.

(ECF No. 55 at 28-30) (emphasis in original).

## II.    Plaintiffs' Motion to Modify Preliminary Injunction

In their motion, Plaintiffs request that the Court (1) "direct[] Defendants to return and/or account for all remaining vehicles that belong to [Superb] and/or Team Auto Sales LLC ("Team Auto") which remain in Deo Defendants' possession and/or were misappropriated by others in concert with the Deo Defendants;" (2) "Modify[] the Injunction to require Deo Defendants to return the Injuncted Deo Vehicles[1] to Superb and/or Team [Auto];" (3) Modify[] the Injunction permitting Superb and/or Team [Auto] to sell the Injuncted Superb Vehicles;" (4) if the vehicles are not directed by the Court to be returned, then the Court should direct the Deo Defendants to "(i) provide photographs of each vehicle together with proof of odometer readings; (ii) provide proof of full insurance coverage for each vehicle; and (iii) move the vehicles to an automobile storage facility."  (ECF No. 110 at 3.)

Plaintiffs emphasize the portion of Judge Merchant's Order which states that "a return of the cars to Superb's lots" "requires affirmative action on the part of the Deo Defendants" and is "nominally 'mandatory'…to *keep* the parties in status quo ante."  (ECF No. 55 at 14) (emphasis in original).  They also correctly note that the Injunction does not state whether the remaining forty-three (43) vehicles must be returned.  (ECF No. 111 at 3-4.)

"A trial court's power to modify an injunction, like the power over all its orders,' is inherent."  *New Falls Corp. v. Soni Holdings,* No. 19-CV-0449 (ADS) (AKT*), 2020 U.S. Dist. LEXIS 186395, at \*29 (E.D.N.Y. Sept. 30, 2020).  Preliminary injunctions are governed by Fed. R. Civ. P. 65.  A court may grant a preliminary injunction if the "plaintiff has shown (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of

---

[1] These vehicles include: (1) 2023 Chevrolet Suburban with a VIN # ending in "8675"; (2) 2020 Mercedes-Benz GLE with a VIN # ending in "4078"; (3) 2019 Land Rover Range Rover with a VIN # ending in "3297"; (4) 2017 Rolls Royce with a VIN # ending in "2728"; (5) 2016 Audi A6 with a VIN # ending in "9650"; and (6) 2016 Audi Q5 with a VIN # ending in 0272.  (ECF No. 55 at 29.)

preliminary relief; (3) that the balance of equities tips in [the plaintiff's] favor; and (4) that an

injunction is in the public interest." *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670 F. App'x

6, 8 (2d Cir. 2016) (quotes omitted).

Injunctions are "equitable remedies that 'march[] along according to the nature of the

proceeding'" and may be adapted along the way. *Greater Chautauqua Fed. Credit Union v.

Quattrone*, No. 22-cv-2753 (MKV), 2023 U.S. Dist. LEXIS 163966, at *7 (S.D.N.Y. Sept. 15,

2023). When an injunction is "final," courts apply a heightened standard in accordance with

Fed. R. Civ. P. 60(b)(5). *Id.* at *9 (citing *Sierra Club v. Army Corps of Engineers,* 732 F.2d 253

(2d Cir. 1984)).

However, a different standard applies for preliminary injunctions. District courts in this

Circuit have applied the following standard for modifying the preliminary injunctions, which the

undersigned adopts, namely, the movant must demonstrate "a material change in circumstances

justifies the alteration." *New Falls Corp.*, 2020 U.S. Dist. LEXIS 186395 at *30; *see also

Lawsky v. Condor Capital Corp.*, No. 14-cv-2863 (CM), 2014 U.S. Dist. LEXIS 107253, at *15

(S.D.N.Y. Aug. 1, 2014) (stating that parties must show a change in circumstances warranting

such relief). "An injunction should be modified only when the changed circumstances

demonstrate that continuance of the injunction is no longer justified and/or [] will work

oppressively against the enjoined parties." *Int'l Equity Invs., Inc. v. Opportunity Equity

Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006).

Here, Judge Merchant's order concerned a *preliminary*—not a permanent—injunction, so

the heightened standard does not apply. Further, at bottom, Plaintiffs fail to point to a change of

circumstances warranting such relief—for instance, Plaintiffs have not pointed to discovery or

deposition testimony that revealed unknown information supporting the need to sell these vehicles.

Plaintiffs also seek damages here that would provide them with the ultimate relief in this case, that is, to return the vehicles back to them for selling purposes. This relief, however, is not proper for a preliminary injunction. *See Xiotech Corp. v. Express Data Products Corp.*, No. 13-CV-861 (MAD) (TWD), 2013 WL 4425130, at *2 (N.D.N.Y. Aug. 14, 2013) ("The purpose of a preliminary injunction is to preserve 'the court's power to render a meaningful decision after a trial on the merits,' not to provide the movant with ultimate relief.") (citing *Warner Vision Entm't. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir.1996)). A preliminary injunction is a provisional remedy, that is, interim relief to maintain the status quo during the pendency of the litigation. It is not a short circuit to obtain the final or ultimate relief sought in the case pre-judgment.

Each of Plaintiffs' requests for modification are considered below.

### A. Returning the 6 Deo Injuncted Vehicles and 43 Remaining Vehicles

Plaintiffs seek to have the Court require the Deo Defendants return the Deo Injuncted Vehicles and the Remaining Vehicles since "the *status quo ante* was that all vehicles were on Superb's lot." (ECF No. 111 at 7.) Plaintiffs aver that these 43 vehicles ("Remaining Vehicles") are "fully paid off" and owned "solely by Superb. (*Id.* at 4.)

This request is denied considering that the Court has already ordered that the 6 Deo Injuncted Vehicles be stored in an independent storage facility. (ECF No. 97) ("Defendants are directed to move the six (6) "Injucted Deo Vehicles" identified in the Preliminary Injunction Order (ECF No. 55) to an independent licensed and insured vehicle storage facility on Long Island **on or before 5pm Tuesday, November 14, 2023**.") Deo Defendants have confirmed that these vehicles are indeed being kept in such a facility. (ECF No. 102.) This action is in

accordance with the spirit of the Preliminary Injunction Order, that is, to ensure the vehicles are not driven or otherwise damaged throughout the course of this case.  (ECF No. 55 at 29.) Further, this relief would be decided at the end of the case, as return of the vehicles is the Plaintiffs' ultimate requested relief.  (*See* ECF No. 65) (requesting, *inter alia*, "injunctive relief in returning operational control, vehicles, dealer plates, and any other assets of Plaintiffs"); *see also WarnerVision Entertainment Inc.*, 101 F.3d at 261-62 (stating that a temporary injunction is not meant to give final relief before trial).

Plaintiffs alternatively request an evidentiary hearing to help locate the 43 vehicles' whereabouts.  Here, an evidentiary hearing is warranted given that neither Plaintiffs nor the Deo Defendants can identify the precise whereabouts of the vehicles.  (*See* Appendix.)[2]  The evidentiary hearing shall be held on February 20, 2024 at 1:00 p.m.  The parties must be prepared to answer questions and present evidence related to these 43 vehicles.

### B.  Permission to Sell the 30 Superb Injuncted Vehicles

Plaintiffs also seek permission to sell the Superb Injuncted Vehicles.[3]  (*Id.* at 8.)  They argue that Superb should be allowed to sell the vehicles it owns to remain operating as a going concern.  (ECF No. 111 at 8.)  Because Superb's floor plan lender agreement has been terminated due to the Deo Defendants' actions, Plaintiffs allege that "Superb remains limping and cannot purchase any new vehicles due to the termination of its floor plan lines." (*Id.*)  They

---

[2] Of the 43 missing vehicles: 26 are reported not to be in Deo's possession ("do not have"); 6 are reported to have been sitting in 215 Northern Blvd on 8/4; 1 was last used by Urrutia; 1 was a vehicle trade that never came in; 9 were SOLD VEHICLES--1 is believed to be sold; 1 was sold by Novicky on August 4, 2023; 1 was sold in December 2022; 1 was sold in June 2023; 1 was sold in April 2023; 1 was sold "a long time ago"; 1 vehicle was retailed 2 months ago; 1 vehicle was returned to auction in June; 1 vehicle was sold in March 2023.

[3] These are the thirty (30) vehicles that Judge Merchant stated should be returned to Plaintiffs' lots—the two (2) Isuzu flatbed trucks and the twenty-eight (28) cars listed on ECF 30-8 as 'YES'.  (ECF No. 55 at 28.)

argue that allowing the vehicles to remain stagnant on the lots goes against the purpose of the Injunction—"to protect the resale value of the vehicles"—as the vehicles can depreciate significantly in the interim. (*Id.* at 9.)

However, Plaintiffs' very own request flies in the face of the Injunction Order entered by Judge Merchant, which this Court is disinclined to ignore. (ECF No. 55.) In that Order, she stated clearly that these 30 vehicles are to "remain" on Plaintiffs' lots which was further defined as:

> a. may not leave the geographic area or bounds of the appointed lot;
>
> b. may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered;
>
> …
>
> d. may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle.

(ECF No. 55 at 29.) Contrary to Plaintiffs' sentiment that the Deo Defendants are "keep[ing] the[se vehicles] hostage," they are rightfully already on Plaintiffs' lots. However, Plaintiffs do not have the right to sell them at this juncture due to the ongoing dispute between the parties. Thus, this request is denied.

## C.  Alternative Relief

Notwithstanding the above, the Court finds Plaintiffs' requests for alternative relief to be reasonable in light of the circumstances presented. Plaintiffs request that the Deo Defendants be required to provide (1) date-stamped photographs and odometer readings of the Remaining Vehicles and the Deo Injunced Vehicles; (2) require the Deo Defendants to store the vehicles in an automobile storage facility to prevent damage of the resale value of the vehicles; (3) require the Deo Defendants to provide full insurance coverage for the vehicles, as the documentation provided was insufficient to protect the resale value. (ECF No. 111 at 10.)

Plaintiffs' first request—date stamped photos and odometer readings of the vehicles—is granted. In addition to photos and odometer readings of the vehicles in its possession, Deo Defendants shall also provide a signed and sworn affidavit attesting to the accuracy of the attached photographs and readings.

Regarding the storage facility, Storage Post, the facility that Deo Defendants currently use to store the Deo Injuncted Vehicles, Deo Defendants must establish that they have in fact stored the vehicles in an enclosed unit to protect it from the elements or otherwise prevent damage to the vehicles' resale value. *See How to Store Your Car in a Self-Storage Unit*, Storage Post (Mar. 19. 2021), https://www.storagepost.com/blog/2021/03/how-store-your-car-self-storage-unit.

Finally, regarding the insurance purchased by Deo Defendants to store the vehicles, although it appears from the receipt submitted that a protection plan was purchased, there is no information provided to adequately assess coverage scope or limits for the stored vehicles. Thus, Deo Defendants are directed to provide proof of insurance for the six (6) vehicles, and not simply a receipt for a general protection plan, and file proof on ECF.

For these reasons, Plaintiffs' requests to return the vehicles and sell them are denied but their requests for alternative relief are granted.

### III.    Expedited Discovery

The Court also finds that an expedited discovery schedule is warranted given Plaintiffs' allegations against the Deo Defendants.

When preliminary injunctions are involved, courts in this Circuit have found that expedited discovery is warranted when the following have been established:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4)

some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Singulardtv GmbH v. Jackson*, No. 21-CV-10130 (VEC), 2022 U.S. Dist. LEXIS 65087, at *3 (S.D.N.Y. Apr. 6, 2022) (citations omitted).

Here, Judge Merchant previously found that irreparable harm would ensue if an injunction were not entered. (ECF No. 55 at 27.) And, she had already indicated that there were "substantial questions as to whether Deo [] misappropriated or copied a trade secret" in violation of the Defend Trade Secrets Act. (*Id*. at 23.) Therefore, there is at least some probability of success on the merits. Expediting discovery at this juncture would prevent further financial ruin to Plaintiffs' business and avoid any possibility in which the Deo Defendants can "sell or otherwise dispose of the cars without the apparent authority or right to do so." (*Id*. at 27.) Thus, to maintain the *status quo ante* and avert considerable harm to Plaintiffs' business, it is necessary that the parties engage in expedited discovery. Accordingly, the parties are to be prepared to enter into a six-month discovery schedule that will be addressed at the next Status Conference on January 26, 2024. The discovery order entered at that Status Conference will supersede the scheduling order approved at the initial conference (ECF No. 69).

## CONCLUSION

For the reasons stated, the Court denies in part and grants in part Plaintiffs' motion for modification of the preliminary injunction (ECF No. 110). The Court directs the following:

*First*, an evidentiary hearing for the 43 Remaining Vehicles is scheduled for **February 20, 2024 at 1:00 p.m**. in courtroom 1020. Proposed witness and exhibit lists shall be filed on ECF on or before **February 15, 2024**. *In addition* on or before **January 31, 2024**, Deo Defendants are to provide to Plaintiffs photographs of the vehicles' odometer readings along with a sworn affidavit, proof that the vehicles are in an enclosed facility, and proof of full vehicle insurance coverage

and file proof on ECF.  *Finally*, the parties shall meet and confer and file by **January 24, 2024**, a proposed joint schedule for discovery on an expedited six-month track, which will be addressed at the next Status Conference on January 26, 2024.

Dated:  Central Islip, New York
          January 18,  2024

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

10

**APPENDIX: 43 Remaining Vehicles Information**

| VIN # | Year | Make | Model | Deo Defendants' Explanation in ECF No. 30-8 | Plaintiffs' Explanation in ECF No. 112. |
|-------|------|------|-------|---------------------------------------------|------------------------------------------|
| 1721 | 2016 | BMW | 3 Series | This was sitting in 215 Northern Blvd on 8/4 | |
| 7672 | 2008 | BMW | 7 Series | Do not have | |
| 5942 | 2009 | Ford | Ranger | Do not have | |
| 5724 | 2004 | Nissan | Quest | Do not have | |
| 9887 | 2012 | BMW | X5 | This was sitting in 215 Northern Blvd on 8/4 | Plaintiffs state that Novicky conducted a physical audit on 8/3/23 but the vehicle was not present. Superb does not have possession of this vehicle and its whereabouts are unknown.  (ECF No. 112 at 4.) |
| 3394 | 2021 | Chevrolet | Silverado 1500 | This vehicle was a trade that never came in | |
| 1562 | 2017 | BMW | X1 | Sold by Bruce Novicky on 8/4 | |
| 8930 | 2013 | BMW | X5 | This was sitting in 215 Northern Blvd on 8/4 | |
| 49331 | 2012 | Dodge | Grand Caravan | Do not have | |
| 3757 | 2014 | Ford | Explorer | Do not have | |
| 3539 | 2000 | Mercedes-Benz | M-Class | Do not have | |
| 4417 | 2006 | Lexus | GX 470 | Do not have | |
| 56804 | 2014 | Honda | Pilot | Do not have | |
| 6699 | 2019 | Audi | Q7 | Do not have | |
| 1021 | 2004 | Toyota | Sequoia | Do not have | |
| 441 | 2021 | Dodge | Durango | Vehicle was retailed 2 months ago | |
| 9931 | 2009 | Ford | Flex | Do not have | |
| 2487 | 2007 | Ford | Explorer | Do not have | |
| 2090 | 2020 | Alfa Romero | Stelvio | Do not have | |
| 20 | 2019 | Ford | Mustang | Sold in June 2023 | |
| 5850 | 2019 | Mercedes-Benz | S-Class | Vehicle was returned to auction in June | |
| 2021 | 2020 | Chevrolet | Malibu | Sold in December 2022 | |
| 8338 | 2007 | BMW | 5 Series | Do not have | |
| 9208 | 2011 | BMW | 5 Series | Do not have | |
| 6841 | 2018 | Chevrolet | Impala | Do not have | |
| 30659 | 2015 | Infiniti | Q70L | Do not have | |
| 5244 | 2013 | Hyundai | Sonata | Do not have | |
| 2694 | 2010 | Nissan | Murano | Do not have | |
| 8247 | 2010 | BMW | 7 Series | Do not have | |
| 8822 | 2009 | Audi | Q5 | Do not have | |
| 2579 | 2017 | Volkswagen | Jetta | This was sitting in 215 Northern Blvd on 8/4 | |

11

| 1518 | 2014 | Ford | Explorer | This was sitting in 215 Northern Blvd on 8/4 | |
| 3909 | 2015 | Jeep | Grand Cherokee | Do not have | |
| 6342 | 2010 | Buick | Enclave | Do not have | |
| 7985 | 2011 | Porsche | Cayenne | Do not have | |
| 4962 | 2018 | Toyota | Camry | Do not have | |
| 3552 | 2016 | Audi | S6 | Vehicle was sold in March | |
| 8935 | 2019 | BMW | 5 Series | This was sold retail a long time ago | Plaintiffs state that Deo offered it for sale in Feb. 2023 but the car was reportedly stolen in March 2023. The vehicle was allegedly recovered in June 2023 and resold by Deo in July 2023. Superb does not have possession of this vehicle and its whereabouts are unknown. (ECF No. 112 at 4.) |
| 8198 | 2020 | Land Rover | Range Rover | This was sold retail in April 2023 | |
| 8313 | 2018 | BMW | 7 Series | Last Used by Urrutia | |
| 4403 | 2016 | Dodge | Grand Caravan | This was sitting in 215 Northern Blvd on 8/4 | |
| 2872 | 2019 | Audi | Q7 | I believe this was sold | |
| 5983 | 2019 | Mercedes-Benz | CLA 250 | Do not have | |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

SUPERB MOTORS INC. *et al,*

                       Plaintiffs,

                                           **MEMORANDUM
                                           <u>AND ORDER</u>**

                   -against-                            23-CV-6188 (JMW)

ANTHONY DEO *et. al.*

                         Defendants.

---------------------------------------------------------------X

**A P P E A R A N C E S:**

Jamie Scott Felsen, Esq.
Emanuel Kataev, Esq.
**Milman Labuda Law Group PLLC**
3000 Marcus Avenue, Suite 3w8
Lake Success, NY 11042
*Attorneys for all Plaintiffs*

Jeffrey C. Ruderman, Esq.
Russell J. Shanks, Esq.
**Cyruli Shanks & Zizmor LLP**
420 Lexington Avenue, Suite 2320
New York, NY 10170
*Attorneys for 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier
(individually and derivatively as a member of Northshore Motor Leasing, LLC), Joshua
Aaronson (individually and derivatively as a member of 189 Sunrise Hwy Auto, LLC), Jory
Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC,
1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk
Street Realty LLC, 446 Route 23 Auto LLC, and Island Auto Management, LLC.*

Brian Levine, Esq.
**The Levine Firm, P.C.**
260 North Broadway, Suite 2a
Hicksville, NY 11801
*Attorney for Defendants Anthony and Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc*

*Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.*

**WICKS,** Magistrate Judge:

Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia (collectively "Plaintiffs"), claim that Deo Defendants[1] engaged in a pattern of fraudulent misconduct in connection with several vehicle dealerships and accompanying floorplan agreements. Specifically, Plaintiffs allege the following causes of action: (1) violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"); (2) violations of the Defend Trade Secrets Act ("DTSA"); (3) unfair competition; (4) tortious interference; (5) unjust enrichment; (6) conversion; (7) fraud; (8) breach of fiduciary duty; and (9) conspiracy. (*See generally* Amended Complaint filed at ECF No. 65.)

On November 25, 2023, Plaintiffs filed a motion before the undersigned to modify the Honorable Orelia E. Merchant's order on the preliminary injunction (ECF No. 110). The Court granted the motion in part and denied it in part, ordering an evidentiary hearing to be held on February 20, 2024 to determine the location of the 43 outstanding vehicles.[2] (*Id.*) On the heels of the hearing, the Deo Defendants filed a motion for the Plaintiffs to be held in civil and criminal contempt (ECF No. 152). For the reasons that follow, both motions (ECF Nos. 110 and 152) are granted in part and denied in part.

---

[1] The "Deo Defendants" are comprised of: Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp. (ECF No. 152.)

[2] These 43 vehicles are identified in ECF No. 56-2.

## BACKGROUND

Familiarity with the background is assumed and can be found in the undersigned's prior

Orders.  (*See* ECF Nos. 98 and 134.)  Of relevance here, when ruling on Plaintiffs' motion filed

at ECF No. 110 to modify Judge Merchant's preliminary injunction order, the undersigned

denied in part Plaintiffs' request to return the 6 Deo vehicles and the 43 remaining vehicles to

Plaintiffs.[3]  (ECF No. 134 at 6.)  In addition, the Court granted Plaintiffs' request for alternative

relief, that is, to hold an evidentiary hearing to determine the 43 vehicles' whereabouts since

none of the parties could identify the location of these vehicles.  Each of the motions is described

below.

A.  Evidentiary Hearing and Subsequent Filings

The undersigned held an evidentiary hearing with the Superb Plaintiffs and Deo

Defendants on February 20, 2024 in which exhibits were entered into evidence and witness

testimony was heard from Anthony Deo, Marc Merckling, Dwight Blankenship, Eugene Lowe,

Efaz Anthony Deo, Michael Laurie, and Harry Thomasson, Jr.  (ECF Nos. 151, 163.)  However,

at the hearing, neither side could establish definitively the whereabouts of the remaining 43

vehicles.

Following the hearing, the parties filed their respective proposed findings.  (ECF Nos.

156 and 157.)  Defendants affirmed that they do not have personal knowledge as to the 43

vehicles' location and alleged that Plaintiffs failed to produce evidence at the hearing to establish

that Defendants are the ones in "possession custody, or control" or otherwise have knowledge of

---

[3] As to Plaintiffs' other requests, the undersigned (1) denied the request to sell the Superb vehicles and (2) granted requests for alternative relief by directing Defendants to provide date-stamped photographs and odometer readings of the 43 vehicles and 6 Deo vehicles, requiring Deo Defendants to establish that they have stored the cars in a separate storage facility, and requiring Deo Defendants to provide full insurance coverage for the vehicles.  (ECF No. 134.)

those vehicles (ECF No. 156) and accordingly, Plaintiffs failed to meet their burden of proof to warrant modification of the order.

Meanwhile, Plaintiffs state that closure of Superb (discussed at length below) constitutes a "material change of circumstances" warranting modification of Judge Merchant's order because it was unable to sell the 30 injuncted vehicles. (*See* ECF Nos. 55, 157.)  Plaintiffs request that the Court require all 30 injuncted vehicles to be sold and for Superb to retain the proceeds or otherwise keep the funds from the sale of the vehicles and hold them in escrow. Plaintiffs state that retaining the sales proceeds would preserve the vehicles' resale value.  They further contend that doing so would conform to a shareholder's agreement between the parties, which stated that if dissolved, Superb should be liquidated under Urrutia's supervision and with Deo's cooperation and the assets should be distributed according to law or as otherwise agreed upon.  Plaintiffs further allege that relief is warranted since Superb cannot wind down without providing a proper accounting per vehicle.  They assert that the Deo Defendants do not have any rights, title, or interest in the vehicles—they all belong to Superb via the floor plan line of credit. Therefore, modification is warranted.

Plaintiffs maintain that Deo moved Superb's vehicles for various events and therefore *knew* the location of these vehicles.  Deo did not obtain consent from Urrutia to move these vehicles.  Further Deo kept a spreadsheet as to the vehicles' whereabouts, however, at the hearing, no one could attest to their location.  Notably, none of the vehicles are at Deo's home or the Deo appointed lots.

According to Plaintiff Novicky's declaration, Plaintiffs have been able to locate 15 of the 43 vehicles, which have been wholesaled to Nethanel Orgad of L&F Luxury Autos by Deo in exchange for cash (ECF No. 157-1 at 4-5):

| # in | Stock No. | VIN No. | Year | Make | Model |
|------|-----------|---------|------|------|-------|
| 13 | SU1239 | 5FNYF4H58EB056804 | 2014 | Honda | Pilot |
| 10 | SU1275 | 1FM5K7B8XEGA63757 | 2014 | Ford | Explorer |
| 2 | SU0994A | WBAHN83588DT77672 | 2008 | BMW | 7 Series |
| 4 | SU1338 | 5N1BV28UX4N365724 | 2004 | Nissan | Quest |
| 8 | SU1304 | 5UXZV4C53D0E08930 | 2013 | BMW | X5 |
| 9 | SU1274A | 2C4RDGBG4CR249331 | 2012 | Dodge | Grand Caravan |
| 15 | SU1216 | 5TDBT44A84S221021 | 2004 | Toyota | Sequoia |
| 18 | SU1104A | 1FMEU74E57UA52487 | 2007 | Ford | Explorer |
| 27 | SU1128 | 5NPEB4AC0DH635244 | 2013 | Hyundai | Sonata |
| 28 | SU0895B | JN8AZ1MW1AW112694 | 2010 | Nissan | Murano |
| 33 | SU1002A | 1C4RJFCT1FC653909 | 2015 | Jeep | Grand Cherokee |
| 34 | SU848A | 5GALVBED8AJ256342 | 2010 | Buick | Enclave |
| 41 | SU0619A | 2C4RDGEG7GR384403 | 2016 | Dodge | Grand Caravan |
| 26 | SU1123 | JN1BY1PR8FM830659 | 2015 | Infiniti | Q70L |
| 32 | SU0890A | 1FM5K8D89EGA21518 | 2014 | Ford | Explorer |

Further, 21 of the 43 vehicles have been located, whereby several of them have either been sold and remain on the ledger or were marked as trade-in vehicles but never brought to Superb.  (*Id*. at 6-7.)

| # in 56-2 | Stock No. | VIN No. | Year | Make | Model |
|-----------|-----------|---------|------|------|-------|
| 1 | SR1334 | WBA8E5G56GNU21721 | 2016 | BMW | 3 Series |
| 25 | SU1154 | 1G1105S35JU116841 | 2018 | Chevrolet | Impala |
| 3 | SU1313 | 1FTYR14E39PA15942 | 2009 | Ford | Ranger |
| 12 | SU1273 | JTJBT20X660124417 | 2006 | Lexus | GX 470 |
| 23 | SU1127 | WBANB53507CP08338 | 2007 | BMW | 5 Series |
| 36 | SU0960A | 4T1BZ1HK5JU014962 | 2018 | Toyota | Camry |
| 14 | SU1221 | WA1LHAF72KD026699 | 2019 | Audi | Q7 |
| 19 | SU1142 | ZASPAKBN0L7C92090 | 2020 | Alfa Romeo | Stelvio |
| 21 | SU1131 | WDDUG8GB4KA445850 | 2019 | Mercedes-Benz | S-Class |
| 39 | SU0942 | SALGS5SE6LA408198 | 2020 | Land Rover | Range Rover |
| 31 | SU1037 | 3VW4T7AJ8HM312579 | 2017 | Volkswagen | Jetta |
| 35 | SU0941A | WP1AB2A23BLA47985 | 2011 | Porsche | Cayenne |
| 42 | SU0933 | WA1AAAF78KD002872 | 2019 | AUDI | Q7 |
| 29 | SU1082 | WBAKC8C56ACY68247 | 2010 | BMW | 7 Series |
| 43 | SU1305 | WDDSJ4GB7KN725983 | 2019 | MERCEDES | CLA 250 |
| 7 | SU1297 | WBXHT3C3XH5F81562 | 2017 | BMW | X1 |
| 37 | SU0930 | WAUF2AFC3GN063552 | 2016 | Audi | S6 |
| 20 | SU1130 | 1FATP8UH6K5190020 | 2019 | Ford | Mustang |
| 16 | SU1210 | 1C4SDJCT2MC520441 | 2021 | Dodge | Durango |
| 22 | SU1120RF | 1G1ZD5STXLF122021 | 2020 | Chevrolet | Malibu |
| 40 | SU0915BB | WBA7F2C5XJB238313 | 2018 | BMW | 7 Series |

Finally, the 7 remaining vehicles remain unaccounted for (*id*. at 10):

| # in 56-2 | Stock No. | VIN No. | Year | Make | Model |
|-----------|-----------|---------|------|------|-------|
| 5 | SU1312 | 5UXZV4C57CL889887 | 2012 | BMW | X5 |
| 6 | SU1307 | 3GCPYFED9MG383394 | 2021 | Chevrolet | Silverado 1500 |
| 11 | SU1276 | 4JGAB74E1YA173539 | 2000 | Mercedes-Benz | M-Class |
| 17 | SU0981A | 2FMEK63C89BA19931 | 2009 | Ford | Flex |
| 24 | SU1114A | WBAFU7C54BC879208 | 2011 | BMW | 5 Series |
| 30 | SU874B | WA1KK78R59A048822 | 2009 | Audi | Q5 |
| 38 | SU0936 | WBAJE7C5XKWW08935 | 2019 | BMW | 5 Series |

Plaintiffs therefore request that the Court require the return of the injuncted Deo vehicles; lift the injunction of all vehicles to allow the sale with proceeds to be held in escrow; and require

Deo's cooperation in winding up Superb.  Plaintiffs further request that the injunction on the two

Isuzu flatbed trucks and vehicles owned by third parties, Team Imports and Team (a wholesale

used car operation owned and operated by Urrutia in New Jersey).  They state that Deo

Defendants have no interest in these vehicles, and they should not be subjected to the prohibition

against selling.

B.  Motion for Contempt

a.  Defendants' Contentions

After the evidentiary hearing, Deo Defendants filed a motion for contempt against the

Superb Plaintiffs, requesting that the Court:

a.  Find Plaintiffs in civil and criminal contempt;

b.  Direct Plaintiffs to return the Superb vehicles to Superb;

c.  Order Plaintiffs to deliver the original titles to the Superb cars to a court appointed
    third party to be held in trust at the Plaintiffs' expense;

d.  Order Plaintiffs to store the cars in a secure, enclosed, storage facility
    independently owned by a third party and located in NYS and file proof of
    insurance coverage and date-stamped photos showing the odometer and location
    in an enclosed storage facility;

e.  Award Deo Defendants costs and fees; and/or

f.  Issue appropriate monetary sanctions including: (i) $5,000 per vehicle per day
    until Plaintiffs have met the conditions by the Court; (ii) a monetary fine of
    $5,000 against Plaintiffs for each instance of contempt of the order as punitive
    damages; and (iii) arrest and incarceration of Urrutia until full compliance is
    achieved.

(ECF No. 152.)

Deo Defendants alleged that they had recently discovered that Plaintiffs' vehicles were

involved in transactions that violated Judge Merchant's order.  (ECF No. 152.)  Defendants state

that Plaintiffs' prior request to modify the order to allow for the sale or transfer of title was a

façade to conceal Plaintiffs' prior violations. Specifically, Defendants learned that Superb no longer has a retail license, as it expired on December 5, 2023. Thus, before it expired, they needed to transfer title of the 30 Superb vehicles. According to DMV records, Superb transferred title for almost all of the Superb vehicles, as well as two of the Deo vehicles, from October to November 2023. (*See* ECF No. 152-1 at 6.) Upon transferring the vehicles' title, Defendants have been unable to determine the location of these 30 vehicles. Further, Plaintiffs have not provided the odometer reading photographs although they said they were prepared to do so.[4] As a result, Defendants request that the vehicles be returned *to Superb* and the vehicles be stored in an enclosed facility and that they file date-stamped photos as well as proof of adequate insurance coverage.

Defendants further state that the Court should find Plaintiffs in contempt because Judge Merchant's order was clear and unambiguous, as it outlined conduct permitted by Plaintiffs and barred them from selling the cars and prohibited them from changing title. (ECF No. 55.) Plaintiffs defied that order by either selling or transferring the Superb vehicles or otherwise had their title changed to another entity. They filed the motion to modify the order back in November 2023, when they had been transferring the vehicles all along.

b. <u>Plaintiffs' Response</u>

Plaintiffs oppose Defendants' contentions, stating there should be no finding of contempt since Superb now *has* title to the Superb vehicles. (ECF No. 154.) Throughout the duration of this case, Superb has been forced to close its business because it could not establish a new line of credit and, as a result of Judge Merchant's order, Superb was unable to sell any of the vehicles.

---

[4] It should be noted that the undersigned only ordered *Defendants* to produce these odometer reading photos, not Plaintiffs. (*See* ECF No. 134 at 9.)

Superb also consequently surrendered its license with the DMV because failing to do so would result in a $50,000 monthly expense.

Superb further explains that when it surrendered its license, it had to remove the cars from VerifiNY[5] because a car that remains in the VERIFI system for a dealer that surrendered its license would be incapable of being sold or transferred.  In order to transfer title for a car in the system, dealers must use an MV-50 or Retail Certificate of Sale, which provides proof of ownership for used cars whereby the dealer signs this form transferring ownership to the new customer.  *Get proof of ownership at purchase,* Department of Motor Vehicles, https://dmv.ny.gov/registration/get-proof-ownership-purchase#:~:text=Retail%20Certificate%20of%20Sale%20(MV,to%20transfer%20ownership%20to%20you (last visited Apr. 3, 2024).  Superb removed its vehicles from VERIFI and *temporarily* transferred the cars to Team Mitsubishi Hartford and subsequently back to Superb. Plaintiffs state that the only difference between the entries on VERIFI is that Superb now owns the cars as an asset as opposed to as a licensed dealership.

Superb assures the Court that the lot it was transferred to was a cross-collateralized Urrutia Dealership Lot per Judge Merchant's order (ECF No. 55 at 29) and that the transference was only done to protect the cars' value so they could potentially be resold again.  Unlike Defendants, Superb argues that Judge Merchant's order *was* ambiguous as to whether Plaintiffs' transfer violated the order.  Superb maintains that the vehicles could be *transferred* to an *Urrutia lot*.  It states that any ambiguities should be construed in its favor.

---

[5] VERIFI "is DMV's system for electronically tracking Dealers' sales of motor vehicles in New York. It replaces the paper-based system of MV-50 forms, and Books of Registry."  *Frequently Asked Questions and Tutorials,* Department of Motor Vehicles, https://www.verifiny.com/faq (last visited Apr. 3, 2024).

In the event that the Court finds the transfer was improper, Superb requests leave *nunc pro tunc* to temporarily transfer the Superb Vehicles to a Urrutia dealership.  (ECF No. 153 at 3.)  Superb states no harm was done because Superb retains title without any injury to Deo Defendants.  Superb instead states that *Deo Defendants* should be required to return their vehicles it owns since Superb had to close its doors due to Deo's actions and sell its own vehicles as part of its wind up.

Superb further states that Deo Defendants' own unclean hands deprive Defendants of relief, especially given that Deo's own conduct caused Superb to shut down.  The Deo Defendants also committed several violations of Judge Merchant's order by:

- Surrendering possession of a Deo Lot on September 30, 2023 and did not seek the Court's permission;
- Driving the cars in violation of the order; and
- Failing to comply with the Court's order regarding storage and insurance of the vehicles

(ECF No. 134)

Finally, Superb states that Deo Defendants' motion for contempt should be denied on procedural grounds because a notice of motion along with a memorandum of law as well as an affidavit and evidence for damages should have been attached.

### c.  Defendants' Reply

Defendants, in reply, allege that the documents demonstrating the transference was fabricated to conceal Plaintiffs' noncompliance with Judge Merchant's order.  (ECF No. 158.)  There are no documents filed with the DMV, despite Plaintiffs' claim that the vehicles were re-titled in Superb's name.  The forms attached to Plaintiffs' opposition have missing dates or signatures and are inconsistent with the information on VERIFI.  Namely, the cars were not transferred to Team Mitsubishi on the dates that Superb claims; rather, they were transferred to Volkswagen of Freehold on different dates.

9

Secondly, Defendants claim that Plaintiffs instead could have sold the vehicles to itself as a nondealer instead of transferring out the vehicles in the manner they did. Further, adding owners to the vehicles diminishes their value, which violates the Injunction Order.

### d. Plaintiffs' Sur-Reply

Plaintiffs filed a sur-reply at ECF No. 159, alleging that even if certain vehicles were transferred to Volkswagen of Freehold, it is an authorized lot per Judge Merchant's order. (ECF No. 55 at 29.) Further, these vehicles were transferred back to Superb, so there is no injury. *Secondly,* as to Deo Defendants' argument that the documents were fabricated, Superb states that Deo Defendants' do not submit support for this allegation. *Third,* that the transactions added another owner, Plaintiffs respond that Defendants again cannot provide support for this allegation. Notably, Defendants rely on Carfax reports for their assertion; this was a report they objected to introducing at the evidentiary hearing on February 24, 2024. *Fourth,* although Deo Defendants are correct that Superb could have transferred the vehicles directly from Superb back to itself, this transaction would have constituted a retail sale that would result in adding an owner to the vehicle history. *Finally,* Superb argues that all vehicles are back with Superb and have always remained on one of the cross-collateralized Urrutia lots per Judge Merchant's order. For all these reasons, they request, that the Court deny Defendants' motion for contempt.

## LEGAL STANDARD

The legal framework for both motions – to modify the preliminary injunction and for contempt – are set forth below, followed by the Court's analysis of each.

### I.     Motion to Modify a Preliminary Injunction

"A trial court's power to modify an injunction, like the power over all its orders,' is inherent." *New Falls Corp. v. Soni Holdings,* No. 19-CV-0449 (ADS) (AKT*),* 2020 U.S. Dist. LEXIS 186395, at \*29 (E.D.N.Y. Sept. 30, 2020). Preliminary injunctions are governed by Fed.

R. Civ. P. 65.  A court may grant a preliminary injunction if the "plaintiff has shown (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [the plaintiff's] favor; and (4) that an injunction is in the public interest." *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6, 8 (2d Cir. 2016) (quotes omitted).

District courts in this Circuit have applied the following standard for modifying the preliminary injunctions, which the undersigned follows, namely, the movant must demonstrate "a material change in circumstances justifies the alteration." *New Falls Corp.*, 2020 U.S. Dist. LEXIS 186395 at *30; *see also Lawsky v. Condor Capital Corp.*, No. 14-cv-2863 (CM), 2014 U.S. Dist. LEXIS 107253, at *15 (S.D.N.Y. Aug. 1, 2014) (stating that parties must show a change in circumstances warranting such relief).  "An injunction should be modified only when the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or [] will work oppressively against the enjoined parties." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006).

## II.    Motions for Contempt

Fed. R. Civ. P. 70 states in relevant part that "[i]f a judgment requires a party to…perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court." Fed. R. Civ. P. 70(a).  In addition, the court can hold the disobedient party in contempt. Fed. R. Civ. P. 70(e).  "There are three essential elements which must be established before a party can be held in civil contempt: 1) there must be an order that is clear and unambiguous; 2) the proof of non-compliance with that order must be clear and convincing; and 3) it must be shown that the contemnor has not been reasonably diligent and energetic in

attempting to accomplish what was ordered." *Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2019 WL 3253953, at *5 (E.D.N.Y. July 18, 2019) (internal quotations and citations omitted). "A defendant's conduct need not be willful in order for the defendant to be found in contempt." *Yurman Studio, Inc. v. Castaneda*, Nos. 07-cv-1241 (SAS), 07-cv-7862 (SAS), 2009 U.S. Dist. LEXIS 13870, at *6 (S.D.N.Y. Feb. 23, 2009).  All three elements must be met.

Defendants also seek to hold Plaintiffs in criminal contempt.  To do so, the movant must demonstrate beyond a reasonable doubt that: "(1) the court entered a reasonably specific order; (2) [the alleged contemnors] knew of that order; (3) [the alleged contemnors] violated that order; and (4) [their] violation was willful." *United States v. Lynch,* 162 F.3d 732, 744 (2d Cir. 1998). The burden to hold an individual in criminal contempt "is greater than the burden on a party seeking only civil redress." *Fox Indus. v. Gurovich,* No. 03-CV-5166 (TCP) (WDW), 2005 U.S. Dist. LEXIS 59165, at *13 (E.D.N.Y. June 2, 2005).

## DISCUSSION

### I.   Plaintiffs' Motion to Modify Preliminary Injunction Order
#### a.  The Evidentiary Hearing

*First and foremost,* it is undisputed that the moving party has the burden to establish that modification of the preliminary injunction is warranted. *New Falls Corp.*, 2020 U.S. Dist. LEXIS 186395 at *29; *SEC v. Illarramendi*, No. 11-cv-78 (JBA), 2014 U.S. Dist. LEXIS 16459, at *14 (D. Conn. Feb. 10, 2014) (stating that the "party seeking relief bears the burden of establishing that there has been a change of circumstances that warrants relief").  Plaintiffs failed to meet their burden to locate the whereabouts of the 43 missing vehicles at the evidentiary hearing.  Specifically, Plaintiffs sought to show where the cars were *not* located but could not state with certainty where the vehicles were located on the date of the hearing.  Plaintiffs attempt to place the burden on Defendants to establish the vehicles' whereabouts, but this is misguided.

The undersigned even afforded the parties an opportunity to further outline where the vehicles were by having them submit proposed findings of fact and law, but Plaintiffs again have not shown where the vehicles are located to assign fault to Defendants.  For example, for the 15 vehicles that were wholesaled to Nethanel Orgad, Plaintiffs only state in a conclusory manner that the Deo Defendants never accounted for the vehicles in Plaintiffs' system.  (ECF No. 157-1 at 5.)  However, Plaintiffs failed to prove that the Deo Defendants were responsible for these missing vehicles.  The same goes for the 21 vehicles that either remained on the ledger or were listed as trade-in vehicles.  (*Id*. at 6-8.)  Instead, Plaintiffs urge the Court to draw "an adverse inference that the Deo Defendants stole the vehicles and/or the money by engaging in fraud" without concrete evidence stating the same.  (*Id*. at. 12.)

What's more, Plaintiffs' request for a return of the 43 vehicles is an attempt to obtain the ultimate relief sought in this litigation which is inappropriate at the preliminary injunction stage. *City of Newburgh v. Sarna,* 690 F. Supp. 2d 136, 175 (S.D.N.Y. 2010) ("It is well-established that the purpose of a preliminary injunction is "not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo….The principle weighs against granting [a] motion for preliminary injunction" where the preliminary relief sought is the same as the ultimate relief sought by a plaintiff in the complaint.) (quoting *New York v. Nuclear Regulatory Comm'n,* 550 F.2d 745, 754 (2d Cir. 1977)).  Indeed, this Court has already ruled that the return of the vehicles goes to Plaintiffs' ultimate requested relief which is to "return[] operational control, vehicles, dealer plates, and any other assets of Plaintiffs."  (ECF No. 134 at 6.)

For these reasons, Plaintiffs' motion to modify the preliminary injunction order to have the 43 vehicles returned to Superb is denied.  The Court next reviews Plaintiffs' additional requests.

####    b.  Selling the Injuncted Vehicles and Retention of Proceeds

Plaintiffs request that the Court require all 30 injuncted vehicles[6] to be sold and for

Superb to retain the proceeds or otherwise keep the funds from the sale of the vehicles and hold

them in escrow.  Plaintiffs state that retaining sales proceeds would preserve the vehicles' resale

value.  Further, doing so would conform to a shareholder's agreement between the parties, which

stated that if dissolved, Superb should be liquidated under Urrutia's supervision and with Deo's

cooperation and the assets should be distributed according to law or as otherwise agreed upon.

The Deo Defendants have not responded to Plaintiffs' request.

Plaintiffs point to Superb's closure as a "material change" in circumstances that supports

modification.  Although courts have not expressly ruled on this issue, courts have deemed

closure of a business to be an irreparable harm warranting the granting of a preliminary

injunction.  *See Femhealth United States Inc. v. Williams*, 83 F.4th 551, 557 (6th Cir. 2023)

(finding that the district court failed to consider whether the clinic's closure would alter the

court's finding that plaintiff would suffer irreparable harm); *see also Blossom South, LLC v.

Sebelius*, No. 13-CV-6452L , 2013 U.S. Dist. LEXIS 124687, at *3 (W.D.N.Y. Aug. 30, 2013)

(noting that "total destruction of a business has been held to constitute irreparable harm"); (ECF

No. 55 at 17) (collecting cases finding that business closures constitute an irreparable harm and

Superb would experience such harm absent an injunction in their favor); *cf. International Equity

Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp.2d 491, 501-02 (S.D.N.Y.

2006) (finding that defendants did not demonstrate a material change in circumstances to justify

modification of the preliminary injunctive order because defendants would continue to interfere

with plaintiffs' business rights).

---

[6] These vehicles are defined in Judge Merchant's Order at ECF No. 55 at 28.

Given the change in financial circumstances that has occurred—*i.e.,* Superb's closure—Plaintiffs' request to sell the *Superb* vehicles (with the exception of the Isuzu flatbeds and the thirteen (13) vehicles that belong to third parties) and hold the funds in escrow for the remainder of these proceedings is granted.  Plaintiff shall account to the Court as to the sales when made.  Plaintiffs shall further file proof of the monies in escrow *immediately* following the sale of each of the vehicles.

### c.   Return of the Deo Vehicles and Require Deo's Cooperation in Winding Up

Plaintiffs next request that the Court require the return of the injuncted Deo vehicles and require Deo's cooperation in winding up Superb.

However, Plaintiffs have not established the grounds for the Court to grant return of the Deo vehicles at this juncture, as the vehicles are currently in an independent facility and Defendants have provided proof of the same.  Consequently, Plaintiffs' request to return the Deo vehicles is denied.

As to requiring Deo's cooperation in winding up, Superb states it cannot wind down without providing a proper accounting per vehicle.  However, the Deo Defendants have already testified and proven that it does not know where the vehicles are.  It cannot provide what it does not have.  There are however certain vehicles that Deo allegedly sold to Nethanel Orgad in exchange for cash (ECF No. 157-1 at 4-5.)  To the extent that Deo knows the sale value of these 15 vehicles, he must disclose it to Superb so it can perform a proper accounting.  Similarly, Superb maintains that several vehicles have been sold but remained on the general ledger or were trade-in vehicles that never came in.  (*Id.* at 7-8.)

**d. Vacating the Injunction as to the Two Isuzu Trucks and Vehicles Owned by the Team Entities**

Plaintiffs further request that the injunction on the two Isuzu flatbed trucks and the thirteen (13) vehicles owned by third parties, Team Imports and Team, be vacated.  (ECF No. 157 at 5.)  They state that Deo Defendants have no interest in these vehicles and they should not be subjected to the prohibition against selling.

However, Plaintiffs have not established how or if by returning these vehicles Superb's financial condition would improve since that it does not own them.  (*See* ECF No. 112 at 6-7; ECF No. 112-8.)  In addition, the third parties have not submitted their position as to whether these vehicles should be sold for the Court to determine whether it should grant or deny this request.  This would not make Superb whole since it likely cannot sell the vehicles.  This request is denied.

**II.   Defendants' Motion for Contempt**

**a.  Defendants' Motion for Contempt**

Plaintiffs' actions do not warrant a finding of contempt, criminal or civil.  In looking to the language of Judge Merchant's order, it is unclear whether the vehicles could be transferred between Urrutia appointed lots.  (*See* ECF No. 55 at 28-29) (stating that the 30 injuncted Superb vehicles are to either remain or "otherwise be *returned* to *a* cross-collateralized Urrutia dealership lot[]") (emphasis added); *see also Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2019 WL 3253953, at *5 (E.D.N.Y. July 18, 2019) (noting that to find an individual or entity in civil contempt, the movant must first establish that the order was clear and unambiguous); *Serenity Alpha, LLC v. Northway Mining, LLC,* 531 F. Supp. 3d 512, 518 (N.D.N.Y. 2021) (noting that a movant must demonstrate beyond a reasonable proof that the potential contemnor violated a "reasonably specific order").  Because Superb was no longer in operation, the

alternative was to place the vehicles at a location where the vehicles would not violate the order, i.e. another Urrutia approved lot—which is precisely what Plaintiffs did here.  Thus, this request is denied.[7]

### b.  Plaintiffs' Return of the Superb Vehicles

Defendants next request that the Court direct Plaintiffs to return the Superb vehicles to Superb.  (ECF No. 55 at 28) (noting that the "Superb Vehicles" are comprised of twenty-eight (28) vehicles marked as "YES" on the vehicle list filed at ECF No. 30-8).  This request is moot since Superb alleges that title never changed and have since been returned to Superb.  (*See* ECF No. 155-1) (demonstrating that all Superb vehicles have had titles transferred back to Superb).

### c.  Directing Plaintiffs to Deliver Titles to the Superb Vehicles to a Court-Appointed Third Party

Defendants next request that the Court order Plaintiffs to deliver the original titles to the Superb cars to a court appointed third-party to be held in trust at the Plaintiffs' expense.  They seek to place the vehicles' titles into a trust to "prevent any potential encumbrances on the Superb [] vehicles" through their lenders.  (ECF No. 152-1 at 7.)  Defendants have not offered any support for such relief at this juncture, nor have they established any grounds to change the status quo.  Thus, Defendants' request to have the original titles delivered to a third-party is denied.

### d.  Directing Plaintiffs to Store Their Vehicles in An Independent Facility and File Proof of Insurance and Date Stamped Odometer Reading Photos

Next, Defendants request an order stating that Plaintiffs must store the cars in a secure, enclosed, storage facility independently owned by a third party and located in New York and file

---

[7] Since the Court does not find grounds for contempt have been established, the Court need not consider Plaintiffs' argument of unclean hands on the part of Defendants.

proof of insurance coverage and date-stamped photos showing the odometer and location in an enclosed storage facility. Per the Court's prior order (ECF No. 134), Plaintiffs were never required to provide odometer readings or proof of insurance coverage. However, because Plaintiffs have indeed stated previously that they are prepared to provide this information (ECF No. 72 at 1) (requesting that the Deo Defendants provide photos of the vehicles and odometer readings for the vehicles and stating that "Plaintiffs are prepared to do the same"), Plaintiffs are now directed to produce proof of insurance and odometer readings. Thus, this branch of the request is granted in part. Plaintiffs shall provide this information by way of declaration or an affidavit. Plaintiffs, however, are not required to place the vehicles in a storage facility.

**e. Awarding Defendants Costs, Fees and Monetary Sanctions**

Deo Defendants request that the Court award costs and fees associated with bringing the motion for contempt (ECF No. 152 at 6), as well as the following monetary sanctions including: (i) $5,000 per vehicle per day until Plaintiffs have met the conditions by the Court; (ii) a monetary fine of $5,000 against Plaintiffs for each instance of contempt of the order as punitive damages; and (iii) arrest and incarceration of Urrutia until full compliance is achieved.

This request is denied in light of the Court's finding that contempt is not warranted.

## CONCLUSION

For the reasons stated, Plaintiffs' motion for modification of the preliminary injunction (ECF No. 110) is granted in part and denied in part and Defendants' motion for contempt (ECF No. 152) is granted in part and denied in part as follows:

1. **Plaintiffs' Motion for a Modification of the Preliminary Injunction Order**

   a. Evidentiary Hearing: Return 43 Vehicles to Superb: *Denied*

   b. Sell the *Superb* Injuncted Vehicles and Retain Proceeds: *Granted*

    c.   Return Deo Vehicles: *Denied*

    d.   Require Deo's Cooperation in Winding Up: *Granted*

    e.   Lifting the Injunction on the Other Vehicles: *Denied*

**2. Defendants' Motion for Contempt**

    a.   Finding Plaintiffs in Contempt: *Denied*

    b.   Returning the Superb Vehicles: *Denied as Moot*

    c.   Delivering Titles of the Superb Vehicles to a Court-Appointed Third-Party: *Denied*

    d.   Directing Plaintiffs to:
        i.  Store the Vehicles in an Independent Storage Unit: *Denied*
       ii.  File Proof of Insurance: *Granted*
      iii.  Provide Date Stamped Odometer Reading Photos: *Granted*

    e.   Awarding Costs, Fees, and Monetary Sanctions: *Denied*

Dated:  Central Islip, New York
       May 8, 2024

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: **2:23-cv-6188 (JMW)**

**ORDER TO SHOW CAUSE**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

----------------------------------------------------------------X

Upon the annexed Complaint, the declaration Robert Anthony Urrutia, and the annexed Memorandum of Law in support,

**LET** the defendants, Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp., and DLA Capital Partners Inc. (collectively hereinafter the "Deo Defendants"), show cause before the Hon. James M. Wicks, U.S.M.J., of this Court to be held at the courthouse thereof, located at 100 Federal Plaza, Courtroom 1020, Central Islip, NY 11722-4438, on the _____day of May, 2025 at _____ o'clock in the_____noon of that day, or as soon thereafter as counsel can be heard, why an Order should not be issued:

(a)    Modifying the Hon. Orelia E. Merchant, U.S.D.J.'s ("Judge Merchant") September 29, 2023 Preliminary Injunction (the "Injunction")[1] permitting Plaintiffs Superb Motors Inc ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs") to hand over possession of the Superb Injuncted Vehicles;[2]

(b)    Modifying the Injunction permitting Team to sell the remaining Injuncted Superb Vehicles which are not owned by Superb; and

(c)    Granting such other and further relief that this Court deems just, proper, and equitable; and it is further

**ORDERED** that service of a copy of this Order, along with the papers upon which it is based, shall be made upon Defendants via CM/ECF, and such service shall be deemed good and sufficient; and it is further

_____

[1] See ECF Docket Entry 55.

[2] As defined in the Injunction at 28.

2

**ORDERED** that answering papers, if any, shall be served on Superb's counsel, Emanuel

Kataev, Esq., Sage Legal LLC, 18211 Jamaica Avenue, Jamaica, NY 11423-2327, via CM/ECF

on or before the **_____** day of May, 2025; and it is further

**ORDERED** that reply papers, if any, shall be electronically filed and served on

Defendants' counsel on or before the **_____** day of May, 2025.

Dated: Central Islip, New York
         May ____, 2025

                                        **SO ORDERED:**


                                        _____
                                        James M. Wicks, U.S.M.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HWY AUTO LLC, NORTHSHORE MOTOR
LEASING, LLC, BRIAN CHABRIER, *individually and
derivatively as a member of* NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, *individually
and derivatively as a member of* 189 SUNRISE HWY
AUTO, LLC, JORY BARON, 1581 HYLAN BLVD
AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591
HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD
AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519
HYLAN BLVD AUTO LLC, 76 FISK STREET
REALTY LLC, 446 ROUTE 23 AUTO LLC and
ISLAND AUTO MANAGEMENT, LLC,

Case No.: **2:23-cv-6188 (JMW)**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY
THOMASSON, DWIGHT BLANKENSHIP, MARC
MERCKLING, MICHAEL LAURIE, THOMAS
JONES, CPA, CAR BUYERS NYC INC., GOLD
COAST CARS OF SYOSSET LLC, GOLD COAST
CARS OF SUNRISE LLC, GOLD COAST MOTORS
AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS
CORP., DLA CAPITAL PARTNERS INC., JONES,
LITTLE & CO., CPA'S LLP, FLUSHING BANK,
LIBERTAS FUNDING LLC, and J.P. MORGAN
CHASE BANK, N.A.,

Defendants.

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SUPERB MOTORS INC,
TEAM AUTO SALES LLC, AND ROBERT ANTHONY URRUTIA'S MOTION TO
<u>MODIFY THE PRELIMINARY INJUNCTION</u>**

## FACTUAL BACKGROUND

On September 29, 2023, the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") issued a preliminary injunction.  See Superb Motors Inc. v. Deo, No. 2:23-CIV.-6188 (OEM) (JMW), 2023 WL 7181675 (E.D.N.Y. Sept. 29, 2023) (hereinafter the "Injunction"), ECF Docket Entry 55.

Judge Merchant issued the Injunction, which provides, in relevant part, that:

> 1) The following thirty (30) vehicles (the "Injuncted Superb Vehicles") are to Remain at or otherwise be returned to a Cross-Collateralized Urrutia Dealership Lots:
>
>> a. Two (2) Isuzu flatbed trucks;
>>
>> b. Twenty-eight (28) cars listed on the list at ECF 30-8 ("Markup List") indicated with "YES",
>>
>>> i. with the exception of the 2023 Chevy Suburban with a Vehicle Identification Number (VIN #) ending in "8675."
>
> …
>
> 6) No injuncted vehicle may be removed from the appointed lot absent this Court's Order.
>
>> a. In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle. The same writing must be electronically served on the other party.

See Injunction at *15-*16.

Read as a whole, the Injunction's main purpose is to protect the resale value of the vehicles. This interpretation is supported by the prohibition against driving or otherwise using or maintaining the vehicles on the lot in such a way that would damage the resale value of the vehicles.

This Court previously modified the Injunction to permit Superb to sell the Superb Injuncted Vehicles  it owned based on the fact Superb shut down and went out of business.  Now, Team-Mitsubishi Hartford and Team have both similarly shut down and have gone out of business.  As a result, this Court should similarly permit those remaining vehicles to similarly be sold.

More importantly, and because time is of the essence, the Superb Plaintiffs respectfully submit that they must be permitted to deliver possession of the Superb Injuncted Vehicles to Nissan Motor Acceptance Company LLC ("NMAC") who the Superb Plaintiffs understand are prepared to store and insure them in accordance with the Injunction and any other requirements set by this Court.  This is because the landlord of Team Mitsubishi-Hartford has sold the property the dealership leased and needs all the Superb Injuncted Vehicles stored there removed on or before May 9, 2025.

For the foregoing reasons, this Court should modify the Injunction to permit Team and Team Mitsubishi-Hartford to sell the Superb Injuncted Vehicles, and for leave to remove the Superb Injuncted Vehicles from the Urrutia Cross-Collateralized Dealership lot to NMAC for storage and safekeeping pending the Injunction.

## LEGAL STANDARD

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." See Brown v. Plata, 563 U.S. 493, 542 (2011) (citation and quotation marks omitted). The district court derives this power in part from Rule 54(b) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), which provides that injunctive orders "may be revised at any time." See Floyd v. City of New York, No. 08 CIV. 1034 (AT), 2023 WL 2663374, at *3 (S.D.N.Y. Mar. 28, 2023) (citing Fed. R. Civ. P. 54(b).

More broadly, the district court has inherent authority to revise or modify such orders. See United States v. LoRusso, 695 F.2d 45, 53 (2d Cir. 1982). Critically, in exercising its discretion to modify an injunctive order, a court should not impose or decline to make modifications that "thwart[ ] the purpose behind the injunction." See Sierra Club v. U.S. Army Corps of Eng'rs, 732 F.2d 253, 257 (2d Cir. 1984). Indeed, "[t]he power of a district court to modify its past injunctive decrees in order to accommodate changed circumstances is well established." See Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport, 710 F.2d 69, 74 (2d Cir. 1983).

"While changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." See King-Seeley Thermos Co. v. Aladdin Indus., Inc., 418 F.2d 31, 35 (2d Cir. 1969).

Of import, a court may modify an injunction even in the absence of changed conditions. See Lego A/S v. Zuru Inc., No. 3:18-CV-2045 (AWT), 2023 WL 2727552, at *4 (D. Conn. Mar. 31, 2023). If the injunction is "preliminary," as it is here, the court would be "charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." See Greater Chautauqua Fed. Credit Union v. Quattrone, No. 1:22-CV-2753 (MKV), 2023 WL 6037949, at *3 (S.D.N.Y. Sept. 15, 2023) (citing Sierra Club v. Army Corps of Engineers, 732 F.2d 253 (2d Cir. 1984)). Indeed, the heightened standard in Rule 60(b)(5) only applies to "a final judgment, order, or proceeding." See Fed. R. Civ. P. 60(b); see also Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd., 74 F.R.D. 621, 623 (S.D.N.Y. 1977) ("Rule 60(b) applies only to final orders and not to interlocutory de[c]rees" and district courts have

"continuing plenary power over its interlocutory orders under which the Court is not bound by Rule 60(b)(5)'s strict standard of 'changed circumstances'" (citations omitted)).

Crucially, Judge Merchant recognized, in issuing the Injunction, that she continued to assess the scope and terms of such an injunction.  See Injunction at *15 (citing Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 245 (2d Cir. 2006)).

For the reasons set forth below, this Court should modify the Injunction as requested.

## ARGUMENT

### A.    Team and Team Mitsubishi-Hartford Should be Permitted to Sell the Vehicles

This Court should further modify the Injunction to permit Team and Team Mitsubishi-Hartford to wind down their affairs in light of their closure by allowing them to sell the vehicles that it owns.

As set forth in various declarations, these dealerships have closed.  Under similar circumstances, this Court previously permitted Superb to sell the Superb Injuncted Vehicles belonging to it.  See ECF Docket Entry 172 at 14-15, 18.

The circumstances here are no different; in fact, they are precisely the same.  As a result, Team and Team Mitsubishi-Hartford should be permitted to sell the Superb Injuncted Vehicles they own under the same conditions as those set for Superb.

### B.    This Court Should Grant Leave to Move the Superb Injuncted Vehicles

As set forth in the accompanying Declaration of Robert Anthony Urrutia, the Superb Plaintiffs can no longer store the vehicles on any Urrutia Cross-Collateralized Dealership lot. Accordingly, sufficient good cause exists as envisioned by Judge Merchant's Order to permit the Superb Plaintiffs to move the Superb Injuncted Vehicles pending this case.

Indeed, Judge Merchant specifically foresaw that circumstances may warrant that the parties be permitted to move the injuncted vehicles and expressly provided a mechanism by which to do so.

In this case, because the Superb Injuncted Vehicles may no longer be stored at the Hartford lot, this Court should grant the Superb Plaintiffs leave to deliver possession of the Superb Injuncted Vehicles to NMAC (who recently moved to intervene), who is prepared to store and insure the vehicles as required by this Court's Orders. Indeed, under similar circumstances, this Court permitted the Deo Defendants to move the Deo Injuncted Vehicles to another lot. See ECF Docket Entry 215 at 3.

## CONCLUSION

For the foregoing reasons, the Superb Plaintiffs' Order to show cause to modify the Injunction must be granted.

Dated: Jamaica, New York
     April 29, 2025             Respectfully submitted,

                                  **SAGE LEGAL LLC**
                                  *__/s/ Emanuel Kataev, Esq.____*
                                  Emanuel Kataev, Esq.
                                  18211 Jamaica Avenue
                                  Jamaica, NY 11423-2327
                                  (718) 412-2421 (office)
                                  (917) 807-7819 (cellular)
                                  (718) 489-4155 (facsimile)
                                  emanual@sagelegal.com

                                  *Attorneys for Plaintiffs*
                                  *Superb Motors Inc.,*
                                  *Team Auto Sales LLC, and*
                                  *Robert Anthony Urrutia*

**VIA ECF**
All counsel of record

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

                    Plaintiffs,

       -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, and LIBERTAS FUNDING LLC,

                    Defendants.

-----------------------------------------------------------------X

Case No.: 2:23-cv-6188 (JMW)

**DECLARATION OF ROBERT ANTHONY URRUTIA IN SUPPORT OF SUERB PLAINTIFFS' ORDER TO SHOW CAUSE TO MODIFY <u>PRELIMINARY INJUNCTION</u>**

      Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

## Background

1.      I am the majority shareholder and President of Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").

2.      Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case.

3.      I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts (the "Cross-Collateralized Dealerships").

4.      As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain  at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

5.      I respectfully submit this declaration in support of the instant Order to show cause to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") on September 29, 2023 (hereinafter the "Injunction").[1]

## All the Cross-Collateralized Dealerships Have Shut Down, Warranting Modification

6.      As this Court may recall from my prior declarations, due to Deo's conduct, I have been forced to shut down all four of my dealerships.

7.      Currently, the Superb Injuncted Vehicles are being stored at the lot of Team Mitsubishi-Hartford in Hartford, Connecticut.

8.      The landlord of the property for the dealership has sold the property.

---

[1] See ECF Docket Entry 55.

9.  As a result of the sale, I have been asked to move the Superb Injuncted Vehicles off the property in order for the landlord to close on the sale.

10.  The landlord set a deadline of May 9, 2025 for the Superb Injuncted Vehicles to be removed.

11.  The Injunction requires me to keep the Superb Injuncted Vehicles on any Cross-Collateralized Urrutia Dealership lot.

12.  However, I no longer have access to any of those lots.

13.  The Injunction expressly permits me to seek leave to move the Superb Injuncted Vehicles from a Cross-Collateralized Urrutia Dealership lot for good cause.  See ECF Docket Entry 55 at 30 ¶ 6 ("No injuncted vehicle may be removed from the appointed lot absent this Court's Order.  a. In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle.  The same writing must be electronically served on the other party").

14.  Because Team Mitsubishi-Hartford has not paid its rent since July 2024, it has been in default since that time and has exhausted its good will with the landlord of the property due to the aforementioned sale.

15.  Should the Superb Plaintiffs be unable to remove the Superb Injuncted Vehicles from that lot, they would be forced to defend litigation brought by the landlord and face contempt sanctions.

16.  I am a personal guarantor under the lease Team Mitsubishi-Hartford has with the landlord and would therefore stand to suffer a great deal if I do not obtain relief.

3

17.    Based on the foregoing, it is my understanding that there is sufficient good cause for the Superb Injuncted Vehicles to be moved.

18.    I have discussed this problem with Nissan Motor Acceptance Company LLC ("NMAC") and understand that NMAC is prepared to take possession of the vehicles, store them, and insure them in compliance with the Injunction.

19.    Given their recent motion to intervene, I respectfully submit it is appropriate for them to take possession of the Superb Injuncted Vehicles.

**The Court Should Permit Team to Sell the Superb Injuncted Vehicles**

20.    For the reasons stated in the Superb Plaintiffs' memorandum of law in support, Superb should be able to sell all of the vehicles recovered on September 15, 2023.

21.    As set forth above, on September 15, 2023, the Superb Plaintiffs recovered from the Deo Defendants two (2) Isuzu flatbed trucks.

22.    Those vehicles are titled to Team Imports, LLC d/b/a Team Mitsubishi Hartford and do not belong to Superb.

23.    Thus, the injunction against selling the two (2) Isuzu flatbed trucks should be lifted.

24.    In addition, thirteen (13) of the twenty-eight (28) vehicles recovered belong to Team, not Superb.

25.    Both Team-Mitsubishi Hartford and Team have closed and shut down operations.

26.    This Court previously permitted Superb to sell the Superb Injuncted Vehicles because Superb had closed and shut down operations.  See ECF Docket Entry 172 at 14-15, 18.

27.    Given that Team-Mitsubishi Hartford and Team are in the same position as Superb, this Court should modify the Injunction in the same manner.

28.    I respectfully request that this Court grant the relief requested herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 29, 2025.

_robert urrutia_
robert urrutia (Apr 29, 2025 00:50 EDT)
_____
Robert Anthony Urrutia

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**SUPPLEMENTAL DECLARATION OF ROBERT ANTHONY URRUTIA IN FURTHER SUPPORT OF THE SUPERB PLAINTIFFS' ORDER TO SHOW CAUSE TO MODIFY THE <u>PRELIMINARY INJUNCTION</u>**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP,  FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

-------------------------------------------------------------------X

Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1.      I am the President of Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").[1]

2.      Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case who have been defrauded and harmed by Defendant Anthony Deo ("Deo") and his cohort.

3.      As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

4.      I respectfully submit this supplemental declaration in further support of the Superb Plaintiffs' Order to show cause to modify the preliminary injunction pursuant to this Court's Order dated April 29, 2025 directing them to declare in detail as to when and how they learned that their lease at the "Team Mitsubishi-Hartford" Lot would be terminated

5.      Team Imports, LLC d/b/a Team-Mitsubishi Hartford ("Team Mitsubishi") has a lease agreement with New Park Avenue Associates, LLC ("Landlord") at 412 New Park Avenue, Hartford, CT (the "Hartford Premises").  See copy of original lease between Landlord and The Hartford Auto Group Inc. (the prior dealership at the Premises) annexed hereto as **Exhibit "A"** and an assignment of lease to Team Mitsubishi annexed hereto as **Exhibit "B."**

6.      Since July 2024, Team Mitsubishi has not been able to pay the rent it owes under the lease for reasons this Court has been previously made aware of.

7.      The Landlord held off on enforcing the lease in July 2024 because I was attempting to sell the dealership and satisfy my rent obligations at closing.

---

[1] I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts.

8.    Unfortunately, I was unable to sell the dealership and, as a result, the Landlord subsequently decided to sell the Premises.

9.    On or about April 1, 2025, a notice was issued by the Landlord's counsel terminating the lease due to non-payment since July 2024 and demanding that all vehicles be removed.  See copy of notice annexed hereto as **Exhibit "C."**

10.    I did not receive the notice on that date because I no longer have access to the e-mail address "tony@yourteamauto.com."

11.    The Landlord subsequently contacted me a few weeks later to inquire about the notice and to demand that I comply with same.

12.    I then contacted my attorney to ask him to make the instant Order to show cause.

13.    Understandably, my counsel could not do so right away due to his schedule.

14.    As set forth in my prior declaration, Nissan Motor Acceptance Company LLC d/b/a NMAC ("NMAC") is prepared to take possession of the Superb Injuncted Vehicles, as well as store and insure them until further Order of this Court.

15.    For these reasons and those set forth in the moving papers, the Superb Plaintiffs respectfully request that this Court grant their Order to show cause.

16.    I humbly thank this Court for its time and attention to this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 2, 2025.

_Robert Anthony Urrutia_
<span style="font-size:smaller">Robert Anthony Urrutia (May 2, 2025 17:48 EDT)</span>
Robert Anthony Urrutia

3

**LEASE AGREEMENT**
**BY AND BETWEEN**

**NEW PARK AVENUE ASSOCIATES, LLC**
**("LANDLORD")**

**AND**

**THE HARTFORD AUTO GROUP INC.**
**("TENANT")**

**Dated: September 1, 2016**

**Premises Address:**

**398-412 New Park Avenue, Hartford, Connecticut 06160**

## LEASE AGREEMENT

**THIS LEASE**, is made and entered into this 1st day of September, 2016 (the "Lease Execution Date"), by and between, New Park Avenue Associates, LLC, A Connecticut Limited Liability Corporation, with a principal place of business at 223 Broad Street, Forestville, Connecticut (hereinafter called "Landlord"), and The Hartford Auto Group, Inc., a Connecticut corporation, with an office and principal place of business at 505 North Colony Road Wallingford, Connecticut, (hereinafter called "Tenant").

Now, therefore, in consideration of the mutual promises and covenants contained herein and in consideration of the obligations assumed by Landlord and Tenant herein, the parties agree that Landlord does hereby let to Tenant and Tenant does hereby lease and take from Landlord, the premises hereinafter described to use for the business purposes consisting of the establishment and operation of an automobile sales franchise and/or dealership and for purposes incidental thereto or for such other lawful purpose as the Landlord may consent to which consent shall not be unreasonably withheld pursuant to the terms described herein, upon all of the terms, promises, covenants and agreements hereinafter set forth.

WITNESSETH:

## ARTICLE I. GRANT AND TERM

**1.1    Demised Premises**. Landlord hereby demises and leases to Tenant and the Tenant hereby hires and rents from Landlord that certain premises being the land and improvements thereon, (excluding the Riley Building which is to be removed by Landlord as soon as is practical but in no event later than January 31, 2017. Said removal shall be the financial responsibility of Landlord which shall be accomplished in a workmanlike manner. Landlord shall supply tenant with a standard "Hold Harmless/Indemnity Agreement" to be approved by Tenant's attorney. Landlord further agrees to supply Tenant with evidence of adequate casualty and workman's compensation insurance prior to commencement of the demolition), located on the premises known as 398-412 New Park Ave. Hartford, CT and more particularly described in Schedule A attached hereto and made a part hereof (the "Demised Premises").

**1.2    Commencement of Term.** The effective date of this Lease under which Tenant shall be entitled to occupy the Demised Premises pursuant to the terms and conditions set forth in this Lease hereinafter referred to as the "Commencement Date" shall be September 1, 2016.

**1.3    Length of Initial Term**. The initial term of the Lease shall be for seven (7) years commencing on September 1, 2016 and ending on August 31, 2023. ("Initial Term"). Notwithstanding the foregoing, Tenant shall be bound by all provisions of this Lease, from the date of the first occupancy of the Demised Premises by Tenant or its agents for any purpose prior to the Commencement date.

**1.4    Extension Options**. Absent the occurrence and continuation of a Tenant Default at the time of notice to Landlord and at the time an extension term commences, Tenant shall have the option to extend the Lease Term for four (4) term(s) of five (5) years each (referred to herein as the "Extension Terms"). To exercise the extension options, Tenant shall give Landlord written notice that Tenant is exercising such option at least ninety (90) days prior to the anniversary of the commencement of the then current term of the Lease. Should Tenant decide to not exercise its renewal options, the Landlord has the right to show the Demised Premises to prospective tenants with prior notice to the Tenant.

**1.5    Contingencies**.

Omitted Intentionally.

## ARTICLE II. CONSTRUCTION AND CONDITION OF THE LEASED PREMISES

**2.1**    Except for the Landlord's Work defined below, Tenant is accepting the Demised Premises in "as is" condition.  Tenant agrees that it has inspected the Demised Premises and that except as set forth in Section 11.2 of this Lease neither the Landlord nor any agent or employee of the Landlord has made any representation or warranty with respect to the Demised Premises or the suitability of same for the conduct of Tenant's business or use.  Tenant warrants and represents that it has inspected the Demised Premises and the condition thereof and, except for the Landlord's work defined below and the removal of the Riley Building set forth in Section 1.1 of the Lease, agrees to accept the Demised Premises in "as is" condition, Landlord shall have no obligation to improve the Demised Premises in any way except as specifically provided hereunder.

Landlord shall perform, at its sole expense the repairs described below ("Landlord's Work"):

·    Patch hole in lot by service entrance

·    Repair broken sidewalk by Hummer entrance

Landlord's Work will be completed on or before forty five (45) days following the Lease Execution Date.

Other than the Landlord's Work and the removal of the Riley Building set forth in Section 1.1 of the Lease, any improvements, alterations or additions to the Demised Premises including, but not limited to new signs, are to be made by Tenant at its sole cost and expense and shall be subject to the written approval of Landlord, which will not be unreasonably withheld.  Landlord agrees to allow any reasonable modifications to the Demised Premises in order to meet the criteria for a Mitsubishi automobile dealer franchise.  Tenant warrants that all work done by it to and upon the Demised Premises will be performed in a good and workmanlike manner, using first class materials, and in strict accordance with applicable law.

## ARTICLE III. CONDUCT OF BUSINESS BY TENANT

**3.1**    The Tenant shall have the right to use and occupy the Demised Premises for the business purposes consisting of the establishment and operation of an automobile sales franchise and/or dealership and for purposes incidental thereto or for such other lawful purpose as the Landlord may consent to which consent shall not be unreasonably withheld, and will comply with all lawful governmental requirements in connection with such use and purposes.

## ARTICLE IV. TENANT'S FIXTURES AND IMPROVEMENTS

**4.1**    Provided the Tenant obtains the prior written consent of the Landlord which shall not be unreasonably withheld, the Tenant may at its own cost, make such alterations, improvements and additions to the Demised Premises as shall be reasonably required to adapt the same for the authorized use thereof as provided in Section 3.1 above.  Any alterations, additions or improvements to the Premises made by the Tenant shall immediately become the property of the Landlord and shall remain upon and be surrendered with the premises as a part thereof at the end of the term.  Nothing herein contained, however, shall preclude the

Tenant from removing from the Demised Premises its own removable furniture, trade fixtures, appliances and equipment provided such removal can be accomplished without damage or injury to the leasehold.

**4.2** Tenant shall promptly pay all contractors and materialmen hired by Tenant to furnish any labor materials which may give rise to the filing of a mechanic's lien against the premises. Should any such lien be made or filed, Tenant shall bond against or discharge the same within thirty (30) days after receipt of written request by Landlord.

**4.3** Landlord agrees that, within ten (10) days after receipt of written request from Tenant, it will join in any and all applications for permits, licenses or other authorizations required by any governmental or other body claiming jurisdiction in connection with any work which the Tenant may be hereunder, and will also join in any grants for easements for electric, telephone, gas, water, sewer and such other public utilities and facilities as may be reasonably necessary in the operation of the Demised Premises or any improvements that may be erected thereon.

## ARTICLE V. SIGNS

**5.1** Tenant will not place or maintain on any portion of the exterior of the Leased Premises any signs, awning, or canopy, or advertising matter or other thing of any kind in violation of zoning regulations.

### Article VI. MAINTENANCE AND REPAIRS OF LEASED PREMISES

**6.1** Maintenance of Demised Premises. During the Initial Term of this Lease, and any option periods, except for the roof, foundation, exterior walls and structural steel members, which shall be the responsibility of the Landlord, the Tenant shall at all times keep in good order, condition and repair the entire Demised Premises, including without limitation, the exterior entrances, all glass and show window moldings, and all partitions, doors, interior walls, fixtures and equipment and appurtenances thereto, including lighting, heating and plumbing fixtures and systems and any air conditioning system; and no replacement of any such systems, if necessary. Said maintenance shall also include, without limitation, periodic painting as is reasonably necessary. Landlord represents for the purpose of this Section 6.1 that the entire Demised Premises are in good order, condition and repair as aforesaid on the date hereof.

**6.2** If Tenant refuses or neglects to make any such repair within the prescribed time for curing of defaults under this Lease, after written demand to cure for failure to make a repair from Landlord, Landlord may make such repairs, and upon completion thereof, Tenant shall pay Landlord's cost for making such repairs upon presentation of a bill thereof as additional rent.

**6.3** At the expiration of the tenancy hereby created, Tenant shall surrender the Demised Premises in good condition, reasonable wear and tear excepted, and damage by unavoidable casualty excepted, and shall surrender all keys for the Demised Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks, safes and vaults, if any, in the Demised Premises. Tenant shall remove all of its trade fixtures before surrendering the premises as aforesaid and shall repair any damage to the Demised Premises caused thereby. Tenant's obligation to observe or perform this obligation shall survive the expiration or other termination of the term of this Lease.

**Article VII.      INSURANCE, DESTRUCTION OF IMPROVEMENTS AND INDEMNITY**

**7.1      Hazard Insurance**.      The Tenant shall, at the Tenant's sole cost and expense at all times during the term of this lease, keep all buildings and improvements upon the demised premises and all equipment, fixtures, motors, and machinery therein, and all additions thereto and replacements thereof, insured against loss, damage, and destruction by fire, and such other hazards as are covered by and protected against under policies of insurance commonly referred to and known as "extended coverage insurance", said insurance to be in an amount of the actual cash value replacement cost of the insurable buildings, improvements and equipment.  Coverage may be provided under a blanket insurance policy carried by Tenant.  Said policies of insurance shall be carried in companies authorized to do business in the jurisdiction in which the demised premises are located.  Such insurance policies shall be written such that Landlord and Tenant are named as an insured party and loss payee.  In the event that the Demised Premises shall at any time be during the term of the Lease be damaged by fire, flood, tornado or the elements or otherwise, Tenant shall, at Tenant's expense repair said damage and restore the demised Premises to its original condition.  Landlord agrees that insurance proceeds shall be used therefor.  Any unexpended funds shall be the property of the Tenant.

**7.2      Liability Insurance.**      The Tenant shall maintain with respect to the Demised Premises a policy of comprehensive liability that names the Landlord as an insured party.  During the Initial Term of the Lease, such policy shall be in an amount of at least FIVE MILLION AND 00/100 ($5,000,000.00) DOLLARS.  If the Tenant exercises its option to renew the Lease, at the commencement of the Extension Term of the Lease, Tenant shall have such insurance reviewed by a licensed insurance agent of a major insurer in the State of Connecticut to determine insurance requirements and adequate policy amounts.  All policy limits are subject to Landlord's approval, which approval shall not be unreasonably withheld.

**ARTICLE VIII. UTILITIES**

**8.1**      From and after the date upon which Landlord delivers to Tenant possession of the Demised Premises, Tenant shall be solely responsible for and promptly pay all charges for heat, water, gas, electricity or any other utility used or consumed in the Demised Premises.  In the event that the local water authority bills landlord for the water consumed by Tenant in the Demised Premises and Landlord becomes obligated to pay said water authority for said consumption by Tenant, then Landlord shall have the right to bill Tenant for Tenant's water use in accordance with the rate schedule and minimum service charge utilized by said water authority.  Tenant shall pay Landlord as additional rent its water use charge within thirty (30) days after receipt by Tenant of a bill thereof.  It is expressly agreed and understood that Landlord shall not be liable to Tenant for any interruption or suspension of utility services.

**ARTICLE IX. ESTOPPEL STATEMENT, ATTORNMENT, SUBORDINATION**

**9.1      Estoppel Statement.**      Within ten (10) days after request thereof by Landlord, or in the event that upon any sale, assignment or hypothecation of the Demised Premises and/or the land thereunder by Landlord an offset statement shall be required from Tenant; Tenant agrees to deliver in recordable form a certificate to any proposed mortgagee or purchaser, or to Landlord, certifying (if such be the case) that this Lease is in full force and effect and that there are no defenses or offsets thereto, or stating those claimed by Tenant.

**9.2    Attornment.**    Tenant shall, in the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under any mortgage made by the Landlord covering the Leased Premises, attorn to the mortgagee in the event of strict foreclosure or to the purchaser upon any such foreclosure or sale and recognize such mortgagee or (as the case may be) purchaser as the Landlord under this Lease.

**9.3    Subordination.**    Upon request of the Landlord, Tenant will subordinate its rights hereunder to the lien of any mortgage now or hereafter placed upon the land of which the Demised Premises are a party, and to all advances made or hereafter to be made upon the security thereof provided the Tenant has received a non-disturbance agreement from the mortgagee in form and substance agreeable to the Tenant providing that its interests shall not be affected by any such action. The word "mortgage" as used herein includes mortgage, deeds of trust or similar instruments and modifications, consolidations, extensions renewals, replacements or substitutes thereof.

**9.4    Attorney-in-Fact**. The Tenant, upon request of the party in interest, shall execute promptly such instruments or certificates to carry out the intent of Sections 9.2 and 9.3 above as shall be requested by the Landlord.  If fifteen (15) days after the date of a written request by th Landlord to execute such instruments and delivery of the non-disturbance agreement agreeable to the Tenant, the Tenant shall not have executed the same, the Landlord may, at its option, cancel this Lease without incurring any liability on account thereof, and the term hereby granted is expressly limited accordingly.

**9.5**    Tenant agrees to give any mortgagee of the premises within which the Leased Premises are a part which may in writing so request a duplicate notice of any letter to Landlord alleging a default by Landlord under this Lease and Tenant agrees that such mortgagee shall, thereafter have a reasonable time to correct or cure such default, as well as, Landlord, either such performance to be accepted by Tenant.

## ARTICLE X. ASSIGNMENT AND SUBLETTING

**10.1    Consent Required.**  Tenant will not assign this Lease in whole or in part, nor sublet all or any part of the Leased Premises, without the prior written consent of the Landlord in each instance, which consent shall not be unreasonably withheld.  The consent by Landlord to any assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment or subletting. Notwithstanding any assignment or sublease, Tenant shall remain primarily liable on this Lease during the term of this Lease and any extensions thereof and shall not be released from performing any of the terms, covenants and conditions of this Lease, but Tenant and such assignee shall thereafter be jointly and severally liable for the full and faithful performance of the obligations of Tenant under this Lease.  If the Tenant is a corporation, the sale or transfer of fifty-one (51%) percent or more of its voting stock shall be deemed an assignment for purposes of this Article X.

## ARTICLE XI.    WASTE, HAZARDOUS SUBSTANCES AND GOVERNMENTAL REGULATIONS

**11.1    Nuisance or Waste.**    Tenant shall not commit or suffer to be committed any waste upon the Demised Premises.  Tenant shall not allow hazardous substances to spill upon or contaminate the Demised Premises and will indemnify Landlord and save him harmless from all damages resulting from any such spill or

contamination. The Tenant shall have no responsibility or liability to Landlord or any other party for any such condition existing on the Premises on the Commencement Date.

**11.2    Compliance with Laws.** Tenant shall at Tenant's sole cost and expense, comply with all of the requirements of all county, municipal, state, federal and other applicable government authorities, now in force, or which may hereafter be in force, pertaining to the Demised Premises, and shall obey all municipal and county ordinances and federal and state statutes now in force or which may hereafter be in force as they apply to Tenants use and occupancy. Tenant shall have no obligation to so comply as to any condition existing on the Demised Premises as of the Commencement Date including but not limited any environmental condition. The Landlord represents, to the best of his knowledge, that as of the Commencement Date, the Premises comply with all such requirements, that the Premises contain no hazardous wastes or materials or asbestos and that there are no outstanding orders or judgment by any agency or court affecting the Demised Premises.

The Tenant shall have the right to contest by appropriate legal proceedings, without cost or expense to the Landlord, the validity of any law, order, ordinance, rule, regulation or requirement of the nature herein referred to, and if by the terms of any such law, ordinance order, rule or regulation or requirement compliance therewith may legally be held in abeyance without the incurrence of any lien charge or liability of any kind against the fee of the demised premises or the Tenant's leasehold interest in said premises, and without subjecting the Tenant or the Landlord to any liability of whatsoever nature for failure so to comply therewith, the Tenant may postpone compliance therewith until the final determination of any such proceedings, provided that all such proceeding shall be prosecuted with due diligence and dispatch.

### ARTICLE XII.    EMINENT DOMAIN

**12.1    Total Condemnation of Demised Premises.** If the whole of the Demised Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the term of this Lease shall cease and terminate as of the date of title vesting in such proceeding and all rentals shall be paid up to date.

**12.2    Partial Condemnation of Demised Premises.**

**(a)** If twenty (20%) percent or more of the Demised Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the Tenant shall have the option to cancel and terminate this Lease upon notice thereof given to the Landlord within ninety (90)days after the vesting of title in such proceedings.

**(b)** In the event that less than twenty (20%) percent of the Demised Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, or in the event that twenty (20%) percent or more of the Demised Premises shall have been so taken, and Tenant shall not elect to terminate this Lease as set forth above, then the Landlord shall promptly restore the Demised Premises to a condition reasonably comparable under the circumstances to its condition at the time of such condemnation, less the portion lost in the taking; and this Lease shall thereafter continue in full force and effect. In such event of a partial taking, described hereinabove, from the effective date that physical possession is taken by the condemning authority through the end of the term of this Lease, the annual rental payable by the Tenant to Landlord under Section18.1 of this Lease shall be reduced by a fraction, the numerator of which shall be the

gross area of the Demised Premises so taken by the condemning authority and the denominator of which shall be the gross area of the Leased Premises on the date immediately prior to the effective date of such taking.

**12.3**     In the event of any taking, partial or whole, under the provisions of Section 12.1 and 12.2, all of the proceeds of such award, judgment or settlement shall be and remain the sole and exclusive property of the Landlord, and Tenant shall not be entitled to any portion of such award, judgement or settlement.  Tenant, however, may pursue its own claim against the condemning authority for any damages r award permitted under the applicable laws.

### ARTICLE XIII.  DEFAULT OF THE TENANT

**13.1**     If, during a term of this Lease, the Tenant shall default in the payment of the base rent obligations, or shall make default in the payment of any item of additional rent, or any part of the same, and such default is not remedied and shall continue for sixty (60) days after written notice thereof by the Landlord to the Tenant, or if such default is not capable of being remedied within such time and the Tenant does not begin and proceed with due diligence to remedy such default within a reasonable time, the Landlord shall have the option of declaring the Lease terminated upon giving sixty (60) days' written notice to the Tenant of its election so to terminate; and if such latter notice is given, the terms hereof shall cease, determine and expire, except as hereinafter provided in this Article, at the expiration of said sixty (60) days as though such date of termination were originally set for the expiration hereof, and the Tenant's obligations hereunder, except for the payment of past due rentals, shall cease and determine, and Tenant shall have be under no further obligations to Landlord hereunder.

### ARTICLE XIV.  TENANT'S PROPERTY

**14.1**     **Taxes on Leasehold.**  Tenant shall be responsible for the timely payment of any and all municipal, county or state taxes assessed during the term of this Lease against the Demised Premises or any of the personal property being used and/or stored thereon.  In the event Landlord receives any billing for said taxes and elects to pay them directly to the taxing authority, the Tenant agrees to reimburse Landlord for such payment within fifteen (15) days after being presented with said billings. Tenant shall be responsible for the payment of late fees that may be assessed against the Demised Premises during the Lease Term.  Pursuant to Section 18.2 of this Lease, Tenant shall pay the real estate taxes in advance in amount of 1/12 of the taxes per month.

### ARTICLE XV.      HOLDING OVER, SUCCESORS

**15.1**     **Holding Over.** Any holding over after the expiration of the term hereof, with the consent of the Landlord shall be construed to be a tenancy from month to month on the terms and conditions herein specified, so far as applicable, except that during any such holdover period the rent is effect at the expiration of the term hereof shall be increased proportionately with the aggregate increase during the term of this Lease in the United States Bureau of Labor Statistics Price Index for all Items (Urban).

    **15.2   Successors.** All rights and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the several respective heirs, executors, administrators, successors, and assigns of the said parties.

## ARTICLE XVI.  QUIET ENJOYMENT

    **16.1   Landlord's Covenant**.   Upon payment by the Tenant of the rents herein provided, and upon the observance and performance of all the covenants, terms and conditions on Tenant's part to be observed and performed, Tenant shall peaceably and quietly hold and enjoy the Leased Premises for the term hereby demised without hinderance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under the Landlord, subject nevertheless to the terms and conditions of this Lease, and subject to restrictions and easements or other matters as of record appear.  Landlord hereby agrees that his breach of the provisions of this Section entitle the Tenant to legal and equitable remedies to compensate for this breach.

## ARTICLE XVII: NOTICES

    **17.1   Notice.** All notices required or permitted to be given by either party to the other under this Lease shall be effective only if given in writing and delivered by certified mail or registered mail, return receipt requested, addressed as follows or to such other address as either party may, from time to time, designate by notice given to the other party pursuant to this Paragraph. Notice shall be deemed to have been given as of the date mailing as shown on the post office receipt thereof:

| | |
|---|---|
| TO THE LANDLORD: | New Park Avenue Associates, LLC<br>Attn: Ken Crowley<br>PO #6000<br>Bristol, CT 06011 |
| COPY TO: | Atty. Paul J. Shea<br>104 Woodfield Rd.<br>Middlebury, CT 06762 |
| TO THE TENANT: | The Hartford Auto Group Inc.<br>505 North Colony Road<br>Wallingford, CT 06492 |
| COPY TO: | John F. Conway, Esquire<br>Loughlin Fitzgerald, PC<br>150 South Main Street<br>Wallingford, CT 06492 |

## ARTICLE XVIII: RENT

**18.1    Base Rent**.  The Landlord and the Tenant agree that in consideration for the improvements to the Demised Premises to be paid for and performed by the Tenant there shall be no Base Rent due for the first five months of the Initial Term of the Lease, with Tenant's first monthly Base Rent payment being due on February 1, 2017.  On February 1, 2017 and for each month thereafter during the Initial Term, Base Rent payable monthly by Tenant to Landlord for each month of the Initial Term shall be Thirteen Thousand and 00/100 ($13,000.00) Dollars paid on the first (1st) of every month in accordance with the amounts set forth in Exhibit B attached hereto and incorporated herein.  The monthly rent for each Extension Term shall be adjusted upward as set forth in the attached Exhibit B which is hereby incorporated and made a part of this paragraph of the Lease. Landlord acknowledges having received the sum of Fifty Thousand and 00/100 ($50,000.00) Dollars from Tenant upon the execution of this Lease which sum shall be non-refundable, but shall be applied to Tenant's Base Rent **only** payment obligations for February, March, April 2017 and a prorated portion of May, 2017.

**18.2    Additional Rent Based Upon Real Estate Taxes.**  As Additional Rent, Tenant shall pay Landlord the annual real estate taxes and assessments assessed and levied against the Demised Premises on the first (1st) day of each month, in advance, in a sum equal to one-twelfth (1/12th) of the annual real estate taxes and assessments due and payable for the then calendar year. If at a time a payment is required the amount of the real estate taxes and assessments for the then calendar year shall not be known, Tenant shall pay Landlord, as additional rent, one-twelfth (1/12th) of the real estate taxes and assessments for the preceding calendar year; and upon ascertaining the real estate taxes and assessments for the current calendar year, Tenant shall pay Landlord any difference upon demand, or if Tenant shall be entitled to a credit, Landlord shall credit the excess against the next monthly installment(s) of additional rent falling due. Additional rent based upon real estate taxes and assessments payable for the first and last years of the Lease term shall be adjusted and prorated, so that Tennant shall be responsible for Landlord's prorated share for the period prior to and subsequent to the Lease term and Tenant shall pay Landlord his prorated share for the Lease term.

The funds owed to Landlord by Tenant during the first (5) months of the Lease will be as follows:

| | |
|---|---|
| Base Monthly Rent (91/1/16-1/1/17) | $ 00.00 |
| Real Estate Taxes | $ 7,562.05 |

Water and Electricity will be paid directly to supplier by Tenant as meters will be placed into Tenant's name.

**18.3    Monthly Payment Obligations**.  Tenant and Landlord agree that the specified sums Tenant is obligated to pay to Landlord in monthly installments on the first (1st) day of each and every month that rent is due under this Lease is limited to the monthly rental payments set forth on Exhibit B attached hereto plus the monthly installments of Additional Rent based upon real estate taxes set forth in Section 18.2 above. Tenant agrees to pay Landlord, without previous demand therefore, the sums specified as    set        forth

herein payable in monthly installments on the first (1st) day of each and every month as set forth above. Tenant further agrees to pay a late charge of five (5%) per cent for each payment that is more than ten (10) days date.

Tenant will pay the rent to the following address:

New Park Associates, LLC
c/o Kenneth M. Crowley
PO# 6000
Bristol, CT 06011

As the rental payee.

or at any place from time to time designated by the Landlord.

**18.4   Additional Rent Based on Reimbursement to Landlord.**   If Tenant shall fail to comply with or to perform any of the terms, conditions and covenants of this Lease, Landlord may (but with no obligation to do so) carry out and perform such terms, conditions and covenants, at the expense of the Tenant, which expense shall be payable by Tenant, as additional rent, upon the demand of the Landlord.

### ARTICLE XXIV: NET LEASE

**19.1   Net Lease.**   This is a "triple net Lease" and, except as herein otherwise expressly provided, the Landlord shall receive the fixed annual rent, additional rent and other sums required of the Tenant under this Lease, undiminished from all costs expenses and obligations of every kind relating to the Premises, which shall arise or become due during the Lease term, all of which shall be paid by Tenant just as if Tenant owned the property.

### ARTICLE XX: MISCELLANEOUS

**20.1   Binding Effect**.  All covenants, agreements, stipulations, provisions, conditions and obligations herein expressed and set forth shall extend to, bind and inure to the benefit of, as the case may require, the successors and assigns of Landlord and Tenant respectively, as fully as if such words were written wherever reference to Landlord or Tenant occurs in this Lease

**20.2   Complete Agreement**.  Any stipulations, representations, promises or agreements, oral or written, made prior to or contemporaneously with this agreement shall have no legal or equitable consequences and the only agreement made and binding upon the parties with respect to the leasing of the Premises is contained herein, and it is the complete and total integration of the intent and understanding of Landlord and Tenant with respect to the leasing of the Premises.

**20.3   Severability**.  If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the

application of such term, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Lease shall be valid and be enforced to the fullest extent permitted by law.

**20.4   Amendment**.  This Lease and the exhibits and schedules attached hereto and forming a part hereof are all incorporated herein and set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Premises and other matters pertaining thereto, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than are herein set forth.  Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them.

**20.5   Counterparts**.  This Lease may be executed in multiple counterparts and each counterpart shall be an original and all counterparts, together, shall constitute this Lease.

**20.6 Draftsmanship.**  Landlord and Tenant each acknowledge that it has read this Lease, consulted with an attorney regarding its terms, and agrees with its terms as though that party had drafted this Lease itself. Landlord and Tenant agree that although this Lease was, by necessity, printed and assembled by one of the parties or its agents or attorneys, this Lease reflects the terms as agreed to by Landlord and Tenant, and each such party that assembled this Lease should merely be considered only the scrivener for the document.  If a term or terms of this Lease is considered ambiguous, neither party shall be considered the draftsperson for the purpose of causing the terms of this Lease to be construed against that party.

**20.7 Rights and Remedies Not Waived**.  No course of dealing or course of performance between Landlord and Tenant, or any failure or delay on the party of either of them in exercising any rights or remedies hereunder, shall operate as a waiver of any rights or remedies and no single or partial exercise of any rights or remedies hereunder shall operate as a waiver or preclude the exercise of any other rights or remedies hereunder.

**20.8 Right of First Offer To Purchase.**  Landlord shall not, at any time prior to the expiration of the Term of this Lease, or any extension thereof, sell the Demised Premises, or any interest therein, without first giving written notice thereof to Tenant of Landlord's intention to publicly place the Demised Premises on market, which notice is hereinafter referred to as "Notice of Sale."

The Notice of Sale shall include the exact and complete terms of the proposed sale.

For a period of 21 calendar days after receipt by Tenant of the Notice of Sale, Tenant shall have the right to give written notice to Landlord of Tenant's exercise of Tenant's right to purchase the Demised Premises, the interest therein proposed to be sold, or the property of which the Demised Premises are a part, on the same terms, price and conditions as set forth in the Notice of Sale.

In the event that Landlord does not receive written notice of Tenant's exercise of the right herein granted within said 21 day period there shall be a conclusive presumption that Tenant has elected NOT to exercise Tenant's right hereunder, and Landlord may publicly place property on market to sell the property to

any prospective purchaser, on substantially the same terms set forth in the Notice of Sale. Written notice is the exclusive means of exercise and "TIME IS OF THE ESSENCE" with regard to the 21 days.

In the event that Tenant declines to exercise its Right of First Offer to Purchase and, thereafter, the proposed transfer or sale is not consummated, the Tenant's right to purchase shall apply to any subsequent transaction.

If, however, said transfer or sale is, in fact, completed, then said right shall be extinguished and shall not apply to any subsequent transactions.

Notwithstanding the above, this right to purchase is intended to apply only to voluntary transfers involving third party transferees. This right to purchase shall not, therefore, apply: where the Demised Premises are taken by eminent domain or sold under threat of condemnation, to inter-family or inter-ownership transfers or to transfers by Landlord to a trust created by Landlord.

This right to purchase cannot be exercised: (i) during any period in which an Event of Default has occurred and is continuing or commencing with the giving of any notice of and Event of Default and continuing until said Event of Default is cured, (ii) during any period of time any rent is due but unpaid (without regard to whether notice thereof is give Tenant), or (iii) at any time Tenant has received 3 or more notices of Subsequent Default, whether or not the late payments or Events of Default are cured, during the 12 month period immediately preceding the delivery of the Notice of Sale. If the period for exercising the Right of First Offer to Purchase expires while it cannot be exercised then Landlord may sell the property as if Tenant has elected not to exercise said Right of First Offer to Purchase.

This Right of First Offer to Purchase shall terminate as to all subsequent offers if Tenant ever exercises it and is then unable to consummate the purchase.

**20.9 Personal Guarantee for First Seventeen (17) Months of Lease**. Upon the execution of the Lease by the Parties, John W. Mocadlo, an owner of the Tenant, shall give Landlord a personal guarantee in the form attached hereto as Schedule C, which guarantee will guarantee the payment of rent by the Tenant and the performance by the Tenant of all financial duties and obligations under the Lease agreement for the first Seventeen Months of the Lease Term, which guarantee would expire on January 30, 2017.

*[remainder of page intentionally left blank; signature pages follow]*

IN TESTIMONY WHEREOF, Landlord and Tenant have caused this Lease to be executed as a sealed instrument, as of the day and year set forth below but effective as of and from the Lease Execution Date first above written.

**LANDLORD:**

New Park Associates, LLC

By:        _____

Name:    _____

Title:      _____

State of Connecticut                    )
                                                      )ss.
County of                                       )

The foregoing instrument was acknowledged before me this _____ day of September, 2016, by _____, the                        of  New Park Associates LLC a Connecticut Limited Liability Corporation on behalf of said entity.

_____
Notary Public

My Commission Expires:

**TENANT:**

The Hartford Auto Group Inc.

By:

Name:   John W. Mocadlo

Title:   President

State of Connecticut                )
                                    )ss. Wallingford
County of New Haven                 )


The foregoing instrument was acknowledged before me this 25th day of August, 2016, by

John W. Mocadlo, the President of The Hartford Auto Group Inc. a Connecticut Company on behalf of said

entity.

Notary Public

My Commission Expires: 4-30-21

14

**EXHIBIT A**

**DESCRIPTION OF THE DEMISED PREMISES**

Schedule "A"

398-412 New Park Ave.,Hartford, CT

A certain Piece or Parcel of land with the buildings and improvements thereon, designated as Lot No. Two, 398-412 New Park Avenue situated in the  City of Hartford, County of Hartford and the State of Connecticut, and bounded and described as follows:

Beginning at a point located in the Easterly Street Line of New Park Avenue which point marks the Southwesterly corner of land herein described; Thence S60◦ 11' 45"E a distance of 162.94 ft along the  northerly boundary of Lot One to a point; Thence from said point S29◦ 42' 20"W along the northerly boundary of Lot One a distance of  19.65 ft to a point. Thence from said point S59◦ 47' 43"E along the  northerly boundary of Lot One a distance of 33.41 ft. to appoint. Thence from said point S44◦ 07'21"E along the northerly boundary of Lot One a distance of 81.34 ft to a point located in the westerly Right of Way Line of land N/F National Railroad Passenger Corporation said point marking the Southeasterly corner of the parcel herein described; Thence from said point N30◦43' 35"E along the Westerly Right of Way line of National Railroad Passenger Corporation a distance of 493.32 ft to a point marking the Northeasterly corner of the parcel herein described; Thence from said point N60◦ 04' 35"W along land N/F Starwood Ceruzzi Hartford, LLC, a distance of 291.00 ft to a point marking the Northwesterly corner of the parcel herein described; Thence from said point S28◦ 42' 35"W along the Westerly Street Line of New Park Avenue a distance of 164.25 ft to a point; Thence from said point S28◦ 43' 55"W along the Westerly Street Line of New Park Avenue a distance of 287.29 ft to a point marking the point or place of beginning.

The above described parcel contains 3.00 Acres and is more particularly depicted and described as "Lot No. Two" on a map entitled "Prepared for New Park Avenue Associates, LLC. Lot Line Revision Plan, 398-430  New Park Avenue, Hartford and West Hartford, CT, Scale as noted December 18th 2015 (Revised March 14th, 2016) Prepared by PMPCA, LLC" said Map to be filed (or filed) in the Hartford City Clerk's Office and the West Hartford Town Clerk's Office and said map hereby being made a part of this description.

The above-described parcel is subject to such easements as of record may appear.

**EXHIBIT B**

**BASE RENT SCHEDULE PER LEASE SECTIONS 14.1 and 18.1**

| Initial Term | Monthly Rent | Annual Rent |
|---|---|---|
| Year One (September 1, 2016 – August 31, 2017) | | |
| September 1, 2016 – January 31, 2017    $ 0.0 (Tenant receives Five Months Free Rent) | | |
| February 1, 2017 – August 31, 2017 | $13,000.00 | $91,000.00 |
| Year Two (September 1, 2017 – August 31, 2018) | $13,000.00 | $156,000.00 |
| Year Three (September 1, 2018 – August 31, 2019) | $13,000.00 | $156,000.00 |
| Year Four (September 1, 2019 – August 31, 2020) | $13,000.00 | $156,000.00 |
| Year Five  (September 1, 2020 – August 31, 2021) | $13,000.00 | $156,000.00 |
| Year Six    (September 1, 2021 – August 31, 2022) | $13,520.00 | $162,240.00 |
| Year Seven (September 1, 2022 –August 31, 2023) | $14,060.00 | $168,720.00 |

**Ist Five Year Renewal Term, if and as Exercised by Tenant Per Section 1.4**

Base Rent to increase a minimum of 3% per annum over prior year with a maximum increase to be determined by referencing the cost of living index as published by the U.S. Department of Labor in existence on the first day of this Lease and on each anniversary date of this Lease.  Said minimum increase, if any shall be computed by applying the cost of living increase to the prior year's base rent for each year within said 1st Five Year Renewal Term.

**2nd Five Year Renewal Term, if and as Exercised by Tenant Per Section 1.4 Year Thirteen**

Base Rent to increase the same as computed during prior Five Year Renewal Term.

**3rd Five Year Renewal Term, if and as Exercised by Tenant Per Section 1.4**

Base Rent to increase the same as computed during prior Five Year Renewal Term.

**4th Five Year Renewal Term, if and as Exercised by Tenant Per Section 1.4**

Base Rent to increase the same as computed during prior Five Year Renewal Term.

EXHIBIT C

**AGREEMENT OF PERSONAL GUARANTY FOR FIRST SEVENTEEN MONTHS OF LEASE TERM ATTACHED TO AND MADE A PART OF THE LEASE AGREEMENT DATED AUGUST 1, 2016 BETWEEN NEW PARK AVENUE ASSOCIATES, LLC ("LANDLORD") THE HARFORD AUTO GROUP INC. ("TENANT")**

The undersigned "GUARANTOR," in consideration of the making of the foregoing Lease Agreement between Tenant and Landlord, does hereby unconditionally guarantee the payment of the rent by the Tenant and the performance by Tenant of all the financial duties and obligations under the Lease Agreement that are incurred during the first seventeen months of the Lease Term.

It is expressly agreed and understood that the first seventeen months of the Lease Term is the period commencing on September 1, 2016 and ending on January 31, 2018. This guarantee expires on January 31, 2018 and the undersigned does not guarantee the payment of rent by the Tenant or the performance by Tenant of any financial duties and obligations under the Lease Agreement that are incurred after January 31, 2018.

**EXECUTED** to be effective as of the 1st day of September, 2016.

**GUARANTOR**:

Name:  John W. Mocadlo

Business Address:     505 North Colony Road
                      Wallingford, Ct 06492

Residence Address:    34 Bayshore Drive
                      Milford, Ct 06406

## ASSIGNMENT AND ASSUMPTION OF LEASE

This ASSIGNMENT AND ASSUMPTION OF LEASE ("Assignment") dated July 31, 2020, by and between TEAM IMPORTS, LLC ("Assignee"), Hartford Auto Group, Inc. ("Assignor" or "Tenant"), New Park Avenue Associates, LLC (the "Landlord").

### WITNESSETH

WHEREAS, Landlord and Tenant entered into that certain lease (the "Lease") on or around September 1, 2016, whereby the Tenant leased from the Landlord the premises more specifically identified as 412 New Park Avenue, Hartford, Connecticut 06110 (the "Premises"); and

WHEREAS, the Assignor currently operates a Mitsubishi franchised automobile dealership (the "Dealership") from the Premises; and

WHEREAS, the Assignee has purchased the assets of the Dealership from the Assignor and, in connection with the Assignee's purchase of the assets of the Dealership, Assignee desires to assume, and Assignor desires to assign, the Lease to Assignee.

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants hereinafter contained, the parties agree as follows:

1. Effective as of the date hereof, Assignor hereby assigns to Assignee all of its right, title and interest under the Lease. Assignor agrees to indemnify Assignee against and hold Assignee harmless from any and all cost, liability, loss, damage or expense, including but not limited to reasonable attorneys' fees, arising as a result of Assignor's breach of terms of the Lease on or prior to the date hereof.

2. Effective as of the date hereof, Assignee hereby assumes all of the Assignor's obligations under the Lease. Assignee agrees to indemnify Assignor against and hold Assignor harmless from any and all cost, liability, loss, damage or expense, including but not limited to reasonable attorneys' fees, arising as a result of Assignee's breach of the terms of the Lease after the date hereof.

3. The Landlord hereby consents to this Assignment and hereby agrees to solely look to Assignee for a default under the Lease as of the date hereof. To the best of Landlord's knowledge, Assignor is currently not in default under this Lease. Pursuant to Article 10.1 of the Lease, the execution of this Assignment by Assignor, Tenant and Landlord shall constitute the necessary consents and authorizations to allow Assignor to assign, and for Assignee to assume, the Lease.

By their respective execution hereof, the Landlord, Tenant Assignor acknowledge and represent that the Lease and Lease are in full force and effect. Further, the Landlord and Assignor acknowledge and represent that neither Party is in breach of the Lease.

5. This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

6. All capitalized terms used herein, but not defined, shall have the meanings given to such terms in the Lease.

7. This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, and all of which, when taken together, shall constitute one and the same document.

   **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

**TEAM IMPORTS, LLC**                       **HARTFORD AUTO GROUP, INC.**


_____, as Assignee          _____, as Assignor/Tenant
Robert Urrutia, Managing Member          John Mocadlo, President


**NEW PARK AVENUE ASSOCIATES, LLC**


_____, as Landlord
By: _____
Its: _____

2

TENANT:          Team Imports, LLC, D/B/A Team Mitsubishi-Hartford
                 and Robert Anthony Urrutia, via email to
                 Tony@yourteamauto.com

LANDLORD:        New Park Avenue Associates, LLC

PREMISES:        398-412 New Park Avenue, Hartford, Connecticut
                 06106

DATE:            April 1, 2025

### NOTICE OF DEFUALT AND
### TO QUIT POSSESSION

     I hereby give you notice that you are to quit possession or occupancy of the premises now occupied by you and/or your agents, employees, business entities, or representatives and remove any and all property located at 398-412 New Park Avenue, Hartford, Connecticut 06106 on or before **May 9, 2025**, because the rental agreement or lease of such property, whether oral or in writing has terminated for the following reason:  **nonpayment of rent for the period of time between July 1, 2024 through the present.  Attached is a Notice regarding your nonpayment of rent and your rights and options concerning that nonpayment.**

     The tenancy will terminate on the date referenced above.  All motor vehicles and other personal property left at the Premises by the Tenant, must be immediately removed as Landlord has contracted to sell the Premises free and clear of all motor vehicles and personal property.  Should any vehicles or personal property remain on the Premises after May 9, 2025, Landlord will pursue any and all remedies available, including but not limited to enforcement of the termination and recovery of damages.

     Any payments tendered after the date specified to quit possession or occupancy, or the date of the completion of the predetermination process if that is later, will be accepted for use and occupancy only and not for rent, with full reservation of rights to continue with the eviction action.

Dated at Hartford, Connecticut this 1st day of April 2025.


                                    */s/ Alexandra B. Bowen*
                                    Alexandra B. Bowen
                                    Commissioner of the Superior Court
                                    HALLORAN & SAGE LLP
                                    One Goodwin Square
                                    225 Asylum Street
                                    Hartford, CT 06103
                                    (860) 297-4631

**Emanuel Kataev**

---

| | |
|---|---|
| **From:** | ecf_bounces@nyed.uscourts.gov |
| **Sent:** | Friday, May 9, 2025 4:49 PM |
| **To:** | nobody@nyed.uscourts.gov |
| **Subject:** | Activity in Case 2:23-cv-06188-JMW Superb Motors Inc. et al v. Deo et al Order on Motion for Order to Show Cause |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Caution: This email originates from outside of the sagelegalllc.com. Do not click links or open attachments unless you recognize the sender and know the content is safe

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mailbox is unattended.**

**\*\*\*PACER Multifactor Authentication Coming Soon\*\*\* For information visit PACER website**

**https://pacer.uscourts.gov/announcements/2025/05/02/multifactor-authentication-coming-soon**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Eastern District of New York

### Notice of Electronic Filing

The following transaction was entered on 5/9/2025 at 4:48 PM EDT and filed on 5/9/2025

**Case Name:** Superb Motors Inc. et al v. Deo et al

**Case Number:** 2:23-cv-06188-JMW

**Filer:**

**Document Number:** No document attached

**Docket Text:**
**ORDER granting *in part* and denying *in part* [256] Motion to Modify the Preliminary Injunction. Oral Argument was held on the unopposed Motion to Modify the Preliminary Injunction (ECF No. [256]). Appearances were as follows: Superb Plaintiffs represented by Emanuel Kataev, Harry Thomasson appearing *pro se*, and Anthony Deo appearing *pro se*. District courts in this**

Circuit have applied the following standard for modifying preliminary injunctions, namely, the movant must demonstrate "a material change in circumstances justifies the alteration." *New Falls Corp. v. Soni Holdings*, No. 19-CV-0449 (ADS) (AKT), 2020 U.S. Dist. LEXIS 186395, at *30 (E.D.N.Y. Sept. 30, 2020).; *see also Lawsky v. Condor Capital Corp.*, No. 14-cv-2863 (CM), 2014 U.S. Dist. LEXIS 107253, at *15 (S.D.N.Y. Aug. 1, 2014) (stating that parties must show a change in circumstances warranting such relief). "An injunction should be modified only when the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or [] will work oppressively against the enjoined parties." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006). Changed circumstances having been shown and stated on the record, the motion is granted in part and denied in part as follows: (i) denied to the extent the application seeks to permit sales of the Injunced Superb Vehicles and (ii) granted to the extent relocation of the Injuned Superb Vehicles is sought. The 30 Injuned Vehicles shall be removed from the Hartford location to the Hicksville location ("Deo Lot") owned by Anthony Deo (108 New South Road, Hicksville, NY 11801) at Plaintiffs' expense. The current conditions of the existing Preliminary Injunction remain in place, and the Deo Defendants are to segregate the Injuned Superb Vehicles from any other vehicles in the Deo Lot. The relocation to the Deo Lot is to be completed on or before May 23, 2025. Deo Defendants are to file proof of insurance within five (5) business days of delivery of the Injuned Superb Vehicles. The time within which the corporate entity Deo Defendants are to retain counsel and have incoming counsel file a Notice of Appearance has been extended to and includes May 23, 2025. As a result, all proceedings are stayed until then. Any opposition to the Motion for Reconsideration (ECF No. [240]) is to be filed on or before June 20, 2025, and any reply is to be filed on or before July 3, 2025. There are to be no sur-replies. So Ordered by Magistrate Judge James M. Wicks on 5/9/2025. (JAF)

**2:23-cv-06188-JMW Notice has been electronically mailed to:**

Russell J. Shanks    Rshanks@cszlaw.com, jruderman@cszlaw.com, sshanks@cszlaw.com

Peter Seiden    pseiden@milbermakris.com

Thomas Baylis    tbaylis@cullenanddykman.com

Harry R. Thomasson, Jr (Terminated)    hrtatty@verizon.net

Jeffrey C. Ruderman    jruderman@cszlaw.com, rshanks@cszlaw.com

Jamie Scott Felsen (Terminated)    jamiefelsen@mmmlaborlaw.com

Ariel E. Ronneburger    aronneburger@cullenanddykman.com, aronneburger@gmail.com

Emanuel Kataev    emanuel@sagelegal.nyc, 4119461420@filings.docketbird.com, ekesq2014@recap.email

Nicholas Alexander Savino    nsavino@zeklaw.com, 1740836420@filings.docketbird.com, nicholasasavino@gmail.com

Bonnie Rae Golub    bgolub@wgpllp.com, imarciniszyn@weirpartners.com

John Anthony Lentinello    jlentinello@milbermakris.com, john.lentinello@gmail.com

Anthony Carmine Valenziano    avalenziano@shermanatlas.com

Nicole Marie Koster    nicole.koster17@stjohns.edu

Brooke Suarez    bsuarez@riker.com

**2:23-cv-06188-JMW Notice will not be electronically mailed to:**

Car Buyers NYC Inc.

Gold Coast Cars of Sunrise LLC

Gold Coast Cars of Syosset LLC

Gold Coast Motors Automotive Group LLC

Gold Coast Motors of LIC LLC

Gold Coast Motors of Roslyn LLC

Gold Coast Motors of Smithtown LLC

UEA Premier Motors Corp.

Anthony Deo

Dwight Blankenship

Marc Merckling

Michael Laurie

Sarah Deo

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: **2:23-cv-6188 (JMW)**

**ORDER TO SHOW CAUSE**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

-------------------------------------------------------------------X

Upon the annexed Complaint, the declaration of Robert Anthony Urrutia, and the

annexed letter brief in support,

**LET** the defendants, Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp., and DLA Capital Partners Inc. (collectively hereinafter the "Deo Defendants"), show cause before the Hon. James M. Wicks, U.S.M.J., of this Court to be held at the courthouse thereof, located at 100 Federal Plaza, Courtroom 1020, Central Islip, NY 11722-4438, on the _____ day of May, 2025 at _____ o'clock in the_____noon of that day, or as soon thereafter as counsel can be heard, why an Order should not be issued:

(a)     pursuant to Local Civil Rule 6.3 reconsidering that aspect of its May 9, 2025 Order directing Plaintiffs Superb Motors Inc ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs") to move the Superb Injuncted Vehicles to a lot maintained by Defendant Anthony Deo ("Deo");

(b)     pursuant to this Court's inherent power to permit the Superb Plaintiffs to Remain at the Team Imports LLC d/b/a Team Mitsubishi Hartford, CT lot at 412 New Park Avenue, Hartford, CT 06106 (the "Hartford Lot") pending a hearing and determination of this Order to show cause, and permitting the Superb Plaintiffs to move the Superb Injuncted Vehicles to 223 Broad Street, Bristol, CT 06010 (the "New Premises") subject to the Superb Plaintiffs' agreement with the landlord for the New Premises;

(c)     Granting such other and further relief that this Court deems just, proper, and equitable; and it is further

**ORDERED** that, pending a determination and hearing of this Order to show cause, the Superb Injuncted Vehicles are permitted to remain at the Hartford Lot;

**ORDERED** that service of a copy of this Order, along with the papers upon which it is based, shall be made upon Defendants via CM/ECF, and such service shall be deemed good and sufficient; and it is further

**ORDERED** that answering papers, if any, shall be served on Superb's counsel, Emanuel Kataev, Esq., Sage Legal LLC, 18211 Jamaica Avenue, Jamaica, NY 11423-2327, via CM/ECF on or before the _____ day of May, 2025; and it is further

**ORDERED** that reply papers, if any, shall be electronically filed and served on Defendants' counsel on or before the _____ day of May, 2025.

Dated: Central Islip, New York
     May \_\_\_\_, 2025

                               **SO ORDERED:**

                              _____
                              James M. Wicks, U.S.M.J.

# Sage Legal LLC

**18211 Jamaica Avenue ● Jamaica, NY 11423-2327 ● (718) 412-2421 ● emanuel@sagelegal.nyc**

**VIA ECF**                                                                                  May 20, 2025
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

      *Re:*    **Superb Motors Inc.,** *et al.* **v. Deo,** *et al.*
               **Case No.: 2:23-cv-6188 (JMW)_____**

Dear Judge Wicks:

      This firm represents Plaintiffs Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team Auto"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team Auto, and Urrutia collectively hereinafter the "Superb Plaintiffs") in the above-referenced case. The Superb Plaintiffs submit this Order to show cause[1] to respectfully seek reconsideration of this Court's Order dated May 9, 2025 (the "Order") requiring the Superb Injuncted Vehicles to be delivered to the Deo Defendants by Friday, May 23, 2025 pursuant to Local Civil Rule ("LCR") 6.3 on the grounds that this Court overlooked certain facts, the availability of new evidence, and in the interest of justice.

      Based on same, it is respectfully submitted that this Court should reconsider its Order granting in part and denying in part the Superb Plaintiffs' Order to show cause to modify the preliminary injunction to permit them to move the Superb Injuncted Vehicles from the Urrutia Cross-Collateralized Dealership Lot located in Hartford, Connecticut. <u>See</u> ECF Docket Entry 267 and Text Only Order dated May 9, 2025.

**<u>Legal Standard</u>**

      A motion for reconsideration may be granted where the moving party shows that the court overlooked controlling law or facts that, had they been considered, would have altered the disposition of the underlying motion. <u>See</u> <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995); <u>see also</u> <u>Gey Assoc. Gen. Partnership v 310 Assoc. (In re 310 Assoc.)</u>, 346 F3d 31, 35 (2d Cir. 2003). Reconsideration may also be "granted to correct clear error, *prevent manifest injustice*, or review the court's decision *in light of the availability of new evidence.*" <u>See</u> <u>Mendez-Caton v. Carribean Family Health Center</u>, 340 F.R.D. 60, 74 (E.D.N.Y. Jan. 28, 2022) (emphasis added).

---

[1] Plaintiffs respectfully request leave of this Court to make the instant request as a letter motion rather than a formal motion (as required by LCR 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter "Rules"), which requires that the Rules be construed, administered, and <u>employed by the court</u> and the parties to secure the <u>just</u>, <u>speedy</u>, and <u>inexpensive</u> determination of every action and proceeding. <u>See</u> Fed. R. Civ. P. 1 (emphasis added). Due to the emergency nature of the relief requested, Plaintiffs respectfully submit that this Court should grant leave to file the instant motion as a letter motion rather than a formal motion. Because the Superb Plaintiffs seek injunctive relief, this motion is made by Order to show cause.

**The Interests of Justice & New Evidence Require Reconsideration of the Order**

On April 29, 2025, the Superb Plaintiffs moved by Order to show cause for an Order modifying the September 29, 2023 preliminary injunction (the "Injunction") permitting them to move the Superb Injuncted Vehicles to a lot controlled by non-party proposed intervenor Nissan Motor Acceptance Company, LLC d/b/a NMAC ("NMAC").  See ECF Docket Entry 256.

Prior to that time, on May 8, 2024, this Court entered an Order modifying the Injunction to permit Superb to sell its vehicles upon conditions set by the Court.  See ECF Docket Entry 172.

While this Court granted the Superb Plaintiffs' request to move the Superb Injuncted Vehicles, it did not permit[2] the Superb Plaintiffs to tender the vehicles to NMAC because the Court was not provided with any information as to *where* the vehicles would be located.  See copy of transcript from May 9, 2025 proceedings annexed hereto as **Exhibit "A"** at 19:20-21:9, 29:16-30:3.  As a result, this Court denied that branch of the motion and directed the Superb Plaintiffs to arrange for the Superb Injuncted Vehicles to be moved to a lot controlled by Defendant Anthony Deo ("Deo").  See ECF Docket Entry 267 and Text Only Order dated May 9, 2025.  Critically, the Court provided the Superb Plaintiffs with the option of keeping the vehicles where they are or moving them to the lot controlled by Deo.  See **Exhibit "A"** at 27:16-21, 30:4-12.  Moreover, the Court inquired with the Superb Plaintiffs about the existence of any alternatives.  Id. at 25:22-25, 27:8-14.

The Superb Plaintiffs respectfully submit that moving the vehicles to a lot controlled by Deo will stymie and prevent the Superb Plaintiffs from selling the vehicles this Court previously permitted Superb to sell, as they will have no means to show the vehicles to any prospective purchasers.  Indeed, given the level of acrimony between the parties, it is more than likely that the Deo Defendants will do everything in their power to prevent the Superb Plaintiffs from selling the vehicles.  See Superb Motors Inc. v. Deo, No. 23-CV-6188 (JMW), 2023 WL 8358062, at *1, *3 (E.D.N.Y. Dec. 1, 2023) ("Plaintiffs seek damages and injunctive relief claiming a pattern of fraudulent misconduct, ripe with knavery, in connection with defendants' attempts to obtain operational control of plaintiffs' automobile dealerships … Every procedural step in this case thus far has been fraught with foofaraw, … every procedural step in the case is met with fisticuffs").  Furthermore, this Court informed the Deo Defendants that the Superb Plaintiffs will be permitted to sell the remaining Superb Injuncted Vehicles should they fail to appear by counsel.  See **Exhibit "A"** at 14:19-15:9.  In the event the Deo Defendants default, the Superb Plaintiffs would need to have the Superb Injuncted Vehicles returned, which would be costly, wasteful, and impractical.

Indeed, when the Deo Defendants took vehicles owned by the Island Auto Group Plaintiffs ("IAG") hostage in a similar fashion, they were ultimately returned to IAG damaged.  See Chabrier v. Deo, Index No.: 617224/2022 (Nassau County Supreme Court), NYSCEF Docket Entries 3 ¶ 22 and 21 (photos of damaged vehicles).

---

[2] The Court also denied without prejudice the Superb Plaintiffs' request to sell the vehicles owned by Team and Team Imports LLC d/b/a Team Mitsubishi-Hartford ("Team Mitsubishi") until such time that Deo and his cohort are represented by counsel.  See Exhibit "A."

There was similar damage done to the Superb Injuncted Vehicles when they were returned on September 15, 2023.  See Declaration of Robert Anthony Urrutia ("Urrutia Decl.") ¶¶ 5-7.  The Deo Defendants' penchant for damaging the vehicles is unsurprising as they have never paid for any of the vehicles, another factor the Superb Plaintiffs respectfully submit this Court overlooked. See ECF Docket Entry 204 ¶¶ 46-78.

Further, the transportation costs to move the vehicles from Hartford, CT to Hicksville, NY will be in excess of $12,000.00, which money Urrutia does not have.  See Declaration of Robert Anthony Urrutia ("Urrutia Decl.") ¶ 8; see also ECF Docket Entry 251 ¶¶ 45-47.

Last but not least, the Deo Defendants have a demonstrated disregard for Court Orders. See ECF Docket Entry 220 ¶¶ 59-69 (highlighting numerous instances that the Deo Defendants repeatedly violated a prior injunction issued by the Hon. Sharon M.J. Gianelli, J.S.C.).

As a result, this Court should reconsider that aspect of its Order requiring the Superb Injuncted Vehicles to be moved to a lot controlled by Deo and, upon reconsideration, permit the vehicles to Remain at the Team Mitsubishi lot at 412 New Park Avenue, Hartford, CT 06106 (the "Hartford Lot") for a period of four (4) weeks.  As detailed in the accompanying declaration of Urrutia, the Superb Plaintiffs have negotiated a deal with the landlord of the Hartford Lot for the Superb Injuncted Vehicles to remain there until the closing date, currently scheduled for June 9, 2025, and thereafter to either remain at the Hartford Lot pending a deal with the purchaser of the Hartford Lot, or to be moved less than fifteen (15) miles away to 223 Broad Street, Bristol, CT 06010 (the "New Premises") subject to the Superb Plaintiffs' agreement with the landlord for the New Premises.  See Urrutia Decl. ¶¶ 9-18.

In circumstances such as here, where new evidence supports the Plaintiffs' allegations, the Second Circuit has held that reconsideration is warranted.  See LaBow v. C.I.R., 763 F.2d 125, 126 (2d Cir. 1985) ("We hold that the Tax Court did abuse its discretion in denying Myrna's motion and consequently reverse and remand on those issues affected by Myrna's new evidence"); see also Seales v. Panamanian Aviation Co., 356 Fed. Appx. 461, 465 (2d Cir. 2009) (unpublished) ("Here, however, the introduction of new evidence altered the balance of the convenience factors and justified the district court's reconsideration of the issue").

The Superb Plaintiffs therefore respectfully request reconsideration of this Court's Order to permit them to keep the Superb Injuncted vehicles at the Hartford Lot, and – upon securing a deal with either the purchaser of the Hartford Lot or the landlord of the New Premises, to move the vehicles there.

The Superb Plaintiffs thank this Court for its continued time and attention to this case.

Dated: Jamaica, New York
      May 20, 2025

Respectfully submitted,

**SAGE LEGAL LLC**

By:  */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*Superb Motors Inc.*
*Team Auto Sales LLC, &*
*Robert Anthony Urrutia*

**VIA ECF**
All counsel of record

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**DECLARATION OF ROBERT ANTHONY URRUTIA IN SUPPORT OF THE SUPERB PLAINTIFFS' ORDER TO SHOW CAUSE FOR <u>RECONSIDERATION</u>**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

---------------------------------------------------------------X

Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1.      I am the President of Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").[1]

2.      Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case who have been defrauded and harmed by Defendant Anthony Deo ("Deo") and his cohort.

3.      As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

4.      I respectfully submit this declaration in support of the Superb Plaintiffs' Order to show cause for reconsideration of this Court's Order dated May 9, 2025 (the "Order").

5.      When the Deo Defendants returned the Superb Injuncted Vehicles that they wrongfully removed from my lot at Superb, they purposefully damaged them out of spite.

6.      For example, the two trucks owned by Team Imports LLC d/b/a Team Mitsubishi Hartford ("Team Mitsubishi") each had compressors that were removed from the trucks, which damaged their resale value.

7.      There were other instances of damage to the remaining Superb Injuncted Vehicles reminiscent of the damage the Deo Defendants inflicted on the Island Auto Group Plaintiffs' vehicles.

8.      As previously averred to by me, I have effectively been bankrupted due to the Deo Defendants' conduct such that I cannot afford the exorbitant cost of thousands of dollars to transport the Superb Injuncted Vehicles from Hartford, CT to Hicksville, NY.

---

[1] I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts.

9.     I understand that this Court denied the Superb Plaintiffs' motion to move the vehicles to a lot controlled by NMAC because I did not provide a location as to where the vehicles may be moved.

10.     I am actively working on obtaining a viable location where the Superb Injuncted Vehicles may be stored.

11.     Meanwhile, in light of the development of this Court's May 9, 2025 Order and ongoing discussions with the landlord at the Hartford Lot concerning same, I have been able to secure at least an additional four (4) weeks – and possibly up to six (6) weeks – for the Superb Injuncted Vehicles to remain indoors at the Hartford Lot.

12.     In continuing discussions, the purchaser of the Hartford Lot has also indicated a willingness to allow the vehicles to continue to remain at the Hartford Lot following the closing, subject to an appropriate agreement.

13.     Meanwhile, and as a contingency, I have had preliminary discussions with the landlord at Crowley Kia, less than fifteen miles away, who may be able to store the Superb Injuncted Vehicles on its lot located at 223 Broad Street, Bristol, CT 06010 (the "New Premises").

14.     Regrettably, although non-party Nissan Motor Acceptance Company LLC d/b/a NMAC ("Nissan") initially expressed an interest in taking possession of the vehicles as originally sought by the Superb Plaintiffs, NMAC has not provided the Superb Plaintiffs with a proposed location for the vehicles such that this may be a consideration at this time.[2]

---

[2] The Superb Plaintiffs remain open to delivering the vehicles, with the Court's permission, to NMAC pending resolution of the injunction

3

15.     Allowing the Superb Injuncted Vehicles to remain at the Hartford Lot while I determine whether they may continue to be stored there or be moved to the New Premises, with the Court's permission, will allow me to sell the vehicles owned by Superb, which this Court previously permitted me to do, and to later sell the vehicles owned by Team Mitsubishi and Team, which this Court may permit me to do once the Deo Defendants retain counsel.

16.     Should the Superb Plaintiffs incur the expense of moving the Superb Injuncted Vehicles to Defendant Anthony Deo's ("Deo") lot, they will be unable to sell any of the vehicles, and the vehicles will be subject to the risk of loss at Deo's hands or patrons at the establishments surrounding Deo's leased premises there.

17.     More importantly, if the Deo Defendants default and fail to retain new counsel, the Superb Plaintiffs will request to have the vehicles returned so that they may be sold, which will result in a costly and impractical game of musical vehicles that should be avoided for the sheer purpose of avoiding the risk of loss inherent in moving vehicles around unnecessarily.

18.     For these reasons and those discussed in the accompanying letter brief, the Superb Plaintiffs' Order to show cause should be granted.

19.     I thank this Court for its time and attention to this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 20, 2025.


_Robert Anthony Urrutia_
Robert Anthony Urrutia (May 20, 2025 22:30 EDT)
Robert Anthony Urrutia

4

**Emanuel Kataev**

---

| | |
|---|---|
| **From:** | ecf_bounces@nyed.uscourts.gov |
| **Sent:** | Wednesday, May 21, 2025 12:11 PM |
| **To:** | nobody@nyed.uscourts.gov |
| **Subject:** | Activity in Case 2:23-cv-06188-JMW Superb Motors Inc. et al v. Deo et al Order on Motion for Order to Show Cause |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Caution: This email originates from outside of the sagelegallc.com. Do not click links or open attachments unless you recognize the sender and know the content is safe

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mailbox is unattended.**

**\*\*\*PACER Multifactor Authentication Coming Soon\*\*\* For information visit PACER website**

**https://pacer.uscourts.gov/announcements/2025/05/02/multifactor-authentication-coming-soon**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of New York**

**Notice of Electronic Filing**

The following transaction was entered on 5/21/2025 at 12:10 PM EDT and filed on 5/21/2025

**Case Name:** Superb Motors Inc. et al v. Deo et al

**Case Number:** 2:23-cv-06188-JMW

**Filer:**

**Document Number:** No document attached

**Docket Text:**
**ORDER denying [271] Motion for Order to Show Cause regarding the Motion for Reconsideration of the May 9, 2025 Order and the Motion for Reconsideration. Plaintiffs submit this application for reconsideration pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Under Local**

Rule 6.3, a party has fourteen (14) days following the entry of a court order to serve a notice of motion with an accompanying memorandum, that concisely sets forth the issues, facts, or laws that were overlooked. Loc. Civ. R. 6.3.

"A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009). As such, motions for reconsideration "[are] appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion... and which, had they been considered, might have reasonably altered the result before the court." *Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal quotation marks and citation omitted). Notably, "a party may not advance new facts, issues, or arguments not previously presented to the Court on a motion for reconsideration." *Superior Site Work, Inc. v. NASDI, LLC*, No. 14-cv-01061 (ADS) (SIL), 2017 U.S. Dist. LEXIS 77453, at *4 (E.D.N.Y. May 22, 2017) (internal quotations omitted); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted) (noting that a motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple). Reconsideration is warranted when: (i) the moving party points to an intervening change in controlling law, (ii) newly available evidence is identified, (iii) clear error is established, or (iv) reconsideration is necessary to avoid a manifest injustice. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (same); *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) (same). It is well-settled that it is within the sound discretion of the district court to decide whether or not to grant a motion for reconsideration. *See Gupta v. Attorney Gen. of United States*, 52 F. Supp. 3d 677, 679-80 (S.D.N.Y. 2014); *Rivas v. Melecio*, No. 23-CV-05718 (JMA), 2024 WL 1096065, at *1 (E.D.N.Y. Feb. 21, 2024).

Here, Plaintiffs seek a "do-over" on the eve of their deadline to deliver the Injuncted Superb Vehicles to the Deo Lot. (*See* ECF No. 267.) Moreover, Plaintiffs assert that the Court overlooked the potential damage that could occur by the Deo Defendants holding the Vehicles. (ECF Nos. 272 at 3, 273 at 5-7.) Contrary to that assertion, the Court provided clear direction and imposed certain conditions to preserve the parties' assets at the last Conference. (*See* Electronic Order dated 05/09/2025.) As to the "newly available evidence" that Plaintiffs submit, this still does not provide a long-term solution. Specifically, Plaintiffs state that they "have negotiated a deal with the landlord of the Hartford Lot for the Superb Injuncted Vehicles to remain there until the closing date, currently scheduled for June 9, 2025, and thereafter to either remain at the Hartford Lot pending a deal with the purchaser of the Hartford Lot, or to be moved less than fifteen (15) miles away to 223 Broad Street, Bristol, CT 06010 (the "New Premises") subject to the Superb Plaintiffs' agreement with the landlord for the New Premises." (ECF No. 272 at 3.) These proposed modifications are not concrete and are subject to the agreements of two third-parties, the New Premises landlord or the new purchaser of the Hartford Lot. Absent here is evidence that would reasonably alter the undersigned's conclusion at the previous Conference. *See Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738 (MKB), 2025 WL 510041, at *2 (E.D.N.Y. Feb. 14, 2025) (same).

**Therefore, the Motion for Reconsideration filed at ECF No. [271] is DENIED, and the previously ordered date for the relocation of the Injuncted Superb Vehicles to the Deo Lot remains in place, which is this <u>Friday, May 23, 2025</u>. So Ordered by Magistrate Judge James M. Wicks on 5/21/2025. (JAF)**

**2:23-cv-06188-JMW Notice has been electronically mailed to:**

Russell J. Shanks    Rshanks@cszlaw.com, jruderman@cszlaw.com, sshanks@cszlaw.com

Peter Seiden    pseiden@milbermakris.com

Thomas Baylis    tbaylis@cullenanddykman.com

Harry R. Thomasson, Jr (Terminated)    hrtatty@verizon.net

Jeffrey C. Ruderman    jruderman@cszlaw.com, rshanks@cszlaw.com

Jamie Scott Felsen (Terminated)    jamiefelsen@mmmlaborlaw.com

Ariel E. Ronneburger    aronneburger@cullenanddykman.com, aronneburger@gmail.com

Emanuel Kataev    emanuel@sagelegal.nyc, 4119461420@filings.docketbird.com, ekesq2014@recap.email

Nicholas Alexander Savino    nsavino@zeklaw.com, 1740836420@filings.docketbird.com, nicholasasavino@gmail.com

Bonnie Rae Golub    bgolub@wgpllp.com, imarciniszyn@weirpartners.com

John Anthony Lentinello    jlentinello@milbermakris.com, john.lentinello@gmail.com

Anthony Carmine Valenziano    avalenziano@shermanatlas.com

Nicole Marie Koster    nicole.koster17@stjohns.edu

Brooke Suarez    bsuarez@riker.com

**2:23-cv-06188-JMW Notice will not be electronically mailed to:**

Car Buyers NYC Inc.


Gold Coast Cars of Sunrise LLC


Gold Coast Cars of Syosset LLC

Gold Coast Motors Automotive Group LLC

Gold Coast Motors of LIC LLC

Gold Coast Motors of Roslyn LLC

Gold Coast Motors of Smithtown LLC

UEA Premier Motors Corp.

Anthony Deo

Dwight Blankenship

Marc Merckling

Michael Laurie

Sarah Deo

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: **2:23-cv-6188 (JMW)**

**ORDER TO SHOW CAUSE**

                    Plaintiffs,

          -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

                    Defendants.

----------------------------------------------------------------X

          Upon the annexed Complaint, the declaration Robert Anthony Urrutia, and the

annexed Memorandum of Law in support,

**LET** the defendants, Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp., and DLA Capital Partners Inc. (collectively hereinafter the "Deo Defendants"), show cause before the Hon. James M. Wicks, U.S.M.J., of this Court to be held at the courthouse thereof, located at 100 Federal Plaza, Courtroom 1020, Central Islip, NY 11722-4438, on the _____ day of May, 2025 at _____ o'clock in the_____noon of that day, or as soon thereafter as counsel can be heard, why an Order should not be issued:

(a)    Modifying the Hon. Orelia E. Merchant, U.S.D.J.'s ("Judge Merchant") September 29, 2023 Preliminary Injunction (the "Injunction")[1] permitting Plaintiffs Superb Motors Inc ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs") to sell the remaining Superb Injuncted Vehicles owned by Team and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford which are not owned by Superb;[2]

(b)    Modifying the Injunction permitting the Superb Plaintiffs to have the Superb Injuncted Vehicles remain at the Team Mitsubishi lot located at 412 New Park Avenue, Hartford, CT 06106 (the "Hartford Lot") pending a hearing and determination of the instant Order to show cause; and

(c)    Modifying the Injunction permitting the Superb Plaintiffs to move the Superb Injuncted Vehicles to 9 Barber Street, Bristol, CT 06010-7027 (the "Bristol Lot").

---

[1] See ECF Docket Entry 55.

[2] As defined in the Injunction at 28.

2

(d)    Granting such other and further relief that this Court deems just, proper, and equitable; and it is further

**ORDERED** that, pending a hearing and determination of this Order to show cause, the Superb Injuncted Vehicles may remain at the Hartford Lot; and it is further

**ORDERED** that service of a copy of this Order, along with the papers upon which it is based, shall be made upon Defendants via CM/ECF, and such service shall be deemed good and sufficient; and it is further

**ORDERED** that answering papers, if any, shall be served on Superb's counsel, Emanuel Kataev, Esq., Sage Legal LLC, 18211 Jamaica Avenue, Jamaica, NY 11423-2327, via CM/ECF on or before the **_____** day of May, 2025; and it is further

**ORDERED** that reply papers, if any, shall be electronically filed and served on Defendants' counsel on or before the **_____** day of May, 2025.

Dated: Central Islip, New York
      May _____, 2025

                        **SO ORDERED:**

                        _____

                        James M. Wicks, U.S.M.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, *individually and derivatively as a member of* NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, *individually and derivatively as a member of* 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: **2:23-cv-6188 (JMW)**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SUPERB MOTORS INC, TEAM AUTO SALES LLC, AND ROBERT ANTHONY URRUTIA'S MOTION TO <u>MODIFY THE PRELIMINARY INJUNCTION</u>**

## FACTUAL BACKGROUND

On September 29, 2023, the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") issued a preliminary injunction.  See Superb Motors Inc. v. Deo, No. 2:23-CIV.-6188 (OEM) (JMW), 2023 WL 7181675 (E.D.N.Y. Sept. 29, 2023) (hereinafter the "Injunction"), ECF Docket Entry 55.

Judge Merchant issued the Injunction, which provides, in relevant part, that:

> 1) The following thirty (30) vehicles (the "Injuncted Superb Vehicles") are to Remain at or otherwise be returned to a Cross-Collateralized Urrutia Dealership Lots:
>
>> a. Two (2) Isuzu flatbed trucks;
>>
>> b. Twenty-eight (28) cars listed on the list at ECF 30-8 ("Markup List") indicated with "YES",
>>
>>> i. with the exception of the 2023 Chevy Suburban with a Vehicle Identification Number (VIN #) ending in "8675."
>
> …
>
> 6) No injuncted vehicle may be removed from the appointed lot absent this Court's Order.
>
>> a. In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle. The same writing must be electronically served on the other party.

See Injunction at *15-*16.

Read as a whole, the Injunction's main purpose is to protect the resale value of the vehicles. This interpretation is supported by the prohibition against driving or otherwise using or maintaining the vehicles on the lot in such a way that would damage the resale value of the vehicles.

This Court previously modified the Injunction to permit Superb to sell the Superb Injuncted Vehicles it owned based on the fact Superb shut down and went out of business. Now, Team-Mitsubishi Hartford and Team have both similarly shut down and have gone out of business. As a result, this Court should similarly permit those remaining vehicles to similarly be sold.

This Court previously denied the Superb Plaintiffs' request to sell the vehicles *without prejudice* on the grounds that the Deo Defendants were not represented by counsel. However, as of yesterday, the Deo Defendants are now represented by counsel.[1] Notably, Thomasson offered at the May 9, 2025 conference to sell all the injuncted vehicles and place the proceeds in escrow; this offer constituted the Deo Defendants' consent to the instant application. Accordingly, the Superb Plaintiffs respectfully renew their Order to show cause to sell the remaining Superb Injuncted Vehicles.

Finally, because the sale of the vehicles will be impeded by the exorbitant cost of moving them from Hartford, CT to Hicksville, NY and because the Superb Plaintiffs have secured an agreement to store the Superb Injuncted Vehicles at 9 Barber Street, Bristol, CT 06010-7027 (the "Bristol Lot"), in an enclosed lot less than fifteen (15) miles away, this Court should permit the Superb Plaintiffs to move the vehicles to the Bristol Lot. For the foregoing reasons, this Court should modify the Injunction to permit Team and Team Mitsubishi-Hartford to sell the Superb Injuncted Vehicles, and for leave to remove the Superb Injuncted Vehicles from the Urrutia Cross-Collateralized Dealership lot to the Bristol Lot for storage and safekeeping pending either the determination of this motion, sale, or for the pendency of the Injunction.

---

[1] Notably, Defendant Harry R. Thomasson, Esq. ("Thomasson") has chosen to proceed *pro se*. In doing so, Thomasson has taken the tack that his *pro se* appearance to represent himself somehow permits him to make arguments on behalf of his client. This is inaccurate, and constitutes an end-run around this Court's disqualification Order. Further attempts by Thomasson to raise arguments on behalf of the Deo Defendants will result in a contempt application by the Superb Plaintiffs.

## LEGAL STANDARD

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." See Brown v. Plata, 563 U.S. 493, 542 (2011) (citation and quotation marks omitted). The district court derives this power in part from Rule 54(b) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), which provides that injunctive orders "may be revised at any time." See Floyd v. City of New York, No. 08 CIV. 1034 (AT), 2023 WL 2663374, at *3 (S.D.N.Y. Mar. 28, 2023) (citing Fed. R. Civ. P. 54(b).

More broadly, the district court has inherent authority to revise or modify such orders. See United States v. LoRusso, 695 F.2d 45, 53 (2d Cir. 1982).  Critically, in exercising its discretion to modify an injunctive order, a court should not impose or decline to make modifications that "thwart[ ] the purpose behind the injunction." See Sierra Club v. U.S. Army Corps of Eng'rs, 732 F.2d 253, 257 (2d Cir. 1984).  Indeed, "[t]he power of a district court to modify its past injunctive decrees in order to accommodate changed circumstances is well established." See Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport, 710 F.2d 69, 74 (2d Cir. 1983).

"While changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." See King-Seeley Thermos Co. v. Aladdin Indus., Inc., 418 F.2d 31, 35 (2d Cir. 1969).

Of import, a court may modify an injunction even in the absence of changed conditions. See Lego A/S v. Zuru Inc., No. 3:18-CV-2045 (AWT), 2023 WL 2727552, at *4 (D. Conn. Mar. 31, 2023).

If the injunction is "preliminary," as it is here, the court would be "charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." See Greater Chautauqua Fed. Credit Union v. Quattrone, No. 1:22-CV-2753 (MKV), 2023 WL 6037949, at *3 (S.D.N.Y. Sept. 15, 2023) (citing Sierra Club v. Army Corps of Engineers, 732 F.2d 253 (2d Cir. 1984)).  Indeed, the heightened standard in Rule 60(b)(5) only applies to "a final judgment, order, or proceeding." See Fed. R. Civ. P. 60(b); see also Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd., 74 F.R.D. 621, 623 (S.D.N.Y. 1977) ("Rule 60(b) applies only to final orders and not to interlocutory de[c]rees" and district courts have "continuing plenary power over its interlocutory orders under which the Court is not bound by Rule 60(b)(5)'s strict standard of 'changed circumstances'" (citations omitted)).

Crucially, Judge Merchant recognized, in issuing the Injunction, that she continued to assess the scope and terms of such an injunction.  See Injunction at *15 (citing Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 245 (2d Cir. 2006)).

Moreover, although changes in fact or law often "afford the clearest bases for altering an injunction," a court's equitable power "extend[s] also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." See King-Seeley Thermos Co. v. Aladdin Indus., Inc., 418 F.2d 31, 35 (2d Cir. 1969) (citations omitted). Moreover, a court may vacate "when a decree proves to be unworkable because of unforeseen obstacles; or when enforcement of the decree without modification would be detrimental to the public interest." See Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 383 (1992) (citations omitted); Wright & Miller § 2942 ("[B]ecause of its discretionary character, an injunction ... may be modified if circumstances change after it is issued or in the

4

event that it fails to achieve its objectives."); Timothy Stoltzfus Jost, From Swift to Stotts and Beyond: Modification of Injunctions in the Federal Courts, 64 Tex. L. Rev. 1101, 1138 (1986) (arguing that, if an injunction becomes "a tool of oppression" or "obviously inefficient," "the court ultimately has the power to, and should, modify a decree that imposes a burden disproportionate to the benefit it assures").

Here, the Injunction – which was, ironically, placed into effect to save the Superb Plaintiffs' dealerships – has now instead served as a tool of oppression against Urrutia, who has lost all four of his dealerships due to the Deo Defendants' fraudulent conduct, and the Injunction is repeatedly being wielded as a sword by the Deo Defendants.

For the reasons set forth below, this Court should modify the Injunction as requested.

## ARGUMENT

### A.     Team and Team Mitsubishi-Hartford Should be Permitted to Sell the Vehicles

This Court should modify the Injunction to permit Team and Team Mitsubishi-Hartford to wind down their affairs in light of their closure by allowing them to sell the vehicles that it owns.

As set forth in various declarations, these dealerships have closed.  Under similar circumstances, this Court previously permitted Superb to sell the Superb Injunced Vehicles belonging to it.  See ECF Docket Entry 172 at 14-15, 18.

The circumstances here are no different; in fact, they are precisely the same.  As a result, Team and Team Mitsubishi-Hartford should be permitted to sell the Superb Injunced Vehicles they own under the same conditions as those set for Superb.

The only reason this Court previously denied this request was because the Deo Defendants did not have counsel.  See ECF Docket Entry 272-1 at 27:8-11, 34:14-25.  As of yesterday, counsel has appeared.  See ECF Docket Entry 276.

5

The Superb Plaintiffs thus respectfully renew their motion to sell the remaining Superb Injuncted Vehicles and place all proceeds in escrow. <u>See</u> ECF Docket Entry <u>172</u> at 15 ("Given the change in financial circumstances that has occurred—i.e., Superb's closure— Plaintiffs' request to sell the Superb vehicles (with the exception of the Isuzu flatbeds and the thirteen (13) vehicles that belong to third parties) and hold the funds in escrow for the remainder of these proceedings is granted. Plaintiff shall account to the Court as to the sales when made. Plaintiffs shall further file proof of the monies in escrow immediately following the sale of each of the vehicles"). The Deo Defendants have no basis to oppose this motion; in fact, they have consented to it. <u>See</u> ECF Docket Entry <u>272-1</u> at 13:20-14:1 ("And the other alternative in addition to taking 24 them and preserving the cars is he's happy to take the 25 cars and sell them and put any proceeds into escrow. We're happy to do that as well").[2]

**B.      This Court Should Grant Leave to Move the Superb Injuncted Vehicles**

As set forth in the accompanying Declaration of Robert Anthony Urrutia, the Superb Plaintiffs can no longer store the vehicles on any Urrutia Cross-Collateralized Dealership lot. Accordingly, sufficient good cause exists as envisioned by Judge Merchant's Order to permit the Superb Plaintiffs to move the Superb Injuncted Vehicles pending this case.

Indeed, Judge Merchant specifically foresaw that circumstances may warrant that the parties be permitted to move the injuncted vehicles and expressly provided a mechanism by which to do so.

---

[2] This Court should therefore consider requiring that the Deo Injuncted Vehicles be sold and placed into escrow as well. The vehicles have been injuncted since September 29, 2023, a period of 601 days or one year, seven months, and twenty-three (23) days. Every day the vehicles go unsold, they are depreciating in value. This Court has repeatedly held and stated that the purpose of the Injunction is to preserve the assets. <u>See</u> ECF Docket Entry <u>272-1</u> at 11:17-18 ("That's the whole purpose of the injunction is to preserve the assets"). However, by permitting the Injunction to languish any further, the purposes of the Injunction is not served. It is nigh time to permit a sale.

In this case, because the Superb Injuncted Vehicles may no longer be stored at the Hartford lot, this Court should grant the Superb Plaintiffs leave to store the vehicles at the Bristol Lot. The details concerning same may be found in the accompanying declaration of Urrutia. Indeed, under similar circumstances, this Court permitted the Deo Defendants to move the Deo Injuncted Vehicles to another lot. <u>See</u> ECF Docket Entry <u>215</u> at 3.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Superb Plaintiffs' Order to show cause to modify the Injunction must be granted.

Dated: Jamaica, New York
      May 22, 2025                Respectfully submitted,

                                    **SAGE LEGAL LLC**
                                    *__/s/ Emanuel Kataev, Esq.____*
                                    Emanuel Kataev, Esq.
                                    18211 Jamaica Avenue
                                    Jamaica, NY 11423-2327
                                    (718) 412-2421 (office)
                                    (917) 807-7819 (cellular)
                                    (718) 489-4155 (facsimile)
                                    emanual@sagelegal.com

                                    *Attorneys for Plaintiffs*
                                    *Superb Motors Inc.,*
                                    *Team Auto Sales LLC, and*
                                    *Robert Anthony Urrutia*

<u>**VIA ECF**</u>
All counsel of record

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HWY AUTO LLC, NORTHSHORE MOTOR
LEASING, LLC, BRIAN CHABRIER, individually and
derivatively as a member of NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, individually
and derivatively as a member of 189 SUNRISE HWY
AUTO, LLC, JORY BARON, 1581 HYLAN BLVD
AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591
HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD
AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519
HYLAN BLVD AUTO LLC, 76 FISK STREET
REALTY LLC, 446 ROUTE 23 AUTO LLC and
ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**DECLARATION OF
ROBERT ANTHONY URRUTIA
IN SUPPORT OF SUBERB
PLAINTIFFS' ORDER TO SHOW
CAUSE TO MODIFY
<u>PRELIMINARY INJUNCTION</u>**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY
THOMASSON, DWIGHT BLANKENSHIP, MARC
MERCKLING, MICHAEL LAURIE, THOMAS
JONES, CPA, CAR BUYERS NYC INC., GOLD
COAST CARS OF SYOSSET LLC, GOLD COAST
CARS OF SUNRISE LLC, GOLD COAST MOTORS
AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS
CORP., DLA CAPITAL PARTNERS INC., JONES,
LITTLE & CO., CPA'S LLP, FLUSHING BANK, and
LIBERTAS FUNDING LLC,

Defendants.

----------------------------------------------------------------X

Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury,

that the following is true and correct:

**Background**

1.      I am the majority shareholder and President of Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").

2.      Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case.

3.      I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts (the "Cross-Collateralized Dealerships").

4.      As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain  at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

5.      I respectfully submit this declaration in support of the instant Order to show cause to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") on September 29, 2023 (hereinafter the "Injunction").[1]

**All the Cross-Collateralized Dealerships Have Shut Down, Warranting Modification**

6.      As this Court may recall from my prior declarations, due to Deo's conduct, I have been forced to shut down all four of my dealerships.

7.      Currently, the Superb Injuncted Vehicles are being stored at the lot of Team Mitsubishi-Hartford in Hartford, Connecticut.

8.      The landlord of the property for the dealership has sold the property.

---

[1] See ECF Docket Entry 55.

9.      As a result of the sale, I have been asked to move the Superb Injuncted Vehicles off the property in order for the landlord to close on the sale.

10.     Although the landlord previously set a deadline of May 9, 2025 for the Superb Injuncted Vehicles to be removed, after discussing the circumstances following the conference this Court held on May 9, 2025, I am advised that the sale of the property is not scheduled to proceed until in or about mid-June.

11.     The Injunction requires me to keep the Superb Injuncted Vehicles on any Cross-Collateralized Urrutia Dealership lot.

12.     However, I no longer have access to any of those lots, and the Superb Injuncted Vehicles remain on Team Mitsubishi's lot solely due to my fizzling good will with the landlord there.

13.     The Injunction expressly permits me to seek leave to move the Superb Injuncted Vehicles from a Cross-Collateralized Urrutia Dealership lot for good cause.  See ECF Docket Entry 55 at 30 ¶ 6 ("No injuncted vehicle may be removed from the appointed lot absent this Court's Order.  a. In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle.  The same writing must be electronically served on the other party").

14.     Should the Superb Plaintiffs be unable to remove the Superb Injuncted Vehicles from that lot, they would be forced to defend litigation brought by the landlord and face contempt sanctions.

15.     I am a personal guarantor under the lease Team Mitsubishi-Hartford has with the landlord and would therefore stand to suffer a great deal if I do not obtain relief.

16.    Based on the foregoing, it is my understanding that there is sufficient good cause for the Superb Injuncted Vehicles to be moved.

17.    I have reached an agreement with the landlord at 9 Barber Street, Bristol, CT 06010-7027 (the "Bristol Lot"), which is less than fifteen (15) miles away from the Team Mitsubishi lot.

18.    I have permission to store the vehicles there as of tomorrow, and the agreement between the Superb Plaintiffs and the landlord of the Bristol Lot has been finalized.

19.    The Bristol Lot is open air lot that is fenced, and is not surrounded by neighboring tenants and their licensees.

20.    As such, unlike the Deo lot, the Superb Injuncted Vehicles will not subjected to any risk of loss with passersby.

21.    Further, the cost of moving the Superb Injuncted Vehicles will be substantially less than the five figure sums it will cost to move them from Hartford, CT to Hicksville, NY.

22.    I have repeatedly informed this Court that I simply do not have these funds to pay for the transportation of the Superb Injuncted Vehicles.

23.    Denying the Superb Plaintiffs' instant Order to show cause would cause the Injunction to serve as a tool of oppression because I would be subject to contempt sanctions for failing to deliver vehicles that I cannot afford to move.

24.    In light of the foregoing, I respectfully request that this Court permit me to relocate the Superb Injuncted Vehicles to the Bristol Lot, where they will be safer.

**The Court Should Permit Team to Sell the Superb Injuncted Vehicles**

25.    For the reasons stated in the Superb Plaintiffs' memorandum of law in support, Superb should be able to sell all of the vehicles recovered on September 15, 2023.

26.     As set forth above, on September 15, 2023, the Superb Plaintiffs recovered from the Deo Defendants two (2) Isuzu flatbed trucks.

27.     Those vehicles are titled to Team Imports, LLC d/b/a Team Mitsubishi Hartford and do not belong to Superb.

28.     Thus, the injunction against selling the two (2) Isuzu flatbed trucks should be lifted.

29.     In addition, thirteen (13) of the twenty-eight (28) vehicles recovered belong to Team, not Superb.

30.     Both Team-Mitsubishi Hartford and Team have closed and shut down operations.

31.     This Court previously permitted Superb to sell the Superb Injuncted Vehicles because Superb had closed and shut down operations.  See ECF Docket Entry 172 at 14-15, 18.

32.     Given that Team-Mitsubishi Hartford and Team are in the same position as Superb, this Court should modify the Injunction in the same manner.

33.     I respectfully request that this Court grant the relief requested herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 22, 2025.


_____
Robert Anthony Urrutia (May 22, 2025 16:31 MDT)
Robert Anthony Urrutia

**Emanuel Kataev**

| | |
|---|---|
| **From:** | ecf_bounces@nyed.uscourts.gov |
| **Sent:** | Friday, May 23, 2025 1:35 PM |
| **To:** | nobody@nyed.uscourts.gov |
| **Subject:** | Activity in Case 2:23-cv-06188-JMW Superb Motors Inc. et al v. Deo et al Order on Motion for Order to Show Cause |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Caution: This email originates from outside of the sagelegalllc.com. Do not click links or open attachments unless you recognize the sender and know the content is safe

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mailbox is unattended.**

**\*\*\*PACER Multifactor Authentication Coming Soon\*\*\* For information visit PACER website**

**https://pacer.uscourts.gov/announcements/2025/05/02/multifactor-authentication-coming-soon**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of New York**

**Notice of Electronic Filing**

The following transaction was entered on 5/23/2025 at 1:35 PM EDT and filed on 5/23/2025

**Case Name:** Superb Motors Inc. et al v. Deo et al

**Case Number:** 2:23-cv-06188-JMW

**Filer:**

**Document Number:** No document attached

**Docket Text:**
**ORDER denying [280] Emergency Motion for Order to Show Cause. After hearing the parties' arguments, and Plaintiffs having failed to establish irreparable harm, the application is denied for the reasons stated on the record. It is well-settled that "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction."**

*Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 278 (E.D.N.Y. 2014) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). Likewise "[i]rreparable harm is 'a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.'" *Crye Precision LLC v. Concealed Carrier, LLC*, 749 F. Supp. 3d 308, 334 (E.D.N.Y. 2024) (quoting *Kamerling*, 295 F.3d at 214). "Where, by contrast, 'there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.'" *Id.* (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)). Furthermore, the Court finds that Plaintiffs have not met their burden to establish a basis to modify the injunction. The grounds urged to modify the injunction - the cost to move vehicles and the threat that Plaintiffs will be in contempt - does not establish irreparable harm sufficient to modify the Injunction which was modified on May 9, 2025. Therefore, the Injunction as modified on May 9, 2025, remains in place and in effect and the Vehicles are to be delivered to the Deo Lot by 6:00 PM tonight with keys and titles as previously ordered. So Ordered by Magistrate Judge James M. Wicks on 5/23/2025. (JAF)

**2:23-cv-06188-JMW Notice has been electronically mailed to:**

Russell J. Shanks    Rshanks@cszlaw.com, jruderman@cszlaw.com, sshanks@cszlaw.com

Peter Seiden    pseiden@milbermakris.com

Thomas Baylis    tbaylis@cullenanddykman.com

Harry R. Thomasson, Jr (Terminated)    hrtatty@verizon.net

Jeffrey C. Ruderman    jruderman@cszlaw.com, rshanks@cszlaw.com

Jeffrey Benjamin    jbenjamin@nyfraudlaw.com

Jamie Scott Felsen (Terminated)    jamiefelsen@mmmlaborlaw.com

Ariel E. Ronneburger    aronneburger@cullenanddykman.com, aronneburger@gmail.com

Emanuel Kataev    emanuel@sagelegal.nyc, 4119461420@filings.docketbird.com, ekesq2014@recap.email

Nicholas Alexander Savino    nsavino@zeklaw.com, 1740836420@filings.docketbird.com, nicholasasavino@gmail.com

Bonnie Rae Golub    bgolub@wgpllp.com, imarciniszyn@weirpartners.com

John Anthony Lentinello    jlentinello@milbermakris.com, john.lentinello@gmail.com

Anthony Carmine Valenziano    avalenziano@shermanatlas.com

Nicole Marie Koster    nicole.koster17@stjohns.edu

Brooke Suarez    bsuarez@riker.com

**2:23-cv-06188-JMW Notice will not be electronically mailed to:**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SUPERB MOTORS INC. *et al.*,

                          *Plaintiffs*,

           -against-

ANTHONY DEO *et al.*,

                          *Defendants*.

------------------------------------------------------------X

                                                   **OPINION AND ORDER**
                                              23-CV-6188 (JMW)

**A P P E A R A N C E S:**

Jamie Scott Felsen, Esq.
**Milman Labuda Law Group PLLC**
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042
*Attorneys for All Plaintiffs*

Emanuel Kataev, Esq.
**Sage Legal LLC**
18211 Jamaica Avenue
Jamaica, NY 114232327
*Attorney for All Plaintiffs*

Jeffrey C. Ruderman, Esq.
Russell J. Shanks, Esq.
**Cyruli Shanks & Zizmor LLP**
420 Lexington Avenue, Suite 2320
New York, NY 10170
*Attorneys for Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, and Island Auto Management, LLC*

1

Brian M. Levine, Esq.
**The Levine Firm, P.C.**
260 North Broadway, Suite 2a
Hicksville, NY 11801
*Attorney for Defendants Anthony and Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.*

John Anthony Lentinello, Esq.
Peter Seiden, Esq.
**Milber Makris Plousadis & Seiden, LLP**
1000 Woodbury Road, Ste. 402
Woodbury, NY 11797
*Attorneys for Defendants Thomas Jones and Jones, Little & Co., CPA's LLP*

Ariel E. Ronneburger, Esq.
Thomas Baylis, Esq.
**Cullen and Dykman LLP**
333 Earle Ovington Boulevard, Ste 2nd Floor
Uniondale, NY 11553
*Attorneys for Defendant Flushing Bank*

Bonnie Rae Golub, Esq.
**Weir Greenblatt Pierce LLP**
667 Madison Ave., 5th Fl.
New York, NY 10065
*Attorney for Libertas Funding LLC*

Anthony Carmine Valenziano, Esq.
**Sherman Atlas Sylvester & Stamelman LLP**
1185 Avenue of Americas, 3rd Floor
New York, NY 10036
*Attorney for J.P. Morgan Chase Bank, N.A.*

Brooke Suarez, Esq.
**Riker Danzig LLP**
One Speedwell Avenue
Morristown, NJ 07962
*Attorney for J.P. Morgan Chase Bank, N.A.*

*No appearance for Defendants DLA Capital Partners Inc.*

# Table of Contents

BACKGROUND ................................................................................................................ 7

   **I.**   *Factual Background* .............................................................................................. 7

      **A.**  *Ownership and Operations at Northshore and Sunrise* ............................ 7

      **B.**  *Deo's Activities at Northshore and* **Sunrise** ............................................ 9

      **C.**  *Defendants' Fraudulent Scheme at* **Superb Motors** ................................. 12

   **II.**   *Procedural History* ............................................................................................ 18

DISCUSSION .................................................................................................................. 23

   **I.**   *Defendants' Motions to Dismiss: Legal Standard* ......................................... 23

   **II.**   *Plaintiffs' RICO Claims* ................................................................................... 24

      **D.**  *Violation of RICO, 18 U.S.C. § 1962 – Against All Defendants* .............. 25

      **E.**  *RICO Conspiracy, 18 U.S.C. § 1962(d)—Against All Defendants* ........... 41

      **F.**  *Injunctive Relief under RICO-- 18 U.S.C. § 1964(a) – Against the Deo Defendants* 43

   **III.**   *Plaintiffs' Defend Trade Secrets Act Claims* ................................................. 44

      **A.**  *Violation of 18 U.S.C. § 1836 – Against the Deos, Merckling, Blankenship, and Thomasson* ................................................................................................ 44

      **B.**  *Injunctive relief under the DTSA -- 18 U.S.C. § 1836, et seq – Against the Deo Defendants* ................................................................................................ 52

      **C.**  *Misappropriation under the DTSA – Against the Deo Defendants* ......................... 53

   **IV.**   *Unfair Competition – Against the Deo Defendants* ................................................ 55

   **V.**   *Tortious Interference with Contracts, Business Relations, and Prospective* ............ 59

   *Economic Advantage – Against the Deo Defendants* ............................................... 59

   **VI.**   *Conversion – Against the Deo Defendants, Thomasson, Deo, and the Bank Defendants; Aiding and Abetting Conversion – Against Thomasson* ....................... 61

   **VII.**   *Unjust Enrichment Claims – Against Deo, Northshore, and Sunrise* ...................... 66

   **VIII.**   *Civil Conspiracy – Against the Deo Defendants* .................................................... 68

   **IX.**   *Fraud -- Against Deo and Jones* ........................................................................... 71

   **X.**   *Article 4-A of the New York UCC – against Flushing Bank* ................................... 73

   **XI**   *Negligence – Against Flushing Bank and Chase Bank; Unauthorized Payments – Against Flushing Bank* ........................................................................................... 77

   **XII.**   *Drawee Liability – Against Chase Bank* ............................................................... 80

   **XIII.**   *Violation of New York UCC §3-419 – Against Flushing Bank and Chase Bank* ..... 82

**XIV.**   *Professional Malpractice – Against Jones CPA LLP* ................................... 84

**XV.**   *Plaintiffs' Breach of Duty Claims* ................................................ 88

   **A.**   *Breach of Duty of Loyalty – Against Deo* ................................... 88

   **B.**   *Aiding and Abetting Breach of Duty of Loyalty – Against Thomasson* ................... 89

   **C.**   *Breach of Fiduciary Duty – Against Deo* ................................... 90

   **D.**   *Aiding and Abetting Breach of Fiduciary Duty – Against Thomasson* .................... 91

**XVI.**   *Accounting – Against Deo* ................................................ 92

**XVII.**   *Violation of New York Judiciary Law § 487 – Against Thomasson* .................... 93

**XVIII.**   *Piercing the Corporate Veil – Against Deo* ................................. 96

**XIX.**   *Violation of NY GBL § 349 – Against Deo* ................................. 98

**XX.**   *Permanent Injunction – Against Deo and Libertas Funding* ................. 100

**XXI.**   *Declaratory Judgement – Against Deo* ................................. 102

**XXII.**   *Contribution and Indemnification for Fraud, Bread of Fiduciary Duty, Breach of Loyalty and Conversion – Against Deo; Contribution and Indemnification for Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary Duty, Breach of Duty of Loyalty – Against Thomasson* ................................. 103

**XXIII.**   *Plaintiffs' Cross-Motions to Amend the Pleadings: Legal Standard* ................. 106

   **A.**   *Plaintiffs' First Motion to Amend* ................................. 110

   **B.**   *Plaintiffs' Second Motion to Amend* ................................. 114

      **1.**   *The Addition of Northshore and Sunrise as Defendants* ................... 114

      **2.**   *Allegations Pertaining to Piercing the Corporate Veil* ................... 116

      **3.**   *Violation of Judiciary Law § 487* ................................. 116

      **4.**   *Misappropriation* ................................................ 117

      **5.**   *Tortious Interference; Negligence and Conversion Against the Bank Defendants* .......................................................................118

      **6.**   *Fraud – Against Deo and Jones* ................................. 118

      **7.**   *Standing – Urrutia and Team Auto* ................................. 119

**CONCLUSION** ................................................ 119

**WICKS**, Magistrate Judge:

This is an action brought by various auto dealerships and their owners against their former business partners, bank and other accounting entities, alleging that Defendants engaged in various frauds and schemes to both pocket proceeds from car sales in violation of the Civil RICO Act, as well as misappropriating the dealerships' trade secrets in the car sales market at other competing dealerships. (*See generally*, ECF No. 65.) Specifically, Plaintiffs[1] bring this action against Defendants[2] for: (i) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); (ii) violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (iii) misappropriation of trade secrets; (iv) unfair competition; (v) tortious interference with contractual relations, business relations, and prospective economic advantage; (vi) unjust enrichment; (vii) conversion; (viii) fraud; (ix) breach of fiduciary duty; and (x) civil conspiracy. (*See generally*, ECF No. 65.)

Before the Court are the following pleadings motions filed by the parties:

(1) Defendant Libertas Funding's Motion to Dismiss for Failure to State a Claim (ECF No. 164);

---

[1] "**Plaintiffs**" are Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (the "Superb Plaintiffs"), 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, *individually and derivatively as a member of* Northshore Motor Leasing, LLC, Joshua Aaronson, *individually and derivatively as a member of* 189 Sunrise Hwy Auto, LLC, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC (collectively "IAG Plaintiffs"). IAG is a group of franchised new car dealerships in New York and New Jersey in which Plaintiffs allege David Baron had certain direct or family ownership. (ECF No. 65 at ¶ 81.)

[2] "**Defendants**" are Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp. (collectively the "Deo Defendants"), DLA Capital Partners Inc. ("DLA Capital"), Jones, Little & Co., CPA'S LLP, Thomas Jones, CPA, (collectively the "CPA Defendants"), and Flushing Bank, Libertas Funding LLC, and J.P. Morgan Chase Bank, N.A. (collectively the "Bank Defendants"). The Deo Defendants, DLA, CPA Defendants, and the Bank Defendants are collectively hereinafter the "Defendants."

(2) Defendant Jones and Jones, Little & Co. CPA's LLP's Motion to Dismiss for Failure to State a Claim (ECF No. 168)

(3) Defendant Flushing Bank's Motion to Dismiss for Failure to State a Claim (ECF No. 175)

(4) The Deo Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 176)

(5) Defendant Chase Bank's Motion to Dismiss for Failure to State a Claim (ECF No. 177)

(6) Plaintiffs' Motion for Leave to Amend the Pleadings and Opposition to Flushing Bank's Motion to Dismiss (ECF No. 178)

(7) Plaintiff's Motion for Leave to Amend the Pleadings and Oppose the Remaining Defendants' Motions to Dismiss (ECF No. 181).

For the reasons set forth below, the Deo Defendants' Motion to Dismiss (ECF No. 176) is **GRANTED** *in part* and **DENIED** *in part*, the Bank Defendants' Motions to Dismiss (ECF Nos. 164, 175 and 177) is **GRANTED** *in part* and **DENIED** *in part,* and the CPA Defendants' Motions to Dismiss (ECF No. 168) is **GRANTED**; and Plaintiffs' Motions for Leave to Amend (ECF Nos. 178 and 181) are **GRANTED** *in part* and **DENIED** *in part*.

## <u>BACKGROUND</u>

**I.**     *<u>Factual Background</u>*

**A.**     *<u>Ownership and Operations at Northshore and Sunrise</u>*

The following allegations are taken from the First Amended Complaint at ECF No. 65 and are assumed true for the purposes of the Motions to Dismiss. Plaintiffs Northshore Motor Leasing, LLC ("Northshore") and 189 Sunrise Hwy Auto, LLC ("Sunrise") each operate a retail used car dealership from their respective locations in Syosset and Amityville. (ECF No. 65 at ¶¶ 67-72.)  Chabrier, David Baron's estate, and Khan each have a one-third (⅓) membership interest in Northshore, whereas Deo was never an owner. (*Id*. at ¶¶ 48-52.) The Articles of the Northshore Operating Agreement hold that only a majority in interest of the members or the

7

members' unanimous consent can approve decisions, transfers, or assignments of membership
interests. (*Id*. at ¶¶ 53-56.) Similarly, Aaronson, David Baron's estate, J. Baron, and Raymond
Phelan each have a twenty-five percent (25%) membership interest in Sunrise, whereas Deo was
never an owner. (*Id*. at ¶¶ 57-62.) The Articles of the Sunrise Operating Agreement hold that
only a majority in interest of the members or the members' unanimous consent can approve
decisions, transfers, or assignments of membership interests. (*Id*. at ¶¶ 63-66.) Additionally,
David Baron had direct or familial ownership interests in IAG, a group of franchised new car
dealerships across New York and New Jersey. (*Id*. at ¶ 81.) Because of the relationship between
David Baron, Northshore, Sunrise, Chabrier, Aaronson, and J. Baron, IAG financially backed
much of the dealerships' operations. (*Id*. at ¶ 85.)

New York law requires a license issued by the Department of Motor Vehicles ("DMV")
to operate such a dealership. Chabrier holds this license as Northshore's applicant; Aaronson and
J. Baron hold it as applicants for Sunrise. (*Id*. at ¶¶ 67-72.) This DMV license lets dealerships
like Northshore and Sunrise issue both "dealer" license plates and those of New York State. The
DMV license holder is responsible for the protection and proper issuance of these plates. (*Id*. at
¶¶ 109-10.)

To purchase inventory, Northshore and Sunrise maintained a "Floor Plan" credit line with
Ally Bank. Under the Floor Plan, Ally Bank kept a lien on vehicles that Northshore and Sunrise
purchased through the Floor Plan until the dealerships repaid Ally Bank the amount initially
borrowed to buy those vehicles. (*Id*. at ¶¶ 77-85.) IAG and Ally Bank required monthly financial
reports from Northshore and Sunrise to justify continued Floor Plan provisions. (*Id*. at ¶ 127.) As
for the financing arrangements between lending institutions and the dealerships' customers,
Northshore and Sunrise placed liens upon the titles of any financed vehicles to protect those

lenders were the customer to default. (*Id*. at ¶¶ 99-101.) If the dealerships failed to perfect such a

lien, they would have to repurchase the lender's loan to the customer. (*Id*.) Customers could

"trade in" vehicles as part of a purchase, and Northshore and Sunrise had the responsibility of

satisfying any existing loan or lease balance on these traded-in vehicles. (*Id*. at ¶¶ 92-93.)

Northshore and Sunrise also issued extended warranties to customers, and, in doing so, accrued

fees due to third-party warranty companies and vendors. (*Id*. at ¶ 105.)

The failure to satisfy any of these loans or obligations could leave the dealerships with

civil and criminal liability as well as risking the loss of both the DMV licenses and the ability of

the licensees Chabrier, Aaronson, and J. Baron to obtain a license for any other dealership. (*Id*. at

¶¶ 96-97, 103-04.)  The unpaid loans also jeopardize the goodwill between the lenders and the

dealerships and the dealerships' reputation at large. (*Id*.) Until December 2022, both Northshore

and Sunrise employed Deo as the general manager of each dealership. (*Id*. at ¶¶ 74-76.) As

general manager, Deo was responsible for ensuring the dealership satisfies financing plans for

both its own inventory and its customers, providing accurate monthly financial reports for the

Floor Plan, repaying any vendor or warranty fees, completing the necessary documentation for

out-of-state customers, and accounting for vehicle titles. (*Id*. at ¶¶ 87-88, 94, 102, 106-08, 128-

29.)

### B.    *Deo's Activities at Northshore and* **Sunrise**

While Deo was the manager of Northshore and Sunrise overseeing these operations,

Plaintiffs allege he "took numerous actions for his own benefit, causing damage to Northshore

and Sunrise and the other IAG Plaintiffs and jeopardizing the [DMV] licenses." (*Id*. at ¶ 76.)

Using the Floor Plan, Deo purchased "many vehicles" on behalf of Northshore and Sunrise, but

then sold these vehicles for "less than their purchase price," allegedly incurring a deficiency of

over $3,000,000. (*Id*. at ¶¶ 86-89.) IAG had to pay Ally Bank this deficiency to cure the Floor

Plan's shortcomings. (*Id*.) In a subsequent inspection and audit of floor-planned inventory,

neither IAG nor Ally Bank could locate several vehicles, and other assets appeared to be

damaged. (*Id*. at ¶¶ 90-91.) Under Deo's management, Plaintiffs additionally allege the

dealerships failed to perfect liens in the financing process of "numerous [sold] vehicles," leaving

the dealerships (and, vicariously, IAG) with over $850,000 owed to the lenders as part of the

loan-repurchase agreements. (*Id*. at ¶¶ 102-04.) Plaintiffs assert Deo failed to have the

dealerships pay off the existing loan or lease balances "on numerous [t]rade-ins," leaving the

vehicles' prior owners liable on those debts despite their lack of ownership or possession of the

vehicle, and, while issuing extended warranties, Northshore and Sunrise, under Deo's control,

accrued $158,000 due to warranty companies and vendors. (*Id*. at ¶¶ 92-95.) Plaintiffs allege Deo

did not complete out-of-state customer documentation and "refused to account for the dealer

license plates and a number of unissued New York State license plates" designated for customer

use. (*Id*. at ¶¶ 111-12.) Deo sent unsold Northshore vehicles to various garages for repair but,

"[d]espite due demand," would not disclose the garages' locations or identities. (*Id*. at ¶ 113-14.)

At least one of the garages placed a lien on at least one of the missing vehicles resulting from

Deo's failure to satisfy that lien, and that garage has since sold the vehicle off in auction. (*Id*. at

¶¶ 115-17.)

    Plaintiffs assert that "Deo has been treating [the dealerships] and their respective assets as

his own." (*Id*. at ¶ 118.) Deo has allegedly taken for himself over $230,000 in customers' cash

deposits and has been issuing and signing checks from Northshore's bank accounts, despite

having no signatory authority under the Operating Agreement. (*Id*. at ¶¶ 63-66, 119-20.) For

example, Deo issued a $60,000 check from Northshore to his own corporation Car Buyers NYC,

Inc. (*id.* at ¶ 121), used Sunrise's American Express card to pay for personal expenses, and failed

to terminate over $300,000 of lender financing for canceled purchases. (*Id.* at ¶¶ 122-23.)

Plaintiffs allege Deo took these loans for himself (*id.* at ¶ 124), and note that Deo's son still

drives an $80,000 Maserati that IAG paid for but without the group's consent. (*Id.* at ¶ 125.)

126. In order for Deo to perpetuate his financial wrongdoings he needed the IAG Plaintiffs and

their Floor Plan lender, Ally Bank, to continue to provide the Floor Plan to Northshore and

Sunrise. (*Id.* at ¶ 126.) Deo enlisted the help of Thomas Jones and Jones CPA LLP to

"manipulate[]" and "falsif[y]" Northshore's and Sunrise's monthly financial reports "with an

intent to defraud the [sic] IAG Plaintiffs and Ally Bank." (*Id.* ¶¶ 130-35.) These alleged financial

fabrications induced IAG and Ally Bank to sustain the dealerships' Floor Plan. (*Id.* at ¶¶ 136-

37.) Deo then used these financial records to present himself as the true owner of Northshore and

secured a loan from Flushing Bank "and/or" Flushing Financial Solutions, all without the

consent or knowledge of Northshore's members. (*Id.* at ¶¶ 169-72.)

Shortly after David Baron's death in 2021, Deo, on behalf of Northshore, applied through

the Small Business Association ("SBA") for a $ 196,425.00 COVID-19 Economic Injury

Disaster Loan ("EIDL"), wherein he claimed to be a fifty percent (50%) owner of Northshore.

(*Id.* at ¶¶ 50, 142-43.) He also applied for an EIDL in Sunrise's name, claiming to be the

facility's full owner. (*Id.* at ¶ 145.) Between both applications, he allegedly evaded the true

owners' oversight. (*Id.* at ¶¶ 144, 146.) Finally, around November 15, 2022, purportedly

representing himself as a full owner of Northshore but without the knowledge of its members,

Deo agreed to sell $997,500.00 of the dealership's future receipts to Libertas in exchange for

$735,000 (hereafter, the "Libertas Funds"). (*Id.* at ¶¶ 148-50.) IAG confronted Deo, who claimed

to be a full owner of both Northshore and Sunrise. (*Id.* at ¶ 153.) A dispute arose over the

Libertas Funds, and Aaronson, under duress from retired and active police officers Blankenship and Merckling pressuring the Nassau County Police Department to arrest him, arranged to place the Funds into the trust account of Harry Thomasson, who represented himself as the attorney for Northshore, Sunrise, and Deo, pending the dispute's resolution. (*Id*.) Despite the IAG Plaintiffs' appeals that the Funds be kept in escrow, Thomasson "did as he pleased and immediately disbursed the Libertas Funds to Deo." (*Id*. at ¶ 163.) Libertas had levied counterclaims against the IAG plaintiffs in state court to recover the value of the future receipts or the Libertas Funds; those claims have been discontinued without prejudice for the purpose of raising them here. (*Id*. at ¶¶ 166-68.)

**C.**   ***Defendants' Fraudulent Scheme at* Superb Motors**

Since its inception in June 2021, Robert Anthony Urrutia was the President and majority shareholder of Superb Motors. (*Id*. at ¶ 173.) In addition to Superb, Urrutia owns Volkswagen of Freehold, Team-Mitsubishi Hartford, and Team Nissan of Pittsfield Massachusetts. (*Id*.) Shortly after their first meeting in November 2022, Deo and Urrutia entered into a Cross-Purchase Agreement, which stipulated that Deo, presenting himself as the sole owner of Northshore and Sunrise, would pay Urrutia $500,000 and in turn issue him a twenty-five percent (25%) interest in Northshore and Sunrise, and that Urrutia would grant to Deo a forty-nine percent (49%) interest in Superb. (*Id*. at ¶¶ 175-77.) In the Cross-Purchase Agreement, Deo made representations and warranties to Urrutia: (i) that he was the sole owner of Northshore and Sunrise, (ii) that he had the power and right to transfer Northshore's and Sunrise's assets, (iii) that he had no pending action against him, that he would deliver units of Northshore and Sunrise free of liens and encumbrances, and (iv) that none of his representations were materially false or omitted material fact. (*Id*. at ¶ 177.)

On November 21, 2022, after Blankenship and Merckling had intervened with the Nassau County Police to pressure Aaronson, Aaronson wired $735,000 into Thomasson's escrow account. (*Id*. at ¶ 181.) Deo then wired $300,000 to Urrutia on November 22 and another $200,000 on November 29, fulfilling the Cross-Purchase Agreement's $500,000 price. (*Id*. at ¶ 182.) Deo issued both these wires from his Car Buyers NYC corporation, "despite the fact those funds obviously came from Thomasson's escrow account." (*Id*.) Thomasson's "direct participation" and his release of the "stolen funds" from escrow enabled Deo to pay Urrutia funds fraudulently obtained from Libertas, and execute the Cross-Purchase Agreement on December 1, 2022. (*Id*. at ¶¶ 180, 183.)

After the Cross-Purchase Agreement, Urrutia and Deo executed a Shareholders' Agreement on December 22, 2022, pursuant to which Urrutia held a fifty-one percent (51%) interest in Superb while Deo owned a forty-nine percent (49%) interest. (*Id*. at ¶¶ 184-85.) The Shareholders' Agreement: (i) provided that Urrutia, as Superb's President, had the independent right to make all decisions regarding the dealership's day-to-day operations, or to delegate that authority at his discretion; and the right to hire or terminate all employees, save for the right to terminate a Shareholder (*id*. at ¶ 186); (ii) provided that "the grant of any mortgage, lien, or other security interest in the assets of Superb" required the written consent of at least a majority of the voting shares, and only the majority of voting shares could sell stock (*id*. at ¶¶ 187-88); (iii) granted Urrutia the "final say on hiring and firing of employees…, including but not limited to third party vendors, agents and/or contractors," "review and final approval of financing agreements with lending institutions" for Superb to use in financing vehicle sales, and "supervision and complete control of the accounting department of Superb," including "sole check authorization and sole control of bank accounts owned by Superb." (*Id.* at ¶ 189.) By

contrast, Deo as a minority shareholder could only propose who would serve as General Manager of the day-to-day operations, whom Urrutia would either approve or reject. (*Id*. at ¶ 190.)

Superb, like Northshore and Sunrise, also operated with the help of a bank that provided floor plan financing, where vehicles available for sale at the dealership served as collateral for the plan. (*Id*. at ¶ 197.) The bank that issues this financing arrangement also perfects a security interest in the vehicle, and the dealership must, with limited exceptions, make that financed vehicle present and available for sale at the dealership. (*Id*. at ¶ 198.) Dealerships that use one vehicle as collateral for multiple loans and thus receive twice the funding for that single asset engage in an illegal practice known in dealership lexicon as "double flooring." (*Id*. at ¶ 199-200.) Superb set up its floor plan agreement with Nissan Motor Acceptance Corporation ("NMAC"). (*Id*. at ¶ 199.) Superb facilitated these operations and others with its "unique DMS [(Dealer Management System)] system" Tekion, "specifically customized for Superb." (*Id*. at ¶ 228.) Urrutia taught Deo how to manage Superb with Tekion and used the DMS "to streamline dealership operations, inventory management, cash flow management, and reporting features that identify areas of improvement." (*Id*. at ¶ 229; 38-2 at 1, 38.) Urrutia spent over $120,000 to weave Tekion into Superb's business model, claiming it "contained the blueprint for Urrutia's success at his dealerships" because he knew how to give his business "a unique competitive advantage" through the DMS' features. (*Id*. at ¶¶ 231-32, 265.)

Urrutia partnered with Bobby Clarke ("Clarke") and his radio station Irie Jam, 93.5 FM, in $1.5 million worth of advertising "to over 2 million listeners in the Caribbean community," generating a "substantial customer list[.]" (*Id*. at ¶¶ 237-38.) "Due to the unique nature of Urrutia's partnership with Clarke," this customer list could not possibly be reverse engineered or

independently generated without also substantially investing in Irie Jam. (*Id.* at ¶ 239.) Urrutia went to great efforts in creating both this advertising list and Superb's business model premised on the Tekion DMS, using his decades of experience in the automotive industry, relationships forged in that industry, "and the unique know-how he has in how to successfully operate automobile dealerships." (*Id.* at ¶ 260.) Superb "took many reasonable measures to keep its confidential information secret" by restricting this information's access to only employees who were required to maintain its confidentiality in a computer system secured with firewalls, usernames, and passwords. (*Id.* at ¶ 266.)

About five days after Deo warranted in the Cross-Purchase Agreement that he was the sole member of Northshore and Sunrise, those dealerships' true owners brought action against Deo in New York Supreme Court, Nassau County, alleging "financial improprieties and massive fraud…strikingly similar to the conduct complained of with respect to Superb." (*Id.* at ¶¶ 191-93.) To this end, Plaintiffs allege Deo misrepresented not only his member status of the dealerships, but also whether he anticipated or had pending litigation against him and whether he had the power and right to transfer and deliver shares of the dealerships to Urrutia and Superb. (*Id.* at ¶¶ 194-95.) In preparation to abscond with Superb's earnings and assets, Deo made further misrepresentations to Flushing Bank, presenting himself as Superb's sole owner to open a bank account under Superb's name in blatant violation of the Shareholders' Agreement, which delegated authority over Superb's accounts and checks solely to Urrutia. (*Id.* at ¶ 209-11.)

Plaintiffs allege Flushing Bank participated in this scheme by letting Deo illicitly open the Superb account "when [the bank] knew that he had no authority to do so," since Flushing apparently "was in possession of documentation indicating that Deo had no such authority." (*Id.* at ¶ 315.) Plaintiffs assert Deo deposited approximately $455,000 of customer payments into this

unauthorized account only to transfer those payments into his own accounts and, "upon

information and belief," those of Thomasson, Blankenship, Merckling, Jones, S. Deo, and DLA

Capital owner Michael Laurie (*id*. at ¶¶ 212-15), and that Deo logged cash payments into

Superb's DMS but pocketed those funds for himself – and even had Merckling and Blankenship

pilfer Superb's safe. Plaintiffs contend this cash scheme further cost Superb over $400,000. (*Id*.

at ¶¶ 216-19.) In further contravention of his inability to authorize checks as a minority

shareholder under the Shareholders' Agreement, Deo signed and issued multiple checks from

Superb's Chase Bank accounts under Urrutia's control, made payable to Thomasson, Laurie,

Northshore, and other entities owned by Deo. (*Id*. at ¶¶ 220-21.)[3] Plaintiffs assert Chase

additionally permitted "Deo to process checks from Superb's bank account when it knew that he

had no authority to sign checks," because "Deo was not an authorized signatory on Superb's

account at Chase Bank." (*Id*. at ¶ 316.)

Plaintiffs further allege Merckling and Blankenship used their power as "former or active

police officers" to encumber an investigation into Deo when Urrutia sought to have police

remove his former partner when their relationship deteriorated. (*Id*. at ¶¶ 205, 243; 38-2 at 55-

56.) S. Deo managed and controlled the Flushing Bank account (*id*. at ¶ 241), and Thomasson as

counsel endowed the operation with a veneer of legitimacy and conspired with Deo and agreed

to his directives. (*Id.* at ¶¶ 247-50.) All four of these Deo Defendants are alleged to have aided

and abetted Deo by delivering the unauthorized checks to banks for payment. (*Id*. at ¶ 254.)

Moreover, Laurie used his business DLA Capital and its connections to help Deo open the

Flushing account, with knowledge that this breached the Shareholders' Agreement "because he

---

[3] Plaintiffs contend Urrutia made this discovery during a top-down audit of Superb, but do not proffer
specific check numbers or financial statements in exhibit. (*Id*. at ¶ 221.)

had sat in on meetings with Urrutia and Deo and knew that Urrutia… [held] sole check authorization and sole control of all Superb bank accounts." (*Id*. at ¶ 244.) Jones also "knew Superb was operating at a loss," yet "nonetheless altered journal entries" to make it seem as though Superb was profitable, procuring Urrutia's ill-gotten confidence in Deo. (*Id*. at ¶ 245.) Laurie and Jones are alleged to have "enabled wire fraud" by submitting "false tax returns, false bank applications, and false loan applications[.]" (*Id*. at ¶ 255.)

On July 31, 2023, NMAC contacted Superb's Chief Operating Officer ("COO") Bruce Novicky ("Novicky") to inform the dealership that it discovered the vehicles NMAC had been financing served as collateral for additional loans from another bank and thus were illegally double-floored, costing Superb $760,868.75 in default to NMAC. (*Id*. at ¶¶ 199-201.) This Court found that Superb had demonstrated irreparable harm caused by the Defendants' conduct, notably in the termination of the floor plan between Superb and NMAC. (*Id*. at ¶ 204) (citing to ECF No. 55, Memorandum & Order on Preliminary Injunction). Deo, S. Deo, Thomasson, Blankenship, Merckling, Laurie, and Jones effectuated the double-flooring scheme by "filling out applications for financing and making material misrepresentations in said applications[.]" (*Id*. at ¶ 203.)

After the double-flooring incident came to light, Urrutia ordered Novicky on August 3, 2023 to conduct a physical inventory at Superb to ensure all financed vehicles were present at the dealership as per the floor plan, and that all vehicles entered into the DMS were on site, as well. (*Id*. at ¶ 205.) The inventory review found that Superb was missing "over one hundred (100) vehicles," even though these vehicles were listed on both the DMS and the general ledger. (*Id*. at ¶ 206.) Novicky confronted Deo, who "demonstrably lied as to certain vehicles" and "failed to adequately explain" others. (*Id*.) For example, Deo said a particular vehicle was sold, but the

customer listed on the purchase denied buying that vehicle, and Deo could not supply documents of the alleged sale. (*Id.* at ¶ 207.) Urrutia subsequently removed Deo from Superb and initiated a top-down audit, the findings of which "included incontrovertible proof of Deo's duplicity and clear breaches of his fiduciary obligations." (*Id.* at ¶ 208.) The top-down audit "soon made Deo's intentions very clear." (*Id.* at ¶ 225.)

During his tenure at Superb, Deo had been building up his own dealerships – GCC Syosset, GCC Sunrise, GGC LIC, GCC Roslyn, and GCC Smithtown – all under the Gold Coast Motors Automotive Group. (*Id.* at ¶ 226.) There, Deo put Urrutia's own "dealership processes and know-how" to use and implemented the "unique, confidential, and proprietary" Tekion DMS and "the exact customization used by Superb" in his own dealerships. (*Id.* at ¶¶ 227-28, 230, 233-34.) Plaintiffs further allege Deo poached Superb employees for the Gold Coast dealerships and trained them in Tekion's use. (*Id.* at ¶¶ 235-36.) Deo and these employees used their time at Superb and familiarity with its customer list to redirect Caribbean listeners of Irie Jam to Gold Coast dealerships. (*Id.* at ¶¶ 237-40.) As such, Plaintiffs allege Deo effectively and illicitly channeled Urrutia's decades of experience, the Irie Jam customer list, and the Tekion DMS customized for Superb into his own Gold Coast dealerships. (*Id.* at ¶ 258-60.)[4]

## II.    *Procedural History*

Plaintiffs originally filed their complaint on August 17, 2023.  (ECF No. 1.)  Plaintiffs amended, by subsequently filing the operative Amended Complaint (ECF No. 65) on October 13, 2023, alleging: (i) RICO violations,  (ii) DTSA violations, (iii) misappropriation of trade secrets;

---

[4] Plaintiffs claim Defendants are currently benefitting from the confidential information Urrutia developed and sourced over thirty years in the automobile dealership industry, and since 2020, when he came to own his first dealership, which Defendants stole from the Superb Plaintiffs. (*Id.* at ¶ 258.) This information includes Superb's customer lists, Urrutia's contacts, including Tekion and Superb's customized DMS system from Tekion, and other proprietary information. (*Id.* at ¶ 269.)

(iv) unfair competition; (v) tortious interference with contractual relations, business relations,

and prospective economic advantage; (vi) unjust enrichment; (vii) conversion; (viii) fraud; (ix)

breach of fiduciary duty; and (x) civil conspiracy. (*Id*. at ¶ 4.)

Specifically, Plaintiffs seek damages and injunctive relief related to Defendants' alleged:

> unlawful conspiracy and scheme to engage in wire fraud by, among other things, signing checks they had no authority to sign, opening bank accounts by providing false and misleading information to financial institutions and depositing into those accounts, in the name of Superb Plaintiffs but controlled by Defendants, checks made payable to the Superb Plaintiffs, then to be diverted to Defendants' own use, improper poaching of Superb Plaintiffs' employees, and misappropriating Superb Plaintiffs' confidential information and trade secrets.

(*Id*.)

Plaintiffs' Amended Complaint asserts a catalogue of claims, alleging no less than 52

causes of action:

- (1) Violation of RICO, 18 U.S.C. § 1962 – Against All Defendants
- (2) Conspiracy Under 18 U.S.C. § 1962(d) – Against All Defendants
- (3) Injunctive Relief Under RICO, 18 U.S.C. § 1964(a) – Against Deo Defendants
- (4) Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. §1836 – Against Deo, S. Deo, Merckling, Blankenship, and Thomasson
- (5) Injunctive Relief under the DTSA (18 U.S.C. § 1836, *et seq.* – Against Deo Defendants
- (6) Misappropriation – Against Deo Defendants
- (7) Unfair Competition – Against Deo Defendants
- (8) Tortious Interference with Contracts, business relations, and prospective economic advantage – Against Deo Defendants
- (9) Conversion – Against Deo Defendants
- (10) Civil Conspiracy – Against Deo Defendants
- (11) Professional Malpractice – Against Jones CPA LLP
- (12) Fraud – Against Deo and Jones
- (13) Permanent Injunction – Against Libertas Funding
- (14) Article 4-A of the New York UCC – Against Flushing Bank
- (15) Negligence – Against Flushing Bank
- (16) Declaratory Judgment – Against Deo
- (17) Declaratory Judgment –Against Deo
- (18) Conversion – Against Deo
- (19) Unjust Enrichment – Against Deo
- (20) Breach of Duty of Loyalty – Against Deo

- (21) Breach of Fiduciary Duty – Against Deo
- (22) Permanent Injunction – Against Deo
- (23) Conversion – Against Deo
- (24) Unjust Enrichment – Against Deo
- (25) Breach of Duty of Loyalty – Against Deo
- (26) Breach of Fiduciary Duty – Against Deo
- (27) Permanent Injunction – Against Deo
- (28) Contribution and Indemnification for Fraud, Breach of Fiduciary Duty, Breach of Loyalty and Conversion – Against Deo
- (29) Conversion – Against Thomasson
- (30) Aiding and Abetting Conversion – Against Thomasson
- (31) Contribution and Indemnification for Conversion – Against Thomasson
- (32) Contribution & Indemnification for Aiding & Abetting Conversion – Against Thomasson
- (33) Contribution and Indemnification for Aiding and Abetting Fraud – Against Thomasson
- (34) Aiding and Abetting Breach of Fiduciary Duty – Against Thomasson
- (35) Contribution and Indemnification for Aiding and Abetting Breach of Fiduciary Duty – Against Thomasson
- (36) Aiding and Abetting Breach of Duty of Loyalty – Against Thomasson
- (37) Contribution and Indemnification for Aiding and Abetting Breach of Duty of Loyalty – Against Thomasson
- (38) Unjust Enrichment – Northshore
- (39) Piercing the Corporate Veil – Against Deo
- (40) Unjust Enrichment – Against Sunrise
- (41) Piercing the Corporate Veil – Against Deo
- (42) Violation of NY GBL § 349 – Against Deo
- (43) Accounting – Against Deo
- (44) Accounting – Against Deo
- (45) Violation of New York Judiciary Law § 487 – Against Thomasson
- (46) Violation of New York Uniform Commercial Code §3-419 –Against Flushing Bank and Chase Bank
- (47) Conversion – Against Flushing Bank and Chase Bank
- (48) Negligence – Against Flushing Bank and Chase Bank
- (49) Unauthorized Payments – Against Flushing Bank
- (50) Drawee Liability – Against Chase Bank
- (51) Professional Malpractice – Against Jones CPA LLP
- (52) Fraud – Against Deo and Jones

(*See generally*, ECF No. 65.)

On October 17, 2023, the parties consented to the undersigned's jurisdiction for all

purposes. (ECF No. 70.) Following the filing of the Amended Complaint, Defendants filed pre-

motion letters for the dismissal motions (*see* ECF No. 73; 101, 114, 126, and 127).   After various extensions to the briefing schedule (Electronic Order dated Mar. 3, 2024 and Apr. 10, 2024), all motion papers were finally filed by May 15, 2024. (ECF Nos. 164, 168-171,175-194.)

On May 14, 2024, Plaintiffs filed a motion for leave to amend the pleadings (ECF No. 178, 181), which Defendants vehemently oppose. (*See* ECF Nos. 184, 187-189, 191.) Specifically, Plaintiffs' proposed Third Amended Complaint ("TAC") seeks to further amend the claims as follows:

- Counts 16, 17, 18, 21, 23, 26, and 42: The TAC adds the prerequisite demand to the derivative claims and adds the necessary plaintiffs and Northshore and Sunrise as defendants. (*Id*. at 38-39.)

- Count 22: In the TAC, Northshore now asserts the corporate waste claim. Plaintiffs further argue that it is "nonsensical" to dismiss Chabrier's claim against Deo, as Deo's mismanagement of Northshore cost Chabrier the DMV license. (*Id*. at 39.)

- Count 27: Like Count 22, Sunrise now asserts the corporate waste claim, and Plaintiffs argue that Aaronson's and J. Baron's claims have merit because Deo's mismanagement of Sunrise cost those Plaintiffs the DMV license. (*Id*. at 40.)

- Count 28: *First*, the TAC asserts the prerequisite demand and adds Northshore as a nominal defendant. (*Id*. at 40.) *Second*, Plaintiffs note that Libertas Funding has discontinued its claim against IAG Plaintiffs in state court to pursue the claim in this Court; thus in the interest of judicial economy, the claim should stand. (*Id*. at 41.)

- Counts 29 to 37: In TAC, Counts 29, 20, 34, and 36 are now brought against Northshore directly, and Counts 31, 32, 33, and 35 as standard indemnification claims "should be successful against any indemnified party." (*Id*. at 41.)

- Counts 38 and 40: The TAC alleges a contractual relationship between IAG and Northshore and Sunrise, such that an agreement obligated the former to cover the duties of the latter. (*Id*. at 42.)

- Counts 39 and 41: The TAC omits these counts. (*Id*. at 42-43.)

- Counts 43 and 44: The TAC addresses the prerequisite demand and joins Northshore and Sunrise as nominal defendants.  Moreover, it alleges that Deo owed Northshore and Sunrise accurate accounting through his role as manager. (*Id*. at 43.)

- Count 45: The FAC "adequately allege[s]" Thomasson's knowledge of the scheme surrounding the Libertas Funds, and, therefore, Plaintiffs assert he is guilty of lying in open court when he claimed there was nothing wrong with using his attorney escrow account to transfer the funds from IAG Plaintiffs to Deo.  (*Id*. at 44.)

- Count 52: While the FAC shows Aaronson, a member of Sunrise, had obligations between IAG and Northshore and Sunrise, the TAC goes into further detail about that relation, such that IAG needed accurate information to continue the Floor Plan. (*Id*. at 46.) Further, Aaronson is an executive at IAM, and IAM manages all the IAG Plaintiffs. (*Id*.)  Thus, Plaintiff contend the IAG Plaintiffs are not "merely unaffiliated guarantors" of the obligations between Ally and Northshore and Sunrise; rather, the IAM "umbrella" keeps these parties in privity.  (*Id*. at 46.)

- Count 13: Plaintiffs have changed this to Declaratory Judgment, and it is Count 15 in the TAC seeking relief for Northshore and Sunrise only.  (*Id*. at 47.)

- Urrutia and Team Auto's Standing: Between the TAC and FAC, Plaintiffs argue they have made a case for Urrutia's and Team Auto's standing. Plaintiffs assert Urrutia has standing because he is "President of Superb Motors" and "has been harmed by the Defendants' conduct." (*Id*. at 48-49.)  Team Auto has standing because it is an auto wholesaler that owned 13 cars Deo allegedly absconded with.  (*Id*. at 49.)

- Misappropriation: Plaintiffs rehash much of the same arguments they proffered for the DTSA claim.  (*Id*. at 49-52.)

- Unfair Competition: Plaintiffs assert that Defendants' misappropriation of trade secrets and employees sufficiently demonstrates this claim.  (*Id*. at 53.)  Furthermore, Plaintiffs maintain that this claim just needs to show the misappropriation of "the fruits of Superb Plaintiffs' labor." (*Id.* at 53.)

- Tortious Interference: Plaintiffs reason that, because they had a business relation with NMAC and Deo "intentionally interfered" with that relation to harm Superb and caused harm, they have successfully stated this claim.  (*Id*. at 55.)

- Conversion: Plaintiffs argue that IAG Plaintiffs have a conversion claim over the Maserati and Libertas funds, despite Northshore's rightful ownership of those assets and their unfulfilled, insistent demands on return.  (*Id*. at 56.)  As for the Superb Plaintiffs, the FAC sufficiently alleges conversion regarding the Floor Plan inventory (over 100 missing cars), the missing customer payments, and the misappropriated trade secrets.  (*Id*. at 57.)

- Negligence and Conversion Against Chase: Plaintiffs contend that their claim here is not preempted because it only has to do with conduct preceding and following the processing of checks.  (*Id*. at 58.)

- Civil Conspiracy: Plaintiffs claim that their two illustrations of fraud (double flooring and forged instruments to open a Superb account in Flushing Bank) coupled with the allegations of the enterprise and their knowing participation towards the fraudulent conduct sufficiently constitute a civil conspiracy.  (*Id*. at 59-60.)

- Fraud: Since Jones could only commit fraud "by and through" Deo, Plaintiffs believe these allegations properly cover both Defendants.

(*Id*. at 60-61.)

## DISCUSSION

### I.   *Defendants' Motions to Dismiss: Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A claim has facial plausibility when the plaintiff pleads sufficient facts allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556–57 (internal citations omitted)).

When considering a motion to dismiss, the Court assumes all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or

23

"threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer

only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555. More is required. *See id.*; *see also Rozz v. Town of*

*Hempstead*, No. 20-CV-1812 (JMA) (AYS), 2023 U.S. Dist. LEXIS 56996, at *9-10 (E.D.N.Y.

Mar. 31, 2023) (citing *Iqbal* and *Twombly* as the standard cases for deciding a motion to

dismiss); *Solomon v. Flipps Media, Inc*., No. 22-cv-5508 (JMA) (JMW), 2023 U.S. Dist. LEXIS

176480, at *3-4 (E.D.N.Y Sept. 30, 2023) (same).

## II.  *Plaintiffs' RICO Claims*

"RICO provides a civil remedy to persons injured in their business or property by a

violation of the statute." *Alkhatib v. New York Motor Grp. LLC*, No. CV-13-2337 ARR, 2015

WL 3507340, at *8 (E.D.N.Y. June 3, 2015), *report and recommendation adopted in part*, No.

13CV2337 (ARR)(SMG), 2016 WL 5660372 (E.D.N.Y. Sept. 30, 2016) (citing 18 U.S.C. §

1964(c)); *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 173 (2d Cir. 2004)

("*Satinwood*") (quoting 18 U.S.C. § 1962(c)) ("The RICO statute makes it unlawful 'for any

person employed by or associated with any enterprise to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'").

As stated, Plaintiffs assert RICO and RICO conspiracy claims pursuant to 18 U.S.C. §§ 1961(c)

and (d) against all Defendants – distinguished by group as the Deo Defendants, DLA, the CPA

Defendants, and the Bank Defendants.

"To state a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18

U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the

violation of § 1962." *Jordan v. Pierre*, No. 18-CV-8528 (JGK), 2021 WL 2581444, at *3

(S.D.N.Y. June 22, 2021), *aff'd sub nom. Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335 (2d

Cir. Oct. 31, 2022) (quoting *De Falco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). "A defendant may be liable for violating RICO if the defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in the affairs of an enterprise involved in interstate commerce." *Alkhatib*, 2015 WL 3507340, at *8.

### D.  *Violation of RICO, 18 U.S.C. § 1962 – Against All Defendants*

"A RICO enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Alkhatib*, 2015 WL 3507340, at *9 (quoting 18 U.S.C. § 1961(4)). "An 'association-in-fact' enterprise must have 'at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Id.* (quoting *Boyle v. United States,* 556 U.S. 938, 956 (2009) ("*Boyle*")); *see also United States v. Turkette,* 452 U.S. 576, 583 (1981) (an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct.").

The Supreme Court's decision in *Boyle* "establishes a low threshold for pleading such an enterprise." *Delgado v. Ocwen Loan Servicing, LLC,* 2014 WL 4773991, at *16 (E.D.N.Y. Sept.24, 2014) (internal citations omitted). "Formal hierarchy, role differentiation, regular meetings, or established procedures are not required; rather, an informal group may constitute an enterprise as long as 'the group ... function[s] as a continuing unit and remain[s] in existence long enough to pursue a course of conduct.'" *Alkhatib*, 2015 WL 3507340, at *9 (quoting *Boyle,* 556 U.S. at 948). Relevant here:

> A RICO enterprise must have an ascertainable structure distinct from the pattern of racketeering activity in which its members engage. Nevertheless, the evidence used to prove the pattern of racketeering activity, and the evidence establishing an enterprise may in particular cases coalesce. Finally, the enterprise as alleged must be distinct from the person or persons alleged to be conducting the affairs of the enterprise. This requirement

is satisfied when an owner or employee of a corporation is the person alleged to be conducting the affairs of the enterprise and the enterprise is the corporation itself.

*Alkhatib*, 2015 WL 3507340, at *9 (internal citations omitted) (cleaned up); *see also Palatkevich v. Choupak*, No. 12 CIV. 1681 (CM), 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) (emphasis in original) ("[W]ithin the meaning of § 1962(c), a *natural person* named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent; in such a case, the distinctness requirement is met. But where a *corporate entity* is named as the defendant 'person,' it is not distinct from any alleged 'enterprise' consisting of that corporate defendant together with related companies, employees, or agents.").

RICO liability does not extend to all "persons" associated with an enterprise but is limited to those who 'conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity is defined as "(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical ... which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code[,]' including 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud)." *Jordan v. Pierre*, No. 18-CV-8528 (JGK), 2021 WL 2581444, at *3 (quoting 18 U.S.C. § 1961(1)).

A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity enumerated in § 1961(1) and (2) committed within a ten-year period. 18 U.S.C. § 1961(5); *Alkhatib*, 2015 WL 3507340 at *11; *GICC Cap. Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 465 (2d Cir. 1995). Predicate acts are comprised of at least two racketeering activities, both related to each other and proximate to the enterprise that an enterprise member engages in. *U.S.*

*v. Delgado*, 972 F.3d 63, 79 (2d Cir. 2020). To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and they amount to or pose a threat of continued criminal activity.'" *Alkhatib*, 2015 WL 3507340 at *11 (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989))). The predicate acts cannot be isolated or sporadic instances. *U.S. v. Indelicato*, 865 F.2d 1370, 1383 (2d. Cir. 1989).

Predicate acts must have both horizontal relatedness, wherein the acts are related to each other, and vertical relatedness, wherein the acts are related to the whole enterprise. *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017); *U.S. v. Cain*, 671 F.3d 271, 284 (2d Cir. 2012). Vertical relatedness means either (1) the defendant was able to commit the acts because of his control over or position in the enterprise, or (2) the act is related to the enterprise's activities. *U.S. v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010). As to horizontal relatedness, the activities of a business whose purpose is racketeering, like an organized crime family, are horizontally related if the activities are simply connected to that enterprise. *U.S. v. Cappola*, 671 F.3d 220, 243 (2d Cir. 2012). However, where the enterprise is primarily a lawful business, its predicate acts must evince interrelatedness among themselves through "similar purposes, results, participants, victims, or methods of commission." *H.J.*, 492 U.S. at 240. The Second Circuit has adopted the legitimate business / illegitimate business distinction for the purposes of establishing continuity, as well: where an otherwise legitimate business engages in illicit predicate acts, those acts must be sufficiently related to each other for there to be a threat of such conduct in the future. *Reich*, 858 F.3d at 61-62.

"The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008). Regarding close-ended continuity, the Second Circuit looks for crimes extending at least over two years. *Reich*, 858 F.3d at 60; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). Courts can find open-ended continuity where the illicit predicate acts are the regular way of operating a particular business, even if the nature of that business is lawful. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999).

Relevant here, 18 U.S.C. §§ 1341 and 1343 prohibit any person engaging or intending to engage in a fraudulent scheme or planning to use fraud to illicitly gain another's money or property, from using the mail or interstate or foreign wire services to further or execute that scheme. 18 U.S.C. §§ 1341, 1343; *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488 (2d Cir. 2014). Mail and wire fraud require "(1) a scheme to defraud, (2) money or property that is the object of the scheme, and (3) use of wires [or mail] to further that scheme." *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 137 (2d Cir. 2018). The scheme to defraud is a question of a fair and civil exchange (or lack thereof) in business transactions; the monies or property at the center of the scheme must be the victim's own; and the use of wires or mail must further the fraudulent scheme "as conceived by the perpetrator at the time." *Bayshore Capital Advisors, LLC v. Creative Wealth Media Finance Corp.*, 667 F.Supp.3d 83, 124-25 (S.D.N.Y. 2023) (internal quotations and citations omitted).

Claims of fraud are subject to a heightened pleading standard. *Alkhatib*, 2015 WL 3507340 at *11. Where the RICO claims allege fraudulent predicate activity, courts require that plaintiffs plead with particularity in accordance with Rule 9(b). *Saintwood, Inc.*, 385 F.3d at 178; Fed. R. Civ. P. 9(b). To this end, plaintiffs must identify: (1) the specific content or statements of the alleged fraudulent communication, (2) the speaker, (3) where and when the statements were made, and (4) *why* the content or statement is fraudulent. *Spool*, 520 F.3d at 185. That is, there must be a factual basis manifesting a strong inference of fraudulent intent. *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). Plaintiffs can establish that strong inference either by proffering facts showing the defendant had motive and opportunity to defraud, or by proffering strong circumstantial evidence of the defendant's knowing misbehavior or recklessness. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006). Notably, in the Second Circuit, if the plaintiff alleges the defendant used wire or mail to further a fraudulent scheme, while *not* alleging that the wire or mail *itself* contained anything fraudulent, then the plaintiff must only plead with specificity the circumstances of the scheme at large, and not the "'temporal or geographic particulars of each mailing or wire transmission'" furthering that scheme. *Angermeir v. Cohen*, 14 F.Supp.3d 134, 145-46 (S.D.N.Y. 2014) (quoting *In re Sumitomo Copper Litig.* 995 F.Supp. 451, 456 (S.D.N.Y. 1998)).

In order to hold a defendant civilly liable under RICO, he or she must be demonstrated to have participated in the conduct of the charged enterprise's affairs through a pattern of racketeering activity. *Alkhatib*, 2015 WL3507340 at *14. To establish that a defendant committed mail or wire fraud, the plaintiff must allege "facts giving rise to a strong inference that the defendant knew the statements to be false and intended to defraud the plaintiff at the time they were made." *Id.* If a plaintiff alleges that a defendant participated in conducting the

affairs of an enterprise, the plaintiff must allege that the defendant "participated in the operation

or management of the enterprise itself." *Id.* (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 183

(1995) ("*Reves*")).  For an individual to be subject to RICO liability, they "must have some part

in directing [the enterprise's] affairs" but that is not to say that only those with primary

responsibility will be culpable; RICO liability may very well apply to "lower rung participants in

the enterprise who are under the direction of upper management." *Id.* (quoting *Reves*, 507 U.S. at

179, 184).  However simply taking direction and performing tasks helpful or necessary to the

enterprise's purpose "without more, is insufficient to bring a defendant within the scope of §

1962(c)." *Diaz*, 176 F.3d at 92 (citing *United States v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994)).

An enterprise must be distinct from the person or persons alleged to be conducting the

affairs of the enterprise, such as when an owner or employee of a corporation is the person

alleged to be conducting the affairs of the enterprise.  *Alkhatib*, 2015 WL 3507340 at *9.  A

complaint satisfies RICO's distinctness requirement if it alleges an enterprise comprised of a

corporation and names as defendants "natural persons who own or work for the corporation and

participated in the corporation's affairs through a pattern of racketeering."  *Id.* at *10.

For a plaintiff to have standing to pursue RICO claims, the RICO violation must be the

proximate cause of the plaintiff's injury, meaning there was a direct relation between the

purported injury and supposed misconduct.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S.

258, 268 (1992); *Nygard v. Bacon*, No. 19-CV-1559 (LGS)(KNF), 2021 WL 4312581, at *10

(S.D.N.Y. Mar. 31, 2021); *In re Conte*, at *32-33.  Moreover, the RICO violation must be the

but-for cause of the injury, "meaning that but for the RICO violation, he would not have been

injured." *Zou v. Han*, 2024 WL 4450781 at *17 (E.D.N.Y. 2024) (quoting *Alix v. McKinsey &

Co.*, 23 F.4th 196, 203 (2d Cir. 2022)).

Here, as to the Superb Plaintiffs' allegations against the Deo Defendants, the Court finds Amended Complaint adequately alleges wire fraud. Deo and Urrutia, the President of Superb Motors Inc., both executed a shareholder's agreement, with Urrutia as the majority shareholder (51% interest) and Deo as minority shareholder (49% interest). *See* ECF No. 65 at ¶¶ 184-85. Urrutia the majority shareholder had, among other responsibilities, the power to review and approve financing agreements with lenders, as well as control over Superb's accounting department. *Id.* at ¶ 189. Conversely, Deo as a minority shareholder could only propose who would serve as General Manager of the day-to-day operations, whom Urrutia would either approve or reject. *Id.* at ¶ 190. However, Deo signed multiple checks from Superb's Chase bank accounts under Urrutia's control; none of the checks were authorized, but Deo signed each of them in contravention to his limited power under the shareholder agreement, inferably between the time of Urrutia's and Deo's signing of the shareholder agreement, effective December 22, 2022, and up to or before August 3, 2023, when Superb's accounting uncovered Deo's activity. *Id.* at ¶¶ 185, 199, 205, 220-21, 640.

Thus, the Complaint facially charges the defrauder (Deo), the content of his defrauding (the forged checks), where and when the defrauding occurred (between December 2022 and August 2023, at Superb's accounts in Chase), and why the activity was fraudulent (the unauthorized signing of checks in breach of the shareholder agreement). *See e.g., BC Liquidating, LLC*, 519 B.R. at 423 (finding mail and wire fraud alleged where defendant concealed transfers, made misrepresentations to other people and paid off other defendants to conduct false audits); *see also Ideal Steel Supply Corp. v. Anza*, 02 Civ. 4788 (RMB) (AJP), 373 F.3d 251, 264 (S.D.N.Y. July 2, 2004) (stating that the Second Circuit has found that "mail fraud

based upon the mailing of fraudulent sales tax returns constitutes a predicate act" under RICO).

Accordingly, the Court finds that mail and wire fraud have been adequately pled.

The Deo Defendants contend that the Complaint does not properly illustrate a RICO

enterprise because it fails it identify the structure, roles, and activities of the alleged enterprise

and the distinct participation of each defendant in it, and, that the purpose is not clear. *See* ECF

No. 176-1 at 5-6. However, this contention is unavailing because "an established hierarchy is not

essential to the existence of an enterprise." *Alkhatib*, 2015 WL 3507340 at *10 quoting *Boyle v.

U.S.*, 556 U.S. 938, 948 (2009)).  Plaintiffs' allegations describe actions taken by each of the

individual Deo Defendants from "which their roles in the enterprise may be logically inferred."

*Id.*

The Deo Defendants further contend that the Complaint's "broad, conclusory allegations"

of fraudulent misrepresentations lack the necessary specificity.  *See* ECF No. 176-1 at 4.

However, the Court finds Plaintiffs' Complaint "describes in exhaustive detail a sophisticated

scheme" comprising all four of the Deo Defendants engaged in wide-ranging schemes to defraud

the Superb Plaintiffs.  *See* ECF No. 65 at ¶ 253; *see Alkhatib*, WL 3507340 at *11. Shortly after

their first meeting in November 2022, Deo and Urrutia entered into a Cross-Purchase

Agreement, which stipulated that Deo, presenting himself as the sole owner of Northshore and

Sunrise would pay Urrutia and issue him twenty-five percent interest in Northshore and Sunrise,

and that Urrutia would grant to Deo a forty-nine percent interest in Superb (ECF No. 65 at ¶¶

175-177) essentially "treating [the dealerships] and their respective assets as his own." *Id.* at ¶

118.

Furthermore, Laurie used his business DLA Capital and its connections to help Deo open

accounts with knowledge that this breached the Shareholders' Agreement because he had been in

attendance in a meeting with Urrutia and thus knew Urrutia held sole check authorization and control of Superb's bank accounts. *Id.* at ¶ 244. And Deo, with the help of other Deo Defendants such as S. Deo, Thomasson, Blankenship, Merckling and Laurie, are alleged to have organized a double-flooring scheme by "filling out applications for financing and making material misrepresentations in said applications" (*id.* at ¶ 203), costing Superb $760,868.75 in default to NMAC. *Id.* at ¶¶ 199-201.

Plaintiffs specifically allege that around November 15, 2022, Deo agreed to sell almost one million dollars of the dealership's future receipts to Libertas for $735,000. *Id.* at ¶¶ 148-50. However, when a dispute arose over the Libertas Funds – shortly after Deo was confronted by Urrutia for lying about his true role at Northshore and Sunrise – Blankenship and Merckling, retired and active police officers, used their connections with the Nassau County Police Department to shield Deo from being arrested. *Id.* at ¶ 243.

Plaintiffs allege that at all relevant times, Thomasson claimed to be the attorney for Northshore, Sunrise, and Deo and was aware that the Libertas Funds were paid by Libertas to Northshore for the purported sale of future receipts. *Id.* at ¶¶ 155-156. When a dispute arose concerning the rights to the Libertas funds, the IAG Plaintiffs agreed to place the funds in Thomasson's attorney trust account pending resolution allegedly because Blankenship and Merckling once again abused their authority to threaten to have Aaronson arrested if he refused. *Id.* at ¶¶160-61. Plaintiffs claim that despite his knowledge of the ongoing dispute, Thomasson distributed the Libertas Funds to Deo declaring he would not be told what to do regarding his own escrow accounts, thus furthering Deo's scheme. *Id.* at ¶¶ 163-65.

Blankenship and Merkling's intervention with the Nassau County Police to pressure Aaronson into wiring money to Thomasson's account (*id.* at ¶ 181) enabled Thomasson's "direct

participation" and his release of the "stolen funds" which enabled Deo to pay Urrutia funds fraudulently obtained from Libertas on December 1, 2022. *Id.* at ¶ 180, 183. It is further alleged that Deo misrepresented not only his member status of the dealerships, but also whether he anticipated or had pending litigation against him and whether he had the power and right to transfer shares of the dealerships to Urrutia. *Id.* at ¶ 194-95.

Here, the Court finds Plaintiffs sufficiently allege that the Deo Defendants, S. Deo, Thomasson, Blankenship, Merckling, and Laurie each substantially assisted Deo in carrying out his unlawful schemes, most notably in diverting and misappropriating Superb funds. *Id.* at ¶¶ 241-244. When Urrutia, upon becoming aware of Deo's conduct, informed NCPD to remove him, Blankenship and Merckling allegedly used their positions to hinder the investigation and protect Deo. *Id.* at ¶ 243. Plaintiffs sufficiently allege not only Deo's wrongful conduct, but that Merckling and Blankenship used their power to block any investigation and intimidate those who caught on to further Deo's fraudulent objectives. *Id.* at ¶ 160, 161, 243. Plaintiffs further allege that Thomasson provided the operation with a veneer of legitimacy posing as counsel for the dealership but also aided and abetted Deo by delivering the unauthorized funds directly to Deo. *See* ECF No. 65 at ¶¶ 205, 241, 243, 254.

Ultimately, it is not always reasonable to expect a plaintiff to have available sufficient factual information regarding the inner workings of a RICO enterprise to determine if a defendant was "substantially involved" in the enterprise or participated in the operation or management. *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 WL 3710370, at *8 (E.D.N.Y. Feb. 22, 2005) (citing *Friedman v. Hartmann*, 1994 WL 376058, at *2 (S.D.N.Y. July 5, 1994)). Therefore, "where the role of the particular defendant in the RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question." *Aiu Ins. Co. V. Olmecs Med. Supply*

*Inc.,* 2005 WL 3710370, at *8 (E.D.N.Y. Feb 22, 2005) (citing *Friedman v. Hartmann,* 1994 WL

376058, at *2 (S.D.N.Y. July 15, 1994)).  Plaintiffs' allegations give rise to a strong inference

that the Deo Defendants played a significant part in directing the affairs of the enterprise and

advancing the goals of the scheme to defraud.  *Alkhatib*, 2015 WL 3507340 at *15.

As to the CPA and Bank Defendants, Plaintiffs asserting RICO claims against outside

service professionals like banks, law firms and accounting firms (or "outsider defendants") have

been held sufficient after *Reves* only when they have alleged more substantial involvement by

the outsider defendant in the charged racketeering activity than Plaintiffs attribute to the CPA

Defendants and Bank Defendants here.  *See Alkhatib,* 2015 WL 3507340 at *18.  Where a party

deals in an ordinary way with its agents and others who owe the party a professional obligation,

so that their role in an entity's illicit activities is purely incidental as a course of ordinary

business, and. where there is no evidence that these agents acted with the intent to effectuate

those illicit activities, the party plus its agents do not constitute an associated-in-fact enterprise

for the purposes of a RICO claim.  *See in re: General Motors LLC Ignition Switch Litigation*,

No. 14-MD-2543 2016 WL 3920353 at *15 (S.D.N.Y. July 15, 2016).

With respect to the CPA Defendants, Plaintiffs fail to allege two or more predicate acts

sufficient to constitute a pattern of racketeering activity, proximate causation, or specific

participation in or knowledge of the RICO operation to find the CPA Defendants liable.  *See*

ECF No. 168 at 10-11. Furthermore, Plaintiffs cannot use negligence or accounting malpractice

or general fraud as the predicate acts for their RICO claims.  *See id*. at 14.  Plaintiffs' Amended

Complaint merely alleges that the CPA Defendants "aided and/or assisted the so-dominated Deo

Defendants' alleged wrongful actions by falsifying financial statements, altering financial

records, altering journal entries, and creating and submitting forged instruments or false

financials to create the illustration that Superb was profitable[,]" which does not meet the requirement elements to state a RICO claim. *Id.* at 11.

Plaintiffs emphasize that Deo directed Superb accountants to alter journal entries to further the floor plan fraudulent scheme such that they only performed limited financial services for Superb. *See* ECF No. 182 at 21. However, the Supreme Court has established that "mere drafting of statements based on misinformation supplied by the defendants' clients did not rise to the level of *directing the enterprise's affairs* and therefore does not constitute sufficient participation in the operation or management of the enterprise to be liable under RICO statutes. *Reves,* 507 U.S. at 170 (emphasis in orginal). Furthermore, "an accountant's audit reports... are always 'integral to the continuing operation' of the enterprise in the sense that professional services are essential to the continued existence of the business" but "provision of services – even essential services – to a RICO enterprise is not the same as controlling the enterprise's affairs." *Dept. Of Economic Development v. Arthur Anderson & Co. (U.S.A.),* 924 F.Supp. 449, 467-68 (S.D.N.Y. 1996) (explaining that electricity is also essential to the continued existence of a business, but "it would be absurd to say that the public utility that provides the electricity participates in the operation or management of the enterprise"); *Univ. Of Maryland at Baltimore v. Peat, Matwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("[S]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

For all these reasons, the allegations against the CPA Defendants are simply insufficient to give rise to a strong inference of a knowing or intentional participation in a fraudulent scheme or to establish their participation in the conduct of the affairs of an enterprise through a pattern of racketeering.

With respect to the Bank Defendants, as stated above, claims against outside professionals that agreed to provide important services to a racketeering enterprise is not the same as *directing* the affairs of the enterprise. *Dept. Of Econ. Dev.,* 924 F.Supp. at 466. Here, the Superb Plaintiffs allege that the Bank Defendants "directly assisted in (and aided and abetted) the Deo Defendants in carrying out their schemes" since the Vice President of Flushing Bank "must have known that only Urrutia, and not Deo, has the authority to open a bank account on Superb's behalf" such that letting him do so, aided and abetted the Deo Defendants' enterprise. *See* ECF No. 179 at 12-13. These accusations rest only on an alleged conversation between Deo and the Chief Operating Officer of Superb whereby Deo claimed the Vice President at Flushing Bank could secure a $500,000.00 line of credit for Superb and that the credit underwriter and Flushing were "in his pocket." *Id.* at 3. Plaintiffs took this to mean that Deo requires Flushing to act outside of normal banking procedures but allege no sufficient basis for such an allegation aside from this conversation. *Id.*

Plaintiffs' RICO claims with respect to the Bank Defendants consist of baseless conclusory factual allegations, for example, that "Flushing knew that Deo was not the 100% owner of Superb and had no authority to open a bank account[,]" without any specific factual allegations to corroborate this supposed knowledge. *See* ECF No. 184 at 16. Plaintiffs' only supported allegation with respect to Flushing Bank was that it substantially assisted Deo in opening a bank account. *Id.* at 9. Plaintiffs do not claim any interpersonal relationship between Flushing and the Deo Defendants or that Flushing Bank shared any nefarious intention, nor had any knowledge of Deo's scheme nor means of benefitting from it. *Id.*; *see also Moss v. BMO Harris Bank, N.A.*, 258 F.Supp.3d 289, 298 (E.D.N.Y. 2017) (explaining that a plaintiff must specifically allege "that members of an association-in-fact enterprise share a wrongful intent to

violate RICO.")  Plaintiffs have not substantiated a claim that Flushing Bank shared a common

illicit interest with the Deo Defendants.  *See* ECF No. 184 at 9.

Ultimately, the facts alleged here with respect to the banks fail to demonstrate that they

deliberately disregarded earmarks of fraud or had any authority or responsibility to intervene on

Plaintiffs' behalf.  *See Alkhatib*, 2015 WL 3507340 at *17.  These allegations are plainly

insufficient to survive the very difficult "operation and management" test set forth by the

Supreme Court in *Reves*; the mere fact that a bank provided banking services, without more, is

insufficient to state a claim under Section 1962(c)).  *See e.g.*, *Zhu v. First Atlantic Bank,* 2005

WL 275736, at *5 (S.D.N.Y. Oct. 25, 2005) (holding that plaintiffs fail to sufficiently allege

banks were involved in the "operation and management" of an alleged enterprise even though the

money transferred "eventually benefitted the alleged extortionist" that had no bearing on the

banks' limited roles which consisted of each bank simply transferring funds that the plaintiff

requested they transfer.)  Similarly, here, Flushing Bank purely provided banking services when

Deo misrepresented himself and opened accounts in the name of Superb.  *See* ECF No. 65 at ¶

612.  Likewise, Chase, performed banking services as requested by what they understood to be

an authorized user and permitted Deo to draw checks on Superb's account.  *Id.* at ¶ 613.  As

mentioned, Plaintiffs asserting RICO claims against outside professionals like banks are only

sufficient when they allege substantial involvement by the outsider defendant in the racketeering

activity.  *Alkhatib*, 2015 WL 3507340 at *18.  The Court finds Plaintiffs fail to sufficiently allege

that the banks were involved in the "operation and management" of the alleged fraudulent

enterprise of the Deo Defendants, aside from performing standard bank services.  *See Zhu*, 2005

WL 2757536 at *5 (finding no existence of an enterprise when the only "pattern of activity"

alleged by the plaintiff is that of banks complying with their customers' requests).

As to Libertas Funding, Plaintiffs Amended Complaint fails to establish a RICO claim against it and thus must be dismissed. *See* ECF No. 164-1 at 11. Plaintiffs did not specifically allege an enterprise as required by the RICO statute pertaining to Libertas Funding specifically but rather broadly stated that Libertas and the Bank Defendants participated with Deo and the Deo Defendants to further the alleged scheme, without alleging any way in which Libertas benefitted from said scheme. *Id.* at 12.

Similarly, with respect to claims against Chase, Plaintiffs fail to properly allege facts demonstrating that Chase participated in the operation and management of the RICO enterprise. *See Reves,* 507 U.S. at 180. Plaintiffs allege Chase was negligent in allowing Deo to open an account in Superb's name and withdraw checks using the account (ECF No. 177-1 at 8), but these allegations are insufficient as well because they are merely incidental to the Deo Defendants' scheme. *See e.g., Ifill v. West,* 1999 WL 690144, at *8 (E.D.N.Y. Aug. 24, 1999) (holding that it constituted more than merely incidental to the fraudulent scheme when the defendant bank was shown to have recruited prospective victims sufficient to be charged with racketeering activity). As stated above, merely providing important services to a racketeering enterprise, such as opening accounts or failing to flag fraud, without more, is not the same as directing the affairs of the enterprise. *See Dep't of Econ. Dev.,* 924 F.Supp. at 466.

Plaintiffs allege the Bank Defendants' participation enterprise consisted primarily of opening bank accounts and allowing Deo to draw checks from such accounts, thus failing to act reasonably to uncover he was not the authorized signer he purported to be. *See* ECF No. 65 at ¶¶ 612-15. While these banking services may have been an integral part of the enterprise's function, these acts still fall short of satisfying the "operation and management" test. *See generally, Reves,* 507 U.S. at 179 (emphasis in original) (explaining that "RICO liability is not

limited to those with a formal position in the enterprise's affairs… but *some* part in directing the enterprise's affairs is required.")  It is not enough for Plaintiffs to allege merely that the enterprise could not function without the banks, even if that is the case.  *See Dept. of Econ Develop.,* 924 F.Supp. at 476 (reasoning that whether the conduct was "integral to the continuing operation of the enterprise" is not equivalent to *Reves'* more demanding operation or management test which requires "some part in directing the enterprise's affairs.").

Notably*, Reves* is a difficult standard to satisfy.  *See Burke v. Dowling*, 944 F.Supp. 1036, 1055 (E.D.N.Y. 1995) ("*Burke*") (explaining that in *Reves* although a jury found the account defendants engaged in securities fraud, "mere drafting of statements based on information supplied by the board did not constitute sufficient participation in the operation or management of the enterprise" such that "even if the defendants had engaged in intentional fraud, they could not be held liable under RICO").  In *Burke,* the bank defendant was found to have met this standard because it not only helped to initiate the scheme but also was shown to have "exerted substantial control over the enterprise" given other defendants owed debts to the bank.  *Id.* at 1055 (holding that based on these facts plaintiffs could proceed to discovery to determine the extent of the role but that the bank "will not be liable if it merely performed routine services for the RICO enterprise.")  Unlike the allegations in *Burke*, here, only routine services are alleged to have been completed by the banks. *See id.* Specifically, it is asserted that Flushing Bank, at Deo's request while misrepresenting his true role, opened an account in the name of Superb (ECF Nos. 65 at ¶ 609; 184. at 9) and Chase permitted Deo to draw checks on Superb's account. *Id.* at ¶ 613. Neither of these actions rise to the level of operation or management of the enterprise because Plaintiffs have not alleged the Bank Defendants played any part in "directing the enterprise's affairs."  *See Dept. of Econ Develop.,* 924 F.Supp. at 476.

For the reasons stated above, the Deo Defendants' motion to dismiss the RICO claims asserted against them is *denied*, and the CPA Defendants, the Bank Defendants, Libertas Funding's motion to dismiss the RICO claims asserted against them is *granted*.

### E. *RICO Conspiracy, 18 U.S.C. § 1962(d)—Against All Defendants*

To establish a RICO conspiracy under § 1962(d), a plaintiff must show that there was an agreement to violate RICO's substantive provisions. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d. Cir. 1999) (citing *U.S. v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997)). Specifically, to find conspiratorial intent, courts look for (1) facts implying the existence of an agreement (2) involving each of the defendants (3) to commit two or more predicate acts, (4) as well as facts indicating each defendant understood the enterprise's scope, and (5) was aware the acts were part of a racketeering pattern, continuous and related. *Dornberger v. Metropolitan Life Ins. Co.*, 961 F.Supp. 506, 527 (S.D.N.Y. 1997); *Hecht v Commerce Clearing House, Inc.*, 897 F.2d 21, 25-26 (2d Cir. 1990). However, as is the case in criminal conspiracies, agreements in civil conspiracies are not always easily shown by direct evidence, but may be inferred from circumstantial evidence. *Cofacredit*, 187 F.3d at 239 (reasoning that conspiracy may be shown with circumstantial evidence to support a finding that each defendant joined the conspiracy and committed an overt act in furtherance thereof).

With respect to the RICO conspiracy claim, the Deo Defendants argue that Plaintiffs did not provide any facts that show each of the Defendants had a "meeting of the minds" with respect to the alleged violations. *See* ECF No. 188 at 12. However, taking the Plaintiffs allegations as true, there are sufficient facts to support an inference that the Deo Defendants understood the scope of the scheme and agreed to further it, and, therefore, the Court finds Plaintiffs state a valid § 1962(d) claim.

In *Dornberger,* the plaintiff met this standard when the plaintiff alleged that the defendants reached an agreement to commit predicate acts of fraud, and that the defendants were aware of the fraudulent nature of the representations and omissions. *Dornberger*, 961 F.Supp. at 527. Here, as in *Dornberger*, Plaintiffs set forth the role each of the Deo Defendants played in the conspiracy. With respect to Deo, Plaintiffs assert that he treated the dealerships as his own, taking over $230,000 in customers' cash deposits and issuing and signing checks from Northshore bank accounts with any signatory authority whatsoever. *See* ECF No. 65 at ¶¶ 118-120. Deo allegedly purchased vehicles on behalf of Northshore and Sunrise then sold them allegedly incurring a deficiency of over $3,000,000. *Id.* at ¶¶ 86-89.

Most notable to the conspiracy, Deo, misrepresenting himself as the full owner of Northshore, allegedly agreed to sell $997,500.00 of the dealership's future receipts to Libertas for $735,000. *Id.* at ¶¶ 148-50. Deo and his wife, Sarah Deo, employed retired police officer Blankenship and active police officer Merckling, and, when a dispute arose over these funds, Deo allegedly enlisted retired and active police officers Blankenship and Merkcling to pressure the Nassau County Police Department to arrest Aaronson, who, under duress, arranged to place such funds in the trust account of Thomasson. *Id.* at ¶¶ 26, 153. Thomasson – who represented himself as the attorney for Northshore, Sunrise, and Deo, pending the dispute's resolution and despite requests from IAG Plaintiffs that the funds be kept in escrow – went ahead and disbursed these funds to Deo. *Id.* at ¶ 163. Taking these allegations are true, there are sufficient facts to support an inference that the Deo Defendants understood the scope of this scheme and agreed to

further it.  *See Dornberger*, 961 F.Supp. at 527.  Therefore, Plaintiffs have stated a RICO

conspiracy against the Deo Defendants as a matter of law.[5]

> **F.**     ***Injunctive Relief under RICO--***
> ***18 U.S.C. § 1964(a) – Against the Deo Defendants***

Injunctive relief is available under RICO.  *See* 18 U.S.C.S. § 1964(a).  Section 1964(a)

authorizes courts to "prevent and restrain violations" of RICO by "issuing appropriate orders,

including, but not limited to: ordering any person to divest himself of any interest, direct or

indirect, in the enterprise; imposing reasonable restrictions on the future activities or investments

of any person, or ordering dissolution or reorganization of any enterprise."  18 U.S.C.S. §

1964(a).  However, § 1964(c) states that private litigants may seek monetary damages, and

"whether private litigants may obtain injunctive relief under § 1964(a) is an open and

questionable proposition" to an extent.  *Kerik v. Tacopina*, 64 F.Supp.3d 542, 558-59 (S.D.N.Y.

2014).

It is important to note that § 1964(a) vests federal courts with jurisdiction to hear RICO

claims and sets out general remedies, including injunctive relief.  *Chevron Corp. v. Donziger*,

833 F .3d 74, 138 (2d Cir. 2016).  It is widely accepted and understood that § 1964(a) is not

purely a jurisdictional section, but also a section that "grant[s] district courts authority to hear

RICO claims and then… spell[s] out a non-exhaustive list of the remedies district courts are

empowered to provide in such cases."  *Id.* However, § 1964(a) does not state explicitly state that

any category of persons may not obtain relief nor specify the persons in whose favor the courts

are authorized to exercise the powers there granted.  *Id.* The Second Circuit has interpreted the

---

[5] Given that the RICO claim fails with respect to the Bank Defendants and the CPA Defendants, the
RICO conspiracy claim as against them is dismissed for Plaintiffs' failure to plead the substantive RICO
claim.

ambiguity to mean "that Congress did not intend to limit the court's subsection (a) authority by reference to the identity or nature of the plaintiff." *Chevron,* 833 F.3d at 138-39 (reasoning that, "while subsections (b) and (c) limit the categories of plaintiffs to which the relief they respectively specify may be granted, we do not interpret those subsections as limiting the authorized relief to the types they mention"). To this end, given that the Second Circuit interpreted the limited categories of relief provided in subsections (b) and (c) not necessarily as limiting the authorized relief to the types they mention, it is possible that the Plaintiffs may seek injunctive relief under 18 U.S.C.S. § 1964(a) against the Deo Defendants for their alleged RICO violations.

III.    ***Plaintiffs' Defend Trade Secrets Act Claims***

     A.    ***Violation of 18 U.S.C. § 1836 –***
          ***Against the Deos, Merckling, Blankenship, and Thomasson***

The Defend Trade Secrets Act ("DTSA"), codified in 18 U.S.C. § 1831, "created a federal cause of action for the misappropriation of trade secrets used in interstate commerce." *Core SWX, LLC v. Vitec Group US Holdings, Inc.*, 2022 WL 3588081 at *4 (E.D.N.Y. July 14, 2022) (quoting *Elsevier Inc. v. Doctor Evidence, LLC*, 17-cv-5540(KBF), 2018 WL 557906, at *3 (S.D.N.Y. Jan. 23. 2018). For a DTSA claim, plaintiff must show (1) the existence of a trade secret, (2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce," and (3) misappropriation of the trade secret. *Id.*

Trade secrets include "all forms and types of business information" but only if (1) the owner has taken reasonable measures to keep such information a secret and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* ((quoting *TRB Acquisitions*

*LLC v. Yedid*, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (citing

18 U.S.C. § 1833(3))).  Defining a trade secret is often a fact-dependent analysis by which the

court will consider the following factors:

> (1) The extent to which the information is known outside of the business; (2) the extent to
> which is it known by employees and others involved in the business; (3) the extent of
> measures taken by the business to guard the secrecy of the information; (4) the value of
> the information to the business and its competitors; (5) the amount of effort or money
> expended by the business in developing the information; (6) the ease or difficulty with
> which the information could be properly acquired or duplicated by others.

*Univ. Processing LLC v. Weile Zhuang*, No. 17 CV 10210-LTS, 2018 WL 4684115, at *3

(S.D.N.Y. Sept 28, 2018); *see also Iacovacci v. Brevet Holdings, LLC*, 437 F.Supp.3d 367, 380

(S.D.N.Y. 2020); *Uni-Sys., LLC v. U.S. Tennis Assoc., Inc.*, 350 F.Supp.3d 143, 172 (E.D.N.Y.).

The plaintiff need not allege all factors to establish the existence of a trade secret.  *Core SWX,*

*LLC v. Vitec Group US Holdings, Inc.*, 2022 WL 3588081, at *4 (E.D.N.Y.) July 14, 2022).

Furthermore, "general and vague references to methods, processes, interpretation, programs, and

data configuration protocols do not plausibly support the existence of a trade secret without

supportive facts explaining, for example, how such strategies, techniques or models function, the

[the party] derives value from them, or what [the party] specifically does to ensure their

secrecy." *Id.* at *5 (quoting *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20 CV 9779-LTS,

2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020)).

A business that invests substantial amounts of time and money into advertising to procure

a particular list of customers or the patronage of a certain class of customers, either of which are

otherwise unknown to industry competitors, has likely done enough to create a trade secret.

*Garvey v. Face of Beauty LLC*, 634 F.Supp.3d 84, 97 (S.D.N.Y. Oct. 6, 2022); *Expert Connect,*

*L.L.C. v Fowler*, 2019 WL 300461 at *2-3, 5 (S.D.N.Y. July 10, 2019).  Courts do not

automatically qualify non-disclosure agreements standing alone as reasonable protection against

misappropriation and would rather see NDAs coupled with password protections, employee policies detailing the use of specific information, or confidentiality amendments to licenses. *Zabit*, 540 F.Supp.3d at 424-25; *Expert Connect, L.L.C.* at *4. However, the most important consideration in determining whether information constitutes a trade secret is dependent on whether the information was secret. *See Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412, 421 (S.D.N.Y. May 18, 2021). Furthermore, "if an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Id.* at 422 (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1002 (1984)).

Notably, trade secrets are not one and the same as confidential information. *Core SWX, LLC*, 2022 WL 3588081 at *5 (citing *Elsevier Inc.* 2018 WL 557906, at *5). The secrecy surrounding a trade secret need be sufficient but not absolute such that "except by use of improper means, there would be difficulty acquiring the information." *Id.* at *7 (citing *Zabit,* 540 F.Supp.3d at 427) (finding that where numerous other individuals had access to the purported trade secret and that the information that the plaintiff licensed to defendant was done without confidentiality agreements, nor any instructions to keep the information secret or other security measures was insufficient to allege the secrecy required for a trade secret under the DTSA).

"Courts in the Second Circuit generally look to whether confidentiality or nondisclosure agreements are in place and whether the information is guarded by physical- or cyber-security protections." *Id.* at *7 (quoting *Turret Labs USA, Inc. V. Cargo Spring, LLC,* 19-CV-6793, 2021 WL 535217, at *4 (E.D.N.Y. Feb. 12, 2021). Reasonable measures include, but are not limited to "confidentiality agreements, password protection, sharing information with employees only on

a need-to-know basis, emphasizing the need to keep the information confidential and frequently reminding employees of the need to maintain confidentiality." *Id.* at *7. However, a mere duty of loyalty "does not somehow transform freely shared information into a *secret.*" *Zabit*, 540 F.Supp.3d at 427 (to hold otherwise "would risk expanding the limited category of 'trade secrets' to cover any confidential information.").

Relevant here, a customer list is likely a trade secret if (1) it enumerates specific customers with particular tastes, (2) the defendant can use that list to divert customers to a competing business to the material and reputational detriment of the business seeking trade protection, and (3) where the defendant could not have obtained the list but for the novel efforts of the business seeking protection. *Expert Connect, L.L.C. v Fowler*, 2019 WL 300461 (S.D.N.Y. July 10, 2019) at *2-3, 5. Furthermore, a customer list has been found not to be a trade secret when it was "not under lock and key, and there [was] no evidence of any effort on the part of the plaintiff to insure that [the list] should be considered secret or confidential." *Defiance Button Machine Co. v. C&C Metal Products Corp*, 759 F.2d 1053, 1063-64 (2d. Cir. 1985) (holding that information left in the memory of a computer, from which it could be retrieved by using a file name or password readily available was sufficient to show plaintiffs did not take adequate measures to ensure the secrecy of the lists."). Further, security measures such as password are not sufficient without any confidentiality agreements or instruction or policy to keep the items secret. *Zabit*, 540 F.Supp.3d at 426 (holding that plaintiffs did not meet the threshold for sufficient secrecy when they licensed the information to another party, without confidentiality agreements, instructions to keep it secret, or other protective measures).

Here, there are two purported trade secrets at issue: (i) the Irie Jam Customer List (the "Customer List"), and (ii) the Tekion DMS system (hereafter, "Tekion DMS system" or

"DMS").  Plaintiffs successfully set forth that the information derives independent economic value from not being generally known and not being readily ascertainable by others.  *See TRB Acquisitions LLC v. Yedid*, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021).  However, Plaintiffs far fall short in alleging the existence of a trade secret in that the complaint is devoid of any information that they took reasonable measures to guard such information a secret. *Id.*

With respect to economic value portion of the test, Superb used the Tekion DMS system to set up its floor plan agreement with Nissan Motor Acceptance Corporation, and facilitated these operations with its unique DMS that was specifically customized for Superb by Tekion. *See* ECF No. 65 at ¶¶ 199, 228.  Pursuant to factor (5), Superb expended effort and money to develop this information; Urrutia spend over $120,00 to weave Tekion into Superb's business model. *Id.* at ¶ 231-32; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3.  Pursuant to factor (4), this information is objectively valuable, not just financially, but in the competitive marketplace; Urrutia described this tool as "the blueprint for Urrutia's success at his dealerships" such that it also gave his business "a unique competitive advantage."  *Id.* at ¶ 231-32, 265; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3.  DMS enabled Superb to effectively "streamline dealership operations, inventory management, cash flow management, and reporting features that identify areas of improvement" at their dealership.  *Id.* at ¶ 269; ECF No. 38-2 at 1, 38.

Similarly, the Customer List derives independent economic value from not being generally known. Courts have held that when a business invests substantial amounts of time and money into advertising to procure a particular list of customers or the patronage of a certain class of customers, either of which are otherwise unknown to industry competitors, said business has

likely done enough to create a trade secret. *See, e.g.*, *Garvey v. Face of Beauty LLC*, 634 F.Supp.3d 84, 97 (S.D.N.Y. 2022). Whether a customer list constitutes a trade secret may depend on whether customers are readily ascertainable outside the employer's business such that they are discoverable only with extraordinary efforts secured by years of effort and advertising effected by the expenditure of substantial time and money. *Id.* at 97 (citing *24 Seven, LLC v. Martinez,* No. 19-CV-7320, 2021 WL 276654, at *7 (S.D.N.Y. Jan. 26, 2021)). Here, Urrutia partnered with Bobby Clarke ("Clarke") and his radio station Irie Jam, 93.5 FM in $1.5 million worth of advertising targeting over 2 million listeners from the Caribbean community which in turn generated a "substantial customer list[.]" *Id*. at ¶¶ 237-38.

Pursuant to factor (5), the amount of effort expended to generate the Customer List is alleged to be extensive and attributable solely to Urrutia who created it using his decades of experience in the industry, relationships he established along the way and his own "unique know-how" in operating automobile dealerships. *Id.* at ¶ 260; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3. Pursuant to factor (6), the Customer List could not easily be acquired or duplicated because it was a direct result of "the unique nature of Urrutia's partnership with Clarke" such that it "could not possibly be reverse engineered or independently generated without also substantially investing in Irie Jam." *Id.* at ¶ 239; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3; *Iacovacci, v. Brevet Holdings, LLC*, 437 F.Supp.3d 367, 380-81 (S.D.N.Y. 2020) (holding non-public sourcing information for over 2,000 clients constituted a trade secret).

Plaintiffs allege Deo illicitly channeled Urrutia's decades of experience, the Customer List, DMS customized for Superb, and other proprietary information into his own Gold Coast Dealerships. *See* ECF No. 65 at ¶¶ 258-60, 269. Plaintiffs claim this enabled the Deo

Defendants to benefit from the confidential information Urrutia developed and sourced over thirty years in the automobile dealership industry, essentially stealing from the Superb Plaintiffs. *Id.* at ¶ 269.  Plaintiffs allege that Deo implemented the confidential and proprietary DMS and the "exact customization used by Superb" in such dealerships of his own. *See* ECF No. 65 at ¶¶ 227-28, 230, 233-32. This allegation is corroborated by the fact that Deo poached Superb employees for his own dealerships and trained them to utilize the DMS.  *Id.* at ¶¶ 235-36. Furthermore, Deo and his staff used their history at Superb and familiarity with the Customer List to redirect listeners to the Gold Coast dealerships.  *Id.* at ¶¶ 258-60.

Although Plaintiffs have sufficiently alleged that both DMS and the Customer List have substantial economic value, they cannot show that they took sufficient measures to keep them secret or confidential, and, therefore, do not sufficient allege violation of the DTSA.  Plaintiffs do not sufficiently allege reasonable measures taken to keep their confidential information secret. *Id.* Superb alleges that it restricted this information's accessibility only to employees that were required to maintain its confidentiality in a computer system secured with firewalls, usernames and passwords.  *See* ECF No. 65 at 266; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3.  However, Deo Defendants successfully push back that there are no instances of non-disclosure agreements or contractual obligations binding employees to secrecy over either DMS or the Customer List sufficient to allege reasonable measures were taken to protect its secrecy, and further, that Superb did not claim their employees did not have access to the customer lists nor were they under any contractual obligation to keep same confidential.  *See* ECF No. 176-1 at 10.

For example, in *Core SWX LLC*, the plaintiff alleged that the information at issue was only accessible to employees and that the employee "understood" the confidential nature of the

information, however, the Court found such claims lacked any specificity regarding why the individual would understand the information's proprietary and confidential nature, such as instructions in an employee handbook and/or whether the individual was reminded of the information's confidential status. *Core SWX, LLC*, 2022 WL 3588081 at *8-9 (finding that the claimant did not plausibly state the existence of a trade secret). The Superb Plaintiffs' similar restriction of the information's accessibility only to employees that were required to maintain its confidentiality in a computer system secured with firewalls, usernames and passwords (ECF No. 65 at ¶ 266) is not sufficient to establish secrecy sufficient for a DTSA claim against defendants.

The Deo Defendants successfully argue that Plaintiffs failed to allege a DTSA violation claiming they did not assert a trade secret, but only "generalized categories of information." ECF 176-1 at 8; *see also Elsevier Inc.,* 2018 WL 557906, at *6 (holding that "alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue does not give rise to a plausible allegation of a trade secret's existence."). Superb does not allege any of these specifics but only that Urrutia partnered with Irie Jam in $1.5 million worth of advertising "to over 2 million listeners in the Caribbean community," generating a "substantial customer list" but without specifying why this list could not possibly reverse engineered or independently generated without such an investment. *See* ECF No. 65 at ¶¶ 237-38.

Ultimately, while Plaintiffs likely demonstrated enough factors to show the economic value of both the DMS and the Customer List, especially given the substantial investment's Urrutia made on behalf of Superb to secure this information, Plaintiff's did not proffer sufficient facts to show they took reasonable measures to keep the information a secret. While they may have been confidential in the sense that Plaintiffs expected its use to be only by their employees,

there is scant evidence to suggest Plaintiffs took reasonable measures to ensure both the DMS and the Customer List information remained a secret. *See e.g., Zabit, LLC*, 540 F.Supp.3d at 424. Thus, applying the above six factors to assess the purported trade secrets, the Court finds that Plaintiffs did not plausibly state the existence of a trade secret. Therefore, Plaintiffs' trade secret misappropriation claims under New York and federal law are dismissed.

**B.**    *Injunctive relief under the DTSA --
           <u>18 U.S.C. § 1836, et seq – Against the Deo Defendants</u>*

The DTSA and the VUTSA also permit an award of permanent injunctive relief. *See* 18 U.S.C. § 1836(b)(3)(A); *see also Smart Team Global, LLC v. HumbleTech LLC,* No. 19-CV-4873 (AJN), 2022 WL 847301, at *11 (S.D.N.Y. Feb. 18, 2022). Injunctive relief must, however, be "narrowly tailored to fit specific legal violations" to "avoid unnecessary burdens of lawful commercial activity." *Id.* at 12 (quoting *Faivley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d. Cir. 2009)). The DTSA cautions against injunctions that "prevent a person from entering an employment relationship" or "otherwise conflicts with an applicable state law prohibiting restraints on the practice of a lawful profession, trade or business." *Id.; see also* 18 U.S.C. § 1836(b)(3)(A). "The DTSA expressly provides for injunctive relief. 18 U.S.C. 1836(b)(3)(A)." *Syntel Sterling Best Shores Mauritius Limited v. TriZetto Group, Inc.*, No. 15 Civ. 211 (LGS), 2021 WL 1553926, at *6 (S.D.N.Y. Apr. 20, 2021) (explaining plaintiffs are permitted to seek "damages for actual loss caused by misappropriation; and...damages for any unjust enrichment caused by the misappropriation... that is not addressed in computing damages for actual loss; or... in lieu of damages measured by [those] methods, the damages... measured by imposition of liability for a reasonable royalty for the mis appropriator's unauthorized disclosure or use of the trade secret.").

Given that the DTSA claim against the Deo Defendants fails as a matter of law, Plaintiffs' claim for injunctive relief is likewise dismissed for failure to plead the substantive trade secret under DTSA's requirements, specifically relating to the reasonable measures taken to ensure the information was kept secret.

## C.   *Misappropriation under the DTSA – Against the Deo Defendants*

To allege misappropriation under the DTSA, "a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent." *JAPNA, Inc. V. SELFX Innovations Inc.*, No. 22-cv-10753 (ALC) (RWL), 2024 WL 1250269 at *7 (Mar. 22, 2024) (quoting *ExpertConnect, L.L.C.*, 2019 WL 3004161, at *6 (citing *AUA Private Equity Partners, LLC* v. Soto, No. 17-cv-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018)).  In other words, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *AUA Priv. Equity Partners*, 2018 WL 1684339, at *4 (citation omitted).  Under the DTSA, improper means includes "theft, bribery, misrepresentation, and breach or inducement of a breach of a duty to maintain secrecy, but excludes reverse engineering, independent derivation, or any other lawful means of acquisition." *Core SWX*, 2022 WL 3588081 at *9 (quoting *Altman Stage Lighting, Inc. V. Smith*, 20-CV-2575 (NSR), 2022 WL 374590 at *4 (S.D.N.Y. Feb. 8, 2022) and 18 U.S.C. § 1839(6)).

Under New York common law, "[a] plaintiff claiming misappropriation of a trade secret must prove: [i] it possessed a trade secret, and [ii] defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.'" *JAPNA, Inc.* 2024 WL 1250269 at *7 (quoting *Catalyst Advisors, L.P. v. Catalyst Advisors Investors Global Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. May 10, 2022)).  Given the elements for a

misappropriation claim under New York law are fundamentally the same as elements required to sufficiently state a DTSA claim courts have found that if a plaintiff's complaint sufficiently pleads a DTSA claim, then it "also states a claim for misappropriation of trade secrets under New York law." *Catalyst Advisors, L.P.* 602 F.Supp.3d at 671 (quoting *Iacovacci v. Brevet Holdings, LLC.,* 437 F.Supp.3d 367, 380 (S.D.N.Y. 2020)).

As stated above, the Court finds that the Plaintiffs have not set forth sufficient facts to plausibly state that a trade secret exists here with respect to the Customer List or DMS, let alone that the purported trade secret was acquired through improper means, or disclosed or used without their consent. Plaintiffs allege that Urrutia, using his many years of experience and connections, taught Deo how to manage Superb with Tekion and used DMS to streamline dealership operations, inventory management, cash flow management, and reporting features that identify areas of improvement. *See* ECF No. 65 at ¶ 229; ECF No. 38-2 at 1, 38. Further, Plaintiffs allege that the DMS system was protected by password protection, firewalls and "other measures." *See* ECF No. 65 at ¶¶ 36-37. With respect to the Customer List, Plaintiffs contend it was the result of material effort between Superb, Clarke, and Irie Jam which they claim to be evidence of the list's value in secrecy. *Id*.

Ultimately, Plaintiffs' vague assertions that their alleged trade secrets were only accessible to employees who had a need for the information for work purposes are entirely vague and not enough to state a claim. *See e.g., Trahan v. Lazar*, 457 F.Supp.3d 323, 344 (S.D.N.Y. 2020) (finding that misappropriation by improper means is not adequately alleged when the subject information is willingly given, or where defendant acquired information in course of official duties while employed).

IV.    _Unfair Competition – Against the Deo Defendants_

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." _ML Genius Holdings LLC v. Google LLC_, No. 20-3113, 2022 WL 710744 at *4 (2d. Cir. Mar. 10, 2022) (quoting _Universal Instruments_, 924 F.3d 32, 50-51 (2d Cir. 2001)); _see also Telecom Int'l Am., Ltd. v. AT&T Corp._, 280 F.3d 175, 197 (2d Cir. 2001) ("The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship.").  There is no explicit list of activities which constitute unfair competition; the general principle is that unfair competition occurs when there has been a misappropriation, for the commercial advantage of one person of a benefit or property right belonging to another.  _Telecom Int'l Am., Ltd._ 280 F.3d at 197.  New York's unfair competition law is a "broad a flexible doctrine that depends more upon the facts set forth" than in other causes of action and has been said to encompass "any form of commercial immorality." _Id._

However, a claim for unfair competition by misappropriation "will fail where a plaintiff cannot demonstrate the bad faith misappropriation of a commercial advantage which belonged exclusively to him." _Big Vision Private Ltd. V. E.I. du Pont de Nemours and Co._, 610 F.App'x 69, 70 (2d Cir. 2015) (quoting _LoPresti v. Mass. Mut. Life Ins. Co.,_ 920 N.Y.S.2d 275, 277 (N.Y. App. Div. 2d Dep't 2006)) (a claim of unfair competition does not require a finding of breach of contract or misappropriation of a trade secret).  Some courts also require a plaintiff to allege special damages by showing "direct financial loss, lost dealings, or an accounting of the profits resulting from the anticompetitive acts at issue." _Barbagallo v. Marcum_ LLP, 820 F.Supp.2d

429, 446 (E.D.N.Y. Oct. 25, 2011) (quoting *Coca-Cola N. Am.*, Nos. 09 CV 3259(JG)(RML), 09 CV 3279 (ERK)(RML), 2011 WL 1882845 at *6 (May 17, 2011)); *but see Fairfield Financial Mortg. Group, Inc. v. Luca*, 584 F. Supp.2d 479, 487 (E.D.N.Y. 2008) ("The Court is unaware of any New York federal or state court that has held that special damages is an element of an unfair competition claim."). To show special damages, it is sufficient to simply allege that defendant diverted plaintiff's customers and business. *Barbagallo,* 820 F.Supp.2d at 447 (citing *CA, Inc. V. Simple.com*, 621 F. Supp. 2d 45, 54 (E.D.N.Y. 2009)); *Out of the Box Promotions, LLC v. Koschitzki*, 866 N.Y.S.2d 677, 681 (N.Y. App Div. 2d Dep't 2008)).

Although unfair competition often involves misappropriation of trade secrets pursuant to the DTSA, a claim may also be based on misappropriation of client lists, internal company documents, and business strategies "if wrongful or fraudulent tactics [are] employed." *Barbagallo*, 820 F.Supp.2d at 447; *see also Berman v. Sugo LLC*, 580 F.Supp.2d 191, 209 (S.D.N.Y. 2008) (explaining that an unfair competition claim may arise from the misappropriation of client lists, internal company documents, and business strategies). Specifically, solicitation of an employer's customer by a former employee can be actionable if there was wrongful conduct by the employee such as taking or copying the employer's files or using the employer's confidential information. *Barbagallo*, 820 F.Supp.2d at 447.

Here, while DMS and the Customer List do not rise to the level of a trade secret, Urrutia and Superb "invested significant labor, skill and money" in developing this technology for Superb's use. *See Barbagallo,* 820 F.Supp.2d at 447. Plaintiffs allege that Urrutia's partnership with Clarke in $1.5 million worth of advertising generated the substantial customer list which could not possibly reverse engineered or independently generated without also substantially investing in Irie Jam. *See* ECF No. 65 at ¶ 239. With respect to DMS, Urrutia similarly used his

own decades of experience in the industry to create Superb's business model premised on the Tekion DMS. *Id.* at ¶ 260. In addition to labor and skill invested in the business model, Urrutia customized the system for Superb's function and invested $120,000 to acquire this unique competitive advantage for the dealerships. *See* ECF No. 193 at 26. Although this information was not found to meet the requirements of a trade secret, Plaintiffs are alleged to have maintained the information's confidentiality, as is evidenced by it being kept on a computer system secured with firewalls, usernames, and passwords accessible only to employees. *See* ECF No. 65 at ¶ 266.

Regarding the necessary bad faith component, wrongful tactics were allegedly employed to acquire this confidential client information since Plaintiffs allege Deo poached Superb employees for his own Gold Coast dealerships and trained them in the Tekion DMS system. *Id.* at ¶¶ 235-36. Furthermore, Deo and these employees allegedly used their time at Superb and familiarity with its Customer List to redirect Caribbean listeners of Irie Jam to Gold Coast dealerships. *Id.* at ¶¶ 237-40; *see also Barbagallo,* 820 F.Supp.2d at 447 (finding that solicitation of an employer's customer by a former employee may be actionable if there was wrongful conduct by the employee such as taking or copying the employer's files or using the employer's confidential information).

As such, Plaintiffs allege Deo effectively and illicitly channeled Urrutia's decades of experience, the Customer List, and DMS customized for Superb into his own Gold Coast dealerships. *Id.* at ¶¶ 258-60. Thus, Plaintiffs have pled sufficient facts to support their claim that the Deo Defendants engaged in unfair competition, especially given other Courts have held special damages to be sufficient when a plaintiff only alleges that defendant diverted plaintiff's

customers and business. *See Barbagallo,* 820 F.Supp.2d at 447 (citing *CA, Inc. V. Simple.com*, 621 F. Supp. 2d 45, 54 (E.D.N.Y. 2009); *Out of the Box Promotions, LLC*, 866 N.Y.S.2d at 681.

## V.    *Tortious Interference with Contracts, Business Relations, and Prospective Economic Advantage – Against the Deo Defendants*

To establish intentional interference with contract under New York law, a plaintiff must

show: (1) "the existence of a valid contract between the plaintiff and a third party[;]" (2)

"defendant's knowledge of that contract[;]" (3) "defendant's intentional procurement of the

third-party's breach of the contract without justification[;]" (4) "actual breach of the contract[;]"

and (5) "damages resulting therefrom."  *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413,

424, 668 N.E.2d 1370, 1375 (N.Y. 1996).  The New York Court of Appeals has explained:

> [T]he degree of protection available to a plaintiff for a competitor's tortious interference with contract is defined by the nature of the plaintiff's enforceable legal rights. Thus, where there is an existing, enforceable contract and a defendant's deliberate interreference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior.

*NBT Bancorp v. Fleet/Norstar Fin. Group*, 664 N.E.2d 492, 496 (N.Y. 1996).

Here, to purchase inventory, Northshore and Sunrise maintained a "Floor Plan" credit

line with Ally Bank under which the Bank kept a lien on vehicles purchased through the Floor

Plan until the dealerships repaid Ally Bank the amount initially borrowed to buy the vehicles.

*See* ECF No. 65 at ¶¶ 77-85.  Northshore and Sunrise placed liens on titles of any financed

vehicles to protect lenders in the event the customer was to default, and, if the dealerships failed

to perfect any of these liens, they would have to repurchase the lender's loan to the customer.  *Id.*

at ¶¶ 99-101.  Furthermore, the failure to satisfy any of these loans or obligations could leave the

dealerships with both civil and criminal liability as well as risk losing their DMV licenses and

the ability of the licensees to obtain a license for other dealerships. *Id.* at ¶¶ 96-97, 103-04.

Plaintiffs allege that Deo acted as manager of Northshore and Sunrise, overseeing these

operations, and acted in a way that jeopardized their relationships and licenses. *Id.* at ¶ 76.

Specifically, it is alleged that Deo purchased then sold vehicles for "less than their purchase price," incurring a deficiency of over $3,000,000. *Id.* at ¶¶ 86-89. As a result of this conduct, IAG had to pay Ally Bank this deficiency to cure the floor plan's shortcomings. *Id.* Deo's failure to have the dealerships pay existing loan and lease balances left vehicles' prior owners liable despite their lack of ownership or possession. *Id.* at ¶¶ 92-95. Deo also sent out vehicles to various garages for repair, and at least one garage placed a lien on at least one vehicle resulting from Deo's failure to satisfy the lien, resulting in the garage selling the vehicle off in auction. *Id.* at ¶¶ 77-85. Deo is further alleged to have engaged in "double flooring" whereby he used one vehicle present and available for multiple loans to illegally receive twice the funding for that single asset (*id.* at 99) by filling out applications for financing and making material misrepresentations in said applications. *Id.* at ¶ 203.

In support of their claim for tortious interference with contracts, business relations, and prospective economic advantage, Plaintiffs vaguely claim, "Deo Defendants were at all relevant times aware of these agreements between Superb Plaintiffs and their banks, vendors, customers and employees" and further that "Deo Defendants engaged in conduct designed to damage those relationships." *See* ECF 176-1 at 386-87. However, Plaintiffs do not set forth sufficient facts to support the Deo Defendant's actual knowledge nor intention to breach the Plaintiff's contracts by their actions. Ultimately, even if the double flooring scheme were true and possibly caused Superb to breach agreements with its lenders, nothing in the Amended Complaint alleges that the Deo Defendants acted intentionally to interfere with the relation between Superb and its third-party lenders without justification as is required. *See* ECF No. 176-1 at 13.

Furthermore, Plaintiffs do not explicitly allege an actual breach of the contract occurred although they were required to compensate for deficiencies found on the Floor Plan managed by

Deo. *See Lama Holding Co.,* 668 N.E.2d 1370, 1376 (N.Y. 1996) ("*Lama*") (finding no tortious interference claim was stated when that there was no allegation that the defendant intentionally procured the plaintiff's breach of its contract with a third party, nor that the plaintiff in fact breached its contract at all). In *Lama,* the plaintiffs, much like Plaintiffs here, charged that the defendants' actions "wrongfully interfered with and frustrated the performance" of their agreements. *Id.* However, that did not suffice to support their claim of tortious interference because there was no allegation made that the defendant intentionally procured a breach, nor that a breach ever occurred as a result of the actions. Furthermore, given tortious interference requires intentional and improper interference in the business relationship between a third party and the Plaintiffs, and that Plaintiffs have not sufficiently alleged the Deo Defendants' intent to do so, and, therefore, Plaintiffs do not state a sufficient claim of tortious interference, and this claim is dismissed.

## VI.    *Conversion – Against the Deo Defendants, Thomasson, Deo, and the Bank Defendants; Aiding and Abetting Conversion – Against Thomasson*

Conversion is defined as the "unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) (internal quotation marks and citation omitted). To succeed on a conversion claim, New York law requires a plaintiff to show that (1) the defendant acted without authorization; (2) the defendant exercised dominion or a right of ownership of property belonging to plaintiff; (3) the plaintiff made a demand for the property; and (4) defendant refused the demand for the return of the property. *Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 396 (S.D.N.Y. 2012); *see Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010).

However, New York makes a distinction between conversion claims where a person wrongfully takes property and conversion claims where a person did not take the property but wrongfully retains it, such that where the original possession is lawful, conversion does not occur until the defendant refuses to return such property after demand. *Newbro v. Freed*, 409 F.Supp.2d 386, 402 (S.D.N.Y. 2006); *see also Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2 Cir. 1993). It follows necessarily that, where the defendant holds the property unlawfully from the start, such that demand would be futile because the circumstances show the defendant knows it has no right to the goods, a demand for the return of the property is not required. *New York v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702 (N.Y. 2002).

To state a claim for conversion under New York law, "a plaintiff must show: (1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ancile Inv. Co. Ltd. V. Archer Daniels Midland Co.*, 784 F.Supp.2d 296, 312 (S.D.N.Y. 2011). A plaintiff does not need to show that the defendant had knowledge that he acted wrongfully, "but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." *LoPresti*, 126 F.3d at 41. Conversion requires the defendant to exclude the true owner from exercising her rights over the goods at issue. *Pac. M. Int'l Corp.*, 888 F.Supp.2d at 396 (citing *Seventh Regiment Fund*, 774 N.E.2d at 702).

To state a claim for aiding and abetting conversion under New York law, plaintiffs "must allege (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Berman v. Morgan Keegan & Co., Inc.*, No. 10 Civ.

5866 (PKC), 2011 WL 1002683 at *13 (S.D.N.Y. Mar. 14, 2011).

Money of course can be the subject of a conversion claim but "where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Cruz v. TD Bank, N.A.*, 855 F.Supp.2d 157, 174 (S.D.N.Y. 2012) (quoting *Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472 (N.Y. App. Div. 1st Dep't 1995). With respect to bank defendants, funds in a bank account are generally "not sufficiently specific and identifiable to support a claim for conversion against the bank." *Id.* (citing *Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir.1998) (quoting *Chem. Bank v. Ettinger*, 602 N.Y.S.2d 332 (N.Y. App. Div. 1st Dep't 1993)). However, conversion can arise where a specific amount of funds in a bank is withdrawn or transferred. *Id.* (citing *Payne v. White*, 477 N.Y.S.2d 456 (N.Y. App. Div. 3d Dep't 1984).

Additionally, a "conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Ultra Dairy LLC v. Kondrat*, 514 F.Supp.3d 452, 459 (N.D.N.Y. 2021). A plaintiff must properly allege that defendants "actively participated in a fraud or conversion." *FDIC v. Concordia*, 2024 WL 4362783 at *4 (S.D.N.Y. Sept. 30, 2024) (citing *Scottenstein v. Lee,* No. 22-CV-1197 (DLC), 2023 WL 3363002 at *3 (S.D.N.Y. July 6, 2023)) (holding that plaintiffs failed to state a claim for conversion against the defendant when third parties made all the fraudulent wire transfers, plaintiffs set forth no facts explaining the defendant's purported involvement in the conversion scheme other than his control of an account that received stolen funds and no facts to suggest the defendant otherwise knew he wrongfully possessed the plaintiff's property).

When an underlying act is alleged to be fraudulent, a claim of conversion must be pled

with specificity under Fed. R. Civ. P. 9(b). *See Silverman Ptnrs., L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) ("[T]he heightened pleading standards of Rule 9(b) apply to torts that are premised on the defendant's alleged fraudulent actions. Thus, breach of fiduciary duty, conversion, and unjust enrichment must be pled with specificity when the underlying acts are allegedly fraudulent."). In addition, where the underlying wrong with respect to the aiding and abetting conversion claim is fraud, actual knowledge must also be alleged with particularity pursuant to Rule 9(b). *In re Agape Litigation*, 773 F.Supp.2d 298, 307 (E.D.N.Y. 2011).

Here, Plaintiffs allege that Deo treated Northshore, Sunrise, and their respective assets as his own. *See* ECF No. 65. at ¶ 118. Plaintiffs have sufficiently stated numerous allegations, which if true, would suffice to show that Deo exercised unauthorized dominion over Superb's personal property in interference with their legal title. *See Lopresti*, 126 F.3d at 41. Plaintiffs allege Deo has taken over $230,000.00 in customer cash deposits, rather than depositing them in Northshore's account as well as issued and signed checks from such accounts to pay for his personal expenses, such as $60,000.00 from Northshore to a corporation formed and owned by Deo. *Id.* at ¶¶ 119-121. Plaintiffs also allege that Deo employed the asserts of Nortshore to secure loans from Flushing Bank for the purpose of personally taking the proceeds all without the knowledge or approval of Northshore's members. *Id.* at ¶¶ 170-72.

Plaintiffs also specifically allege that on or about November 15, 2022, Deo falsely purported himself as the sole owner of Northshore to enter an agreement with Libertas Funding to sell $997,500.00 of Northshore's future receipts to Libertas for the purchase price of $735,000.00 all without the consent of Northshore's members. *Id.* at ¶¶ 148-50. Plaintiffs allege that Deo arranged for these funds to be deposited into Sunrise's bank account, from

which he was able to withdraw the funds and complete the scheme to wrongfully convert for himself the funds rightfully belonging to Northshore. *Id.* at ¶¶ 150-52.

With regard to the same Libertas Funding transaction, Deo fell under suspicion by the IAG Plaintiffs who suspected he did not have the right to act on Northshore's behalf which led to a dispute over where to deposit the funds. *Id.* at ¶¶ 157-58. At this point, Thomasson, who Plaintiffs allege was aware of the dispute and falsely presented himself as the attorney for Northshore, Sunrise, and Deo, arranged for the Libertas Funds to be placed in his attorney trust account for safekeeping pending resolution. *Id.* at ¶¶ 155, 157-59. The IAG Plaintiffs transferred the funds to Thomasson's attorney trust account, whereby Thomasson immediately disbursed the funds to Deo. *Id.* at ¶¶ 162-63.

Ultimately, Plaintiffs allege that the Deo engaged in conversion by enabling the transfer of the Libertas Funds paid by Libertas to Northshore for the purported sale of future receipts to instead be disbursed to Deo for his own personal use (*id.* at ¶¶161-66), and, in direct interference of Plaintiffs' rightful ownership. Plaintiffs also allege that despite due demand, Deo and Thomasson have refused to return to Northshore the assets converted, although such demand is not necessary because Deo knew the property did not belong to him as he purported the transaction as between Northshore and Libertas, not himself. *Id.* at ¶¶ 469, 475, 510. To this, the Court finds Plaintiffs have successfully alleged conversion as against the Deo Defendants and aiding and abetting conversion against Thomasson.

With respect to the Bank Defendants, Plaintiffs allege that the cash, checks, and wire transfer deposited into an account at Flushing Bank in the name of Superb by Deo without authority, in fact belong to Superb and that the funds in the account Superb maintained with Chase Bank belong to Superb. ECF No. 176 at ¶¶ 620-621. Plaintiffs broadly claim that both

Flushing Bank and Chase Bank "each exercised unauthorized dominion over the funds of Superb to the exclusion of Superb's rights." *Id.* at ¶ 622.

Here, the Court finds Plaintiffs fail to state a claim for conversion, because Plaintiffs set forth no facts explaining the Bank Defendants' purported involvement in the Deo Defendants' scheme, other than control of the account by which fraudulent wire transfers were made and funds were deposited. *See Schottenstein*, 2023 WL 4363002 at *3 (holding that without facts to demonstrate the defendant's involvement in the conversion scheme, facts that show his control of an account that received stolen funds was insufficient). Furthermore, Plaintiffs have not suggested that the Bank Defendants knew they wrongfully possessed the Plaintiff's property, especially given Deo falsely claimed to be the sole owner of the dealerships in order to open accounts and transfer funds without Superb's approval. *See id.* (holding plaintiff failed to state a conversion claim when the plaintiffs failed to show they made a demand for the return of their money from the defendant or that the defendant otherwise knew he wrongfully possessed their property in the account he controlled); *see also* ECF No. 176 at ¶¶ 209-210. Therefore, Plaintiffs have failed to set forth sufficient facts to support a sufficient conversion claim as it pertains to the Bank Defendants, and the conversion claim as against them is dismissed.

**VII.**   *Unjust Enrichment Claims – Against Deo, Northshore, and Sunrise*

Under New York law a claim for unjust enrichment has elements of (1) the defendant was enriched; (2) enrichment was at the plaintiff's expense; and (3) the defendant's retention of the benefit would be unjust." *Bartfield v. Murphy*, 578 F.Supp.2d 638, 648-49 (S.D.N.Y. 2008). In New York, unjust enrichment is an equitable remedy available in cases where there is no contract between the parties. *Marathon Enterprises, Inc. V. Schroter GMBH & Co.*, No. 01 Civ.

0595 (DC), 2003 WL 355238 at *9 (S.D.N.Y Feb. 18, 2003). It is rooted in the concept that a

person should not be allowed to unjustly enrich themselves at the expense of another and will

depend on "broad considerations of equity and justice." *Columbia Mem. Hosp. V. Hinds,* 192

N.E.3d 1128 (N.Y. 2022). Essentially, courts will determine if it goes against equity to permit a

party to retain what is sought to be recovered by assessing whether "a benefit has been conferred

on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if

there has been otherwise a change of position by the defendant, and whether the defendant's

conduct was tortious or fraudulent." *Id.*

 Where, as here, there is no contract between the parties, privity is not required for an

unjust enrichment cause of action. *Financial Assistance, Inc. v. Graham*, 143 N.Y.S.3d 380

(N.Y. App. Div. 2d Dep't 2021).  However, an unjust enrichment cause of action will not stand

where the connection between the parties is too attenuated; such a claim requires a showing of

reliance and is based on an "obligation imposed by equity to prevent injustice, in the absence of

an actual agreement between the parties." *Id.* Notably, an unjust enrichment claim is not a

"catchall cause of action to be used when others fail." *Hesse v. Godiva Chocolatier, Inc.,* 463

F.Supp.3d 453, 473 (S.D.N.Y. 2020) (quoting *Stoltz v. Fage Dairy Processing Industry, S.A.*,

2015 WL 5579872, at *26 (E.D.N.Y. Sept. 22, 2015). Unjust enrichment claims will not survive

a motion to dismiss "where plaintiffs fail to explain how their unjust enrichment claim is not

merely duplicative of their other causes of action." *Id.* at 474 (quoting *Nelson v. MillerCoors,

LLC*, 246 F.Supp.3d 666, 679 (E.D.N.Y. 2017)).

 Here, Plaintiffs allege, and this Court agrees, that if these allegations are taken as true,

Deo's retention of assets of Northshore and Sunrise have caused him to be unjustly enriched at

Northshore's expense, and the circumstances are such that equity and good conscience require

Deo to make restitution. *See* ECF No. 65 at ¶¶ 473-474; 479-480. Plaintiffs also assert numerous instances where Deo took and used dealership assets for his own purposes, and at the expense of the Plaintiffs' dealerships. *Id.* at ¶¶ 118-125. Plaintiffs allege that Deo treated Northshore and Sunrise and their respective asserts as his own:

> For example, Deo allegedly took over $230,000.00 in customers' cash deposits, rather than rightly deposit the money in Northshore's accounts, issued and signed checks from Northshore bank accounts to be sent to his own corporation for his own personal expenses, used credit cards in Sunrise's name to pay for personal expenses and lastly, Deo's son  continues to drive, for personal use, a luxury Maserati, valued at almost $80,000 and paid for by IAG Plaintiffs' all of which was done without Plaintiffs' consent.

*Id.*

The Court finds Plaintiffs have sufficiently showed evidence that Deo was enriched at Plaintiff's expense, which is the necessary component for a claim of unjust enrichment. *See Marathon Enterprises, Inc.*, 2003 WL 355238 at *9 (finding plaintiffs did not have a claim for unjust enrichment because the plaintiff was unable to show any evidence that the defendant was enriched at the plaintiff's expense). With respect to the claims for unjust enrichment against Northshore and Sunrise, Northshore and Sunrise are not named defendants in this action. Therefore, those causes of actions must be dismissed.

## VIII.   *Civil Conspiracy – Against the Deo Defendants*

New York law does not recognize a substantive tort of civil conspiracy. *Pope v. Rice*, No. 04 Civ. 4171 (DLA), 2005 WL 613085 at *13 (S.D.N.Y. Mar. 14, 2005) (citing *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 251 (2d Cir. 1985). Rather, a claim for civil conspiracy requires is "evidence of an underlying actionable tort." *Id.* (quoting *Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001)). The independent underlying tort must be any "unlawful" act, or a "lawful" act done "in an unlawful manner." *Dell's Maraschino Cherries Co., Inc. v. Shoreline Fruit Growers, Inc.*, 887 F.Supp.2d 459, 482 (E.D.N.Y. 2012)

(citing *Arlinghaus v. Ritenour*, 622 F.2d 629, 639 (2d Cir. 1980)). Ultimately, a plaintiff's allegations of conspiracy must serve to connect a defendant's conduct "with an otherwise actionable tort." *UniCredito Italiano SPA v. JPMorgan Chase Bank*, 288 F.Supp.2d 485, 504 (S.D.N.Y. 2003).

Once an underlying tort is established, a claimant must demonstrate the elements of civil conspiracy which are: "(1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage." *Pope*, 2005 WL 613085 at *13. (quoting *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986) (applying New York law). As is the case with criminal conspiracies, civil conspiracy agreements are not easily shown by direct evidence, "but may be inferred from circumstantial evidence." *Dell's Maraschino Cherries Co.,* 887 F.Supp.2d at 482 (quoting *Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir. 1999)).

Here, Plaintiffs allege that the Deo Defendants entered into a civil conspiracy to engage in, *inter alia,* misappropriation, unfair competition, unjust enrichment, and tortious interference with contract. *See* ECF No. 65 ¶¶ 400. As stated above, Plaintiffs failed to allege the underlying torts of misappropriation of trade secrets and tortious interference. However, Plaintiffs also allege the Deo Defendants entered into a civil conspiracy to engage in unfair competition and unjust enrichment (ECF No. 65 at ¶¶ 400-405), which have been sufficiently pled as shown above.

Since an underlying actionable tort has been sufficiently plead, Plaintiffs must demonstrate the elements of civil conspiracy. *See Pope,* 2005 WL 613085 at *13. Plaintiffs allege that the Deo Defendants conspired with each other for an unlawful purpose, to wit: to obtain Plaintiffs' confidential information and develop a business to compete using Plaintiffs'

confidential information and property obtained through fraud. ECF No. 65 at ¶ 399. Plaintiffs

further allege that the Deo Defendants each agreed to this common goal to obtain Plaintiffs'

confidential information and create a business to compete with Superb using such information

obtained through fraud with the specific purpose of harming the Superb Plaintiffs for their own

personal gain. *Id.* at ¶ 401.

Plaintiffs allege Deo poached Superb employees for his own Gold Coast dealerships and

trained them in the Tekion DMS system customized by Superb. *Id.* at ¶ 235-36.  Furthermore,

Plaintiffs allege that Deo and such employees used their experience at Superb and familiarity

with its customer list to redirect Superb customers to Gold Coast dealerships. *Id.* at ¶ 237-240.

The very essence of unfair competition claim under New York law is that the defendant

misappropriates the labors and expenditures of another with some element of bad faith, which is

established by these facts and overt acts committed by the Deo Defendants. *See ML Genius*

*Holdings LLC*, 2022 WL 710744 at *4. The Deo Defendants' intentional participation of this

purpose to obtain and utilize confidential information from Superb's dealership, resulted in

damage to the Plaintiffs. *See Barbagallo*, 820 F.Supp.2d at 447 (citing *CA, Inc. V. Simple.com,*

621 F.Supp.2d at 54) (special damages are sufficient when a plaintiff alleges that a defendant

diverted the plaintiff's customers and business).

Therefore, Plaintiffs' allegations of conspiracy serve to connect the Deo Defendants'

conduct with an otherwise actionable tort such that this claim may survive a motion to dismiss.

**IX.**     _**Fraud -- Against Deo and Jones**_

"The elements of fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to plaintiff." _Zurich Am. Life Ins. Co. v. Nagel,_ 590 F. Supp. 3d 702, 723 (S.D.N.Y. 2022) (citing _Chanayil v. Gulati_, 169 F.3d 168, 171 (2d Cir. 1999)).  These elements must be proven by clear and convincing evidence. _Goodman v. Waugh,_ 882 F. Supp. 64, 65 (S.D.N.Y. 1995). To survive a motion to dismiss under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent[;] (2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the statements were fraudulent." _Rombach v. Chang_, 355 F.3d 164, 171 (2d Cir. 2004) (citation omitted).  Under New York law, the elements of a common-law fraud claim are (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.  _MetLife Invs. USA Ins. Co. v. Zeidman_, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) (citing _Crigger v. Fahnestock & Co., Inc._, 443 F.3d 230, 234 (2d Cir. 2006)).

The necessary intent can be shown where a plaintiff establishes that an intentional or reckless misstatement was made with the intent that the plaintiff relies on it or by showing that the defendant had motive and opportunity to commit fraud. _Zurich American Life Ins. Co._, 590 F. Supp.3d at 723. Merely alleging that an individual had access to the information by which it could have discovered the fraud is not enough. _See Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc._, 747 F.Supp.2d 406, 413 (S.D.N.Y. 2010) (reasoning that elements of common law fraud are "essentially the same" as those that must be pleaded to establish a claim under Section 10(b) and Rule 10b-5); _In re aaiPharma Inc. Secs. Litig._, 521 F.Supp.2d 507, 513

(E.D.N.C. 2007) (noting that "merely because a person has broad access to every book in a library does not mean that the person has read and chosen to ignore facts contained in a particular book in the library").

With respect to 9(b)'s heightened pleading standard for fraud claims, Plaintiffs assert that Deo enlisted the help of Thomas Jones and Jones CPA LLP to manipulate and falsify Northshore's and Sunrise's monthly financial reports with an intent to defraud the IAG Plaintiffs and Ally Bank. *See* ECF No. 65 at ¶¶ 130-35. With respect to elements (1), (2), and (3), Plaintiffs specify that these monthly statements compiled by Jones were fraudulent. *See Rombach*, 355 F.3d at 171. Plaintiffs allege that Deo, as general manager, was responsible for ensuring the dealership satisfied financing plans for its own inventory, its customers, and to provide accurate monthly financial so they could continue to receive the Floor Plan. ECF No. 65 at ¶¶ 87-88, 94, 102, 106-08, 128-29. During Deo's tenure overseeing and managing Northshore and Sunrise, Jones was engaged and paid by the dealerships to assist Deo in preparing the information to create the monthly financial reports. *Id.* at ¶132.

With respect to element (4), Plaintiffs allege that the monthly financial reports were fraudulent because they falsely showed Superb was profitable because according to Plaintiff's, the Defendants' conduct caused Superb substantial losses causing Superb to operate at a loss. *Id.* ¶¶ 424-25. Furthermore, Plaintiffs allege that these fabricated financial statements induced IAG Plaintiffs and Ally Bank to sustain the dealerships' Floor Plan (*id.* at ¶¶ 136-37) and Deo used these records to present himself as the true owner of Northshore to secure loans without the consent or knowledge of Northshore's true owners. *Id.* at ¶¶ 169-72. Plaintiffs also claim that had Deo provided IAG Plaintiffs and Ally Bank with the accurate monthly financial reports, IAG and Ally Bank would have discontinued providing the Floor Plan. *Id.* at ¶ 129.

Plaintiffs have adequately pleaded the elements of common-law fraud. The statements were made by Deo with knowledge of the falsity and with intent to defraud, however, not so with Jones. *See MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d at 312. Plaintiffs broadly state that Jones "knew or should have known that the information provided or reviewed by him was false and nonetheless reported to Superb Plaintiffs that the dealership bank accounts were balanced and that there were no discrepancies or issues." ECF No. 65 at ¶¶ 427.  Plaintiffs also sweepingly conclude that Jones submitted such financials "with an intent to defraud Superb Plaintiffs as he stood to gain compensation for engaging in fraud" without any more detail as to how. *Id.* at ¶ 428. These conclusory allegations are not sufficient to sustain a common law fraud claim.  The paucity of allegations to support conclusions of an intent to defraud and knowledge of falsity, with the requisite particularity, fail to sustain a plausible claim against Jones.  But, as to Deo, given his job duties and in light of the other claims at issue, the allegations are sufficiently plausible to survive a motion to dismiss as to him.

## X.    *Article 4-A of the New York UCC – against Flushing Bank*

Article 4-A "governs the procedures, rights, and liabilities arising out of commercial electronic fund transfers," including wire transfers. *Niram, Inc. v. Sterling National Bank*, 697 F.Supp.3d 15, 21 (S.D.N.Y. 2023) (quoting *Grain Traders, Inc. V. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998); *see also* N.Y. U.C.C. § 4-A-102 & comment. Article 4-A "creates a scheme to set clear rules as to who bears the loss for unauthorized transactions. *Id.* (quoting *123RF LLC v. HSBC Bank USA, N.A.*, No. 21 CIV. 8519 (NRB), 663 F.Supp.3d 391, 400 (S.D.N.Y. Mar. 23, 2023). Section 4-A-204 of Article 4-A provides that a bank is obligated to refund a customer for a wire transfer issued in the customer's name that was unauthorized. *Niram*, 697 F.Supp.3d at 21

(explaining that § 4-A-102 "establishes that a bank must refund a payment it issued if the payment was not authorized and not effective as the order of the customer.")

The most common issue that arises in analyzing these claims is whether the transfers at issue were "authorized" or not. *Id.* at 22 (explaining that a payment order is "authorized" if the sender authorized the order or is otherwise bound by it under the law of agency). Furthermore, "ineffective transfers are those in which the bank has not properly executed security procedures." *Id.* at 23 (explaining that a security feature is "effective" if it is "commercially reasonable," and second, if the bank acted "in good faith" and "in compliance with the security procedure and any other written agreement or instruction"). However, if the bank follows commercially reasonable security procedures, the loss for an unauthorized transaction falls on the customer. *123RF LLC*, 663 F.Supp.3d at 400. Whether the security procedures are commercially reasonable is a question of law decided by the court which considers, "the wishes of the customer expressed to the bank, the circumstances of the customer known to the bank, including the size, type and frequency of payment orders normally issued by the customers to the bank, alternative security procedures offered to the customer, and security procedures in general use by customers and receiving banks similarly situated." *Id.*

An agent must have authority, whether actual or implied, to bind his principal. *Highland Capital Management LP v. Schneider,* 607 F.3d 322, 327 (2d Cir. 2010). Under New York law, an agent has actual authority if the principal has granted the agent power to enter contracts on its behalf, subject to whatever specified limitations are in place, either explicitly or implicitly. *Id.* (citing *Ford v. Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y. 1973)). When an agent lacks actual authority to initiate or authorize a transfer, "he may nonetheless bind his principal to a contract if he has created the appearance of authority, leading the other contracting party to reasonably

believe the actual authority exists." *Niram*, 697 F.Supp.3d at 27. To assert apparent authority, it

is essential to show words or conduct of the principal, communicated to the third party, that give

rise to the appearance and belief that the agent possesses authority to enter into a transaction.

*Highland Capital Management*, 607 F.3d at 328. Furthermore, a party may not claim an agent

acted with apparent authority when it "knew or should have known that the agent was exceeding

the scope of its authority." *Id.* (quoting *Sphere Drake Ins. Ltd. V. Clarendon Nat'l Ins. Co.,* 263

F.3d 26, 33 (2d Cir. 2001)).

Relevant here, Article 4-A encourages banks to adopt appropriate security procedures

such that a bank may not disclaim its liability for unauthorized transfers unless a commercially

reasonable security procedure is in place or at least has been offered to the customer. *Regatos v.

North Fork Bank*, 838 N.E.2d 629, 632-33 (N.Y. 2005). This Article was also intended to

promote the finality of banking operations and to spare banks from unknown liability of

potentially indefinite duration. *Id.* at 403, 633, 717. Article 4-A may preclude common law

claims when such claims would impose liability inconsistent with the rights and liabilities

expressly created by Article 4-A. *123RF LLC*, 663 F.Supp.3d at 401. In deciding if a claim is

preempted by Article 4-A, "the critical inquiry is whether the provisions protect against the type

of underlying injury or misconduct alleged in a claim." *Id.* (quoting *Ma v. Merrill Lynch, Pierce,

Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d. Cir. 2010).

Article 4-A's text strong suggests that it applies to claims asserting the existence of

unauthorized wire transfers regardless of what the claim may be called, and, in any event, the

accompanying commentary is pellucid on the issue. *Ma*, 597 F.3d at 90. Article 4-A governs

electronic fund transfers which are "series of transactions, beginning with the originator's

payment order, made for the purpose of making payment to the beneficiary of the order" and are

completed "by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Ma*, 597 F.3d at 87. Under this definition, the Flushing Bank wire transfers constitute electronic fund transfers governed by Article 4-A. *Id.* at 88.

Here, Plaintiffs allege that the fraudulent transfers at issue were not authorized, and the Deo Defendants did not have authority to make transfers or sign checks on behalf of Superb, Northshore, or Sunrise dealerships. ECF No. 65 at ¶ 439.  Plaintiffs maintain, and the Shareholders' Agreement corroborates, that Deo and the remaining Defendants lacked authority to enter into the fraudulent transfers. *Id.* at ¶ 441; *see also Highland Capital Management LP*, 607 F.3d at 327. Even if the Deo Defendants lacked the actual authority to initiate or authorize a transfer, they may nonetheless be capable of binding their principal to a contract they are shown to have created the appearance of authority leading the other contracting party, in this case, the Bank Defendants, to reasonably believe the actual authority exists. *See Niram*, 697 F.Supp.3d at 27. For the Bank Defendants to assert Deo had apparent authority, they would need to show words or conduct of the principal, in this case the Superb Plaintiffs, communicated to them, that gave rise to the appearance and belief that the Deo Defendants possessed authority to enter a transaction. *See Highland Capital Management*, 607 F.3d at 328. Furthermore, there are no facts to suggest that Plaintiffs communicated to Flushing Bank any information that would give cause for them to believe Deo possessed authority to enter a transaction. *See Highland Capital Management,* 607 F.3d at 328.

Plaintiffs allege that Flushing Bank knew, or should have known, that Deo had no membership interest in Northshore or Sunrise to authorize such transactions or at the very least that a commercially reasonable actor, or in this case a sophisticated bank, would have been

alerted to the fact that the transfers were fraudulent and thus unauthorized. ECF No. 65 at ¶¶

442-444. Plaintiffs allege that if those inquiries had been made, then Flushing would have been

able to confirm that Deo lacked actual authority. *Id.* at ¶¶ 444-445. In addition, Plaintiffs allege

that Flushing Bank had actual knowledge that Urrutia, not Deo, was the majority shareholder of

Superb and sole member of shareholder of his remaining dealerships because Urrutia had

previously provided Flushing Bank with all information concerning his ownership interest in

Superb. *Id.* at ¶ 454.

Accordingly, these allegations sufficiently state a claim pursuant to Article 4-A against

Flushing Bank to withstand a motion to dismiss.

**XI**   ***Negligence – Against Flushing Bank and
        <u>Chase Bank; Unauthorized Payments – Against Flushing Bank</u>***

The elements of a negligence under New York law claim are well settled: (1) a duty owed

by the defendant to the plaintiffs; (2) breach of that duty; and (3) injury substantially caused by

that breach. *Cheeseboro v. Little Richie Bus Servs., Inc.*, 254 F. Supp. 3d 485, 490 (E.D.N.Y.

2017) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)).  At

issue here is the threshold question of whether Defendant owed a duty to the Plaintiffs in

undertaking the 1031 Exchange and filing tax paperwork and paying taxes on Plaintiffs'

beAccordingly, alf.  "The existence of duty is an essential element of a negligence claim

because, '[i]n the absence of a duty, as a matter of law, no liability can ensue.'"  *Farash v. Cont'l

Airlines, Inc.*, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008) (quoting *McCarthy v. Olin Corp.*, 119

F.3d 148, 156 (2d Cir. 1997)).  Determining the existence and contours "of an alleged

tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to

submitting anything to fact-finding or jury consideration." *Palka v. Servicemaster Mgmt. Servs.

Corp.*, 634 N.E.2d 189 (N.Y. 1994).

The breadth of one's duty to another depends on the relationship of the parties, whether the injured party was within the zone of foreseeable harm, and whether that harm fell within a category of reasonably foreseeable harms that the duty exists to prevent. *Id.* (citing *Di Ponzio v. Riordan*, 679 N.E.2d 616 (N.Y.1997). This of course is the lesson of *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928)).

Here, Plaintiffs allege that Flushing Bank owed Superb Plaintiffs a duty of care to act in a manner consistent with commercially reasonable standards and that they failed to do so by following their own "Know Your Customer" procedures, which resulted in enabling Deo to fraudulently open an account with the bank when he falsely stated he was the sole shareholder of Superb. *See* ECF No. 65 at ¶¶ 452-455. Furthermore, Plaintiffs claim both Flushing Bank and Chase Bank are liable for negligence because each failed to conduct "proper due diligence" into whether Deo had the authority to open a new account in Superb's name and sign checks on Superb's existing account which Plaintiffs allege to be a breach of duty of care to the Superb Plaintiffs. *See id.* at ¶¶ 627-630.

However, Article 4-A controls how electronic funds transfers are conducted and specifies certain rights and duties related to the execution of such transactions. *Ma*, 597 F.3d at 89. Article 4-A calls for banks to adopt certain security procedures, controls the timing for executing payments, and assigns responsibility for reporting erroneous electronic debits. *Id.* Article 4-A's principal purposes are to protect against erroneous and unauthorized electronic transfers and to cabin banks' liability for unreported errors. *Id.* at 90. Plaintiffs' negligence claims with respect to the Bank Defendants are preempted by Article 4-A because any common law claims regarding the existence of unauthorized wire transfers and the mechanics of how those transactions were

conducted fall within the regime of Article 4-A and are therefore precluded. *123RF LLC v.*
*HSBC Bank USA, N.A.*, 663 F.Supp.3d 391, 401 (S.D.N.Y. 2023).

To be sure, courts in this Circuit have found that claims that defendant "violated its duty
of care by negligently honoring" unauthorized transfers, "fall entirely within the coverage of
Article 4-A, which creates a comprehensive risk allocation for unauthorized fund transfers," and
are thus preempted. *See 123RF LLC*, 663 F.Supp.3d at 401 (citing *Banco del Austro v. Wells*
*Fargo Bank, N.A.*, 215 F.Supp.3d 302, 306-07 (S.D.N.Y. 2016)). In other words, the negligence
claims here against the Bank Defendants cover the same territory as Article 4-A, because the
predicates for the negligence and breach of Article 4-A claims are the same. *Id.* The negligence
claim here concerns the unauthorized transactions and the way in which they occurred which is
the same type of claim covered by Article 4-A and thus precluded against with respect to the
Bank Defendants. *Id.*

Superb Plaintiffs also seek to hold Flushing liable for unauthorized payments in the
amount of "at least $500,000." ECF No. 65 at ¶ 635. Once the Bank accepted Deo's deposits, it
let these funds be disbursed from accounts in Superb's name; however, these funds belonged to
Superb. ECF No. 65 at ¶¶ 632-33. Moreover, Superb Plaintiffs maintain Chase is liable as the
drawee bank for the full amount ("at least $250,000") of checks Deo signed and issued from
Superb's account. ECF No. 65 at ¶¶ 640-41. Although Chase supposedly had on file the
authorized signatories on Superb's account, which did not include Deo, the Bank still paid
checks Deo signed from the dealership's accounts. ECF No. 65 at ¶¶ 637-39.

With respect to the unauthorized payment claim against Flushing Bank, the claim covers
the same territory as Article 4-A as it concerns the same unauthorized transactions and the way
in which the occurred. *See 123RF LLC*, 663 F.Supp.3d at 401. This unauthorized payment claim

with respect to Flushing Bank is similarly preempted by Article 4-A. Put simply, it is yet a common-law claim arising out of the existence of unauthorized wire transfers and the mechanics of how those transactions were conducted, which, like the negligence claim, falls squarely within the coverage of Article 4-A, and therefore is precluded. *See id.*

## XII.    *Drawee Liability – Against Chase Bank*

Most forged check endorsements are ineffective, meaning the instrument will not authorize the drawee bank to pay it from the drawer's account. *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank, N.A.*, 46 N.Y.2d 459, 464-65 (N.Y. 1979) ("*Underpinning*"). That, in turn, means any payment on the check comes from the property of the drawee, and not the drawer – thus, whatever the depository bank does with that payment, it is not a conversion of the drawer's property. *Id.* at 465. To this end, in most drawer/drawee conversion actions, the drawee bears the losses, and naturally, the payee has the cause of action, rather than the drawer, against that drawee. *Sony Corp America v. American Exp. Co.*, 455 N.Y.S.2d 227, 229-30 (N.Y. Civ. Ct. 1982).

However, where there is an effective endorsement (and thus authorization), the drawee pays on that instrument with the *drawer's* funds, and the drawer's interest may be the basis against the depositary bank that wrongfully obtains that money. *Underpinning*, 46 N.Y.2d at 466. Naturally, when an indorsement is effective, no action would lie against the depository bank for payment over the forged indorsement because the drawee is deemed to be paying out its own money because it cannot charge the drawer's account without authorization. *Id.* In summary, a drawer may directly sue a depository bank which has honored a check in violation of a forged restrictive indorsement in situations in which the forgery is effective. *Id.* at 468. In most forged indorsement cases, the party who first took the check from the forger will ultimately be liable

because it is the party who takes from the forger first who is in the best position to verify the indorsement. *Id.* However, that will not always be the case; for example, if the forgery is the result of some other interested party's negligence, the burden may ultimately be placed on that party. *Id.*

Of course, a "tainted check" puts the drawee on constructive notice of an ineffective authorization, but in those "rare instances" where the depository bank has acted wrongfully while the drawee has proceeded diligently, the drawer may proceed against the depositary bank. *Id.* For a forged instrument to be effective, courts look for whether: (1) an imposter has induced the maker or drawer to issue him the instrument, (2) one signing as or on behalf of the maker or drawer intends the payee to have no interest in the instrument, or (3) an agent or employee of the maker or drawer has supplied him with the name of the payee, but intending that the payee have no such interest. *See Leigh Co. v. Bank N.Y.*, 617 F.Supp. 147, 151 (S.D.N.Y. 1985); *see also* N.Y. U.C.C. § 3-405. With respect to (3), the indorsement is deemed to be effective, and the drawer is thus precluded from recovering solely on the basis of the forgery from banks which honor the check. *Underpinning*, 46 N.Y.2d at 468 (reasoning that "as a practical matter the drawer is in a better position to prevent the fraud by utilizing proper accounting methods, than is even the first party to take from the forger"). In instances where it is clear that the loss could have been most readily prevented by the drawer, the code may place the loss upon the drawer as a matter of law. *Id.*

Here, Plaintiffs allege that Chase Bank is liable for the full amount ("believed to be at least $250,000") of checks paid from Superb's account and signed by Deo because the bank had authorized signatories on file and Deo was not one of them, yet Deo still signed checks from Superb's account and Chase Bank paid them. *See* ECF No. 65 at ¶¶ 636-641. Because ordinarily,

a drawer of a check has no cause of action against a depository bank for acceptance of and payment on a forged indorsement since that bank is deemed not to have dealt with any valuable property of the drawer, Plaintiffs have not sufficiently stated a claim for drawee liability against Chase Bank. *See Leigh Co.*, 617 F. Supp. at 151.

Even if the indorsement was forged, yet effective, and the indorsement validly authorizes the drawee bank to withdraw funds from the drawer's account, the Code views the drawer himself or herself as in the best position, among all innocent parties to the transaction, to prevent or detect the forger's deception. *Leigh Co.*, 617 F. Supp. at 151. Plaintiff has a cause of action against Chase Bank only if the bank (1) dealt with the checks in violation of their restrictive indorsements, or, (2) did not deal with the checks or their proceeds in accordance with reasonable commercial standards. *See id.* at 152. However, the complaint does not allege that the bank committed either of these errors; therefore, no matter who's agent Deo was, Plaintiffs cannot defeat Chase Bank's motion to dismiss on drawee liability. *See id.*

## XIII.  *Violation of New York UCC §3-419 – Against Flushing Bank and Chase Bank*

UCC § 3-419 provides that:

(1) An instrument is converted when (a) a drawee to whom it is delivered for acceptance refuses to return it on demand; or (b) any person to whom it is delivered for payment refuses on demand either to pay or return it; or (c) it is paid on a forged indorsement

(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

(3) Subject to the provisions of this Act concerning restrictive indorsements, a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

*Kaplan v. Valley Nat. Bank*, 41 N.Y.S.3d 719, 52 Misc.3d 1210(A), 2016 WL 3939922 at *3

(N.Y. Supp. Ct. 2016) ("*Kaplan*"). In *Kaplan,* the plaintiff contended, but failed to sufficiently

plead, that the bank violated this statute by accepting a check without an indorsement, obtaining

payment from the payor bank, and allowing third parties to draw against the funds which was not

commercially reasonable under the circumstances. *Id.*

Depository and collecting banks are absolved from liability to payees or true owners of

negotiable instruments unless (1) they pay out over a restrictive indorsement, (2) they actually

retain proceeds of the instrument in the customer's account, or (3) they failed to act in good faith

or in accordance with reasonable commercial standards. *Id.* "Good faith" is defined as "honest in

fact in the conduct or transaction concerned." *Id* at *4. The common law rule in New York

before enactment of the Code was that "a drawer had no direct action against a depository bank;

its remedy was against the drawee bank," and "the Code did not change the rule." *Lesser v. TD*

*Bank, N.A.*, 463 F.Supp.3d 438, 447 (S.D.N.Y.) (quoting *Prudential-Bache Sec., Inc. V.*

*Citibank, N.A.*, 536 N.E.2d 1118 (N.Y. 1989)). Rather, the Code added defenses that make it

even more difficult for a drawer to recover against a depository bank. *Id.*

Here, Plaintiffs allege that Flushing opened an account in the name of Superb, when it

knew or had reason to know Deo was not, as he represented, the owner of Superb, and thus did

not act in a commercially reasonable manner. *See* ECF No. 65 at ¶ 609. Furthermore, Plaintiffs

allege that Flushing Bank did not employ reasonable due diligence when Deo opened this

account since they had documentation to contradict Deo's claim. *Id.* at ¶ 611. Plaintiffs assert

that Flushing Bank, as a depository or collecting bank, is liable, pursuant to UCC § 3-419(3) to

Superb, the true owner of any cash deposits from Superb deposited by Deo into an account

opened by him at Flushing Bank for the full amount of any such cash deposits as well as any

checks made payable to Superb deposited in these accounts *Id.* at ¶ 612. Similarly, Plaintiffs assert that Chase Bank committed similar infractions by permitting Deo to draw checks on Superb's account when it knew or had reason to know Deo was not an authorized signer on Superb's account, such that it did not act in a commercially reasonable manner.

However, none of the three situations which would allow a depository or collecting bank to be held liable to payees have occurred because Plaintiffs have failed to allege that the Bank Defendants were not acting in "good faith" or in accordance with reasonable commercial standards when they carried out these transactions. *See Kaplan,* 2016 WL 3939922 at *4. The record does not reflect any dishonesty of the Bank Defendants' handling of this money, nor did the Bank Defendants retain any of the proceeds of the money deposited. *See id.* Aside from Plaintiffs' broad conclusory allegations, there are not facts sufficient to allege that the Bank Defendants here dealt with the accounts in a manner that did not comport with good faith and in accordance with reasonable commercial standards. *See id.* Therefore, the Bank Defendants are not liable under UCC § 3-419, and this claim asserted against them is dismissed.

## XIV.  *Professional Malpractice – Against Jones CPA LLP*

Under New York law, professional malpractice requires a showing of three elements: (1) negligence (2) which is the proximate cause of (3) damages. *MF Global Holdings Ltd. V. Pricewaterhouse Coopers LLP*, 199F.Supp.3d 818, 829 (S.D.N.Y. 2016). In other words, a *prima facie* case of negligence, gross negligence, or professional malpractice requires the plaintiff to show: (1) a duty to the plaintiff; (b) a breach of duty; (c) a reasonably close causal connection between the contact and the resulting injury; and (d) actual loss, harm or damage. *Cromer Finance Ltd. v. Berger*, 137 F.Supp.2d 452, 495 (S.D.N.Y. 2001) (explaining that New York labels "professional malpractice" a "species of negligence").

To prove liability for professional negligence, a plaintiff must show: (1) the plaintiff contracted for the service, or the service ordinarily would be performed in the course of professional performing its obligations under the contract; (2) the defendant's professional services "departed from accepted standards of practice in the relevant field[;]" and (3) the departure proximately caused the plaintiff's injuries. *MF Global Holdings Ltd*., 199 F.Supp.3d at 829. The Second Circuit has held that to establish negligent misrepresentation under New York law against a professional when there is no contractual relationship – and thus no privity to give rise to a duty – the plaintiff must specifically establish: (1) that the accountant was aware that the reports would be used for a particular purpose; (2) in furtherance of which a known party was intended to rely; and (3) some conduct by the accountant "linking" him or her to that known party. *Cromer Finance Ltd.*, 137 F.Supp.2d at 495-96.

The standard of care required of a professional demand he or she will "exercise the skill and knowledge normally possessed by members of his or her trade or profession in good standing in similar communities." *MF Global Holdings Ltd*., 199 F.Supp.3d at 830. Like any other negligence action, a plaintiff must show "beyond the point of speculation and conjecture, a causal connection between its losses and the defendants' actions" such that but for the alleged malpractice, it would not have sustained the damages. *Id.* Furthermore, proof of proximate cause is an essential element in accountant malpractice claims because a defendant is only liable to "those with respect to whom his acts were a substantial factor in the sequence of responsible causation." *Id.* An intervening act may not relieve an actor of responsibility, where the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence. *Id.*

Relevant here, an accountant owes a duty of care for services relied upon by plaintiffs who are part of a specific and identifiable group rather than a "faceless or unresolved class of persons." *Cromer Finance Ltd.*, 137 F.Supp.2d at 496 (quoting *White v. Guarente,* 372 N.E.2d 315, 318-319 (N.Y. 1977)). Conduct is "linking conduct" if there is some form of direct contact between the accountant and the plaintiff, such as face-to-face conversations, exchanging of documents, or other "substantive communication" between the parties. *Id.*

A representation certified as true to the knowledge of the accountants when they do not have such knowledge, a reckless misstatement, or an opinion made on flimsy grounds such that the conclusion must be there was no genuine belief in its truth, are all sufficient upon which to base liability. *In re Allou Distributors, Inc.* 395 B.R. 246, 259, 15 N.E.2d 416 (E.D.N.Y. 2008) (quoting *State Street Trust Co.,* 278 N.Y. 104, 112 (N.Y. 1938)). Gross negligence has been found where "several acts of negligence with foreseeably cumulative effect." *In re Allou Distributors, Inc.*, 395 B.R. at 260. Furthermore, the refusal or inability to see or investigate an obvious doubt among finances may warrant an inference of fraud. *See id.* (explaining that "a refusal to see the obvious, a failure to investigate the doubtful, if sufficiently gross, may furnish evidence leading to an inference of fraud so as to impose liability for losses suffered by those who rely on the balance sheet.").

Here, Defendant Jones CPA LLP is an accounting firm consisting of Certified Public Accountants. *See* ECF No. 65 at ¶ 407. Plaintiffs allege that in or before March 2023, Superb engaged the services of Jones CPA LLP, by and through the conduct of Deo, to perform various accounting services for Superb such as monthly reconciliation of bank accounts, including general ledger, profit and loss, and inventory, as well as preparation of monthly financial statements required to be sent to Superb's lenders, such as Ally Bank, for the Floor Plan. *Id.* at ¶¶

408-409, 643-645. Plaintiffs maintain that under the standards of care prevailing in the accounting industry, Jones CPA LLP had an affirmative duty to Superb Plaintiffs to undertake such tasks with caution and care, and to be vigilant for discrepancies or irregularities and to report any such findings accordingly (*id.* at ¶ 411) and a duty under Article V of the Principles of Professional Conduct of the AICPA Code of Professional Conduct to identify and inform Plaintiffs of any red flags. *Id.* at ¶ 412. Furthermore, Plaintiffs allege that Jones CPA LLP failed to exercise independence and due professional care "in a variety of ways" including failing to notice, investigate and/or report to Urrutia the existence of Deo's scheme to create a false record that he is the 100% owner of Superb Plaintiff's dealerships and to fail to report missing cash never deposited into Superb Plaintiffs' dealership bank accounts despite seeing cash receipted in the DMS systems. *Id.* at ¶ 413. Plaintiffs allege that the negligence and wrongful and deficient conduct proximately caused them to suffer damages that would be reasonably foreseeable. *Id.* at ¶¶ 419-420, 655-657.

However, Plaintiffs have failed to show that "but for" Jones CPA LLP's alleged malpractice, they would not have sustained some actual ascertainable damages. *See e.g., Herbert H. Post & Co. V. Sidney Bitterman*, 639 N.Y.S.2d 329 (N.Y. App. Div. 1st Dep't. 1996). Therefore, Plaintiffs have not stated a cause of action for professional malpractice because the operative Complaint fails to set forth the requisite allegation that, "but for" the accountants' alleged malpractice, the plaintiff would not have sustained some actual ascertainable damages. *See Franklin v. Winard*, 606 N.Y.S.2d 162, 164 (N.Y. App. Div. 1st Dept. 1993). Plaintiffs have also failed to set forth conduct grossly departing from generally accepted accounting standards aside from broad and conclusory allegations of "failing to notice, investigate and/or report" the fraud committed by Deo. *See* ECF No. 65 at ¶ 413.  Plaintiffs specifically failed to set forth any

facts to show, with any degree of specificity, how Jones' conduct fell below standards of care prevailing in the accounting industry. Therefore, Plaintiffs' allegations do not state a sufficient claim to support professional malpractice against Jones CPA LLP.

**XV.**   _**Plaintiffs' Breach of Duty Claims**_

    **A.**   _**Breach of Duty of Loyalty – Against Deo**_

New York law mandates that an agent "be loyal to his employer and [is] prohibited from acting in any manner inconsistent with [their] agency or trust and [is] at all times bound to exercise the utmost good faith and loyalty in the performance of [their] duties. _Calderon v. Mullarkey Realty, LLC,_ No. 14-CV-2616 (PKC)(RLM), 2018 WL 2871834 at *7 (E.D.N.Y. June 10, 2018) (quoting _Phansalkar v. Andersen Weinroth & Co., L.P.,_ 344 F.3d 184, 200 (2d Cir. 2003)).  The duty of loyalty applies to cases "where the employee acts directly against the employer's interests" such as embezzlement.  _Pozner v. Fox Broadcasting Co._, 59 Misc. 3d 897, 900 (N.Y. Sup. Ct. 2017) (internal citations omitted).  Employees owe to their employer a duty of good faith and loyalty while performing their duties.  _Qosina Corp. v. C & N Packaging, Inc_., 948 N.Y.S.2d 308, 310 (N.Y. App. Div. 2d Dep't 2012).

Employees may not act in ways contrary to the interests of their employer.  _Id_. Furthermore, "when one who owes a duty of fidelity to a principal is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." _Phansalkar v. Andersen Weinroth & Co., L.P.,_ 344 F.3d 184, 200 (2d Cir. 2003). In addition, absent an agreement that states otherwise, "an employee who makes a profit or receives a benefit in connection with transactions conducted by him on behalf of his employer is under a duty to give such profit or benefit to his employer, whether or not it was received by the employee in violation of his duty of loyalty." _Phansalkar_, 344 F.3d at 203 (quoting _Western_

*Elec. Co.,* 360 N.E.2d 1091 (N.Y. 1977)). When an employee violates this duty, "not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal." *Id.*

Here, Plaintiffs allege that, as an employee and general manager of Northshore and Sunrise, Deo owed duties of loyalty and good faith to Northshore and Sunrise which he breached. *See* ECF No. 65 at ¶¶ 477, 483-484. Plaintiffs allege that Deo, through fraudulent means, and without the knowledge and consent of Northshore's members, sold the Future Receipts and acquired the Libertas Funds for himself and to the damage of Northshore and Plaintiffs. *Id.* at ¶¶ 498-501. Accepting all the facts alleged as true, Plaintiffs have presented sufficient facts to support that Deo acted in ways contrary to the interests of his employer and even has been alleged to act directly against his employer's interests. *See Pozner,* 59 Misc.3d at 900 (finding that as an employee of the company, the employee owed the company a duty of loyalty, which bound him to exercise "the utmost good faith and loyalty in the performance of his duties" and was "prohibited from acting in any manner that was inconsistent with his agency."). The operative Complaint thus adequately states a cause of action for breach of duty of loyalty with respect to Deo.

### B.  *Aiding and Abetting Breach of Duty of Loyalty – Against Thomasson*

Under New York Law, a claim for aiding and abetting a breach of fiduciary duty requires the following elements: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Tilebar v. Glazzio Tiles*, 723 F.Supp.3d 164, 205 (E.D.N.Y. 2024). Furthermore, the claimant must show that the alleged aider and abettor provided "substantial assistance" to the breaching party which can be shown when the aider and abettor affirmatively

assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.
*Id.* However, the mere inaction of an alleged aider and abettor will only constitute substantial assistance if the defendant owes a fiduciary directly to the plaintiff. *Id.*

Here, Plaintiffs allege that, as set forth above, Thomasson aided and abetted Deo's breach of the duty of loyalty in selling the Future Receipts so as to acquire the Libertas Funds for Deo's own personal benefit. *See* ECF No. 65 at ¶ 540. Plaintiffs allege that Thomasson falsely claimed himself to be the rightful attorney for Northshore to induce the IAG Plaintiffs to transfer the funds to Thomasson's escrow account for the benefit of Northshore. *Id*. at ¶¶ 506-510. Plaintiffs further allege that Thomasson not only failed to safeguard the Libertas Funds, when he knew they were in dispute, but that he intentionally and without authority, disbursed the funds to Deo, knowing they belonged to Northshore, interfering with Northshore's right of possession. *Id.* Thomasson's alleged involvement in the transfer of the funds provided Deo with "substantial assistance" in his fraudulent endeavors and thereby enabled the breach to occur. *See Tilebar,*723 F.Supp.3d at 205. Given that: (i) Deo's breach of his fiduciary obligations to Plaintiffs, these facts are sufficient to state a claim, that (ii) Thomasson knowingly participated in the breach, and (iii) that Plaintiffs' suffered damage as a result, *see e.g., Tilebar*, 723 F.Supp.3d at 205, the Court finds the operative Complaint adequately stated a cause of action for aiding and abetting a breach of duty of loyalty with respect to Thomasson.

### C.     *Breach of Fiduciary Duty – Against Deo*

To state a claim for breach of fiduciary duty under New York law, a plaintiff must satisfy three elements: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Leighton v. Poltorak*, No. 17-cv-3120 (LAK) (KNF), 2018 WL 2338789 at *7 (S.D.N.Y. May 23, 2018). A fiduciary relationship exists "between two persons

when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Boston Consulting Group, Inc. V. NCR Corporation*, No. 19 Civ. 10156 (LGS), 2020 WL 5731963 at *2 (S.D.N.Y. Sept. 24, 2020). In other words, it exists "when confidence is reposed on one side and there is a resulting superiority and influence over the other." *Id.* (quoting *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 910 N.E.2d 976, 980 (N.Y. 2009)). Whether a fiduciary relationship exists will be a fact-specific inquiry and is not entirely dependent upon an agreement or contractual relation. *Id.* However, in general, officers and directors owe fiduciary duties to their corporation. *Id.* at *4. This duty bars not only "blatant self-dealing, but also requires avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Id.* at *3.

Here, Plaintiffs allege that as an employee and general manager of Northshore and Sunrise, Deo had a fiduciary duty to act in the best interests of the dealerships and Plaintiffs. *See* ECF No. 65 at ¶¶ 480-481, 487-488.  Plaintiffs allege various instances of Deo's blatant self-dealing including that Deo, in breach of his fiduciary duties, and without the knowledge or consent of Northshore's members, sold the Future Receipts of Northshore and acquired Libertas Funds for himself. *Id.* at ¶ 498-500. That example, taken with all the information set forth with respect to Deo's actions above, are sufficient to conclude that Plaintiffs have stated a claim for breach of fiduciary duty with respect to Deo.

### D.    *Aiding and Abetting Breach of Fiduciary Duty – Against Thomasson*

Here, it is undisputed that Deo owed Plaintiffs a fiduciary duty which includes a duty of loyalty as the general manager of Northshore and Sunrise. *See* ECF No. 65 at ¶¶ 480-481, 487-488. As set forth above with respect to aiding and abetting a breach of duty of loyalty, the same allegations with respect to Thomasson, if taken as true, are sufficient to support a claim that

Thomasson aided and abetted a breach of fiduciary duty when he provided Deo with substantial assistance in receiving the funds then disbursing the funds to Deo at his request, while knowing the facts were at the very least in dispute by the parties. *Id*. at ¶¶ 506-510, 540. Thomasson portrayed himself as the attorney for Northshore in this transaction which is sufficient to indicate that he knowingly participated in Deo's scheme and Plaintiffs lost these funds as a result. *Id.* Therefore, Plaintiffs' claim against Thomasson for aiding and abetting the breach of a fiduciary duty is sufficient to withstand the motion to dismiss.

## XVI.  *Accounting – Against Deo*

The elements of a claim for an accounting are: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *In re Science, Language, and Arts International School*, No. 22-40065-ess, 2024 WL 2036101 at *24 (E.D.N.Y. May 7, 2024). Under New York law, a plaintiff seeking an accounting, which is an equitable remedy, must specifically allege: (a) that a fiduciary relationship existed between the parties, and (b) that the defendant breached his or her fiduciary duty. *Soley v. Wasserman*, 823 F.Supp.2d 221, 237 (S.D.N.Y. 2011) (citing *Bezuszka v. L.A. Models Inc.,* No. 04 cv. 7703, 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006). The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property. *Id.*

Here, the Court finds that Plaintiffs have adequately alleged the elements of their accounting claim. Specifically, they have sufficiently asserted that Deo had a fiduciary relationship with the Plaintiffs sufficient to satisfy element (1) as a minority shareholder of Superb. *See* ECF No. 65 at ¶ 275.  Furthermore, Deo had a fiduciary duty, as an employee and

general manager of Northshore and Sunrise, to act in the best interest of Northshore and Sunrise. *Id.* at ¶¶ 73-75; 487; 480. As stated above, Plaintiffs have sufficiently demonstrated facts to support allegations that Deo breached his fiduciary duty, such that it is an equitable remedy that Deo be required to show what he did with Plaintiff's property. *See e.g.*, *Soley*, 823 F.Supp.2d at 237. As to element (2), "money or property entrusted to the defendant imposing upon him the burden of accounting," and, here, Plaintiffs have adequately alleged that Deo had a role in the management of Superb's assets such as floor planned vehicles. *See* ECF No. 65 at ¶¶206-208. With respect to element (3), Courts have held that in the case of a fiduciary relationship, that relationship alone "gives rise to a claim for accounting" and this is an absolute right "notwithstanding the existence of an adequate remedy at law." *In re Science, Language, and Arts International School*, 2024 WL 2036101 at *25. To this end, Plaintiffs have sufficiently stated a claim for accounting to withstand a motion to dismiss.

## XVII.  *Violation of New York Judiciary Law § 487 – Against Thomasson*

Judiciary Law Section 487 prohibits attorneys "(1) engaging in any deceit or collusion, or consenting to any deceit or collusion, with intent to deceive the court or any party; or (2) willfully delaying a client's suit with a view to his own gain, or willfully receiving any money or allowance for or on account of any money which he has not laid out, or becomes answerable for." N.Y. Jud. Law § 487; *see also Musah v. Houslanger & Associates, PLLC*, No. 12 Civ. 3207, 2012 WL 5835293, at *4 (S.D.N.Y. Nov. 16, 2012). A plaintiff must allege his claim with particularity and show "at a bare minimum, that defendants: (1) are guilty of deceit or collusion, or consent to any deceit or collusion; and (2) had an intent to deceive the court or any party." *Ray v. Watnick*, 182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016). "Allegations regarding an intent to deceive

must be stated with particularity." *Id.* (quoting *Brake v. Slochowsky & Slochowsky, LLP*, 504 F.

Supp. 3d 103, 116 (E.D.N.Y. 2020)).

To demonstrate a violation of Section 487, a plaintiff must meet a very high burden of

proof, because "relief under the statute must be carefully reserved for the extreme pattern of legal

delinquency." *King v. Fox*, No. 97cv4134 (RWS), 2004 WL 68397, at *7 (S.D.N.Y. Jan. 14,

2004); *see also Ray v. Watnick*, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016), *aff'd*, 688 F. App'x 41

(2d Cir. 2017) ("New York State courts interpreting the statute, as well as federal courts

construing the state court decisions, have concluded that liability attaches under these Statutes

only if the deceit is 'extreme' or 'egregious.'"). The plaintiff must allege "a chronic, extreme

pattern of legal delinquency." *King*, 2004 WL 68397, at *7. In other words, "even egregious

misconduct" will not be sufficient to show a violation "if there is no pattern of intentional deceit

or wrongdoing." *Id*. This high standard for misconduct "affords attorneys wide latitude in the

course of litigation to engage in written and oral expression consistent with responsible, vigorous

advocacy." *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008).

Here, Plaintiffs allege that Thomasson committed a section 487 violation because he

"intended to deceive this Court" when he argued the escrow transactions were legitimate and

requested the submission of letters related to transactions to perpetuate his "deceitful

misrepresentation" all of which caused IAG Plaintiffs harm. *See* ECF No. 65 at ¶¶ 593-607.

However, the Court finds Plaintiffs' allegations fall short of meeting the high burden of proof

required under this statute and the complaint is devoid of sufficiently particular allegations to

state a section 487 claim. *See King*, 2004 WL 68397, at *7 (explaining that "relief under the

statute must be carefully reserved for the extreme pattern of legal delinquency"); *see also Brake*,

504 F.Supp.3d at 116 (holding that allegations regarding intent under this statute "must be stated with particularity.").

With regard to intent, Plaintiffs allege that Thomasson made "misrepresentations to deceive Justice Gianelli" regarding use of his escrow account in transactions involving Plaintiffs and Plaintiffs further allege that "Thomasson knew or should have known the monies received and taken from his escrow account were impermissibly taken from the IAG Plaintiffs fraudulently to provide the Superb Plaintiffs." ECF No. 65 at ¶¶ 597-99. However, this assertion, devoid of any particularity concerning the attendant circumstances, such as why Plaintiffs believe Thomasson knew this to be the case, would scarcely meet the plausibility standard, let alone the heightened pleading standard that New York imposes to satisfy a Section 487 claim. *See e.g., Brake*, 504 F.Supp.3d at 117. Even if these allegations are sufficient for alleging deceitful intent, Thomasson's conduct, as pled, is not sufficiently extreme, outrageous or egregious to satisfy the high threshold requirements imposed by New York courts. *Brake*, 504 F.Supp.3d at 117 (citing *Ray*, 182 F.Supp.3d at 29-31) (finding liability attaches only if the deceit is "extreme" or "egregious.").

Plaintiffs loosely allege a pattern of this behavior by referencing an instance whereby Thomasson was ordered to show cause for why he should not be sanctioned because of arguments raised on appeal that appeared to be "completely without merit in law." ECF No. 65 at ¶¶ 604-605. However, this instance alone, in addition to Plaintiffs' allegations, does not suffice to meet the requirement set by New York state courts, that a plaintiff allege "a chronic and extreme pattern of delinquency." *See O'Callaghan*, 537 F. Supp. 2d at 596 (holding that under this threshold, an action grounded on claims that an attorney had made meritless or unfounded allegations in prior state court proceedings is insufficient to sustain a violation of Section 487).

95

Plaintiffs further contend, "despite the knowledge of the false information" that "Thomasson decided to continue to advocate for the Deo Defendants." *Id.* at ¶ 601. However, the very purpose of the high standard for misconduct is that it affords attorneys a wide degree of latitude in the course of litigation to vigorously and responsibly represent their client with what they believe to be true. *See O'Callaghan*, 537 F. Supp. 2d at 596. Accordingly, Plaintiffs' Judiciary Law § 487 claim is dismissed.

## XVIII. *Piercing the Corporate Veil – Against Deo*

A corporate veil, that a parent corporation is not liable for the acts of its subsidiaries, may be pierced, and the shareholder held liable for the corporation's conduct when, "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Citibank, N.A. v. Aralpa Holdings Limited Partnership*, 714 F.Supp.3d 416, 433 (S.D.N.Y. 2024) (quoting *United States v. Bestfoods,* 524 U.S. 51, 61 (1998)). Piercing the corporate veil allows a plaintiff, under certain appropriate circumstances, to hold a corporation's owner liable for actions taken by the corporation. *Id.* Under New York law, a plaintiff may also "reverse-pierce" the veil and hold a corporation liable for actions taken by its owner. *Id.* (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir. 1997)). The standard for piercing the corporate veil under New York law requires the essential elements of domination and fraud: "(1) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.* at 438.

New York courts and courts in this Circuit have found that under New York law, the tests for piercing the corporate veil and alter ego liability are the same. *See Noryb Ventures, Inc. v. Mankovsky,* No. 650378/2009, 47 Misc. 3d 1220(A) (N.Y. Sup. Ct. May 7, 2015) (stating that

the applicable standards for piercing the corporate veil and alter ego theories of recovery "are

virtually identical"). "Alter ego liability exists when a parent or owner uses the corporate form to

achieve fraud, or when the corporation has been so dominated by an individual or another

corporation (usually a parent corporation), and its separate identity so disregarded, that it

primarily transacted the dominator's business rather than its own." *OOO v. Empire United Lines

Co.*, 557 F. App'x 40, 45–46 (2d Cir. 2014). Treating the corporation as the "alter ego" of a

shareholder or director is just one of the theories in which a court can pierce the corporate veil or

otherwise hold the individual defendant personally accountable for the corporation's actions or

debts. *Highcap Group LLC v. Jam Equities, LLC,* No. 655120/2017, 2022 WL 835046, at *1

(N.Y. Sup. Ct. Mar. 21, 2022).

New York courts look at the following factors when determining whether veil-piercing is

warranted and whether there is sufficient control established:

> C]ourts have considered factors such as disregard of corporate formalities; inadequate
> capitalization; intermingling of funds; overlap in ownership, officers, directors and
> personnel; common office space or telephone numbers; the degree of discretion
> demonstrated by the alleged dominated corporation; whether the corporations are treated
> as independent profit centers; and the payment or guarantee of the corporation's debts by
> the dominating entity.

*Highcap Group LLC,* 2022 WL 835046 at *6 (internal citations omitted). The plaintiff's burden

is heavy – "mere conclusory alter ego allegations are insufficient to survive a motion to dismiss."

*Id.* In other words, conclusory statements of domination and control and failure to allege

particularized facts are insufficient to impose alter ego liability and piercing the corporate veil

liability for that matter. *Id.* Additionally, "even in the presence of domination and control, the

corporate form cannot be disregarded without a showing of fraud or that the misuse of the

corporate form led to avoidance of obligations." *226 Fifth Ave. LLC v. SBF Intern., Inc.,* No.

6513272011, 2012 WL 10008060 (N.Y. Sup. Ct. June 06, 2012). Further, the mere claim that the

corporation was completely dominated by the owners, or conclusory allegations that the corporation acted as their "alter ego," without more, does not suffice to support the equitable relief for piercing the corporate veil. *Id.*

Here, Plaintiffs allege that in the event the Court determines Deo is an owner of, or sole owner of Northshore or Sunrise, then IAG Plaintiffs allege he failed to adequately capitalize Northshore and Sunrise, intermingled his personal assets with Northshore and Sunrise's assets, used Northshore and Sunrise assets for his own personal use, and overall abused the privilege of doing business in the limited liability form to perpetuate a wrong or injustice such that the IAG Plaintiffs seek to pierce the veil of Northshore and enter judgement against Deo for Northshore and Sunrise's obligations to IAG. *See* ECF No. 65 at ¶¶ 552-558, 566-572. The Court finds Plaintiffs have failed to meet the heavy burden of showing a corporation was dominated by Deo and thus have failed to show the presence of domination and control with any factual allegations beyond mere conclusory statements. *See e.g., 226 Fifth Ave. LLC,* No. 6513272011, 2012 WL 10008060 (finding that the amended complaint was devoid of any specific facts demonstrating that the defendant exercised complete domination and control over the remaining defendants for the purpose of defrauding plaintiff and noting that the complaint only asserts, "in a conclusory manner, and 'upon information and belief,'" which is insufficient). Therefore, Plaintiffs' conjectural conclusions are insufficient to establish alter ego liability against Deo.

## XIX.   *Violation of NY GBL § 349 – Against Deo*

New York law prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service. *See* N.Y. Gen. Bus. Law § 349. For a cause of action under § 349, a plaintiff must show: "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the

plaintiff suffered injury as a result of the deception." *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-cv, 2023 WL 3829559 at *2 (2d. Cir. June 6, 2023). New York courts apply an objective standard when assessing if an act was deceptive or misleading which focuses on whether the representation or omission is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (citing *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000)). A reasonable consumer is interpreted as someone who, when making purchases, does not stop to analyze but is instead governed by appearances and general impressions. *Id.* (citing *Guggenheimer v. Ginzburg*, 372 N.E.2d 17, 19 (N.Y. 1977)). A plaintiff must prove actual injury to recover under the statute, though not necessarily pecuniary harm. *Eidelman v. Sun Products Corp.*, No. 21-1046-cv, 2022 WL 1929250, at *1 (2d. Cir. June 6, 2022). One method of demonstrating actual injury in the consumable goods context is by showing a price premium, that being that the plaintiff paid more for a product than he otherwise would have as a result of the defendant's deception. *Id.*

Here, Plaintiffs allege that "many of Deo's practices described herein were specifically directed to consumers" such as "accepting Trade-ins whereby Deo represented and was required but failed to satisfy the consumer's existing loan." ECF No. 65 at ¶¶ 576-577. However, Plaintiffs fail to explain why a reasonable consumer, acting reasonably under the circumstances, would have been misled by these practices. *See e.g., Paradowski*, 2023 WL 3829559 at *2 (holding that the standard employed by New York courts when assessing an action is whether the representation or admission was "likely to mislead a reasonable consumer acting reasonably under the circumstances."). Therefore, because Plaintiffs' operative Complaint fails to show that Deo's act or practice was deceptive or misleading in a material way, *see Paradowski*, 2023 WL 3829559 at *2, Plaintiffs' claim under the NYGBL is dismissed.

**XX.**    ___Permanent Injunction – Against Deo and Libertas Funding___

Ent      The requirements for a permanent injunction are "essentially the same" as for a

preliminary injunction, except that the moving party must demonstrate "actual success" on the

merits. *NY Civil Liberties Union v. NYC Transit Authority*, 684 F.3d 286, 294 (2d Cir. 2012). To

obtain a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." *EMA Financial, LLC*, No. 1:19-cv-01545 (ALC), 2020

WL 1233608 at *3 (S.D.N.Y. Mar. 13, 2020) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547

U.S. 388, 391 (2006)). To obtain a permanent injunction, "a plaintiff must succeed on the merits

and show the absence of an adequate remedy at law and irreparable harm if the relief is not

granted." *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006). The decision of whether to grant or

deny permanent injunctive relief is an act of equitable discretion by the Court. *EBay Inc.*, 547

U.S. at 391.

Ent      Here, the IAG Plaintiffs assert that Libertas claims ownership over Northshore's Future

Receipts, but that claim to ownership is illegitimate, and thus Plaintiffs seek a judgment

permanently enjoining Libertas from exercising any rights over Northshore's Future Receipts.

*See* ECF No. 65 at ¶¶ 436-438. With respect to Libertas, the Court finds Plaintiffs fail to

demonstrate the required elements to obtain a permanent injunction. Plaintiffs only assertions are

that Libertas claims illegitimate ownership of the Northshore Future Receipts (*id.* at ¶ 436-437),

which may suffice to show an injury, but does not explain how it constitutes an "irreparable

injury." *See e.g., EMA Financial, LLC,* WL 1233608 at *3 (reasoning that an injury compensable

by money damages is insufficient to establish irreparable harm). Furthermore, Plaintiffs fail to assert element (2): how remedies available at law, such as monetary damages, are inadequate to compensate for this injury. *See id.* Lastly, Plaintiffs provide no analysis as to the balancing of hardships with respect to themselves and the defendant which renders a remedy in equity warranted under the circumstances. *See id.* Therefore, Plaintiffs have not sufficiently alleged it is entitled to a permanent injunction with respect to Libertas.

The IAG Plaintiffs additonally allege that Deo has misrepresented his ownership of Northshore, engaged in illegal and fraudulent conduct towards its members, and used the License issued to Chabrier to continue to operate Northshore in a matter to perpetuate his wrongful activities. *See* ECF No. 65 at ¶¶ 491-493. Plaintiffs further allege that Deo's actions had harms and will continue to harm Chabrier and other members of Northshore and thus seek a permanent injunction restraining Deo from participating in the continued management and operation of Northshore. *Id.* at ¶¶ 494-497. Plaintiffs make similar allegations with respect to Sunrise and Deo's misrepresentations, fraudulent actions, and use of the License issued to Aarsonson and J. Baron to operate Sunrise in a manner to perpetuate his wrongful activities, and likewise seek a permanent injunction restraining Deo's participation in the continued management and operation of Sunrise. *Id.* at ¶¶ 484-490. These allegations alone are not sufficient to demonstrate "actual success" on the merits. *See e.g., NY Civil Liberties Union*, 684 F.3d at 294.

The Deo Defendants respond to these allegations with the notion that Plaintiffs have only set forth conclusory allegations that Deo, acting on behalf and for Northshore and Sunrise, is utilizing a license purportedly owned by Chabrier and Aaronson and Baron respectively. *See* ECF No. 176-1 at 20-21. Deo contends that if Chabrier, Aaronson and Baron have any cause of action at all for permanent injunction, it would be against Northshore and Sunrise, who are not

named as defendants. *Id.* Given these inconsistencies, and the fact that Plaintiffs have only vaguely asserted that Deo's actions will continue to harm members of Northshore and Sunrise and that they have no adequate remedy at law, Plaintiffs have also not sufficiently alleged the elements set forth above to demonstrate it is entitled to a permanent injunction with respect to Deo. Therefore, Plaintiffs' claims for permanent injunction as against Deo and Libertas Funding are dismissed.

## XXI.   *Declaratory Judgement – Against Deo*

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy," a federal court "may declare the rights . . . of any interested party seeking such declaration." 28 U.S.C. §2201(a). Second Circuit courts apply a two-pronged test to determine if an actual controversy exists in a declaratory judgment action. *Beacher v. Estate of Beacher,* 756 F.Supp.2d 254, 272 (E.D.N.Y. 2010). The ripeness standard for a declaratory judgement action is that there must be "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005). *First*, "the defendant's conduct must have 'created a real and reasonable apprehension of liability on the part of the plaintiff.'" *Ritz Hotel, Ltd. v. Shen Mfg. Co.*, 384 F. Supp. 2d 678, 682 (S.D.N.Y. 2005) (quoting *Starter Corp. V. Converse, Inc.*, 84 F.3d 592, 595 (2d Cir. 1996)). *Second*, "the plaintiff must have 'engaged in a course of conduct which has brought it into adversarial conflict with the defendant.'" *Id.*

Once it has been established that an actual controversy exists, federal courts have discretion in issuing a declaratory judgment and among relevant considerations in exercising this discretion is "whether the judgement will serve a useful purpose in clarifying or settling the legal

issues involved." *Id.* (quoting *Duane Reade, Inc.* 411 F.3d at 389). A decision should be made on the merits of the parties' dispute only with regard to pure questions of law. *Duane Reade, Inc.*, 411 F.3d at 388. However, relevant here, Courts often reject declaratory judgment claims when other claims in the suit will resolve the same issues because under those circumstances, a declaratory judgment does not serve any useful purpose. *Brunckhorst v. Bischoff*, No. 21 Civ. 4362 (JPC), 2024 WL 4277788 at *20 (S.D.N.Y. Sept. 24, 2024). For example, Courts in the Second Circuit "routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." *Id.* (citing *StandardAero Aviation Holdings, Inc. v. Signature Aviation Ltd.*, No. 22 Civ. 7515 (AT), 2024 WL 125574, at *5 (S.D.N.Y. Jan. 11, 2024) (quoting *Com Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14 Civ. 7483 (MKB), 2017 WL 343 2073, at *17 (E.D.N.Y. Aug. 8, 2017)).

Here, Plaintiffs assert that there exists a justiciable controversy which is ripe for judgment, and necessary to resolve the rights and obligations of each of the parties to each other, with respect to determination of the ownership of Northshore and Sunrise. *See* ECF No. 65 ¶¶ 458-463, 465-470. Given the extensive causes of action set forth by Plaintiffs related to these issues and rights, the Court dismisses this request for declaratory judgment given other claims in the suit will likely resolve the same issues set forth here.

### XXII. *Contribution and Indemnification for Fraud, Bread of Fiduciary Duty, Breach of Loyalty and Conversion – Against Deo; Contribution and Indemnification for Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary <u>Duty, Breach of Duty of Loyalty – Against Thomasson</u>*

Generally, contribution involves a situation in which several tort-feasors can share liability for a plaintiff's injury, while indemnification "involves a complete shifting of the loss" stemming from a "contractual or other relationship between the actual wrongdoer and another, such as that of [an] employer and employer." *Sherleigh Assocs. v. Patron Sys*., No. 04 Civ. 907

(JFK), 2005 WL 1902844, at *2 (S.D.N.Y. Aug. 9, 2005) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 306 (1979)). The right to contribution does not arise from contract and only ratable or proportional reimbursement is sought in an action for contribution. *McDermott v. City of New York*, 406 N.E.2d 460 (N.Y. 1980).

In New York, indemnification claims "must be grounded in contract either express or implied." *Cohen v. Elephant Wireless, Inc.*, 03 Civ. 4058 (CBM), 2004 WL 1872421, at *11 (S.D.N.Y. Aug. 19, 2004). A classic indemnity claim exists in favor of a person held vicariously liable for the tort of another, such as when an employer who has been forced to pay damages, by virtue of *respondeat superior*, may obtain indemnity from his employee. *McDermott*, 406 N.E.2d 460, n.4. Indemnification is a restitution concept which "allows shifting of loss to avoid unjust enrichment of one party at the expense of another." *Lewis v. Rosenfeld*, 00 CIV. 5368 (SAS), 2002 WL 441185, at *4 (S.D.N.Y. Mar. 20, 2002). However, until payment is made to the claimant, or a third-party action is filed, there is no cause of action for indemnification. *Mars Assoc. v. New York City Educ. Constr. Fund*, 126 A.D.2d 178, 191 (N.Y. App. Div. 1st Dep't 1987) (explaining that "technically a claim for indemnity does not arise until the prime obligation to pay has been established" however, the CPLR "allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action.").

Here, Plaintiffs assert a cause of action for contribution and indemnification for fraud, breach of fiduciary duty, breach of loyalty and conversion against Deo. *See* ECF No. 65 at ¶¶ 491-504. Plaintiffs additionally assert several causes of action for contribution and indemnification with respect to Thomasson for conversion (ECF No. 65 at ¶¶ 518-521) and for aiding and abetting conversion (*id.* at ¶¶ 522-525), fraud (*id.* at ¶¶ 526-530), breach of fiduciary

duty (*id.* at ¶¶ 534-538), and breach of duty of loyalty (*id.* at ¶¶ 541-545). Plaintiffs' claims for indemnification and contribution with respect to both Deo and Thomasson rest on the assertions that:

> If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Deo; Libertas shall have recourse against Deo who, fraudulently and without authority and in breach of his fiduciary duties and duty of loyalty, sold the Future Receipts in exchange for the Libertas Funds and was unjustly enriched thereby and/or converted same. As such, Deo would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims.

> If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Thomasson; and/or Libertas shall have recourse against Thomasson as the party who converted the Libertas Funds, and as such, Thomasson would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims.

*Id.* at ¶ 502, 519. Specifically, the IAG Plaintiffs request that they "shall have judgment over and against Deo [and Thomasson] for any damages assessed against IAG Plaintiffs arising out of Deo [and Thomasson's] actions chargeable to IAG Plaintiffs running in favor of Libertas and/or for any liability arising out of the aforesaid causes of action." *Id.*

Plaintiffs contend that "if Libertas recovers from IAG Plaintiffs, then Plaintiffs will have been injured" and would therefore be entitled to "indemnification and/or contribution" from Thomasson and/or Deo. *Id.* at ¶ 504. However, "Libertas is neither a plaintiff in this action, nor have they asserted any claims against" the IAG Plaintiffs[;]" rather, the IAG Plaintiffs "are [seemingly] trying to prematurely assert, on Libertas' behalf, claims that have yet to be asserted or raised." ECF No. 176-1 at 28.[6] Because Plaintiffs do not allege how or why either Deo or

---

[6] Defendants further contend that "even if it was determined that Northshore was liable to Libertas for the 'Libertas Funds,' and even if it was determined that Deo breached his duty to Northshore in borrowing said funds, the [IAG Plaintiffs] fail to plead any basis for their conclusory allegation that they would be personally liable and suffer damages distinct that would be sustained by Northshore." *Id.* Moreover, "based on the factual allegations set forth in the Complaint, any rights to the 'Libertas Funds,' were solely Northshore's [,and] [t]o the extent that the Complaint alleges that the funds were converted by

Thomasson has an obligation – express or implied – for contribution or indemnification to the

IAG Plaintiffs in the instant case, Plaintiffs' claims for contribution and indemnification with

respect to both of these defendants are therefore dismissed.

## XXIII. *Plaintiffs' Cross-Motions to Amend the Pleadings: Legal Standard*

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a).

Rule 15(a)(2) provides that "[t]he court shall freely give leave [to amend] when justice so

requires." Fed. R. Civ. P. 15(a)(2). Generally, "[u]nless there is a showing of bad faith, undue

delay, futility or undue prejudice to the non-moving parties, the district court should grant leave

to amend." *Adlife Mktg. & Communs Co. V. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS)

(ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman Davis*, 371 U.S. 178,

182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that

amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692

(ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and

citations omitted). The moving party must attach the proposed amended complaint to the

motion, as was done here, specifying the new claims and/or parties intended to be added. *See*

*Nabatkhorian v. County of Nassau*, No. 12-CV-1118 (JS) (GRB), 2012 WL 13113646, at *1

(E.D.N.Y. Aug. 9, 2012).

The Second Circuit has clarified the standard District Courts should apply in considering

motions for leave to amend dependent upon the timing of the proposed amendment:

---

Thomasson, or that Thomasson's conduct aided and abetted in the conversion of said funds, in the breach
of a fiduciary duty, in the breach of a duty of loyalty, or in fraud, the property rights, duties, and harm
would have been Northshore's, and not the [IAG Plaintiffs] (since they had no direct ownership interest
or possessory right in the 'Libertas Funds,' as their interest would arise solely out of their purported
membership interest in Northshore)." *Id.* at 29.

The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the
Federal Rules of Civil Procedure which, when read together, set forth three standards for
amending pleadings that depend on when the amendment is sought. At the outset of the
litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right
without court permission. After that period ends—either upon expiration of a specified
period in a scheduling order or upon expiration of the default period set forth in Rule
15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should
grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a
"liberal" and "permissive" standard, and the only "grounds on which denial of leave to
amend has long been held proper" are upon a showing of "undue delay, bad faith,
dilatory motive, [or] futility." The period of "liberal" amendment ends if the district court
issues a scheduling order setting a date after which no amendment will be permitted. It is
still possible for the plaintiff to amend the complaint after such a deadline, but the
plaintiff may do so only up [to] a showing of the "good cause" that is required to modify
a scheduling order under Rule 16(b)(4).

*Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021); *Johnson v. Barnett Outdoors, LLC*, No. 21-

CV-6311 (MJP), 2023 WL 8050236, at *2 (W.D.N.Y. Nov. 20, 2023) (stating that Rule 15(a)'s

standard must be balanced with Rule 16(b)'s good cause standard).

To this end, under Rule 16(b), "good cause" is required to modify a scheduling order

implemented by the Court.  Fed. R. Civ. P. 16(b)(4); *Sacerdote,* 9 F.4th at 115 ("[T]he period of

'liberal' amendment ends if the district court issues a scheduling order setting a date after which

no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after

such a deadline, but the plaintiff may do so only up a showing of the 'good cause' that is

required to modify a scheduling order under Rule 16(b)(4)").  Furthermore, "district courts

wishing to evaluate motions for leave to amend under Rule 16 after a particular date need only

write their scheduling orders consistent with that intent, and state that no amendment will be

permitted after that date in order to trigger the Rule 16 standard."  *Id.* at 116.

A finding of good cause is largely dependent on whether the moving party can

demonstrate diligence, however, the court may consider other relevant factors such as whether

the amendment at this stage would prejudice the defendants. *Johnson*, 2023 WL 8050236 at *2

(reasoning that a plaintiff does not meet the burden of showing good cause or diligence to amend

if "the proposed amendment rests on information" he knew, "or should have known, in advance

of the deadline" for motions to amend); *see also Parker v. Columbia Pictures Indus*., 204 F.3d

326, 340-41 (2d Cir. 2000) (holding that the district court properly denied the leave to amend

where the plaintiff "had all the information necessary" to support his claim, "and nothing he

learned in discovery or otherwise altered that fact.").

With respect to the "futility" factor, "where the amended portion of the complaint would

fail to state a cause of action," the district court may deny the party's request to amend. *Parker*,

204 F.3d at 338.  In other words, when determining whether a proposed pleading is futile, courts

will analyze whether it would withstand a motion to dismiss.  *Agerbrink v. Model Service LLC*,

155 F.Supp.3d 448, 456 (S.D.N.Y. 2016).  Leave to amend may be denied based on futility if the

proposed amendment still "fails to state a legally cognizable claim or fails to raise triable issues

of facts."  *AEP Energy Services Gas Holding Co. V. Bank of America, N.A.*, 626 F.3d 699, 726

(2d Cir. 2010); *see also, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that

a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face.").

However, "if a proposed amendment is not clearly futile, then denial of leave to amend is

improper."  *See Brawer v. Egan-Jones Ratings Company*, 347 F.R.D. 650, 654 (S.D.N.Y. 2024)

(citing Fed. Prac. & Proc. Civ. § 1487); *see also Dougherty v. Town of North Hempstead Board

of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (reversing the district court's denial of

amendment as futile because, although defendants "vigorously disputed" plaintiff's version of

events, "proposed amended complaint adequately set forth specific facts, which if proven, could

support a finding of [defendants' liability").  In deciding whether an amended complaint is futile,

"the Court is required to accept the material facts alleged in the amended complaint as true and

draw reasonable inferences in the plaintiff's favor." *Alkhatib v. NY Motor Group LLC*, Nos. CV-13-2337 (ARR), CV-13-5643 (ARR), 2015 WL 3507340, at *7 (E.D.N.Y. June 3, 2015) (quoting *Chan v. Reno*, 916 F.Supp. 1289, 1302 (S.D.N.Y. 1996)).

"In the Second Circuit, 'mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" *Agerbrink*, 155 F.Supp.3d at 452 (citing *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). However, where a significant amount of time has passed prior to filing a motion to amend, the moving party must provide an explanation for the delay. *Id.* (citing *Park B. Smith v. CHF Industries Inc.*, 811 F.Supp.2d 766, 779 (S.D.N.Y. 2011). A "motion to amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously within their knowledge." *Id.* at 453 (quoting *Dilworth v. Goldberg*, 914 F.Supp.2d 433, 460 (S.D.N.Y. 2012)). However, the court may deny leave to amend if the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, in addition to the fact that the amendment would prejudice other parties. *Id.* (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000)).

Finally, prejudice "has been described as the most important reason for denying a motion to amend. *Id.* at 454. (citing *Frenkel v. New York City Off-Track Betting Corp.*, 611 F.Supp.2d 391, 394 (S.D.N.Y. 2009) (quoting *Turkenitz v. Metromotion, Inc.*, 97 Civ. 2513, 1997 WL 773713, at *8 (S.D.N.Y. Dec. 12, 1997))). In deciding whether prejudice exists, courts will assess the following factors as to whether the amendment would "(i) require the opponent to expend significant additional resources or to conduct disocvery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* (citing *Monahan v. New York City Department of*

*Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Associates*, 988 F.2d

344, 350 (2d Cir. 1993))). The inquiring requires the court to balance and weigh "any potential

prejudice to the opposing party against the prejudice that the moving party would experience if

the amendment were denied." *Id.* (citing *Oneida Indian Nation of New York State v. County of

Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000)).

Courts may be more likely to find an amendment prejudicial if a discovery has already

closed, however, an amendment that warrants additional discovery may be permitted so long as it

does not significantly prolong the resolution of the action. *Id* at 454-55 (citing *Scott v. Chipotle

Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014)). The non-moving party bears the

burden of showing that "substantial prejudice would result were the proposed amendment to be

granted. *Id.* at 454 (citing *Oneida Indian Nation of New York*, 199 F.R.D. at 77.) Under this lens,

the Court reviews Plaintiffs' first and second requests motion to amend.

### A.    *Plaintiffs' First Motion to Amend*

Plaintiffs now set forth additional allegations with respect to Flushing Bank's

involvement in the Deo Defendants' fraudulent scheme in their first Cross-Motion for Leave to

Amend the Pleadings. *See* ECF No. 180-1 at ¶¶ 211-228. Plaintiffs allege these facts to further

demonstrate that Flushing Bank knowingly participated in the Deo Defendants' fraudulent

schemes by permitting him to open an account with Superb, all while lacking the actual authority

to do so and further that Deo opened this account to divert Superb's funds to an account he could

control "with assistance from Flushing Bank." *Id.* at ¶¶ 222. However, the Court finds

Plaintiffs' proposed amendments to the pleadings are futile, as their allegations against Flushing

Bank and its involvement in the Deo Defendants' fraudulent schemes still could not survive a

motion to dismiss, and thus the motion must be denied for this reason alone. *See Kiarie v.*

*Dumbstruck, Inc.,* 473 F.Supp.3d 350, 356-58 (S.D.N.Y. 2020) (holding that the motion to

amend must denied based purely on its futility, such that its allegations still could not survive a

motion to dismiss, and it was doubtful that the evidence would even allow a jury to find for the

plaintiff on that issue).

Plaintiffs allege that Deo successfully opened a bank account for Superb on or about

April 4, 2023, but that a month prior, Urrutia began the process of opening an account with

Flushing in March 2023 and submitted various documents and records, including his tax returns

and other documents which indicated her was the majority shareholder of Superb. *Id.* at ¶¶ 211-

13. Furthermore, Plaintiffs allege that Urrutia spoke directly with David Weinstein, the Vice

President and Branch Manager of Flushing's Borough Park branch and that Weinstein knew

Urrutia was the majority shareholder of Superb. *Id.* at ¶ 214. However, Plaintiffs allege that

around the same time, on March 31, 2023, Deo had contacted Robert Puccio, the Vice President

of Flushing Bank's Business Banking Group located at 99 Park Avenue in Manhattan, who Deo

represented was his "personal banker" to open an account. *Id.* at ¶ 215.

On that same day, Weinstein asked Urrutia whether Urrutia wanted to share his personal

tax returns with Puccio, and Weinstein also asked Urrutia for the name of Urrutia's partner at

Superb, which Plaintiffs assert as sufficient to establish that both Weinstein knew Deo was not

the sole shareholder of Superb and that Puccio knew given that Weinstein was in contact with

Puccio about opening an account at Superb. *Id.* at ¶ 217. Deo subsequently informed Novicky

that he has a personal banker ready to open an account for Superb with Flushing Bank and that

he could obtain a $500,000.00 line of credit as well adding "[t]his guy and the Credit underwriter

are in my pocket. Get me the info and 2021 taxes and I will bring it home[,]" which Plaintiffs

contend establishes that Flushing Bank and its agents were in on the Deo Defendants' schemes. *Id.* at ¶¶ 218-20.

Plaintiffs further allege Flushing Bank knew and had reason to know the Deo Defendants were using the account for fraudulent purposes because the transactions should have raised red flags for Flushing Bank given the nature of the transaction which consisted of money coming in, then immediately being transferred out, and the lack of expenses or payroll paid out of the sole checking account for the dealership. *Id.* at ¶¶ 226-27. Finally, Plaintiffs assert, in a conclusory fashion, that "Flushing Bank's agents benefitted from assisting the Deo Defendants" purely on the basis that Deo said they were "in his pocket." *Id.* at ¶ 228.

Plaintiffs' proposed amendments are insufficient because they do not permit the Court to infer more than the mere possibility of Flushing Bank's misconduct. *See e.g., Kiarie*, 473 F.Supp.3d at 354; *see also, Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard is not akin to a probability requirement, but it asks for "more than a sheer possibility that a defendant has acted unlawfully."). As mentioned, with respect to the RICO claims, *Reves* provides that RICO claims against outside services professionals, like banks, are insufficient unless they allege more substantial involvement by the outsider defendant in the charged racketeering activity than is set forth here. *See Alkhatib*, 2015 WL 3507340 at *18. Where a party, like Flushing Bank, deals in an ordinary way with its agents and others who owe the party a professional obligation, like opening bank accounts, such that their role in Deo's illicit activities was purely incidental as a course of ordinary business, and, where there is no evidence that these agents acted with intent to effectuate those illicit activities, the party does not constitute an associated-in-fact enterprise for RICO purposes. *See in re: General Motors LLC Ignition Switch Litigation*, 2016 WL 3920353 at *15.

Even considering Plaintiffs' additional allegations about Weinstein's knowledge of Urrutia as the majority shareholder, Plaintiffs do not dispute that it was Puccio who opened the account for Deo, and Plaintiffs' only assert conclusory allegations that "Puccio knew given that Weinstein was in contact with Puccio about opening an account at Superb." ECF No. 180-1 at ¶ 217.

Plaintiffs also broadly claim Deo's own communications of "[t]his guy and the Credit underwriter are in my pocket" establish that Flushing Bank and its agents were "in" on the Deo Defendants' schemes. *Id.* at ¶ 220. While these allegations may suffice to show the mere possibility of wrongful conduct, they do not establish that Flushing Bank shared in the Deo Defendants' nefarious intention, aside from the accusation that "Flushing Bank's agents benefitted from assisting the Deo Defendants because they were in Deo's 'pocket.'" *Id.* at ¶ 228. For the same reasons the operative Complaint was insufficient to survive the very difficult "operation and management" test set forth by the Supreme Court in *Reves*; the mere fact that Flushing provided services, such as opening the account, without more, remains insufficient to state a claim under Section 1962(c). *See e.g., Zhu*, 2005 WL 275736, at *5.

Therefore, Plaintiffs' First Motion to Amend is ***denied*** for reason of futility: even with these additional allegations, Plaintiffs fail to sufficiently allege that Flushing Bank was involved in the "operation and management" of the fraudulent enterprise of the Deo Defendants, aside from performing standard bank services, mere conjecture as to their fraudulent intentions, and an utter lack of factual allegations showing how they benefitted from the scheme. *See Zhu*, 2005 WL 2757536, at *5 (finding no existence of an enterprise when the only "pattern of activity" alleged by the plaintiff is that of "banks complying with their customers' requests").

**B.**    *Plaintiffs' Second Motion to Amend*

    **1.**    *The Addition of Northshore and Sunrise as Defendants*

Plaintiffs' second motion to amend the operative Complaint claim seeks to add Northshore and Sunrise as defendants for the alternative claims, correcting the alleged deficiency in the previously submitted complaint. *See* ECF No. 182 at 42.  With respect to Counts 16, 17, 18, 21, 23, 26, and 42, the Plaintiffs' proposed Third Amended Complaint ("TAC") adds the prerequisite demand to the derivative claims and adds the necessary plaintiffs and Northshore and Sunrise as defendants. *Id.* at 38-39.  Furthermore, with respect to Count 22, Northshore now asserts the corporate waste claim. Plaintiffs further argue that it is "nonsensical" to dismiss Chabrier's claim against Deo, as Deo's mismanagement of Northshore cost Chabrier the DMV license. *Id.* at 39. Similarly, with respect to Count 27, Sunrise now asserts the corporate waste claim, and Plaintiffs argue that Aaronson's and J. Baron's claims have merit because Deo's mismanagement of Sunrise cost those Plaintiffs the DMV license. *Id.* at 40.

    With respect to Count 28, the TAC asserts the prerequisite demand and adds Northshore as a nominal defendant. *Id.* at 40.  Further, Plaintiffs note that Libertas Funding has discontinued its claim against IAG Plaintiffs in state court to pursue the claim in this Court; us, in the interest of judicial economy, the claim should stand. *Id.* at 41.  With respect to Counts 29 to 37, Plaintiffs now seek to have Counts 29, 20, 34, and 36 brought against Northshore directly, and Counts 31, 32, 33, and 35 as standard indemnification claims "should be successful against any indemnified party." *Id.* at 41.  Regarding Counts 38 and 40, the TAC alleges a contractual relationship between IAG and Northshore and Sunrise, such that an agreement obligated the former to cover the duties of the latter. *Id.* at 42.  Lastly, with respect to Counts 43 and 44, the TAC addresses the prerequisite demand and joins Northshore and Sunrise as nominal defendants.

Moreover, it alleges that Deo owed Northshore and Sunrise accurate accounting through his role as manager.  *Id.* at 43.

These above-mentioned requests with respect to joining Northshore and Sunrise as nominal defendants, and the proposed claims that follow on their behalf and against them, are ***denied***.  Aside from the fact that the scheduling order set a deadline of April 5, 2024 (ECF No. 142 at 3) for motions to join new parties or amend the pleadings, and Plaintiffs did not file this until May 14, 2024, Plaintiffs fail to provide any explanation that would excuse this delay given Plaintiffs have been aware of Northshore and Sunrise as the dealerships which are largely at the center of these claims since the initial complaint was filed on August 17, 2023.  *See* ECF No. 1 at 9-11); *see also Shi Ming Chen v. Hunan Manor Enterprise, Inc.*, 437 F.Supp.3d 361, 366 (S.D.N.Y. Feb. 3, 2020) (reasoning that reopening the case to add new defendants "would certainly risk a re-do of the entire discovery process inasmuch as each new defendant would be entitled to obtain discovery from the plaintiffs and potentially from co-defendants.").

Furthermore, this is Plaintiffs' Third Amended Complaint and "prejudice is generally found where the motion to amend comes after many months or years of pre-trial activity" and "adds new parties."  *See Antrobus v. N.Y.C. Dep't of Sanitation*, 2016 WL 5394697, at *11 (E.D.N.Y. Feb. 25, 2016). Furthermore, prejudice is also found when "permitting an amendment at this late juncture would unduly delay the resolution of this litigation."  *See Aguilar v. Connecticut*, 2013 WL 657648, at *8 (D. Conn. Feb. 22, 2013). In sum, Plaintiffs' request to amend their complaint to add additional defendants, Northshore and Sunrise, and claims with respect to those entities is ***denied***, even applying Rule 15(a)(2)'s lenient standard.  *See Shi Ming Chen*, 437 F.Supp.3d at 367.

### 2.      *Allegations Pertaining to Piercing the Corporate Veil*

With respect to Counts 39 and 41, asserting a claim for piercing of the corporate veil, Plaintiffs TAC omits these counts as unnecessary and instead asserts them as an alternative method of recovery under Counts 38 and 40. *See* ECF No. 182 at 42-43. For the reasons stated above with respect to Northshore and Sunrise, Plaintiffs' request to assert these claims as an alternative method of recovery still fail for the same reasons the claims were initially dismissed, because these conjectural conclusions are insufficient to establish that the Deo exercised complete domination and control over Northshore and Sunrise to perpetuate fraud against the IAG Plaintiffs as well as a lack of capitalization and intermingling of funds. *See e.g., 226 Fifth Ave. LLC,* No. 6513272011, 2012 WL 10008060 (finding that the complaint only asserts, "in a conclusory manner, and 'upon information and belief,'" which is insufficient to show the presence of domination and control with any factual allegations beyond mere conclusory statements).

### 3.      *Violation of Judiciary Law § 487*

With respect to Count 45, Plaintiffs' claim the FAC "adequately allege[s]" Thomasson's knowledge of the scheme surrounding the Libertas Funds, and, therefore, Plaintiffs assert he is guilty of lying in open court when he claimed there was nothing wrong with using his attorney escrow account to transfer the funds from IAG Plaintiffs to Deo, constituting a violation of the Judiciary Law § 487. *See* ECF No. 182 at 44. For the same reasons that this claim fails to survive a motion to dismiss, the proposed amended pleading fails as well. Plaintiffs allege in the TAC that "Thomasson knew the funds were the product of Deo Defendants' fraudulent schemes because he was complicit in them, actively conspired with the Deo Defendants to carry them out and even maintained an office inside the dealership that the Deo Defendants operated out of." *Id.*

In the TAC, once again, Plaintiffs allege Thomasson made misrepresentations to deceive Justice Gianelli regarding the use of his escrow account. *Id.*

Even if these allegations were sufficient to allege deceitful intent, which, given the lack of particularity as to how Thomasson knew this, they are likely not, they remain insufficient to show a pattern that was either extreme or egregious as required by the statute. Again, the standard for § 487 is a high one, and Courts afford attorneys a wide degree of latitude during litigation to vigorously and zealously advocate on behalf of their client. *See O'Callahan*, 537 F.Supp.2d at 596. Plaintiffs' request to amend the pleadings with respect to this claim is ***denied***, because it is futile and would not withstand a motion to dismiss even with these proposed allegations. *See Agerbrink*, 155 F.Supp.3d at 456.

### 4. *Misappropriation*

With respect to their misappropriation claim, the Court finds Plaintiffs have failed to plead a cause of action for misappropriation under New York law in the TAC, because Plaintiffs have failed to allege a trade secret pursuant to the DTSA. In the TAC, Plaintiffs rehash much of the same arguments they proffered for the DTSA claim. *See* ECF No. 182 at 49-52. Once again, Plaintiffs have set forth sufficient information to show the customer list and DMS system derive independent economic value and are not readily ascertainable through proper means in the marketplace, yet these allegations would still fall short in a motion to dismiss because Plaintiffs fail to allege the extent of measures taken by Plaintiff to guard the secrecy of the information, which is required for a valid trade secret and thus a misappropriation claim. *See Core SWX, LLC,* 2022 WL 3588081 at, *4. Therefore, Plaintiffs' request to amend their misappropriation claim is ***denied*** on futility grounds.

### 5. *Tortious Interference; Negligence and Conversion Against the Bank Defendants*

With respect to Plaintiffs' Tortious Interference claim, in Plaintiffs' TAC, Plaintiffs reason that, because they had a business relation with NMAC and Deo "intentionally interfered" with that relation to harm Superb and caused harm. ECF No. 182 at 55. Even if Plaintiffs have identified the Superb Plaintiffs' business relationship with the Floor Plan lenders, and showed the resulting harm and issues it caused with the Floor Plan, they still fail to show the ways in which the Deo Defendants *intentionally* interfered with such relationship to cause such harm, and, therefore, Plaintiffs' request to amend the pleadings with respect to this claim is also ***denied*** on futility grounds. *See Agerbrink*, 155 F.Supp.3d at 456. Likewise, Plaintiffs' request to amend the pleadings with respect to these negligence and conversion claims against the Bank Defendants – particularly Chase (ECF No. 182 at 58) – is ***denied*** on futility grounds. As mentioned, Article 4-A precludes common law claims asserting the existence of unauthorized wire transfers regardless of what the claim may be called, and, therefore, Plaintiffs' proposed negligence and conversion claims fall within the regime of Article 4-A and are precluded. *See e.g., Ma*, 597 F.3d at 89.

### 6. *Fraud – Against Deo and Jones*

Further, Plaintiffs' motion for leave to amend their complaints with respect to Deo and Jones' fraud set forth in Count 52 (ECF No. 182 at 60-61) is ***granted*** with respect to additional factual assertions pertaining to Deo and ***denied*** with respect to Jones. In the TAC, Plaintiffs reiterate the allegation that "Jones provided Urrutia, *by and through Deo,* with monthly financials and falsely showed Superb was profitable." *Id.* at 60. However, these new assertions still do not support a showing that Jones made such statements with knowledge of its falsity nor

with any intent to defraud Plaintiffs outside of the ordinary course of business they were paid to provide. *See MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F.Supp.2d 304, 312 (E.D.N.Y. 2010).

**7.    *Standing – Urrutia and Team Auto***

Finally, between the TAC and FAC, Plaintiffs have made a case for Urrutia's and Team Auto's standing such that those Plaintiffs should be permitted to pursue their claims against the Defendants accordingly. Plaintiffs assert Urrutia has standing because he is "President of Superb Motors" and "has been harmed by the Defendants' conduct." ECF No. 182 at 48-49. Team Auto has standing because it is an auto wholesaler that owned 13 cars Deo allegedly absconded with. *See* ECF No. 182 at 49. Plaintiffs' motion for leave to amend their complaints to include facts to further support their standing is ***granted***.

In conclusion, Plaintiffs' motion for leave to amend their complaints is ***granted***, except with respect to those claims already dismissed.[7]

## CONCLUSION

For the foregoing reasons:

(i)    the Deo Defendants' Motion to Dismiss (ECF No. 176) is **GRANTED** *in part* and

   **DENIED** *in part*. The following claims are dismissed ***with prejudice***:

   (a)    Tortious Interference with Contracts, Business Relations, and Prospective Economic Advantage against the Deo Defendants;

   (b)    Defend Trade Secrets Act Claims, including Misappropriation under the DTSA against the Deo Defendants;

   (c)    Violation of New York Judiciary Law § 487 against Thomasson;

---

[7] Plaintiffs are permitted to amend the operative Complaint to include the proposed further factual allegations regarding the surviving claims. For example, Plaintiffs are permitted to amend the operative Complaint to incorporate further factual allegations regarding the conversion and civil conspiracy claims against the Deo Defendants. *See* ECF No. 182 at 56-58, 59-60.

    (d)      Piercing the Corporate Veil against Deo;

    (e)      Violation of New York GBL § 349 against Deo;

    (f)      Permanent Injunction against Deo; Libertas Funding

    (g)      Declaratory Judgment against Deo

    (h)      Contribution and Indemnification for Fraud, Breach of Fiduciary Duty, Breach of Loyalty and Conversion against Deo; and

    (i)      Contribution and Indemnification for Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary Duty, Bready of Fiduciary Duty against Thomasson.

(ii)     the Bank Defendants' Motions to Dismiss (ECF Nos. 164, 175 and 177) are

**GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed

*with prejudice*:

    (a)      Permanent Injunction against Libertas Funding;

    (b)      Plaintiffs' RICO Claims against Bank Defendants;

    (c)      Conversion claims against the Bank Defendants;

    (d)      Negligence and Unauthorized Payments against the Bank Defendants;

    (e)      Drawee Liability against Chase Bank;

    (f)      New York UCC §3-419 against the Bank Defendants;

(iii)    the CPA Defendants' Motions to Dismiss (ECF No. 168) is **GRANTED.** The

following claims are dismissed *with prejudice*:

    (a)      Plaintiffs' RICO Claims against CPA Defendants;

    (b)      Plaintiffs' Fraud Claims against Jones; and

    (c)      Professional Malpractice against the CPA Defendants.

(iv)     Plaintiffs' Motions for Leave to Amend (ECF Nos. 178 and 181) are **GRANTED** *in part* and **DENIED** *in part*, consistent with this Order.  Plaintiffs are directed to file an Amended Complaint consistent with the rulings in the Order on or before April 4, 2025.

Dated: Central Islip, New York
       March 21, 2025

**S O  O R D E R E D:**

/S/ *James M. Wicks*

       JAMES M. WICKS
United States Magistrate Judge